IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA VERGARA, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | No. 1:15-CV-06942<br><br>Judge: Honorable Thomas M. Durkin |

## MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING APPEAL OF THE FCC'S OMNIBUS ORDER TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA

UBER TECHNOLOGIES, INC.

Debra R. Bernard, ARDC No. 6191217
DBernard@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn, Suite 1700
Chicago, Illinois 60603
Telephone: (312) 324-8559

# TABLE OF AUTHORITIES

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 2

     A.     Uber's Business ................................................................................ 2

     B.     Procedural History ........................................................................... 2

     C.     The FCC's 2015 Omnibus Order ..................................................... 3

     D.     The Omnibus Order Is Being Reviewed and May Be Vacated By the D.C. Circuit ............................................................................................. 5

III.   ARGUMENT ..................................................................................................... 8

     A.     This Court Has the Inherent Authority to Stay this Action Pending a D.C. Circuit Decision ................................................................................ 8

     B.     A Stay Will Conserve the Court's and the Parties' Resources ............ 10

     C.     A Stay Will Not Prejudice Plaintiff ................................................. 13

IV.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

<small>CASES</small>

*ACA Int'l v. Fed. Comm'ns Comm'n,*
No. 15-1211 (D.C. Cir. filed July 10, 2015) ......................................................1, 5

*Action for Children's Television v. Fed. Commc'ns Comm'n,*
58 F.3d 654 (D.C. Cir. 1995) ........................................................................6

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot.,*
196 F.3d 302 (1st Cir. 1999) ........................................................................9

*Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. & Retail Pro Int'l LLC,*
No. 3:14-cv-4335-TLW, Dkt. No. 30 (D.S.C. June 19, 2015) ......................9, 11, 12

*Cascades Computer Innovation, LLC v. SK hynix Inc.,* No. 11 C 4356, 2012 WL
2086469 (N.D. Ill. May 25, 2012) ...............................................................13

*Cellco P'ship v. Dealers Warranty, LLC,*
No. 09-1814 (FLW), 2010 WL 3946713 (D.N.J. Oct. 5, 2010) .............................11

*Chruby v. Global Tel*Link Corp.,*
No. 1:14-cv-456, __ F. Supp. 3d __, 2015 WL 4740633 (E.D. Va. Jan. 14,
2015) ...................................................................................................9, 12, 14

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) ................................................................................12

*Derby v. AOL, Inc.,*
No. 5:15-CV-00452-RMW, 2015 WL 5316403 (N.D. Cal. Sept. 11, 2015)............4

*In re Groupon Derivative Litig.,*
882 F. Supp. 2d 1043 (N.D. Ill. 2012) ......................................................8, 9, 10

*GTE South, Inc. v. Morrison,*
199 F.3d 733 (4th Cir. 1999) ........................................................................9

*Hill v. Transp. Serv. Co.,*
1987 WL 7260 (N.D. Ill. Feb. 24, 1987) .......................................................9

*Hooker v. Sirius XM Radio, Inc.,*
No. 4-13-cv-3 (E.D. Va. Sept. 25, 2015) .......................................................14

*Ignite USA, LLC v. Pac. Mkt. Int'l, LLC,*
No. 14 C 856, 2014 WL 2505166 (N.D. Ill. May 29, 2014) .................................14

LEGAL128145548.20

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)...........................................................................................................8, 9

*Leyse v. Bank of Am. Nat'l Ass'n*,
   --- F.3d ---, 2015 WL 5946456 (3d Cir. Oct. 14, 2015)........................................................11

*Markel Am. Ins. Co. v. Dolan*,
   787 F. Supp. 2d 776 (N.D. Ill. 2011) .....................................................................................8

*Olney v. Progressive Cas. Ins. Co.*,
   993 F. Supp. 2d 1220 (S.D. Cal. 2014)..................................................................................11

*Osorio v. State Farm Bank, F.S.B.*,
   746 F.3d 1242 (11th Cir.2014) ...............................................................................................11

*Page v. Regions Bank*,
   917 F. Supp. 2d 1214 (N.D. Ala. 2012)..................................................................................11

*Petroleum Commc'ns, Inc. v. Fed. Commc'ns Comm'n*,
   22 F.3d 1164 (D.C. Cir. 1994).................................................................................................6

*Prof'l Ass'n for Customer Engagement Inc. v. Fed. Commc'ns Comm'n*,
   No. 15-2489 (7th Cir. filed July 14, 2015) ..............................................................................5

*Sarantakis v. Gruttaduaria*,
   No. 02 C 1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002)..................................................13

*Se-Kure Controls, Inc. v. Sennco Sols., Inc.*,
   675 F. Supp. 2d 877 (N.D. Ill. 2009) .....................................................................................9

*Sirius XM Radio Inc. v. Fed. Commc'ns Comm'n*,
   No. 15-1218 (D.C. Cir. filed July 14, 2015)............................................................................5

*Smith v. Merck & Co.*,
   No. 06-CV-0931-DRH, 2006 WL 3842190 (S.D. Ill. Dec. 29, 2006)....................................14

*Soppet v. Enhanced Recovery Co., LLC*,
   679 F.3d 637 (7th Cir. 2012) .................................................................................................11

*Spokeo, Inc. v. Robins*,
   135 S. Ct. 1892 (2015)............................................................................................................13

*Stark v. Wickard*,
   321 U.S. 288 (1944).................................................................................................................9

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*,
410 F.3d 964 (7th Cir. 2005) .................................................................8

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
46 F.3d 624 (7th Cir. 1995) ...............................................................8, 9

*Verizon v. Fed. Commc'ns Comm'n*,
740 F.3d 623 (D.C. Cir. 2014) ..............................................................6

*Visual Interactive Phone Concepts, Inc. v. Samsung Telecommunications Am., LLC*,
No. 11-12945, 2012 WL 1049197 (E.D. Mich. Mar. 28, 2012) ...........14

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989).................................................................................7

*In re Whirlpool Corp.*,
597 F.3d 858 (7th Cir. 2010) .................................................................9

**STATUTES**

5 U.S.C. § 706...........................................................................................5

28 U.S.C. § 2112.......................................................................................5

28 U.S.C. § 2342.......................................................................................6

47 U.S.C. § 227 ................................................................................. passim

47 U.S.C. § 402.......................................................................................6

**OTHER AUTHORITIES**

Douglas H. Ginsburg, *Remarks upon Receiving the Lifetime Service Award of the Georgetown Federalist Society Chapter*, 10 Geo. J.L. & Pub. Pol'y 1 (2012) ........................6

Federal Court Management Statistics, June 2015, available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-0 ..............................................14

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, F.C.C. 15-72 ..............................................................1

*Remarks of Michael O'Rielly, Fed. Commc'ns Comm'n Before the Prof'l Ass'n for Customer Engagement 2015 TCPA Washington Summit*, 2015 WL 5723795..............................................12

# I.  INTRODUCTION

Defendant Uber Technologies, Inc. ("Uber" or "Defendant"), by and through undersigned counsel, moves this Court for a stay of these proceedings pending review by the United States Court of Appeals for the District of Columbia ("D.C. Circuit") of the Declaratory Ruling and Order issued by the Federal Communications Commission ("FCC") in *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, F.C.C. 15-72 (the "Omnibus Order") on July 10, 2015.  *See* Ex. A (Omnibus Order); *ACA Int'l v. Fed. Comm'ns Comm'n*, No. 15-1211 (D.C. Cir. filed July 10, 2015) (petition for review) (and consolidated cases).  The Omnibus Order purports to expand the reach of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") beyond what Congress authorized and Plaintiff's Complaint relies on this expanded reach.  The Omnibus Order, however, is currently under review by the D.C. Circuit and may be vacated.

Plaintiff's Complaint, filed after the issuance of the Omnibus Order, alleges that Uber violated the TCPA by sending her text messages intended for someone else.  This claim depends on the Omnibus Order's new interpretations of "automatic telephone dialing system" ("ATDS"), "called party," and "call"—interpretations that contradict the plain language and the purpose of the TCPA.  Specifically, the Omnibus Order: (1) improperly expands the reach of the TCPA to software that has the "*potential* ability" to serve as an ATDS; (2) interprets a "called party" not as an intended recipient of a call, but as an individual assigned the telephone number and billed for the call or the customary user of the phone; and (3) treats a text message as coextensive with a "call".  *See* Omnibus Order ¶¶ 19, 72-75 & n.3.  These interpretations stray from the plain language and intended purpose of the TCPA, exceed the scope of the FCC's authority, would result in sweeping implications for businesses that communicate with their users via text message, and have been vigorously criticized, including by current FCC Commissioners.

Plaintiff's claims should not proceed until the D.C. Circuit has addressed the Omnibus Order.  Proceeding with this action while the appeal of the Omnibus Order is pending would unnecessarily waste the resources of the Court and the parties.  It would be inefficient for the

parties to brief, and for this Court to decide, dispositive legal issues that may be governed by the Omnibus Order while the validity of that Order is under review by the D.C. Circuit.

In sum, a stay will simplify and clarify the issues in question, streamline class certification issues and summary judgment, and reduce the burden of litigation on the parties and on the Court. A stay will not prejudice or otherwise disadvantage Plaintiff, as discussed further herein. Accordingly, Uber respectfully requests that the Court grant a stay while the D.C. Circuit reviews the Omnibus Order.

## II. BACKGROUND

### A. Uber's Business.

Uber is a technology company that provides lead generation services for transportation companies and drivers through a software application that runs on smart phones (the "Uber app"). The Uber app allows users to submit trip requests, which are routed to drivers who use their own vehicles or their companies' vehicles to transport passengers. Answer, Dkt. No. 7 ¶ 9. To sign up to submit trip requests, a user must agree to Uber's terms and conditions, and provide his/her identifying information, the cell phone number at which he/she wishes to be contacted for purposes of using the Uber app, and his/her payment information. To verify the account, Uber sends a text message containing a verification code to that number. *Id.* ¶ 18.

### B. Procedural History.

This case is in its infancy. Discovery has not yet commenced, and no substantive motion practice has taken place.

On August 7, 2015, a month after the FCC issued its Omnibus Order, Plaintiff brought this putative class action alleging that Uber unlawfully called her and others' wireless phone numbers using an ATDS without their consent, in violation of the TCPA. Complaint, Dkt. No.1, ¶¶ 31-33; 47 U.S.C. § 227(b)(1)(A)(iii) (making it unlawful to "make any call" using an automatic telephone dialing system ("ATDS") absent certain exceptions, without "the prior express consent of the called party"). Plaintiff contends that Uber violated the TCPA because a third party requested that Uber contact him/her but input the wrong telephone number—which

turned out to be Plaintiff's telephone number—resulting in Plaintiff's receipt of text messages intended for that third party. *See* Complaint, Dkt No. 1 ¶¶ 14-15, 22. Plaintiff purports to represent a class of individuals who "received one or more text message calls from Defendant where the called party was not the same individual who, according to Defendant's records, provided the phone number to Defendant" and seeks "a minimum of $500.00" for each text message sent. *Id*. ¶¶ 23, 34.

On October 5, 2015, Uber filed its Answer to Plaintiff's Complaint. Answer, Dkt. No.7. In its Answer, Uber responded that the text messages sent to the telephone number Plaintiff's counsel represented as belonging to Plaintiff were sent in response to manual entry of that telephone number by an Uber user or in response to a request by that Uber user for a text message to be sent to that cell phone number. *Id*. ¶ 19.

### C.     The FCC's 2015 Omnibus Order.

On July 10, 2015, a month before Plaintiff brought this lawsuit, the FCC issued a sweeping Omnibus Order addressing "21 separate requests for clarification or other action regarding the TCPA or the Commission's rules or orders." *See* Omnibus Order ¶ 2. The Order addresses issues that go to the heart of this case, including the meaning of the terms "ATDS," "called party," and "call."

First, the FCC inflated the definition of ATDS to include any equipment that has the "potential ability" to dial numbers randomly or sequentially. *See id.* ¶ 19. The statutory definition of ATDS is quite clear: to qualify as an ATDS, equipment must have "the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A). However, the FCC determined in July that an ATDS need not have the "current capacity" or "present capacity" to dial random or sequential numbers, it need only have the "potential ability" to do so. Omnibus Order ¶19. Through this new interpretation, the FCC has purportedly rendered any modern dialing technology—even smart phones—an ATDS for purposes of the TCPA. *Id.* at ¶ 21

(acknowledging that smart phones are ATDSs).  Indeed, the only type of equipment the FCC conceded would fall outside of its definition of ATDS is the rotary phone.  *Id.* at ¶ 18.[1]

In addition to expanding the definition of "ATDS," the FCC also expounded on the definition of "called party."  Under the TCPA, a caller must have consent from the "called party" before placing a call to a wireless number using an ATDS.  47 U.S.C. § 227(b)(1)(A)(iii).  In the Omnibus Order, the FCC decided that "called party" is not the party the caller was trying to reach (the intended recipient), but "the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan."  Omnibus Order ¶¶ 73, 78.  For example, the FCC determined that if a phone number was reassigned to a different person, the caller could be liable for that call under the TCPA *even if the caller had no notice that the number was reassigned.  Id.* at ¶¶83-84. The FCC further decided that TCPA liability extends to calls to "wrong numbers"—"numbers that are misdialed or entered incorrectly into a dialing system, or that for any other reasons result in the caller making a call to a number where the called party is different from the party the caller intended to reach or the party who gave consent to be called."  *Id.* ¶ 94 n.320.

Finally, with respect to the definition of "call," the FCC reiterated its prior position that text messages are equivalent to calls for purposes of TCPA liability.  *Id.* ¶ 1 n.3. (citing the 2003 Order).  The FCC has never provided any rationale for interpreting the unambiguous term "call" to also mean "text message."  *See* 2003 Order ¶165 (stating, without further explanation, that calls include text messages because the statute prohibits *calls* to telephone numbers assigned to cellular telephone services for which the party is charged for the *call*)(emphasis added).

---

[1] Notwithstanding the FCC's expansive remarks about the definition of ATDS, the FCC did not modify the limitation, set forth in previous orders, that an ATDS must also be able to dial numbers without human intervention.  *See* Omnibus Order ¶17; *see also Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015) (citing Omnibus Order and granting motion to dismiss TCPA claim because text messages at issue were sent only due to human intervention and did not indicate the operation of an ATDS).

**D.** **The Omnibus Order Is Being Reviewed and May Be Vacated By the D.C. Circuit.**

After the Omnibus Order was issued, a flurry of petitions sought review of the Order. Initially, two petitions were filed in the D.C. Circuit Court of Appeals and another was filed in the Seventh Circuit Court of Appeals. *See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. filed July 10, 2015); *Sirius XM Radio Inc. v. Fed. Commc'ns Comm'n*, No. 15-1218 (D.C. Cir. filed July 14, 2015); *Prof'l Ass'n for Customer Engagement Inc. v. Fed. Commc'ns Comm'n*, No. 15-2489 (7th Cir. filed July 14, 2015). The Judicial Panel on Multidistrict Litigation consolidated all three of these petitions in the D.C. Circuit. *See* 28 U.S.C. § 2112(a)(3) (requiring that petitions for review filed in multiple courts be consolidated in a single court of appeals). Six petitions subsequently followed (and were consolidated with the D.C. Circuit action) and an additional nine parties intervened. Petitioners and intervenors include nonprofits and industry organizations (such as the U.S. Chamber of Commerce, the National Association of Federal Credit Unions, and the Council of American Survey Research Organizations), as well as individual companies (including Sirius XM Radio, Inc., salesforce.com inc., Rite Aid Headquarters Corp.).

Each of the petitions and issue statements contend that the FCC's Order—including its rulings on "called party" and "ATDS"—is arbitrary and capricious, an abuse of discretion, in excess of the FCC's statutory authority, and otherwise contrary to the Constitution and other laws. *See* Statements of Issues filed by Council of American Survey Research Organizations and Marketing Research Association (Ex. B); Chamber of Commerce of the United States (Ex. C); salesforce.com inc. and ExactTarget, Inc. (Ex. D); MRS BPO, LLC, Cavalry Portfolio Services LLC, Diversified Consultants, Inc., and Mercantile Adjustment Bureau, LLC (Ex. E); Professional Association for Customer Engagement, Inc. (Ex. F); Sirius XM Radio Inc. (Ex. G); Vibes Media, LLC (Ex. H); Portfolio Recovery Associates, LLC (Ex. I); *see also* 5 U.S.C. § 706(2)(A). The petitions and issue statements also seek finality on whether a text message constitutes a "call" under the TCPA. *See*, *e.g.*, Statement of Issues filed by the Consumer

Bankers Association (Ex. J). Accordingly, the D.C. Circuit is currently considering the viability of issues central to the claims in this action.

The possibility that the Omnibus Order will be vacated is far from speculative. As an initial matter, the D.C. Circuit (as does any Court of Appeals) has the authority to decide the validity of FCC orders and has exercised that authority to vacate FCC orders. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a); *Verizon v. Fed. Commc'ns Comm'n*, 740 F.3d 623, 634-35 (D.C. Cir. 2014) (reviewing the challenged FCC order to "determine whether the Commission has demonstrated that the regulations fall within the scope of its statutory grant of authority" and to "determine whether the Commission's actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" (quoting 5 U.S.C. § 706(2)(A))); *see, e.g.*, *Action for Children's Television v. Fed. Commc'ns Comm'n*, 58 F.3d 654 (D.C. Cir. 1995); *Petroleum Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 22 F.3d 1164 (D.C. Cir. 1994). Indeed, since 1985, the D.C. Circuit has vacated approximately 23% of the federal agency orders it reviewed. *See* Douglas H. Ginsburg, *Remarks upon Receiving the Lifetime Service Award of the Georgetown Federalist Society Chapter*, 10 Geo. J.L. & Pub. Pol'y 1, 4 (2012).

The vituperative remarks of the dissenting FCC Commissioners underscore that the D.C. Circuit has sufficient grounds to vacate much, if not all, of the Omnibus Order. The Omnibus Order was approved only by a narrow three-to-two margin of the five FCC Commissioners. The dissenters sounded significant alarm at the Omnibus Order's deviation from the TCPA's plain language and intended purpose, and at the deleterious effect the new interpretations would have on innovation, businesses, and individuals. *See,* Ex. A, Omnibus Order, Dissenting Statement of Commissioner Ajit Pai ("Pai Dissent") at 113; Ex. A, Omnibus Order, Statement of Commissioner Michael O'Rielly, Dissenting in Part and Approving in Part ("O'Rielly Dissent") at 127.

In particular, Commissioners Pai and O'Rielly took issue with the FCC's ever-expanding interpretation of ATDS. *See* Omnibus Order ¶¶ 12-24. Commissioner Pai noted that the FCC's interpretation of ATDS is directly contrary to the language of the statute. *See* Pai Dissent at 114

("Had Congress wanted to define automatic telephone dialing system more broadly it could have done so . . . defining it as 'equipment which has, has had, or could have the capacity.' But it didn't."). Commissioner O'Rielly also criticized the new definition of ATDS as contrary to the statutory language and noted that multiple courts have rejected the interpretation espoused in the Omnibus Order. O'Rielly Dissent at 128-129. "To put it kindly," Commissioner Pai wrote, "the *Order*'s interpretation is a bit of a mess." Pai Dissent at 114.

Commissioner Pai also expressly disagreed with the FCC's chosen definition of "called party," finding that "[i]nterpreting the term 'called party' to mean the expected recipient—that is, the party expected to answer the call—is by far the best reading of the statute." Pai Dissent at 118. To illustrate, he hypothesized:

> Your uncle writes down his telephone number for you and asks you to give him a call (what the TCPA terms 'prior express consent'). If you dial that number, whom would you say you are calling? Your uncle, of course. No one would say that the answer depends on who actually answers the phone. If your uncle's friend picks up, you'd say you were calling your uncle. So too if the phone is picked up by the passenger in your uncle's vehicle or your uncle's houseguest. Nor would your answer change if your uncle wrote down the wrong number, or he lost his phone and someone else answered it. Who is the called party in each and every one of these situations? It's obviously the person you expected to call (your uncle), not the person who actually answers the phone. And no one would say that the answer depends on who actually pays for the service.

*Id.* at 118.

Commissioner Pai explained that "[t]he expected-recipient approach respects Congress's intent that the TCPA 'balanc[e] the privacy rights of the individual and the commercial speech rights of the telemarketer.'" *Id.* at 119 (citation omitted). On the other hand, the Omnibus Order's "strict liability interpretation" chills communications "by threatening a company with crippling liability even if it reasonably expects to reach a consenting consumer when making a call." *Id.* Commissioner Pai also concluded that this reading is far from being "narrowly tailored to serve the government's legitimate, content-neutral interests," *id.* at 120 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)) (internal quotation marks omitted), and emphasized:

> The TCPA's private right of action and $500 statutory penalty could incentivize plaintiffs to go after the illegal telemarketers, the over-the-phone scam artists, and

the foreign fraudsters. But trial lawyers have found legitimate, domestic businesses a much more profitable target. … [A] trial lawyer can collect about $2.4 million per suit by targeting American companies. So it's no surprise the TCPA has become the poster child for lawsuit abuse, with the number of TCPA cases filed each year skyrocketing from 14 in 2008 to 1,908 in the first nine months of 2014.

*Id.* at 112-13 (citations omitted).

As for the meaning of "call," Commissioner O'Rielly challenged the premise that the TCPA applies to text messages. O'Rielly Dissent, Ex. A at 127. He pointed out that the "TCPA was enacted in 1991 – before the first text message was ever sent. The Commission should have had gone back to Congress for clear guidance on the issue rather than shoehorn a broken regime on a completely different technology." *Id.*

## III. ARGUMENT

An evaluation of the relevant considerations in this case demonstrates that a stay of this litigation pending a decision on the Omnibus Order by the D.C. Circuit is warranted and appropriate.

### A. This Court Has the Inherent Authority to Stay this Action Pending a D.C. Circuit Decision.

A stay of this litigation pending a decision by the D.C. Circuit is justified and supported by the facts and circumstances of this case and the issues before the D.C. Circuit. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[.]" *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005). "The court has broad discretion in exercising its authority to stay." *Groupon*, 882 F. Supp. 2d at 1045-46 (citing *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995)).

"In deciding whether to grant a stay, courts will 'balance the competing interests of the parties and the interest of the judicial system.'" *Id.* at 1045 (quoting *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011)). If there is a "fair possibility" that a stay will

cause damage to someone else, the party seeking the stay has the burden to demonstrate a stay is warranted. *Groupon*, 882 F. Supp. 2d at 1045 (quoting *Landis*, 299 U.S. at 255). "Courts generally consider three factors when determining whether to grant a stay: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Id.* (citations omitted). "The court has broad discretion in exercising its authority to stay." *Id.* at 1045-46 (citing *Trippe Mfg. Co.*, 46 F.3d at 629).

Courts regularly stay proceedings where, as here, the issues central to the litigation are before another court. *See, e.g.*, *Stark v. Wickard*, 321 U.S. 288, 310 (1944) ("If numerous parallel cases are filed, the courts have ample authority to stay useless litigation until the determination of a test case."); *In re Whirlpool Corp.*, 597 F.3d 858, 859 (7th Cir. 2010) (per curiam) (case stayed pending the Supreme Court's resolution of jurisdictional question in another case); *Se-Kure Controls, Inc. v. Sennco Sols., Inc.*, 675 F. Supp. 2d 877, 879-81 (N.D. Ill. 2009) (case stayed pending Federal Circuit review of another case addressing the same patent). This includes staying proceedings while a Court of Appeals reviews an agency ruling and decides whether the agency ruling must be vacated in whole or in part. *See, e.g.*, *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot.*, 196 F.3d 302, 304 (1st Cir. 1999) (appeal stayed pending D.C. Circuit review of agency ruling); Order, *Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. & Retail Pro Int'l LLC*, No. 3:14-cv-4335-TLW, Dkt. No. 30 (D.S.C. June 19, 2015) (staying putative TCPA class action pending the resolution of a petition for waiver filed with the FCC and of a pending appeal before the D.C. Circuit regarding the FCC's authority to regulate solicited faxes, a major issue in the litigation); *Chruby v. Global Tel*Link Corp.*, No. 1:14-cv-456, __ F. Supp. 3d __, 2015 WL 4740633, at *2-3 (E.D. Va. Jan. 14, 2015) (case stayed pending D.C. Circuit review of a related FCC order); *Hill v. Transp. Serv. Co.*, 1987 WL 7260, at *2 (N.D. Ill. Feb. 24, 1987) (staying pending Seventh Circuit's decision in two similar cases); *see also GTE South, Inc. v. Morrison*, 199 F.3d 733, 743-44 (4th Cir. 1999) (recognizing

authority to stay pending exclusive review of agency action in another circuit if "fundamental unfairness" such as paying out unrecoverable damages would otherwise result).

**B.    A Stay Will Conserve the Court's and the Parties' Resources.**

The Court should stay this case because a stay will simplify the issues in question, streamline the resolution of substantive issues at summary judgment and class certification, and reduce the burden on the parties and the Court.  *See Groupon*, 882 F. Supp. 2d at 1045.  Plaintiff's TCPA claims against Uber depend on the FCC's interpretations of "ATDS," "called party," and "call," as adopted in the Omnibus Order.  First, Plaintiff's complaint alleges that Uber used "equipment that had the ***capacity*** to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention"—and this allegation relies on an interpretation of the FCC's new definition of "ATDS" to include any equipment that has the *potential* ability to function in this fashion— even if the software or equipment at issue does not currently have such ability.  *Id.* ¶ 31.  Second, Plaintiff defines the putative class to include individuals who "received text messages from Defendant where the ***called party*** was not the same individual who . . . provided the phone number to Defendant."  Complaint ¶ 23 (emphasis added).  This definition assumes that the "called party" can be someone other than the intended recipient of the call—including someone who was called as the result of third-party error—which is the position taken by the FCC in the Omnibus Order.  Omnibus Order, ¶¶ 73, 78.  Third, Plaintiff assumes that the definition of "call" extends to text messages, as set forth in the Omnibus Order.  Complaint ¶ 12 (alleging that an "SMS message" is a "text message ***call*** directed to a wireless device through the use of the telephone number assigned to the device") (emphasis added).

Thus, while Plaintiff attempts to frame her claim as one resulting from Uber's allegedly unlawful transmittal of text messages, the only basis for her attempt to hold Uber liable for the text messages at issue here is by interpreting the FCC's Omnibus Order to define "ATDS," "called party," and "call" in manner that would essentially impose strict liability on Uber for using virtually any type of equipment to send a text message to a wrong number—even where

the wrong number is provided to Uber by an individual who consented to receive the communication at issue at that number.

If the D.C. Circuit vacates the Omnibus Order—and, as explained above, there are compelling reasons to believe it will—Plaintiff could no longer use the FCC's interpretations to prop up her claims, each of which will be severely impacted if *any one* of the three statutory terms at issue is interpreted as advocated by the petitioners. Most obviously, if a text message is not a "call," then none of the messages fall within the scope of the TCPA and Plaintiff's claims will fail as a matter of law. *See* 47 U.S.C. § 227(b)(1). Second, if the "called party" is limited to the intended recipient of the call or cannot include individuals whose numbers were mistakenly submitted by a third party, then Plaintiff may not have statutory standing to bring a claim under the TCPA. *See id.* § 227(b)(1)(A)(iii).[2] Finally, if an ATDS is a system with the *present* capacity to automatically make telephone calls to numbers stored or produced using a random or sequential number generator, instead of a system with merely a *potential* capacity to do so, Plaintiff's burden of proof as to this element will be far more onerous and, Uber contends, impossible for her to meet. *Id*. §§ 227(a)(1), 227(b)(1)(A)(iii). Plaintiff's claims thus rely heavily upon the interpretations of the TCPA currently being reviewed by the D.C. Circuit.

In these circumstances, courts regularly find that a stay is warranted. For example, in *Barron's Outfitters*, the plaintiff brought a putative class action alleging that defendants violated

---

[2] There was significant disagreement among the courts regarding the meaning of "called party" prior to the Omnibus Order. The Seventh Circuit interpreted the term to mean "the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir.2014) (only the subscriber can give consent to be called). Other courts have taken varying positions on the issue. *See, e.g., Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225-26 (S.D. Cal. 2014) ("called party" includes the regular user of the phone); *Page v. Regions Bank,* 917 F. Supp. 2d 1214, 1218 (N.D. Ala. 2012) (same); *Cellco P'ship v. Dealers Warranty, LLC*, No. 09-1814 (FLW), 2010 WL 3946713, at *9 (D.N.J. Oct. 5, 2010) (holding that a carrier was not a called party because "it is the intended recipient of the call that has standing to bring an action for a violation of [the TCPA]"). Most recently, the Third Circuit held that statutory standing under the TCPA is not limited to the "called party," but declined to define the meaning of "called party" for purposes of obtaining consent. *Leyse v. Bank of Am. Nat'l Ass'n*, --- F.3d ---, 2015 WL 5946456, at *6-7 (3d Cir. Oct. 14, 2015). Should the D.C. Circuit vacate the Omnibus Order and adopt the view that the "called party" is the intended recipient, the effect of all of these decisions will need to be revisited.

the TCPA by sending faxes without a compliant opt-out provision. *See* Order, No. 3:14-cv-4335-TLW. Because an appeal challenging the FCC's authority over solicited faxes was pending before the D.C. Circuit and because the defendants had filed a petition for waiver with the FCC, the court held that a stay was warranted "while the FCC and D.C. Circuit Court consider these related issues." *Id.* at 2. The court further explained that it had "considered the risk of inconsistent rulings that may result if the FCC and D.C. Circuit Court are not permitted to issue [their] ruling[s] before this Court acts," and that there would be "potential prejudice to the litigants if they are required to proceed without resolution of these issues." *Id.* These considerations also apply with full force to the circumstances presented here.

Similarly, in *Chruby*, the FCC had issued an order interpreting certain legal requirements regarding rates for inmate calling services. 2015 WL 4740633, at *2. A petition for review of that order was pending before the D.C. Circuit, which had also partially stayed the implementation of the Order. *See id.* Because the petition involved "the issues that form the basis of" the litigation before the court, the court concluded that a stay was appropriate "because key issues in this case may be greatly impacted by the pending appeal in the D.C. Circuit," in that "it [was] unclear whether significant changes [would] be made to the Order or whether it [would] be invalidated." *Id.* at *3.

As in these cases, proceeding with Plaintiff's claim here while the appeal of the Omnibus Order is pending in the D.C. Circuit risks unnecessarily consuming the resources of the Court and of the parties while potentially subjecting Uber to inconsistent rulings. To resolve the case on the merits now or at the class certification stage, the Court would need to address the FCC's interpretations of key provisions of the TCPA, which could soon be vacated by the D.C. Circuit as arbitrary, capricious, or contrary to law. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (noting that class certification analysis frequently overlaps with the merits of the plaintiff's underlying claim); *see also Remarks of Michael O'Rielly, Fed. Commc'ns Comm'n Before the Prof'l Ass'n for Customer Engagement 2015 TCPA Washington Summit*, 2015 WL

5723795, at *1 (noting that the "state of the law" with respect to the TCPA depends on "the outcome of the ongoing litigation").

It would be inefficient for the parties to engage in extensive discovery and dispositive legal briefing, and for this Court to address issues of liability and class certification, while the validity of the Omnibus Order is under review by the D.C. Circuit. Absent a stay, this Court will be called upon to interpret the Omnibus Order and apply it to the facts of this case—no easy task given the numerous internal contradictions and inconsistencies in the Order. Any determination that this Court makes based on the Omnibus Order at a minimum may be called into question, and likely will be superseded, if the D.C. Circuit finds the Order unlawful. As a result, any efforts expended by the parties and by this Court will have been wasted. For these reasons alone, the case should be stayed until the D.C. Circuit completes its review of the Omnibus Order.

## C.    A Stay Will Not Prejudice Plaintiff.

A stay would not create any undue prejudice to Plaintiff. *See Cascades Computer Innovation, LLC v. SK hynix Inc.*, No. 11 C 4356, 2012 WL 2086469, at *1 (N.D. Ill. May 25, 2012) ("Delay in litigation, without more, generally does not demonstrate undue prejudice"); *Sarantakis v. Gruttaduaria*, No. 02 C 1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) (finding no undue prejudice resulting from stay where "plaintiffs do not allege any prejudice other than that inherent in litigation, e.g., the delay in ruling on the motion to dismiss and the delay in obtaining a final judgment in the case").

For one, Plaintiff seeks only statutory damages and alleges no actual injury.[3] There is little urgency to Plaintiff's alleged entitlement to "a minimum of $500.00 in damages for each" text message. *See Cascades Computer Innovation, LLC*, 2012 WL 2086469, at *1 (finding no prejudice from a sixteen-month stay where the plaintiff sought a monetary remedy, and the plaintiff would be able to collect damages that accrued during the stay with interest).

---

[3] The issue of whether a bare violation of a statutory right is sufficient for Article III standing is now before the Supreme Court in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) and further supports a stay. Should the Supreme Court rule in favor of the petitioner in *Spokeo*, individuals like Plaintiff could be required to allege an actual injury in order to invoke the jurisdiction of federal courts.

Further, Plaintiff will suffer no additional hardship pending a stay.  Defendant has blocked Plaintiff's phone number to ensure she does not receive future text messages from Defendant.  And it is clear that Plaintiff does not anticipate any imminent harm, as she has not moved for preliminary injunctive relief.  *See Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *3 (N.D. Ill. May 29, 2014) (citing *Visual Interactive Phone Concepts, Inc. v. Samsung Telecommunications Am., LLC*, No. 11-12945, 2012 WL 1049197, at *1 (E.D. Mich. Mar. 28, 2012) ("Plaintiff has not moved for injunctive relief, which further supports a finding that a stay would not be unduly prejudicial")).

Nor will a stay unduly delay this case, as this case is in its infancy and discovery has not commenced.  *See Chruby*, 2015 WL 4740633, at *2-3 (granting motion to stay pending appeal of FCC Report and Order where parties had not previously sought extensions and case had recently been filed); *see also Ignite USA, LLC*, 2014 WL 2505166, at *2 ("The fact that PMI is seeking a stay at the earliest stage of the litigation diminishes the potential effect of any tactical disadvantage Ignite could face"); *cf. Hooker v. Sirius XM Radio, Inc.*, No. 4-13-cv-3 (E.D. Va. Sept. 25, 2015) (denying stay pending appeal of FCC Omnibus Order where case had been filed three years previously and had "a long history of extensions and delays," including two prior stays).

By the time this motion for stay is fully briefed, the remaining time to disposition by the D.C. Circuit is likely to be less than a year.[4]  This delay is more than reasonable, given the implications that the appeal may have on this case.  If Uber were forced to engage in costly discovery and/or pay a money judgment under an interpretation of the law that is later invalidated by the D.C. Circuit, it would suffer irreparable harm, as there is no assurance or realistic mechanism for Uber to recover money paid to Plaintiff, purported class members, and Class Counsel.  Accordingly, on balance, a stay is appropriate here.  *See Smith v. Merck & Co.*,

---

[4] The Federal Court Management Statistics for June 2015 indicate that the median amount of time until disposition for an appeal in the D.C. Circuit is fourteen months.  Federal Court Management Statistics, June 2015, available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-0.

No. 06-CV-0931-DRH, 2006 WL 3842190, at *1 (S.D. Ill. Dec. 29, 2006) (granting motion to stay where the prejudice of a delay did not outweigh the judicial economy interests and the threat of harm to the defendant).

## IV. CONCLUSION

For the foregoing reasons, Uber asks this Court to stay the current proceedings pending the D.C. Circuit's review of the Omnibus Order. While any such stay is in place, Uber can provide the Court with regular updates on the progress of the appeal.

Dated: October 16, 2015

Respectfully submitted,

UBER TECHNOLOGIES, INC.

By: s/ Debra R. Bernard
    Debra R. Bernard, ARDC No. 6191217
DBernard@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn, Suite 1700
Chicago, Illinois 60603
Telephone: (312) 324-8559

**CERTIFICATE OF SERVICE**

I, Debra R. Bernard, certify that on October 16, 2015, I caused the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING APPEAL OF THE FCC'S OMNIBUS ORDER TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA** to be filed via CM/ECF and served on the following:

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
T: (312) 893-7002
F: (312)275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

_____/s/ Debra R. Bernard_____