## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MARIA VERGARA, individually and on behalf    )
of a class of similarly situated individuals,    )
   )
         *Plaintiff*,    )       No. 15-cv-06942
   )
         v.    )
   )
UBER TECHNOLOGIES, INC., a Delaware    )       Hon. Thomas M. Durkin
corporation,    )
   )
         *Defendant*.    )

_____

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## <u>TO DEFENDANT'S MOTION TO STAY</u>

Dated: November 6, 2015

Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
eturin@mcgpc.com

**TABLE OF CONTENTS**

I.     INTRODUCTION...............................................................................................1

II.    BACKGROUND ..............................................................................................3

III.   LEGAL STANDARD .......................................................................................3

IV.   ARGUMENT ...................................................................................................4

     A.     Defendant's Motion to Stay Should Be Denied Because Defendant Has Failed To Establish That Any D.C. Circuit Court Decision Would Even Bear On The Issues In This Case ...........................................................4

          i.     The FCC's clarification that "text messages" are considered "calls" under the TCPA is well-founded in prior FCC rulings and court decisions from across the country ...............................................5

          ii.    The FCC's explanation that "capacity" includes "potential ability" is well-established in prior FCC rulings ....................................6

          iii.   It is well-established that "Called Party" does not mean "intended recipient."..........................................................................7

          iv.   The D.C. Circuit will defer to the FCC's rulings on the terms at issue...........................................................................8

          v.    A stay should not be granted based on a mere speculative chance that another court's decision may impact the litigation .....................................9

     B.     The Balance Of Interests Weighs Against Staying This Case .........................11

          i.     Defendant's requested stay would be open-ended and nearly indefinite and would prejudice Plaintiff ....................................11

          ii.    Defendant fails to make out a clear case of hardship or inequity because a stay will not reduce the burden of litigation on the parties .......13

V.     CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases:**

*Clinton v. Jones*,
520 U.S. 681 (1997)...................................................................................................4

*Landis v. North American Co.*,
299 U.S. 248 (1936)...............................................................................................3, 4

**United States Circuit Court of Appeals Cases:**

*ACA Int'l v. FCC*,
No. 15-1211 (D.C. Cir. 2015) ...................................................................................1

*ADX Commc'ns of Pensacola v. FCC*,
794 F.3d 74 (D.C. Cir. 2015)................................................................................2, 9

*Dish Network, LLC v. FCC*,
552 F. App'x 1, 1 (D.C. Cir. 2015).........................................................................11

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) .............................................................................6

*Leyse v. Bank of Am. Nat. Ass'n*,
No. 14-cv-4073, 2015 WL 5946456 (3d Cir. 2015) .................................................8

*Murphy v. DCI Biologicals Orlando, LLC*,
797 F.3d 1302 (11th Cir. 2015) ................................................................................6

*Osorio v. State Farm Bank, F.S.B.*,
746 F.3d 1242 (11th Cir. 2014) ................................................................................8

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .................................................................................5–6

*Sirius XM Radio Inc. v. FCC*,
No. 15-1218 (D.C. Cir. 2015)....................................................................................1

*Soppet v. Enhanced Recovery Co., LLC*,
679 F.3d 637 (7th Cir. 2012) ....................................................................................7

*Vernal Enterprises, Inc. v. FCC*,
355 F.3d 650 (D.C. Cir. 2004)..............................................................................2, 9

**United States District Court Cases:**

*Ayers v. Verizon Commc'ns, Inc.*,
    No. 14-cv-626, 2014 WL 2574543 (M.D. Fla. 2014) ................................................. 9

*Balschmiter v. TD Auto Fin. LLC*,
    303 F.R.D. 508 (E.D. Wis. 2014) ................................................................................. 3

*Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys.*,
    No. 14-cv-4335, Dkt. 30 (D.S.C. 2015) ............................................................... 14–15

*Baxter Intern., Inc. v. Fresenius Medical Care Holdings, Inc.*,
    No. 08-cv-2389, 2008 WL 4395854 (N.D. Ill. 2008) ................................................ 12

*Boatman v. Sullivan*,
    No. 78-cv-299, 1989 WL 118227 (N.D. Ill. 1989) ................................................ 3–4

*Chruby v. Global Tel Link Corp.*,
    No. 14-cv-456, 2015 WL 4740633 (E.D. Va. 2015) ................................................ 14

*Chruby v. Global Tel Link Corp.*,
    No. 14-cv-456, 2015 WL 4740790 (E.D. Va. 2015) ................................................ 14

*Dean v. DiSalvo*,
    No. 13-cv-7647, 2014 WL 1334296 (N.D. Ill. 2014) ................................................. 4

*Espejo v. Santander Consumer USA, Inc.*,
    No. 11-cv-8987, 2014 WL 4347185 (N.D. Ill. 2014) ................................................. 9

*Frydman v. Portfolio Recovery Assocs., LLC*,
    No. 11-cv-524, 2011 WL 2560221 (N.D. Ill. 2011) ................................................. 4

*Harnish v. Frankly Co.*,
    No. 14-cv-02321, 2015 WL 1064442 (N.D. Cal. 2015) ............................................. 9

*Hofer v. Synchrony Bank*,
    No. 14-cv-1865, 2015 WL 2374696 (E.D. Mo. 2015) .......................................... 9–10

*Hooker v. Sirius XM Radio, Inc.*,
    No. 13-cv-3, Dkt. 136 (E.D. Va. 2015) ...................................................................... 2

*In re Groupon Derivative Litig.*,
    882 F. Supp. 2d 1043 (N.D. Ill. 2012) ................................................................... 2, 4

*Itex, Inc. v. Mount Vernon Mills, Inc.*,
    No. 08-cv-1224, 2010 WL 3655990 (N.D. Ill. 2010) ............................................ 4, 10

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ................................................................. 9

*King v. Time Warner Cable*,
    No. 14-cv-2018, 2015 WL 4103689 (S.D.N.Y. 2015) ............................. 8

*Markel Am. Ins. Co. v. Dolan*,
    787 F. Supp. 2d 776 (N.D. Ill. 2011) ....................................................... 3

*Molnar v. NCO Fin. Sys., Inc.*,
    No. 13-cv-00131, 2015 WL 1906346 (S.D. Cal. 2015) ......................... 12

*Olney v. Progressive Cas. Ins. Co.*,
    993 F. Supp. 2d 1220 (S.D. Cal. 2014) ................................................... 8

*Paldo Sign & Display Co. v. Wagener Equities, Inc.*,
    No. 09-cv-07299, 2014 WL 4376216 (N.D. Ill. 2014) ........................... 3

*Sarantakis v. Gruttaduaria*,
    No. 02-cv-1609, 2002 WL 1803750 (N.D. Ill. 2002) ......................... 12–13

*Sojka v. DirectBuy, Inc.*,
    35 F. Supp. 3d 996 (N.D. Ill. 2014) ......................................................... 6

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
    861 F.Supp.2d 898 (N.D. Ill. 2012) ......................................................... 3

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*,
    No. 12-cv-5490, 2013 WL 4782161 (N.D. Ill. 2013) ............................ 10

## Statutes and Court Rules:

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ................................................. *passim*

5 U.S.C. § 706(2)(A) .............................................................................................. 9

## Miscellaneous:

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003) ......................................................... 4–5, 6–7

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, FCC Declaratory Ruling, CG Docket No. 02-278, 23 FCC Rcd. 559 (Jan. 4, 2008) ............................................................................................. 5, 7, 8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278 (Feb. 15, 2012) ................................................................................................................. 5

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, CG Dkt. No. 02-278 (July 10, 2015) ............................................................................................... 1, 5, 7, 8, 11

# I.    INTRODUCTION

On July 10, 2015, the Federal Communications Commission ("FCC") issued a comprehensive ruling (the "2015 FCC Order")[1] that addressed 21 petitions relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").  The 2015 FCC Order, among other things, further clarified the definition of several terms that appear in the TCPA.  Faced with potential liability under the TCPA and the 2015 FCC Order, some companies in the telecommunications industry have sought to change the state of the law, and have filed Petitions for Review with the D.C. Circuit Court of Appeals, asking for a ruling that the 2015 FCC Order is unlawful, "arbitrary," and an "abuse of discretion."[2]  Defendant is now attempting to use these petitions as a tool to prevent this litigation from proceeding, and has moved to stay this case pending the D.C. Circuit's review of the 2015 FCC Order.

However, the probability that the 2015 FCC Order will be vacated is remote at best, and thus any eventual ruling is unlikely to have any effect on this litigation.  This is because the 2015 FCC Order is well-founded on a long line of consistent FCC orders and court decisions—in some instances stretching back twelve years.[3]  Further, numerous federal district courts and circuit courts of appeals throughout the country have adopted the FCC's interpretations of the TCPA provisions at issue in this case – or have independently reached the same conclusions – and have implemented the FCC's TCPA rulings accordingly.[4]  Although it is not surprising that some companies would seek to vacate an FCC ruling under which their actions are illegal, it is

---

[1] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, CG Dkt. No. 02-278 (July 10, 2015) (Dkt. 12-1).

[2] *See, e.g., ACA Int'l v. FCC*, No. 15-1211, at 3 (D.C. Cir. July 13, 2015); *Sirius XM Radio Inc. v. FCC*, No. 15-1218, at 2 (D.C. Cir., July 14, 2015).

[3] *See infra* part III.A.i–iii (discussing prior rulings by the FCC and courts regarding the definition under the TCPA of "called party," whether text messages are "calls," and the definition of an "automatic telephone dialing system").

[4] *Id.*

wishful thinking to assume that the D.C. Circuit will invalidate a long and consistent line of precedent. This is especially true because the D.C. Circuit's standard of review for the Petitions challenging the 2015 FCC Order is highly deferential: the D.C. Circuit presumes that the FCC's actions are valid and defers to the FCC's own precedents. *ADX Commc'ns of Pensacola v. FCC*, 794 F.3d 74, 79 (D.C. Cir. 2015); *Vernal Enterprises, Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004).

At least one federal district court has recently denied a similar motion to stay pending the D.C. Circuit's review of the 2015 FCC Order, finding that a stay would be a "significant waste of time." *See Hooker v. Sirius XM Radio, Inc.*, No. 13-cv-3, Dkt. 136, at 6 (E.D. Va., Sept. 25, 2015).[5] Here, as in *Hooker*, staying these proceedings to await a D.C. Circuit decision would substantially and unduly delay this litigation, given that a ruling from the D.C. Circuit will likely not be forthcoming until sometime in 2017. Since there is little reason to believe that a possible ruling from the D.C. Circuit would even be determinative in this litigation, staying this case – potentially indefinitely – on such a speculative basis would be highly prejudicial and burdensome to Plaintiff. Moreover, a stay would not actually save the parties or the Court any time or resources as there will still need to be briefing and discovery in this matter regardless of how or when the D.C. Circuit disposes of the Petition for Review before it.

At bottom, Defendant's Motion to Stay fails to make "a *clear case* of hardship or inequity in being required to go forward" with this case. *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (emphasis added). Rather, Defendant's Motion is merely a transparent attempt to create confusion and complexity where there is none in order to stall this litigation. Because staying this case indefinitely on the speculative chance that the D.C. Circuit will vacate the 2015 TCPA Order is unjustified, Defendant's Motion to Stay should be denied.

---

[5] The order denying the motion to stay in *Hooker v. Sirius XM Radio* is attached hereto as <u>Exhibit A</u>.

## II.    BACKGROUND

Plaintiff initiated this class action on August 7, 2015, after she received multiple unsolicited, automated text messages from Defendant on her cellular phone. (Complaint, Dkt. 1, at ¶¶ 18–20.) These unauthorized text messages stem from Defendant's mobile application, which lacks adequate measures to ensure that "the telephone numbers Defendant receives, and then to which it sends texts, actually belong to the Uber applicants providing them." (*Id.* at ¶ 14.) Contrary to Defendant's assertion that Plaintiff "alleges no actual injury" (Mot. to Stay, Dkt. 12, at 13), Plaintiff's Complaint specifically alleges that Plaintiff has "suffered actual and statutory damages" (Compl. at ¶ 34), and that these text messages constitute an "invasion of privacy." (*Id.* at ¶ 2.)

To stop Defendant's practice of transmitting unsolicited text messages to consumers' cellphones, and to obtain redress for the putative class, Plaintiff asserted claims under Section 227(b)(1)(A)(iii) of the TCPA, which makes it unlawful to: (1) call a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS") or using a prerecorded or artificial voice; (3) without the recipient's prior express consent. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (citing 47 U.S.C. § 227 (b)(1)(A)).[6]

## III.    LEGAL STANDARD

Federal courts have the inherent power to manage their dockets and, when appropriate, "may use this power to stay proceedings." *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (citing *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)). However, "if there is even a fair possibility that the stay . . . will work damage to some one else,"

---

[6] Although lack of consent is not in dispute in this case, the existence of consent is actually an affirmative defense under the TCPA. *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, No. 09-cv-07299, 2014 WL 4376216, at *7 (N.D. Ill. Sept. 4, 2014); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F.Supp.2d 898, 907 (N.D. Ill. 2012).

the movant "must make out a clear case of hardship or inequity in being required to go forward[.]" *Boatman v. Sullivan*, No. 78-cv-299, 1989 WL 118227, at *2 (N.D. Ill. Sept. 26, 1989) (citing *Landis*, 299 U.S. at 255). The movant bears the burden of establishing the need for a stay. *Itex, Inc. v. Mount Vernon Mills, Inc.*, No. 08-cv-1224, 2010 WL 3655990, at *2 (N.D. Ill. Sept. 9, 2010) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

When considering whether a movant seeking a stay has met its burden, courts "balance the competing interests of the parties and the interest of the judicial system." *In re Groupon Derivative Litig.*, 882 F. Supp. 2d at 1045. Courts often weigh several factors to determine the "balance" of interests, including: (1) undue prejudice or tactical disadvantage to the non-moving party, (2) simplification of the issues, and (3) reduction of the burden of litigation on the parties and court. *Dean v. DiSalvo*, No. 13-cv-7647, 2014 WL 1334296, at *3 (N.D. Ill. April 2, 2014).

## IV.   ARGUMENT

### A.   Defendant's Motion to Stay Should Be Denied Because Defendant Has Failed To Establish That Any D.C. Circuit Court Decision Would Even Bear On The Issues In This Case.

In its Motion to Stay, Defendant contends that a stay is warranted because the D.C. Circuit may review the definitions of certain terms used in the TCPA – "call," "called party," and "capacity" – and that the D.C. Circuit's review could have an impact on this litigation. (Mot. to Stay at 10–11.) However, Defendant fails to appreciate that the D.C. Circuit will not be considering these issues on a "clean slate." *See Frydman v. Portfolio Recovery Assocs., LLC*, No. 11-cv-524, 2011 WL 2560221, at *4 (N.D. Ill. 2011). Rather, there is a long line of FCC rulings interpreting these terms, dating back up to twelve years to a Report and Order issued in 2003 ("2003 FCC Order").[7] Since 2003, the FCC has consistently implemented the TCPA and

---

[7] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003). Relevant excerpts of

provided additional guidance in the form of orders and declaratory rulings.[8]   Moreover, numerous courts nationwide, including courts in this District and in the Seventh Circuit, have found the FCC's rulings persuasive and have applied the TCPA accordingly.  In light of this long line of consistent precedent, and the highly deferential standard under which the 2015 FCC Order will be evaluated by the D.C. Circuit, there is only a remote, speculative chance that a D.C. Circuit decision will vacate the 2015 FCC Order or otherwise impact the litigation here.

> i. <u>The FCC's clarification that "text messages" are considered "calls" under the TCPA is well-founded in prior FCC rulings and court decisions from across the country</u>.

The FCC's position that the term "call" as used in the TCPA includes text message calls (2015 FCC Order at ¶ 107) originated in the 2003 FCC Order, where the FCC found that the TCPA broadly prohibits "*any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number" regardless of whether they are voice or text calls.  (2003 FCC Order at ¶ 165) (emphasis in original).  Since then, and even prior to the 2015 FCC Ruling, the FCC has reaffirmed this position on multiple occasions.[9]   Further, numerous courts have considered the FCC's rulings and adopted its interpretation.  For example, when this question came before the Ninth Circuit, the court deferred to the FCC, finding the FCC's holding "reasonable" and "consistent with the purpose of the TCPA[.]"  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  The same is true for the Eleventh Circuit, *see Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015)

---

the 2003 FCC Order are attached hereto as <u>Exhibit B</u>.

[8] *See, e.g., In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, FCC Declaratory Ruling, CG Docket No. 02-278, 23 FCC Rcd. 559 (Jan. 4, 2008) (hereinafter "2008 Declaratory Ruling"). The 2008 Declaratory Ruling is attached hereto as <u>Exhibit C</u>.

[9] *See, e.g., In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, at ¶ 4 (Feb. 15, 2012) (stating that the prohibition on using an ATDS to dial cellular telephone numbers "encompasses both voice and text calls") (hereinafter "2012 FCC Order"). The 2012 FCC Order is attached hereto as <u>Exhibit D</u>.

("[t]he prohibition against auto dialed calls applies to text message calls as well as voice calls"), and courts within the Seventh Circuit. *See, e.g., Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1000 (N.D. Ill. 2014) ("[a] text message is a 'call' within the meaning of the TCPA").

More importantly, the precise question of whether the FCC's inclusion of a text message as a "call" under the TCPA is "arbitrary, capricious, or manifestly contrary to the statute" has recently come before the Sixth Circuit in *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015). In *Keating*, the Sixth Circuit "unhesitatingly afford[ed] deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." 615 F. App'x at 371. In light of these decisions, it is especially unlikely that the D.C. Circuit will vacate the 2015 FCC Order, as this would require the D.C. Circuit to part ways with twelve years of FCC precedent and numerous other courts of appeals and district courts that have already specifically addressed the issue of whether text messages are "calls" under the TCPA.

        ii.    <u>The FCC's explanation that "capacity" includes "potential ability" is well-established in prior FCC rulings.</u>

The FCC's ruling regarding the meaning of the term "capacity" is similarly rooted in well-established FCC precedent. Defendant summarily dismisses this precedent when it incorrectly argues that the 2015 FCC Order stated a "new interpretation" of "capacity." (Mot. to Stay at 3.) In actuality, the FCC's explanation of "capacity" in the context of what dialing equipment constitutes an ATDS also dates back to the 2003 FCC Order. (*See* 2003 FCC Order at ¶ 131.) In the 2003 FCC Order the FCC acknowledged that, under the specific terms of the TCPA, "in order to be considered an 'automatic telephone dialing system,' the equipment need only have the '*capacity* to store or produce telephone numbers (emphasis added)[.]'" (*Id.* at ¶ 132) (quoting 47 U.S.C. 227(a)(1)). In discussing the use of the word "capacity," the FCC explained that certain types of calling equipment will constitute an ATDS even though it cannot

 

6

("[t]he prohibition against auto dialed calls applies to text message calls as well as voice calls"), and courts within the Seventh Circuit. *See, e.g., Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1000 (N.D. Ill. 2014) ("[a] text message is a 'call' within the meaning of the TCPA").

More importantly, the precise question of whether the FCC's inclusion of a text message as a "call" under the TCPA is "arbitrary, capricious, or manifestly contrary to the statute" has recently come before the Sixth Circuit in *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015). In *Keating*, the Sixth Circuit "unhesitatingly afford[ed] deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." 615 F. App'x at 371. In light of these decisions, it is especially unlikely that the D.C. Circuit will vacate the 2015 FCC Order, as this would require the D.C. Circuit to part ways with twelve years of FCC precedent and numerous other courts of appeals and district courts that have already specifically addressed the issue of whether text messages are "calls" under the TCPA.

        ii.    <u>The FCC's explanation that "capacity" includes "potential ability" is well-established in prior FCC rulings.</u>

The FCC's ruling regarding the meaning of the term "capacity" is similarly rooted in well-established FCC precedent. Defendant summarily dismisses this precedent when it incorrectly argues that the 2015 FCC Order stated a "new interpretation" of "capacity." (Mot. to Stay at 3.) In actuality, the FCC's explanation of "capacity" in the context of what dialing equipment constitutes an ATDS also dates back to the 2003 FCC Order. (*See* 2003 FCC Order at ¶ 131.) In the 2003 FCC Order the FCC acknowledged that, under the specific terms of the TCPA, "in order to be considered an 'automatic telephone dialing system,' the equipment need only have the '*capacity* to store or produce telephone numbers (emphasis added)[.]'" (*Id.* at ¶ 132) (quoting 47 U.S.C. 227(a)(1)). In discussing the use of the word "capacity," the FCC explained that certain types of calling equipment will constitute an ATDS even though it cannot

presently store or produce telephone numbers without the addition of "certain software." (2003 FCC Order at ¶ 131.) The FCC reiterated this position in its 2008 Declaratory Ruling, where it *rejected* arguments that dialing equipment is an ATDS "only when it randomly or sequentially generates telephone numbers[.]" (2008 Declaratory Ruling at ¶ 12.)

The recent 2015 FCC Order only further clarified what the FCC stated in its 2003 Order—"[b]y finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an [ATDS], the [FCC] implicitly rejected any 'present use' or 'current capacity' test." (2015 FCC Order at ¶ 16; *see also* 2015 FCC Order at ¶¶ 10–16.) While Defendant attempts to paint the FCC's efforts to clarify and reiterate its position as a rogue ruling outside the FCC's regulatory authority, the FCC's statements are in fact based on established and consistent FCC precedent, which simply echoes Congress's "need to consider changes in technologies," and its concerns that telemarketers may try to circumvent the TCPA. (*Id.* at ¶ 22 n.79.)

        iii.    <u>It is well-established that "Called Party" does not mean "intended recipient."</u>

Defendant also desperately argues that the D.C. Circuit may potentially hold that "called party" means "intended recipient." But there have been three Courts of Appeals that have ruled on the definition of "called party," and all three have rejected the Defendant's suggestion that "called party" means "intended recipient." In fact, the Seventh Circuit has definitively ruled on this issue and, independent of the FCC's rulings, flatly rejected the interpretation advanced by Defendant here. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640, 643 (7th Cir. 2012) (ruling that "called party" means the person subscribing to the number at the time it was called, and rejecting as completely unjustified the argument that "called party" means "intended recipient"). The Third and the Eleventh Circuits have similarly rejected arguments that "called

party" means "intended recipient." *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) ("[w]e accordingly reject [defendant]'s argument that the 'intended recipient' is the 'called party'"); *Leyse v. Bank of Am. Nat. Ass'n*, No. 14-cv-4073, 2015 WL 5946456, at *4 (3d Cir. October 14, 2015) (reversing because lower court incorrectly held that standing to sue under the TCPA was limited to the "intended recipient" and holding that the "caller's intent" cannot "circumscribe standing" to sue under the TCPA).

The rulings by the Third, Seventh, and Eleventh Circuits are completely consistent with the FCC's own rulings on the matter. The FCC has continuously maintained that "called party" refers to the party who was actually called, whether that is the cell phone subscriber, *i.e.* the one who subscribes to the cell phone plan, or the person who actually received the call, sometimes called the "customary user." (2015 FCC Order at ¶ 73 n.264, ¶ 78; 2008 Declaratory Ruling at ¶ 9.) Given that the FCC's interpretation of "called party" is consistent with the only three Courts of Appeals of which Plaintiff is aware that have directly ruled on this issue, Defendant's claim that there is "significant disagreement" on this issue is simply false. (Mot. to Stay at 11 n.2.) In fact, as one district court has recently found, "the issue is not nearly as contested as [the defendant] portrays it . . . [T]he Court is not aware of any decision that has found 'called party' to mean 'meant-to-have-called party.'" *King v. Time Warner Cable*, No. 14-cv-2018, 2015 WL 4103689, at *3 (S.D.N.Y. July 7, 2015).[10]

iv.   The D.C. Circuit will defer to the FCC's rulings on the terms at issue.

While Defendant seeks to distract this Court by pointing to largely irrelevant statistics about the percentage of agency orders the D.C. Circuit has vacated, Defendant fails to mention

---

[10] Contrary to Defendant's suggestion, most district courts have likewise applied the term "called party" in harmony with the FCC's rulings and have rejected an "intended recipient" interpretation. *See, e.g., King*, 2015 WL 4103689, at *3 ("The text is clear and unambiguous on its face: *called party* means the party that was called.") (emphasis in original); *see also Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1226 (S.D. Cal. 2014) (rejecting the conclusion that "'called party' means 'intended recipient'").

the extremely deferential standard for review under which the 2015 FCC Order will be evaluated. When a party challenges an agency order in the D.C. Circuit as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), the agency's action will be upheld as long as the agency "articulated a rational connection between the facts found and the choice made." *ADX Commc'ns of Pensacola*, 794 F.3d at 79 (internal citations omitted). This type of review is "highly deferential," and the agency's action is presumed valid. *Vernal Enterprises, Inc.,* 355 F.3d at 658. The D.C. Circuit will defer to the FCC's "interpretation of its own rules" and "reasonable application of its own precedents." *ADX Commc'ns of Pensacola*, 794 F.3d at 79. Accordingly, the D.C. Circuit will start with the presumption that the 2015 FCC Order is valid and defer to the FCC's definitions of "call," "called party," and "capacity"—definitions which, as explained above, are supported by well-established FCC precedent as well as numerous court rulings. It is at best speculative to argue that the D.C. Circuit will contradict multiple other circuit courts, as well as established FCC precedent, given the highly deferential standard of review that applies.

   v.   <u>A stay should not be granted based on a mere speculative chance that another court's decision may impact the litigation.</u>

Given the consistency with which courts and the FCC have dealt with the issues raised by Defendant, it is not surprising that numerous courts – including the court in *Hooker v. Sirius XM Radio, Inc.* – have declined to grant a request for a stay pending a challenge to an FCC order.[11]

---

[11] *See, e.g., Espejo v. Santander Consumer USA, Inc.*, No. 11-cv-8987, 2014 WL 4347185, at *1–3 (N.D. Ill. Aug. 28, 2014) (denying a stay under the primary jurisdiction doctrine); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) ("a stay is not warranted . . . because the FCC has already ruled that a predictive dialer constitutes [ATDS] equipment three times"); *Harnish v. Frankly Co.*, No. 14-cv-02321, 2015 WL 1064442, at *4 (N.D. Cal. March 11, 2015) ("[T]he courts' interpretation of ATDS have been consistent with the FCC, and a stay for an indeterminate amount of time would result in delay and prejudice towards Plaintiff"); *Ayers v. Verizon Commc'ns, Inc.*, No. 14-cv-626, 2014 WL 2574543, at *2 (M.D. Fla. June 9, 2014); *Hofer v. Synchrony Bank*, No. 14-cv-1865, 2015 WL 2374696, at *4 (E.D. Mo. May 18, 2015) ("[A]ny ruling by the FCC would come only after a lengthy delay. Such a

Although many of these cases involved a stay pending a petition directly to the FCC, the courts' reasoning is equally applicable here. For example, in *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12-cv-5490, 2013 WL 4782161 (N.D. Ill. Sept. 6, 2013), the defendant moved for a stay pending resolution of a petition that it filed with the FCC asking the FCC to revisit its regulations on fax advertisements. *Whiteamire Clinic*, 2013 WL 4782161 at *1–2. There, as here, the movants argued that the issues addressed in their petition would be "dispositive of the case" and that staying the case pending guidance on those issues would "promote the interests of judicial economy and conserve party resources[.]" *Id.* at *1. The *Whiteamire* court rejected this reasoning, finding that because the FCC's position supporting the regulations was "clear and unwavering," the "chances" of the regulations being "overrul[ed] . . . appear[ed] remote." *Id.* at *2. The court found that because the defendant failed to establish that an FCC ruling repealing the regulations was "likely," it had "failed to establish that a stay would be an appropriate means of conserving judicial resources." *Id.*

Here, as in *Whiteamire*, there is only a "remote" chance that the D.C. Circuit will overrule the FCC on any of these issues. An indefinite stay on such a speculative basis – where a party merely *hopes* that an appellate court in a different circuit might change an agency's rulemaking – is unwarranted. *See Itex*, 2010 WL 3655990, at *2 (finding it "overly speculative" to stay a case based on the chance that a patent, which had already been held valid twice, would be invalidated by another court examining the same patent). Because Defendant has failed to establish that a ruling overturning the 2015 FCC Order on any of these issues is "likely," there is nothing to suggest that a stay would actually conserve "judicial resources." *Whiteamire*, 2013 WL 4782161, at *2.

Defendant's argument that the D.C. Circuit's ruling will influence this case is even more

delay would prejudice [Plaintiff] as well as potential class members.")

speculative in light of the fact that it relies on the assumption that the D.C. Circuit has the issues discussed above squarely before it, when it actually does not. The 2015 FCC Order addresses roughly 12 separate issues regarding the TCPA, and there is no guarantee that the D.C. Circuit will reach the merits of the specific issues that Defendant raises in its Motion to Stay. *See, e.g., Dish Network, LLC v. FCC*, 552 F. App'x 1, 1 (mem) (D.C. Cir. Jan. 22, 2015) (dismissing a petition for review on jurisdictional grounds and declining to reach the substance of the FCC's guidance). Therefore, any ruling by the D.C. Circuit, to the extent the court even reaches the merits of the Petition for Review, might have no effect and be completely irrelevant to this litigation. And even if the D.C. Circuit does address the merits of the Petition, as demonstrated above, it will defer to the FCC's own precedents and likely dismiss the Petition. In effect, Defendant is asking this Court to stay this case pending an event that, in all probability, will never occur. A stay on such a speculative basis would be entirely improper.

**B.      The Balance Of Interests Weighs Against Staying This Case.**

   i.      Defendant's requested stay would be open-ended and nearly indefinite and
           would prejudice Plaintiff.

A stay of this case pending a ruling by the D.C. Circuit would only serve to delay this litigation and cause prejudice to Plaintiff. Such a stay would be extremely lengthy, if not nearly indefinite, as the D.C. Circuit is unlikely to rule on the Petition for Review until over a year from now. The 2015 FCC Order is long and complex; at 138 pages including appendices, the Order resolved 21 requests for clarification and addressed roughly 12 separate legal issues. (2015 FCC Order at ¶ 2.) As such, it will take the D.C. Circuit a substantial amount of time to consider and rule on the Petition. Further, the Petition before the D.C. Circuit is only at a very early stage procedurally. None of the petitioners have even briefed the Petition yet, and it is unlikely to be fully briefed for several months, with oral argument not likely to occur for several months

thereafter.  As even Defendant admits, a final decision from the D.C. Circuit is unlikely to be forthcoming until 2017.[12]  Defendant is thus asking this Court to stay this case at the very least for over a year, and with the inevitable extensions of time that are typical in the appellate process, potentially as long as 18 months.

Even this conservative timeframe does not account for a potential appeal to the Supreme Court if and when the D.C. Circuit rules on the Petition—a point that Defendant fails to address entirely.  Accepting Defendant's logic would require this Court to extend the stay pending Supreme Court review, which would further delay this case nearly indefinitely.  However, a stay pending other proceedings should not be granted where it causes "a delay that is not merely lengthy but potentially indefinite," because such a delay is "prejudicial to the nonmoving party." *Baxter Intern., Inc. v. Fresenius Medical Care Holdings, Inc.*, No. 08-cv-2389, 2008 WL 4395854, at \*5 (N.D. Ill. Sept. 25, 2008) (denying motion for stay pending reexamination of patents because reexamination could lead to "extreme delay").

Defendant is wrong to suggest that Plaintiff will not be prejudiced by this delay.  The stay Defendant requests is not merely the type of delay that is "inherent in litigation," (Mot. to Stay at 13), but rather is a stay that would completely derail the litigation for an unreasonably excessive and indeterminate length of time.  Unlike the ordinary delay inherent in litigation, this extended, "open-ended stay will likely cause delay and prejudice to Plaintiffs' case." *See Molnar v. NCO Fin. Sys., Inc.*, No. 13-cv-00131, 2015 WL 1906346, at \*4 (S.D. Cal. April 20, 2015) (denying motion to stay on primary jurisdiction grounds where "there is nothing to suggest the FCC will imminently rule" on the issues before it).  Further, courts recognize the "risk that memories will fade and documents will disappear" while a case is stayed. *See Sarantakis v. Gruttaduaria*, No.

---

[12] Defendant states that the median time until disposition in the D.C. Circuit is fourteen months.  (Mot. to Stay at 14, n.4.)

02-cv-1609, 2002 WL 1803750, at *3 (N.D. Ill. Aug. 5, 2002). Here, staying this case for an unknown but undoubtedly inordinate amount of time would prevent the parties from going forward with discovery and preparing for class certification and thus prejudice and tactically disadvantage Plaintiff and the putative class members.

Defendant also argues that Plaintiff will not be prejudiced by any delay because she "alleges no actual injury." (Mot. to Stay at 13.) However, as previously mentioned, Defendant is plainly wrong on this issue. Plaintiff does in fact allege that she suffered "actual and statutory damages" (Compl. at ¶ 34), as the "wireless spam" sent by Defendant constitutes an "invasion of privacy" rights and because recipients of such text messages have to bear the burden of any costs associated with receiving such unwanted messages. (*Id.* at ¶ 2.) Further, as pled in the Complaint, the members of the putative class have suffered these injuries as well. (*Id.* at ¶¶ 15–17, 34.) While Plaintiff's filing of this lawsuit may have led to Defendant "block[ing] Plaintiff's phone number to ensure she does not receive future text messages" (Mot. to Stay at 14), the same cannot be said for any other potential class members who may still be receiving the unauthorized messages and continue to suffer privacy violations and monetary damages until Defendant fixes the defects in its mobile application. This is especially the case given that Defendant has not indicated that it will cease sending text messages in violation of the TCPA while this case is stayed.

      ii.      <u>Defendant fails to make out a clear case of hardship or inequity because a stay will not reduce the burden of litigation on the parties.</u>

Defendant's principal argument in support of its assertion that a stay is necessary to avoid hardship is that "[i]t would be inefficient for the parties to engage in extensive discovery and dispositive legal briefing" while the D.C. Circuit considers the Petition for Review. (Mot. to Stay at 13.) However, even in the unlikely event that the D.C. Circuit alters or overturns any

portion of the 2015 FCC Order, the parties will still need to obtain the relevant facts in discovery, as well as the expert opinions necessary, so that this Court can apply the law to the undisputed facts before it. In short, even if the D.C. Circuit changes or invalidates the FCC's *interpretations* of terms in the TCPA (like ATDS), the *elements* of a TCPA claim will remain the same. *See* 47 U.S.C. § 227(b)(1)(A). As such, there will still need to be discovery and this Court will ultimately still have to determine whether the calling equipment that Defendant actually used qualifies as an ATDS under the TCPA, and whether the people who received those messages ever gave prior express consent to receive them. Defendant suggests that the D.C. Circuit's eventual ruling could impact the analysis of Plaintiff's burden of proof, as well as her standing, (Mot. to Stay at 10), but regardless of any such ruling, the Court will still have to look at the facts of the case and evaluate whether Plaintiff *has* met the burden of proof on ATDS, and whether Plaintiff *does* have standing to pursue claims against Defendant.

While Defendant cites to *Chruby v. Global Tel Link Corp.*, No. 14-cv-456, 2015 WL 4740633, at *2 (E.D. Va. Jan. 14, 2015), in support of its argument that a stay would conserve the parties' resources, Defendant fails to mention that the court in that case *lifted the stay a mere two months later. Chruby v. Global Tel Link Corp.*, No. 14-cv-456, 2015 WL 4740790, at *3 (E.D. Va. March 10, 2015). In explaining why it was deciding to lift the stay, the *Chruby* court stated that it was "not confident that an indefinite stay pending the resolution of [the petition before the D.C. Circuit] would not unjustly burden Plaintiff and those similarly situated." *Id.* *Chruby* therefore actually lends support to Plaintiff's argument that granting Defendant's request for an indefinite stay would be prejudicial to Plaintiff.[13]

---

[13] Nor is Defendant's citation to *Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys.*, No. 14-cv-4335, Dkt. 30, at 2 (D.S.C. June 19, 2015), any more convincing. Unlike the petitions relied on by Defendant in this Motion that *generally* challenge the 2015 FCC Order, the petition at issue in *Barron's* was a request for a waiver from the FCC for the specific violations committed by the defendant, and was based on the

Because staying this case pending a D.C. Circuit ruling will not materially impact either the type or amount of discovery required, the more effective and efficient course of action would be to permit the parties to proceed with discovery without any further and unjustified delay.

## V.     **CONCLUSION**

For the reasons stated above, Defendant's Motion to Stay should be denied.

Dated: November 6, 2015                         Respectfully submitted,

MARIA VERGARA, individually and on behalf of
a class of similarly situated individuals

By: /s/ Eugene Y. Turin
　　　　One of Plaintiff's Attorneys

Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
eturin@mcgpc.com

---

specific facts of that case. *See* Petition for Waiver filed with the FCC by defendant Big Hairy Dog Info. Sys., 14-cv-4335, Dkt. 20-13, at 1, 5 (E.D. Va. March 27, 2015) (attached hereto as Exhibit E). Accordingly, a favorable ruling on the petition in *Barron's* would *necessarily* have spoken directly to the conduct at issue. The same cannot be said of the Petitions Defendant relies on here, which may not even be relevant in this case unless the D.C. Circuit chooses to address the specific issues relevant to the litigation here. And even then, any such ruling is unlikely to be determinative of Defendant's liability in the same way as a ruling in *Barron's* would have been.

## CERTIFICATE OF SERVICE

I, Eugene Y. Turin, hereby certify that on November 6, 2015, I electronically filed the foregoing *Plaintiff's Memorandum In Opposition to Defendant's Motion to Stay* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to the following counsel of record:

Debra R. Bernard
PERKINS COIE LLP
131 South Dearborn, Suite 1700
Chicago, Illinois 60603
DBernard@perkinscoie.com

/s/ Eugene Y. Turin