IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA VERGARA, individually and on behalf of a class of similarly situated individuals, | No. 1:15-CV-06942 |
| Plaintiff, | Judge: Honorable Thomas M. Durkin |
| v. | |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

## **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY**

UBER TECHNOLOGIES, INC.

Debra R. Bernard, ARDC No. 6191217
DBernard@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn, Suite 1700
Chicago, Illinois 60603
Telephone: (312) 324-8559

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  PLAINTIFF'S OPPOSITION CONFIRMS THAT THE COURT SHOULD
     GRANT A STAY PENDING THE D.C. CIRCUIT'S REVIEW OF THE
     OMNIBUS ORDER ...................................................................................... 2

     A.   Plaintiff Misstates the Deference Afforded to the FCC's Interpretation of
          the TCPA ............................................................................................. 2

     B.   The Omnibus Order Seeks to Impose Unprecedented Liability ........................... 4

          1.   The Omnibus Order dramatically expands the definition of
               "ATDS" ........................................................................................ 5

          2.   The FCC's sweeping definition of "called party" is unlikely to
               withstand the D.C. Circuit's scrutiny ...................................................... 7

          3.   The FCC rewrote the TCPA to encompass text messages ......................... 8

     C.   A D.C. Circuit Ruling Will Clarify Issues, Streamline Adjudication, Avoid
          Potentially Inconsistent Results, and Conserve the Resources of the Parties
          and the Court ....................................................................................... 9

     D.   Plaintiff Has Failed to Show She Will Suffer Undue Prejudice if the Court
          Grants a Stay ...................................................................................... 10

III. A SEPARATE AND INDEPENDENT BASIS FOR STAY IS THE
     UNCERTAINTY CREATED BY SPOKEO V. ROBINS ............................................. 14

IV.  CONCLUSION ........................................................................................... 15

128726425.5

## TABLE OF AUTHORITIES

**Page**

CASES

*ADX Commc'ns of Pensacola v. FCC,*
    794 F.3d 74 (D.C. Cir. 2015) ........................................................................2

*Alvarado v. Bay Area Credit Serv., LLC,*
    No. 14-CV-02549-SC, 2015 WL 224950 (N.D. Cal. Jan. 16, 2015).......................12

*Am. Library Ass'n v. FCC,*
    406 F.3d 689 (D.C. Cir. 2005) ......................................................................3

*Anda, Inc. v. FCC,*
    No. 14-1270 (D.C. Cir. filed Dec. 9, 2014) ......................................................5

*Barrera v. Comcast Holdings Corp.,*
    No. 14-CV-00343-TEH, 2014 WL 1942829 (N.D. Cal. May 12, 2014)................13

*Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. & Retail Pro Int'l LLC,*
    Case No. 3:14-cv-4335-TLW, Dkt. No. 30 (D.S.C. June 19, 2015)......................13

*Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc.,*
    No. 08 C 2389, 2008 WL 4395854 (N.D. Ill. Sept. 25, 2008)...............................11

*Bell Atl. Tel. Cos. v. F.C.C.,*
    131 F.3d 1044 (D.C. Cir. 1997) .............................................................3, 7, 9

*Biggerstaff v. F.C.C.,*
    511 F.3d 178 (D.C. Cir. 2007) ......................................................................5

*Boise v. ACE USA, Inc.,*
    Case No. 15-Civ-21264-COOKE/TORRES,
    2015 WL 4077433 (S.D. Fla. July 6, 2015).....................................................15

*Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.,*
    194 F.3d 125 (D.C. Cir. 1999) ......................................................................2

*Cablevision Sys. Corp. v. FCC,*
    649 F.3d 695 (D.C. Cir. 2011) ......................................................................4

*Cascades Computer Innovation, LLC v. SK hynix Inc.,*
    No. 11 C 4356, 2012 WL 2086469 (N.D. Ill. May 25, 2012) ...............................10

128726425.5

**TABLE OF AUTHORITIES**

(continued)

Page

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ................................................................................3, 7

*Chruby v. Global Tel*Link Corp.*,
No. 1:14-cv-456, __ F. Supp. 3d __,
2015 WL 4740633 (E.D. Va. Jan. 14, 2015) ...............................................13, 14

*Chyba v. First Financial Asset Mgmt.*,
2014 WL 1744136 (S.D. Cal. Apr. 30, 2014) ...........................................................8

*Comcast Corp. v. FCC*,
579 F.3d 1 (D.C. Cir. 2009) ...................................................................................4

*Comcast Corp. v. FCC*,
600 F.3d 642 (D.C. Cir. 2010) ...............................................................................3

*Daheny v. Time Warner Cable Enterprise*,
No. 14-cv-133-FL, 2015 WL 5534284 (E.D.N.C. Sep. 18, 2015) .............................8

*Dish Network, L.L.C. v. Fed. Commc'ns Comm'n*,
552 F. App'x 1 (D.C. Cir. 2014) ...........................................................................5

*EchoStar Satellite L.L.C. v. F.C.C.*,
704 F.3d 992 (D.C. Cir. 2013) ...............................................................................3

*Espejo v. Santander Consumer USA, Inc.*,
No. 11 C 8987, 2014 WL 4347185 (N.D. Ill. Aug. 28, 2014) .................................12

*Fontes v. Time Warner Cable Inc.*,
No. 2:14-CV-02060-CAS, 2014 WL 2153919 (C.D. Cal. May 19, 2014) .............13

*Fried v. Sensia Salon, Inc.*,
No. 4:13-CV-00312, 2013 WL 6195483 (S.D. Tex. Nov. 27, 2013) ......................13

*Gensel v. Performant Techs.*,
Case No. 13-C-1196, 2015 U.S. Dist. LEXIS 142303
(E.D. Wisc. Oct. 20, 2015) ...............................................................................2, 7, 13

*Gensel v. Performant Techs., Inc.*,
No. 13-C-1196, 2015 WL 402840 (E.D. Wis. Jan. 28, 2015) .........................12, 13

*Glauser v. GroupMe, Inc.*,
No. 11-2584, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) ......................................6

-iii-

**TABLE OF AUTHORITIES**

(continued)

Page

*Glauser v. Twilio, Inc.*,
No. C 11-2584 PJH, 2012 WL 259426 (N.D. Cal. Jan. 27, 2012) ..........................13

*Gragg v. Orange Cab Co., Inc.*,
995 F. Supp. 2d 1189 (W.D. Wash. 2014).................................................................6

*Hooker v. Sirius XM Radio, Inc.*,
No. 4-13-cv-3 (E.D. Va. Sept. 25, 2015) ........................................................11, 12

*Hunt v. 21st Mortg. Corp.*,
No. 2:12-CV-2697-WMA, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) ............6

*In re Groupon Derivative Litig.*,
882 F. Supp. 2d 1043 (N.D. Ill. 2012) ...................................................................2

*Kaye v. Merck & Co.*,
No. 3:10-CV-1546 RNC, 2014 WL 2002447 (D. Conn. May 15, 2014),
*appeal dismissed* (Dec. 2, 2014)..........................................................................13

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) ...........................................................................9

*Kristensen v. Credit One Bank, N.C.*,
No. CV14-7963 DMG AJWX, 2015 WL 2151751 (C.D. Cal. May 7, 2015) ........13

*Lambert v. Buth-Na-Bodhaige, Inc.*,
No. 2:14-CV-00514-MCE, 2014 WL 4187250 (E.D. Cal. Aug. 21, 2014)............13

*Lee v. loanDepot.com, LLC*,
No. 14-1084-MLB, 2014 WL 4145504 (D. Kan. Aug. 20, 2014) ..........................13

*Lopez v. Miami-Dade County*,
No. 15-cviv-22943-COOKE/TORRES (S.D. Fla. Nov. 6, 2015)...........................15

*Lucas v. Telemarketer Calling From (407) 476-5680*,
No. 1:12-CV-00630, 2014 WL 3845893 (S.D. Ohio Aug. 5, 2014) .....................13

*Mainstream Mktg. Servs., Inc. v. F.T.C.*,
358 F.3d 1228 (10th Cir. 2004) ..............................................................................5

*Molnar v. NCO Fin. Sys., Inc.*,
No. 13-CV-00131-BAS JLB, 2015 WL 1906346 (S.D. Cal. Apr. 20, 2015).........11

-iv-

**TABLE OF AUTHORITIES**
(continued)

Page

*Nat'l Commc'ns Ass'n v. Am. Tel. & Tel. Co.*,
46 F.3d 220 (2d Cir.1995)..................................................................11, 12

*National Fuel Gas Supply Corp. v. FERC*,
468 F.3d 831 (D.C. Cir.2006) ...................................................................8

*Pickens v. Am. Credit Acceptance, LLC*,
No. CIV.A. 2:14-00201-KD, 2014 WL 4662512 (S.D. Ala. Sept. 19, 2014) ........................13

*Provo v. Rady Children's Hospital S.D.*,
No. 15cv0081 JM (BGS), 2015 WL 6144029 (S.D. Cal. July 29, 2015) ..............................15

*Qwest Comm'n Int'l, Inc. v. F.C.C.*,
398 F.3d 1222 (10th Cir. 2005) ...............................................................7

*Ryan v. Chemlawn Corp.*,
935 F.2d 129 (7th Cir. 1991) ................................................................12

*Sarantakis v. Gruttaduaria*,
No. 02 C 1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002)...................................10

*Shaw v. Experian Info. Sols.*,
Case. No. 13cv01295-JLS-BLM, Dkt. No. 148 (S.D. Cal. Oct. 28, 2015)...........................15

*Sook v. Nielsen Co. (US), LLC*,
No. 8:15-CV-00264-EAK, 2015 WL 3688781 (M.D. Fla. June 12, 2015) ..........................13

*Spokeo, Inc. v. Robins*,
135 S. Ct. 1892 (2015)........................................................................14

*Story v. Mammoth Mountain Ski Area, LLC*,
No. 2:14-CV-02422-JAM, 2015 WL 2339437 (E.D. Cal. May 13, 2015)...........................13

*U.S. Telecom Ass'n v. FCC*,
227 F.3d 450 (D.C. Cir. 2000) ................................................................4

*Van Patten v. Vertical Fitness Grp., LLC*,
22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014)....................................................10

*Verizon v. FCC*,
740 F.3d 623 (D.C. Cir. 2014) ...........................................................3, 7, 8

*Vernal Enters., Inc. v. FCC*,
355 F.3d 650 (D.C. Cir. 2004) ................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page

*Wahl v. Stellar Recovery, Inc.*,
　　No. 14-CV-6002-FPG, 2014 WL 4678043 (W.D.N.Y. Sept. 18, 2014) ................................13

**STATUTES**

47 U.S.C. § 227 ................................................................................................................. *passim*

**OTHER AUTHORITIES**

Timothy M. Phelps, *Obama judicial nominees poised to join powerful D.C.
　　Circuit Court of Appeals*, The Washington Post (Dec. 8, 2013), *available at*
　　https://www.washingtonpost.com/politics/obama-judicial-nominees-poised-to-
　　join-powerful-dc-circuit-court-of-appeals/2013/12/08/047dd476-604d-11e3-
　　8beb-3f9a9942850f_story.html ................................................................................13

-vi-

## I.     INTRODUCTION

Plaintiff is wise to fear the D.C. Circuit's imminent ruling.  The D.C. Circuit's review of the FCC Omnibus Order will almost certainly result in a substantial trimming of the issues in this case or simply terminate it.

FCC Commissioners, referring to the TCPA as the "poster child for lawsuit abuse," have explained that the Omnibus Order's treatment of automatic telephone dialing systems "dramatically expands the TCPA's reach" in ways "flatly inconsistent with the TCPA."  They have also explained that the Omnibus Order "opens the floodgates to more TCPA litigation against good-faith actors" with respect to the definition of "called party."  They have further challenged the Order's premise that the TCPA applies to text messages, noting that the "TCPA was enacted in 1991 – before the first text message was ever sent" and the FCC "should have gone back to Congress for clear guidance on the issue rather than shoehorn a broken regime on a completely different technology."

No less than nine petitions and nine intervenors have challenged the above aspects of the Omnibus Order as arbitrary and capricious, an abuse of discretion, in excess of the FCC's statutory authority, and otherwise contrary to the Constitution and other laws.  Final briefing will be complete in a few months, by February 24, 2016, with a decision likely forthcoming shortly thereafter.  *See* Order at 2, ACA Int'l, No. 15-1211 (D.C. Cir. Oct. 13, 2015), EFF No. 1577930.  And each of the above issues on appeal—"ATDS," "called party," and "call"— play a central role in this case.  In light of the narrow margin on which the Omnibus Order was approved, the strong pending challenge to the Omnibus Order, and the fairly imminent timing of a decision, an abbreviated stay is warranted here while the DC Circuit reviews the Omnibus Order.  This litigation is in its infancy, and any purported prejudice to Plaintiff is overwhelmed by the benefits of a stay.  Indeed, Plaintiff's standing in the first instance may be negated entirely by the Supreme Court's forthcoming ruling in *Spokeo v. Robins*.

-1-

128726425.5

## II.     PLAINTIFF'S OPPOSITION CONFIRMS THAT THE COURT SHOULD GRANT A STAY PENDING THE D.C. CIRCUIT'S REVIEW OF THE OMNIBUS ORDER

Plaintiff's Opposition centers on her contention that the D.C. Circuit is unlikely to issue a ruling that would result in vacating all or part of the Omnibus Order.  This contention is mistaken and also relies on applying the wrong standard of review.  Even a cursory examination of the Omnibus Order reveals that it seeks to dramatically expand TCPA liability without articulating a clear rationale for doing so and exceeds the FCC's authority.  Further, the Omnibus Order conflicts with the plain meaning of the TCPA and is not entitled to deference.  Staying the proceedings will streamline the issues at summary judgment and class certification, prevent the parties and the Court from having to revisit orders and discovery plans after the D.C. Circuit renders its decision, and provide overall clarity and simplification of the issues involved in this litigation—all without unduly prejudicing Plaintiff.  *See In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012).  Courts around the country have granted stays in these circumstances and a stay is likewise warranted here.  *See* Order, *Gensel v. Performant Techs.*, Case No. 13-C-1196, 2015 U.S. Dist. LEXIS 142303, at *1 (E.D. Wisc. Oct. 20, 2015) (putative TCPA class action stayed pending appeals of the Omnibus Order) (Exhibit A); *see also* Memorandum in Support of Motion to Stay Proceedings ("Motion") at 9, 11-13.

### A.     Plaintiff Misstates the Deference Afforded to the FCC's Interpretation of the TCPA.

Plaintiff's contention that the D.C. Circuit must evaluate the Omnibus Order under an "extremely deferential" standard is incorrect.  The standard described in Plaintiff's Opposition applies to challenges to an agency's interpretation of its own rules and precedents.  *See Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.*, 194 F.3d 125, 128 (D.C. Cir. 1999) (explaining that courts owe greater deference to an agency's interpretation of its own regulation than to its interpretation of the statute it is charged with administering).  Here, because portions of the Omnibus Order purport to interpret the TCPA itself, the higher level of deference afforded to the FCC's application of its own regulations, emphasized by Plaintiff, have only limited bearing on the resolution of the petitions currently pending before the D.C. Circuit.  *Cf. ADX Commc'ns of*

*Pensacola v. FCC*, 794 F.3d 74, 79 (D.C. Cir. 2015) (applying deferential standard to the FCC's application of its own market definition methodology to grant radio licenses to a competitor of the petitioner); *Vernal Enters., Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004) (applying deferential standard to the FCC's application of its own policy to deny the petitioner's request for a refund).

Indeed, here, because the FCC's interpretations of "ATDS" and "call" run counter to the plain meaning of the TCPA, no deference is required at all. *Bell Atl. Tel. Cos. v. F.C.C.*, 131 F.3d 1044, 1047 (D.C. Cir. 1997); *see also EchoStar Satellite L.L.C. v. F.C.C.*, 704 F.3d 992, 1000-01 (D.C. Cir. 2013) (Edwards, J., concurring) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). It is therefore no surprise that the D.C. Circuit has been particularly active in vacating orders, like the Omnibus Order, where the FCC overreaches its statutory authority or announces interpretations that conflict with the statute's plain meaning. *See, e.g.*, *Verizon*, 740 F.3d at 628 (vacating FCC order because it "impose[d] requirements that contravene express statutory mandates"); *EchoStar Satellite L.L.C. v. FCC*, 704 F.3d 992, 994-95 (D.C. Cir. 2013) (granting petition for review because the FCC lacked statutory authority to impose rules "limit[ing] the means of encoding that cable and satellite service providers may employ to prevent unauthorized access to their broadcasts"); *Comcast Corp. v. FCC*, 600 F.3d 642 (D.C. Cir. 2010) (vacating FCC order because the agency had not tied the authority it asserted over Internet service providers to any statutorily mandated responsibilities); *Am. Library Ass'n v. FCC*, 406 F.3d 689, 691-92 (D.C. Cir. 2005) (vacating FCC order that required digital television reception equipment to have the capability to prevent unauthorized redistributions of digital content because "Congress never conferred authority on the FCC to regulate consumers' use of television receiver apparatus after the completion of broadcast transmissions").

And even if the D.C. Circuit were to apply the arbitrary and capricious standard to the "called party" issue, the interpretation still may well be vacated. *See Verizon v. F.C.C.*, 740 F.3d at 643-44. Indeed, the D.C. Circuit has not shied away from vacating FCC rulings under the

arbitrary and capricious standard, particularly where, as here, the Commission fails to articulate a satisfactory explanation. *See, e.g.*, *Cablevision Sys. Corp. v. FCC*, 649 F.3d 695, 720-723 (D.C. Cir. 2011) (vacating a portion of an FCC order because the arguments supporting the agency's conclusion were incomplete, mistaken, and altogether unsatisfactory, rendering its decision arbitrary and capricious); *Comcast Corp. v. FCC*, 579 F.3d 1, 3 (D.C. Cir. 2009) (holding that FCC rule prohibiting a single cable operator to serve more than 30% of all cable subscribers was arbitrary and capricious because it failed to account for voluminous evidence of other competition in the marketplace); *U.S. Telecom Ass'n v. FCC*, 227 F.3d 450, 460-63 (D.C. Cir. 2000) (holding that a portion of an FCC order was arbitrary and capricious because the FCC failed to adequately explain why certain law enforcement surveillance capabilities qualified as "call-identifying information" that the statute required carriers to make available).

The possibility that the Omnibus Order will be vacated is thus far from speculative. The D.C. Circuit has the authority to vacate invalid FCC orders and has not hesitated to exercise that authority where, as here, the FCC has promulgated an interpretation of the statute that is completely divorced from the plain meaning of the statute itself.

**B.** **The Omnibus Order Opens the Door To Claims of Unprecedented Liability.**

Plaintiff characterizes the Omnibus Order as a mere recitation of precedent. Not so. With respect to each of the statutory definitions central to Plaintiff's claims—"ATDS," "called party," and "call"—the FCC has rendered interpretations in the Omnibus Order that are either completely novel or directly contrary to the statute itself. With respect to "ATDS" in particular, courts have been struggling for years to disentangle the statutory language from conflicting precedent and inconsistent FCC interpretations. Instead of clarifying the issue, the conclusions the FCC reached in the Omnibus Order represent new, radical interpretations of the TCPA and purport to create an unworkable strict liability regime for legitimate businesses attempting to communicate with their users using modern, technology-based text messaging systems. *See, e.g.*, Ex. A, Omnibus Order, Dissenting Statement of Commissioner Ajit Pai ("Pai Dissent") at 112-13 (noting that "the TCPA has become the poster child for lawsuit abuse").

Presumably, had the Omnibus Order merely reiterated the state of the law (as Plaintiff contends), the eighteen different parties involved in the appeal before the D.C. Circuit would have put their time and resources to better use, or they would have challenged the interpretations previously. Instead, because the Omnibus Order brings to bear new and troubling expansions of the law, the petitions for review of the Omnibus Order appear to mark the first instances that anybody has sought Circuit Court review of any of the three terms at issue here ("ATDS," "call," and "called party"). *Cf. Dish Network, L.L.C. v. Fed. Commc'ns Comm'n*, 552 F. App'x 1 (D.C. Cir. 2014) (relating to vicarious liability, and dismissed because the order was not "final"); *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228 (10th Cir. 2004) (involving do-not-call registry fees and established business relationship exceptions); *Biggerstaff v. F.C.C.*, 511 F.3d 178 (D.C. Cir. 2007) (involving the FCC's Junk Fax Prevention Act, and dismissed on multiple grounds); *see also Anda, Inc. v. FCC*, No. 14-1270 (D.C. Cir. filed Dec. 9, 2014, briefing set to be completed by Mar. 2, 2016) (challenging order requiring certain opt out requirements for fax ads).

### 1. The Omnibus Order dramatically expands the definition of "ATDS"

In its Omnibus Order, the FCC proclaimed it was only "reiterat[ing]" its view that predictive dialers qualify as Automatic Telephone Dialing Systems. Omnibus Order ¶¶ 10–22. In reality, however, the Omnibus Order seeks to "dramatically expand[] the TCPA's reach" into unchartered and unauthorized territory. *See* Pai Dissent at 114. In the Omnibus Order, the FCC for the first time asserted that "capacity" as used in the definition of "ATDS," extends to "potential ability." By deeming equipment an ATDS when it cannot presently perform the requisite functions but could theoretically be redesigned to have those functions, the FCC attempts to single-handedly eviscerate the TCPA's clear specification that "The term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Indeed, an enterprising plaintiff might argue that the use of a smart phone or computer constitutes an ATDS under the Omnibus Order.

-5-

Prior to the Omnibus Order, several courts had reached the opposite, logical conclusion—that equipment is an ATDS if it has the "actual" ability, rather than the "potential" ability, to dial numbers randomly or sequentially. *See, e.g., Glauser v. GroupMe, Inc.*, No. 11-2584, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) (holding that, because a test based on "potential capacity" would "capture many of the contemporary society's most common technological devices within the statutory definition" the relevant inquiry is whether a defendant's equipment has the *present* capacity to perform autodialing functions, even if those functions are not actually used); *Gragg v. Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014) (holding that whether equipment is an ATDS depends on "the system's *present*, not *potential*, capacity to store, produce, or call randomly or sequentially generated telephone numbers"); *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697-WMA, 2013 WL 5230061, at *4 (N.D. Ala. Sept. 17, 2013) (same). These courts' interpretations were based on the plain language of the statute, and a common sense reading of the word "capacity."

In contrast to much of the case law that preceded the Omnibus Order, the FCC's new interpretation of "ATDS" is directly contrary to the definition that Congress provided because it re-writes the word "capacity" to mean something else entirely. As Commissioner Pai pointed out, "[t]he question of a thing's capacity is whether it can do something presently, not whether it could be modified to do something later on."[1] *See also* Omnibus Order, Statement of Commissioner Michael O'Rielly, Dissenting in Part and Approving in Part ("O'Rielly Dissent") at 128 (criticizing the FCC's definition of ATDS because "[e]quipment that could conceivably function as an autodialer *in the future* counts as an autodialer *today*."). As a result, the FCC's interpretation of ATDS espoused in the Omnibus Order is very likely to be vacated by the D.C.

---

[1] Commissioner Pai's colorful examples further illustrate this point:

> No one would say that a one-gallon bucket has the "potential or suitability for holding, storing, or accommodating" two gallons of water just because it could be modified to hold two gallons. Nor would anyone argue that Lambeau Field in Green Bay, Wisconsin, which can seat 80,000 people, has the capacity (i.e., the "potential or suitability") to seat all 104,000 Green Bay residents just because it could be modified to have that much seating.

Pai Dissent at 115. *See also* O'Rielly Dissent at 128 (noting that the FCC's definition of "capacity" is "like the FAA regulating vehicles because with enough modifications cars and trucks could fly . . .").

Circuit.  *See Bell Atl. Tel. Cos. v. F.C.C.*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (holding that when the "traditional tools of statutory interpretation" reveal the plain meaning of the statute, "then Congress has expressed its intention as to the question, and deference is not appropriate"); *see also Verizon v. FCC*, 740 F.3d 623, 634 (D.C. Cir. 2014) (noting in an opinion that partially vacated the FCC's Open Internet Order that "[t]wo members of the Commission [had] dissented").

Indeed, just last month, a Wisconsin district court determined that the Omnibus Order's new interpretation of ATDS was contrary to the statute, would not be entitled to deference on appeal, and granted a stay.  *See* Order, *Gensel v. Performant Techs.*, Case No. 13-C-1196, 2015 U.S. Dist. LEXIS 142303, at *1 (E.D. Wisc. Oct. 20, 2015) (Exhibit A).  Specifically, the court found that "the FCC majority's interpretation of the term "capacity' contradicts the plain language of the statute" and therefore "is not entitled to deference on appeal."  *See id.* at *5 (citing *Qwest Comm'n Int'l, Inc. v. F.C.C.,* 398 F.3d 1222, 1230 (10th Cir. 2005) ("If Congress has spoken, our inquiry ceases; the agency, as well as the court, must give effect to Congress's unambiguously expressed intent") (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council,* 467 U.S. 837, 842-43 (1984))).  On this basis, and because the definition of ATDS was central to Plaintiff's claims in that case, the court in *Gensel* granted the defendant's motion to stay the TCPA litigation pending a decision from the D.C. Circuit.  *Id.*  Thus, just as in *Gensel*, a stay is warranted here based on the FCC's interpretation of ATDS alone.

**2.      The FCC's sweeping definition of "called party" is unlikely to withstand the D.C. Circuit's scrutiny.**

The Omnibus Order's definition of "called party" is arbitrary and capricious, particularly with respect to mistaken numbers.  Plaintiff argues that the Omnibus Order's definition of "called party" merely reiterates case law reaching the same conclusion.  This position, however, ignores "good faith" defenses recognized by courts to bridge the gap between a narrow definition of "called party" and the broad liability that can be claimed from good-faith efforts to rely on information provided by consumers.  *See, e.g.*, *Daheny v. Time Warner Cable Enterprise*, No.

14-cv-133-FL, 2015 WL 5534284, at *3 (E.D.N.C. Sep. 18, 2015) (finding no clear error in the magistrate judge's determination that the defendant's good faith reliance on the consent of its customer was a complete defense to TCPA claim although the plaintiff received calls intended for that customer); *Chyba v. First Financial Asset Mgmt.*, 2014 WL 1744136, at *12 (S.D. Cal. Apr. 30, 2014) ("Even if Plaintiff is correct in stating that she never gave Defendant or Enterprise consent to call, and there was no actual prior consent from Plaintiff, Defendant is not liable for acting in good faith upon the information provided to it.").

In the Omnibus Order, the FCC interprets the term "called party" in such a way that, regardless of a company's due diligence or good faith reliance on information provided to it by the intended recipient of its call, it may be sued for $500-$1,500 per text message. This illogical interpretation is now being abused—as in this case—to attack companies for a third party's misrepresentation (inadvertent or advertent) of his/her phone number, regardless of whether the company has any notice of the error. There is ample reason to believe that this aspect of the order will be found arbitrary and capricious. As but one example, there is little rationale for treating wrong number calls differently—let alone more severely—than reassigned number calls yet the Omnibus Order incorporates protections for the latter only. *See* Omnibus Order ¶ 85. *See Verizon v. F.C.C.*, 740 F.3d 623, 643-44 (D.C. Cir. 2014) ("We evaluate the Commission's reasoning to ensure that it has examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (citing *National Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006) (internal quotations omitted)).

### 3. The FCC rewrote the TCPA to encompass text messages.

The FCC's definition of "call" as encompassing text messages may also be rejected by the D.C. Circuit. The TCPA was enacted in 1991, before there were text messages, and nowhere in the TCPA does Congress use the word "text message" or "SMS" or otherwise indicate that it intended the statute to apply to text messages. Rather, the statute applies squarely to "calls." 47 U.S.C. § 227 (b)(1). In 2003, the FCC determined that the TCPA applies to text messages, yet

-8-

provided no rationale for conflating the two.  *See* 2003 TCPA Order ¶ 165 (stating, without further explanation, that calls include text messages because the statute prohibits *calls* to telephone numbers assigned to cellular telephone services for which the party is charged for the *call*) (emphasis added).  This aspect of the order was not appealed in 2003—likely because text message use, especially by businesses, was in its infancy—and no court reviewed whether the FCC had exceeded its authority at that time. The FCC reiterated the view that "calls" encompassed text messages in the 2015 Omnibus Order, again without providing any clear explanation for why it sought to re-write the statute in this manner.   As Commissioner O'Rielly noted, "The Commission should have had gone back to Congress for clear guidance on the issue rather than shoehorn a broken regime on a completely different technology."  O'Rielly Dissent at 127.  Because the FCC's interpretation is directly contrary to the language of the TCPA, it faces abrogation by the D.C. Circuit.  *See Bell Atl. Tel. Cos. v. F.C.C.*, 131 F.3d 1044 (D.C. Cir. 1997).[2]

**C.     A D.C. Circuit Ruling Will Clarify Issues, Streamline Adjudication, Avoid Potentially Inconsistent Results, and Conserve the Resources of the Parties and the Court.**

With respect to Uber's contention that a stay would clarify issues and reduce the burden of litigation, Plaintiff has little to say.  Plaintiff's principle argument on this point is that, if the D.C. Circuit altered or overturned portions of the Omnibus Order, discovery would still be required.  Opposition at 14.  But even this is not true.  For example, if the D.C. Circuit vacates the FCC's interpretation of "call" as extending to text messages, Plaintiff's claims would fail entirely and discovery would be unnecessary.

In any case, this argument is a red herring.  Even if some discovery is required, the scope and amount of discovery could constrict dramatically as a result of the D.C. Circuit ruling.  For example, if the D.C. Circuit vacates the FCC's expanded definition of "ATDS," Plaintiff will not

---

[2] Plaintiff places great weight on the Sixth Circuit's recent ruling in *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015), but fails to note that, there, the parties did not contest whether text messages constitute calls.  As a result, the court's comments interpreting the TCPA were not only non-binding dicta, but the court also did not benefit from any briefing on the issue.

be able to argue that she is entitled to discovery on the "potential ability" of Uber's systems, potentially significantly reducing discovery. Similarly, if the D.C. Circuit determines that intended recipients are included in the definition of "called party" (from whom a caller must obtain consent) or that a good faith defense applies to calls for which the defendant has the prior express consent of the intended recipient, the parties may be able to conserve resources by limiting discovery to the question of whether Uber had prior express consent from the intended recipient. *See Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014) (noting that prior express consent is a complete defense to a TCPA claim). Thus, there are three issues before the D.C. Circuit that could directly impact Plaintiff's claims, and a decision on any one of the issues could significantly reduce the scope of discovery in this case.

Finally, as Plaintiff fails to directly dispute in her Opposition, a stay would also streamline the issues at summary judgment and class certification, prevent the parties and the Court from having to revisit inconsistent orders and discovery plans after the D.C. Circuit renders its decision, and provide overall clarity and simplification of the issues involved in this litigation.

**D.      Plaintiff Has Failed to Show She Will Suffer Undue Prejudice if the Court Grants a Stay.**

Plaintiff cannot demonstrate undue prejudice by citing exclusively to the type of delay "inherent in litigation" and Plaintiff's Opposition shows that she cannot overcome this hurdle. *See Sarantakis v. Gruttaduaria*, No. 02 C 1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002); *see also Cascades Computer Innovation, LLC v. SK hynix Inc.*, No. 11 C 4356, 2012 WL 2086469, at *1 (N.D. Ill. May 25, 2012) ("Delay in litigation, without more, generally does not demonstrate undue prejudice"). Plaintiff attempts to characterize the requested stay as "extremely lengthy" and "indefinite." *See* Opposition at 11-13. But both of these characterizations are inaccurate.

For example, Plaintiff misrepresents how long the D.C. Circuit is likely to take to rule on the petitions for review of the Omnibus Order. For one, Plaintiff claims that Uber conceded that

-10-

a D.C. Circuit ruling would not arrive until 2017, based on the median 14-month time period for the D.C. Circuit to rule on a case. Opposition as 12. Uber has made no such concession. Since the petitions for review were filed in July 2015, application of the 14-month median time to disposition would result in a stay of less than a year. Plaintiff also fails address the fact that the D.C. Circuit issued a scheduling order in October that sets briefing to conclude in February of 2016. *See* Order at 2, *ACA Int'l*, No. 15-1211 (D.C. Cir. Oct. 13, 2015), ECF No. 1577930. Since briefing is set to conclude in February, it would be reasonable to assume that a decision could be rendered in the spring or summer of next year. A stay here has no more potential to be particularly lengthy or indefinite compared to any other stay pending a Court of Appeals review of an agency ruling, and Uber has shown that such stays are commonplace. *See* Motion at 12-13.

Plaintiff's authority is also readily distinguishable. The case *Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc*., involved a requested stay pending reexamination of patents, not an FCC order. No. 08 C 2389, 2008 WL 4395854, at *5 (N.D. Ill. Sept. 25, 2008). The Court denied the stay on those grounds because "statistics . . . suggest that the average *inter partes* reexamination, including appeals, can be expected to last approximately six and one-half years, and may take as long as eight years," but granted a stay on other grounds. The requested stay here is expected to be for less than a year. In *Molnar v. NCO Fin. Sys., Inc*., the district court denied a stay pending an FCC ruling because "agency determination is typically protracted." No. 13-CV-00131-BAS JLB, 2015 WL 1906346, at *4 (S.D. Cal. Apr. 20, 2015) (citing *Nat'l Commc'ns Ass'n v. Am. Tel. & Tel. Co.,* 46 F.3d 220, 225 (2d Cir.1995)). Here, Uber requests a stay pending a judicial determination, not an agency determination. Likewise, as Uber noted in its Motion to Stay, *Hooker v. Sirius XM Radio, Inc.*, No. 4-13-cv-3 (E.D. Va. Sept. 25, 2015), is distinguishable because the operative complaint had been filed nearly three years prior and the case had "a long history of extensions and delays," including two prior stays. Here, the operative complaint was filed only three months ago, the plaintiff only served discovery well after Uber filed its stay motion, and there have been no prior stays. *Cf.* Order, *Gensel*, 2015 U.S.

Dist. LEXIS 142303 at *2 (E.D. Wisc. Oct. 20, 2015) (granting motion to stay pending appeals of the Omnibus Order in putative TCPA class action) (Exhibit A).

The remainder of the cases on which Plaintiff relies are similarly inapposite.  *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay ("Opposition"), Dkt. No. 13 at 9-10.  With limited exceptions, these cases involved motions to stay under the primary jurisdiction doctrine relating to proceedings *before the FCC.  Id.* at 9, n. 11.  Not only does an entirely different legal standard apply to motions brought under the primary jurisdiction doctrine[3], but Plaintiff also omits the context of these cases, which is that over a period of nearly two years, the FCC had failed to rule on nearly two dozen petitions that were pending before it and that sought clarification on the very issues that it ultimately decided in the Omnibus Order. *See, e.g.*, *Alvarado v. Bay Area Credit Serv., LLC*, No. 14-CV-02549-SC, 2015 WL 224950, at *2 (N.D. Cal. Jan. 16, 2015) (noting in January 2015 that some of the petitions supporting the defendant's motion to stay had been filed with the FCC in April and October of 2013).  In this context, where the FCC showed little indication of when it might rule on the numerous petitions pending in queue (and where there was little precedent for the type of Omnibus Order that the FCC ultimately issued), courts became increasingly reticent to grant a stay under the primary jurisdiction doctrine.  *Id.  See Nat'l Commc'ns Ass'n v. Am. Tel. & Tel. Co.,* 46 F.3d at 225 ("agency determination is typically protracted").

It is therefore disingenuous to compare the instant motion for a stay to the TCPA motions for stays that prevailed during the period the FCC allowed petitions for review to accumulate. There is no evidence of institutionalized adjudicative delay on the part of the D.C. Circuit similar

---

[3] "The Seventh Circuit has enunciated several factors and policy issues that should be considered when determining to stay a case pursuant to the primary jurisdiction doctrine: (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense." *Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2014 WL 4347185, at *1 (N.D. Ill. Aug. 28, 2014) (citing *Ryan v. Chemlawn Corp.,* 935 F.2d 129, 131 (7th Cir. 1991)).

-12-

to that of the FCC during this period.[4]  In any case, Uber can cite just as many cases *granting* motions to stay pending FCC review under the primary jurisdiction doctrine.[5]

The cases upon which Uber relies, in contrast, show that a stay is reasonable and prudent in these circumstances.  *See, e.g., Order Gensel v. Performant Techs.*, 2015 U.S. Dist. LEXIS 142303 at *1 (Exhibit A) (granting stay in TCPA pending the D.C. Circuit's review of the Omnibus Order because it was "in the interest of judicial economy" and because "the FCC majority's interpretation of the term 'capacity' [in the definition of 'ATDS'] contradicts the plain language of the statute"); Order, *Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. & Retail Pro Int'l LLC*, Case No. 3:14-cv-4335-TLW, Dkt. No. 30 (D.S.C. June 19, 2015) (Exhibit B) (granting stay in putative TCPA class action pending resolution of a petition for waiver filed with the FCC and a pending D.C. Circuit appeal regarding the FCC's authority to regulate solicited faxes); *Chruby v. Global Tel*Link Corp.*, No. 1:14-cv-456, __ F. Supp. 3d __, 2015 WL 4740633, at *2-3 (E.D. Va. Jan. 14, 2015) (granting stay pending the D.C. Circuit's review of a related FCC order).  Further, Plaintiff's description of *Chruby* is wholly inaccurate.  The Court ultimately lifted the stay in *Chruby* because the D.C. Circuit held the appeal in abeyance awaiting final rules from the FCC.  The District Court found that the D.C. Circuit's granting of a motion to hold the cases in abeyance was "a significant change in facts" rendering

---

[4] To the contrary, the D.C. Circuit currently has its full complement of eleven active judges following the nomination in 2013 of three additional judges to fill then-vacancies.  *See* Timothy M. Phelps, *Obama judicial nominees poised to join powerful D.C. Circuit Court of Appeals*, The Washington Post (Dec. 8, 2013), *available at* https://www.washingtonpost.com/politics/obama-judicial-nominees-poised-to-join-powerful-dc-circuit-court-of-appeals/2013/12/08/047dd476-604d-11e3-8beb-3f9a9942850f_story.html.

[5] *See, e.g., Sook v. Nielsen Co. (US), LLC*, No. 8:15-CV-00264-EAK, 2015 WL 3688781, at *2 (M.D. Fla. June 12, 2015); *Story v. Mammoth Mountain Ski Area, LLC*, No. 2:14-CV-02422-JAM, 2015 WL 2339437, at *4 (E.D. Cal. May 13, 2015); *Kristensen v. Credit One Bank, N.C.*, No. CV14-7963 DMG AJWX, 2015 WL 2151751, at *3 (C.D. Cal. May 7, 2015); *Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 WL 402840, at *3 (E.D. Wis. Jan. 28, 2015); *Pickens v. Am. Credit Acceptance, LLC*, No. CIV.A. 2:14-00201-KD, 2014 WL 4662512, at *3 (S.D. Ala. Sept. 19, 2014); *Wahl v. Stellar Recovery, Inc.*, No. 14-CV-6002-FPG, 2014 WL 4678043, at *2 (W.D.N.Y. Sept. 18, 2014); *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-CV-00514-MCE, 2014 WL 4187250, at *3 (E.D. Cal. Aug. 21, 2014); *Lee v. loanDepot.com, LLC*, No. 14-1084-MLB, 2014 WL 4145504, at *2 (D. Kan. Aug. 20, 2014); *Lucas v. Telemarketer Calling From (407) 476-5680*, No. 1:12-CV-00630, 2014 WL 3845893, at *4 (S.D. Ohio Aug. 5, 2014); *Fontes v. Time Warner Cable Inc.*, No. 2:14-CV-02060-CAS, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014); *Kaye v. Merck & Co.*, No. 3:10-CV-1546 RNC, 2014 WL 2002447, at *3 (D. Conn. May 15, 2014), *appeal dismissed* (Dec. 2, 2014); *Barrera v. Comcast Holdings Corp.*, No. 14-CV-00343-TEH, 2014 WL 1942829, at *4 (N.D. Cal. May 12, 2014); *Fried v. Sensia Salon, Inc.*, No. 4:13-CV-00312, 2013 WL 6195483, at *5 (S.D. Tex. Nov. 27, 2013); *Glauser v. Twilio, Inc.*, No. C 11-2584 PJH, 2012 WL 259426, at *3 (N.D. Cal. Jan. 27, 2012).

-13-

reconsideration of its original granting of the motion to stay appropriate. *Id* at \*2. This ruling has no impact the motion to stay here because, here, the appeal is currently pending.

Finally, Plaintiff contends she will suffer prejudice because she seeks more than statutory damages, noting that she used the words "actual and statutory damages" in her complaint, that she alleged that the text messages she received constitute an "invasion of privacy," and that "recipients of such text messages have to bear the burden of any costs associated with receiving such unwanted messages." *See* Opposition at 13. However, Plaintiff does not contend that *she* bore any costs associated with the subject text messages, and even if she had, allegations of invasion of privacy and *de minimis* costs associated with receiving text messages do not give rise to the type of injury that would support denying a stay that would otherwise benefit the Court and the parties. Alleged harms to putative class members are similarly *de minimis* and are not at issue: class certification has not occurred and Plaintiff has yet to demonstrate that any person, including herself, has received unlawful text messages from Uber.

## III.    A SEPARATE AND INDEPENDENT BASIS FOR STAY IS THE UNCERTAINTY CREATED BY *SPOKEO V. ROBINS*

A stay in this case is further supported by the pending Supreme Court decision in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015). *See* Motion at 13, n.3. In *Spokeo*, which was argued on November 2, 2015, the Court will determine whether a bare violation of a statutory right—without any actual injury—is sufficient for Article III standing.[6] Although *Spokeo* is not a TCPA case, its ruling on standing is likely to directly impact TCPA cases, including this one, and courts across the country have granted stays pending a decision from the Supreme Court, including in the TCPA context. *See Boise v. ACE USA, Inc.*, Case No. 15-Civ-21264-COOKE/TORRES, 2015 WL 4077433, at \*1 (S.D. Fla. July 6, 2015) (staying TCPA case pending the resolution of two Supreme Court cases, of which *Spokeo* was one, because

---

[6] The Supreme Court held oral arguments in *Spokeo* during the pendency of this motion. The oral arguments honed in on the view that pure statutory violations, like those that may be at issue here, do not confer Article III standing on plaintiffs. For example, Chief Justice Roberts, regarded as the deciding vote along with Justice Kennedy in cases before the Supreme Court, expressed concern that standing for bare statutory violations upset the federal government's balance of powers.

"[u]ltimately, both parties could be harmed by the burden of potentially superfluous litigation"); *see also Lopez v. Miami-Dade County*, No. 15-cviv-22943-COOKE/TORRES (S.D. Fla. Nov. 6, 2015) (staying Fair and Accurate Credit Transactions Act case pending the resolution of *Spokeo*) (Exhibit C); *Shaw v. Experian Info. Sols.*, Case. No. 13cv01295-JLS-BLM, Dkt. No. 148 (S.D. Cal. Oct. 28, 2015) (staying Fair Credit Reporting Act case pending the resolution of *Spokeo*) (Exhibit D); *Provo v. Rady Children's Hospital S.D.*, No. 15cv0081 JM (BGS), 2015 WL 6144029, at *2 (S.D. Cal. July 29, 2015) (same).

Here, Plaintiff's complaint contains only bare allegations of actual harm. Should the Supreme Court rule in favor of the petitioner, Plaintiff and putative class members will be required to adequately allege and prove actual injury to remain in federal court, something they will unlikely be able to do. Staying this case will therefore allow the parties and the Court to avoid the unnecessary costs and expenses to litigate a case that may be dismissed for lack of standing, and will not prejudice Plaintiff.

## IV.    CONCLUSION

For the foregoing reasons, Uber respectfully requests this Court to stay the current proceedings pending the D.C. Circuit's review of the Omnibus Order. While any such stay is in place, Uber can provide the Court with regular updates on the progress of the appeal.

Dated: November 20, 2015

Respectfully submitted,

UBER TECHNOLOGIES, INC.

By: s/ Debra R. Bernard
    Debra R. Bernard, ARDC No. 6191217
    DBernard@perkinscoie.com
    **PERKINS COIE LLP**
    131 South Dearborn, Suite 1700
    Chicago, Illinois 60603
    Telephone:  (312) 324-8559

-15-

**CERTIFICATE OF SERVICE**


I, Debra R. Bernard, certify that on November 20, 2015, I caused the foregoing **REPLY IN SUPPORT OF MOTION TO STAY** to be filed via CM/ECF and served on the following:


Paul Tyler Geske
Evan M. Meyers
Yevgeniy Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
T: (312) 893-7002
F: (312)275-7895
pgeske@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com


<u>/s/ Debra R. Bernard</u>

-1-

128726425.5