IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA VERGARA, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | No. 1:15-CV-06942<br><br>Judge: Honorable Thomas M. Durkin |

## UBER TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)

Defendant Uber Technologies, Inc. ("Uber"), by its counsel Perkins Coie, LLP, submits this Memorandum in Support of Its Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to the Class Action Complaint ("Complaint") filed by Plaintiff Maria Vergara ("Plaintiff") (ECF No. 1).

## I.      INTRODUCTION

This is not a case about "wireless spam" sent to random phone numbers.  Rather, Plaintiff claims that Uber violated the Telephone Consumer Protection Act ("TCPA") by sending her individualized text messages to verify her mobile number, which was provided by an individual creating an Uber account ("verification messages").  But the TCPA does not stretch so far and the text messages at issue here bear absolutely no resemblance to the unsolicited, automated telemarketing calls the TCPA was enacted to prevent.  *See* S. Rep. No. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968-69 (Oct. 8, 1991).

Plaintiff's claim fails for two independent reasons.  *First*, Plaintiff does not adequately allege that the verification messages were sent by an "automatic telephone dialing system" ("ATDS").  47 U.S.C. § 227(a)(1).  Plaintiff's conclusory assertion that the verification messages were sent using an ATDS, *see* Compl. ¶ 31, is insufficient to state a claim under the TCPA. *Second*, Plaintiff's own allegations demonstrate that the verification messages were not sent

using an ATDS or sent *en masse* to randomly or sequentially generated numbers. Instead, Plaintiff's own allegations establish that the verification messages were triggered by human intervention and targeted to a specific phone number for purposes of verifying an Uber account associated with that phone number. As the Northern District of California recently held in *Duguid v. Facebook, Inc.*, where the complaint made almost identical allegations, such allegations are wholly inconsistent with the use of an ATDS and cannot trigger TCPA liability as a matter of law. *See* No. 15-CV-00985-JST, 2016 WL 1169365, at *4-5 (N.D. Cal. Mar. 24, 2016) (Tigar, J.) (dismissing TCPA claim because the "conclusory allegation that [defendant] used an ATDS is not, without more, sufficient to support a claim for relief under the TCPA" and because the allegations suggested the text messages at issue were "targeted to specific phone numbers and [were] triggered by attempts to log in to . . . accounts associated with those phone numbers").

## II.     BACKGROUND

### A.     Uber's Business

Uber provides a software application that allows users to submit trip requests to drivers who can respond to such requests (the "Uber App"). Compl. ¶¶ 1, 9. Before a user can log into the Uber App to request rides, the user must enter her phone number, among other information, to create an account or "enroll[] in Uber." *Id.* ¶ 10. Uber informs users that they may be contacted via text message at the phone number they submit to Uber. *Id.* As part of Uber's fraud measures, when Uber users create their accounts, they receive verification messages like the messages received by Plaintiff to verify that they use the mobile number input during the sign-up process. Answer ¶ 17. These messages are triggered and initiated by users creating an Uber account—not Uber—and they are sent to the specific phone numbers input by those users. Compl. ¶¶ 13, 17; Answer ¶¶ 18-19.

### B.     Plaintiff's Allegations

Plaintiff brings suit on behalf of herself and a nationwide class alleging that Uber violated the TCPA. Compl. ¶ 3. She broadly alleges that Uber sent "unauthorized text message calls to

cellular telephones of individuals throughout the nation," *id.* ¶ 1, and that these text message calls amount to "wireless spam." *Id.* ¶ 2. But the facts alleged in the Complaint and the content of the messages show these messages are not "wireless spam" and instead were targeted to a specific phone number and initiated by an Uber user.

Plaintiff alleges that she received nearly identical text messages on June 14, 2015 and July 18, 2015 that read:

<table>
<tr><td>Your Uber account verification number is: 9274. Enter this in our app to confirm your Uber Account.</td><td>Your Uber account verification number is: 0133. Enter this in our app to confirm your Uber Account.</td></tr>
</table>

*Id.* ¶¶ 18-19. The difference between the text messages was the four-digit verification code— 9274, *id.* ¶ 18, and 0133, *id.* ¶ 19. Plaintiff further alleges that she was sent "at least six (6) more text" messages with "differing verification numbers embedded." *Id.* ¶ 20.[1] Plaintiff claims that she never attempted to: "acquire the Uber application"; "become a customer of Uber[;] or otherwise use Uber." *Id.* ¶ 21. Yet Plaintiff acknowledges that Uber's possession of her phone number was the result of an individual submitting information through Uber's "customer enrollment process," which triggered the verification messages. *Id.* ¶¶ 10, 18-19.

Although Plaintiff asserts that Uber made "unsolicited text calls to a list of wireless telephone numbers . . . using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator," *id.* ¶ 31, she alleges no facts to support this conclusory statement. Instead, Plaintiff's Complaint conclusively demonstrates that Uber sent text messages only to the specific phone numbers that *individual users* provide when they create Uber accounts. *See id.* ¶ 10 ("As an ordinary business practice, Defendant collects telephone numbers from consumers upon enrolling in Uber and informs such consumers that they can expect to receive text messages at the number provided."). Plaintiff

---

[1] There are no allegations that Plaintiff ever attempted to inform Uber before this lawsuit that she had not tried to create an Uber account. In fact, this lawsuit was filed a mere five days after Plaintiff alleges she received the last text message. *Id.* ¶ 20.

does *not* allege that Uber independently generates these phone numbers—randomly, sequentially or otherwise. *See id.* Nor do her allegations support the conclusion that Uber's verification message system would have the "capacity" to do so. *Cf.* 47 U.S.C. § 227(a)(1).

### III.     LEGAL STANDARD

#### A.     Fed. R. Civ. P. 12(c)

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014); *Hardy v. Hardy*, No. 10 C 5921, 2013 WL 5325077, at *2 (N.D. Ill. Sept. 20, 2013). Rule 12(b)(6) serves to test the "sufficiency of the complaint." *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *1 (N.D. Ill. June 16, 2015). A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "This standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 17 F. Supp. 3d 743, 746 (N.D. Ill. 2014) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotation marks omitted). It is not sufficient to plead "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "facts that are merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Rather, "facial plausibility" exists only "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added).

#### B.     The TCPA

Congress enacted the TCPA in 1991 "to address a growing number of telephone marketing calls and certain telemarketing practices Congress found to be an invasion of consumer privacy." *In the Matter of Rules and Regulations Implementing The Telephone Consumer Protection Act*, 23 FCC Rcd. 559, 559 (Jan. 4, 2008). The TCPA makes it

"unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A).

The TCPA prohibits only text messages that are akin to "robocalls."  FCC Declaratory Ruling and Order, — FCC Rcd. — , 2015 WL 4387780, ¶ 1 (July 10, 2015) ("Omnibus Order"). It does not reach all text messages but only unauthorized text messages that are sent *en masse* using an ATDS.  An ATDS is "equipment which has the capacity — (A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis added).  The "basic functions" of an ATDS are dialing numbers "without human intervention" and dialing "thousands of numbers in a short period of time."  Omnibus Order ¶ 17.  "To state a cause of action under the TCPA, a plaintiff must allege that: (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express consent of the recipient."  *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013), *on reconsideration* (June 7, 2013).

## IV.    ARGUMENT

Plaintiff's allegations establish that Uber's individualized verification messages were sent as a result of human intervention and thus fail to state a plausible claim that Uber used an ATDS. Because Plaintiff cannot establish this necessary element under the TCPA, this lawsuit should not proceed and Uber's motion should be granted.

### A.    Plaintiff's Conclusory Allegations Do Not State a Claim Under the TCPA.

Plaintiff's sole claim in this action is based on an alleged violation of the TCPA's automated call provision, which prohibits certain calls and text messages to cellular numbers when made using an ATDS.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  Yet Plaintiff's only allegation regarding the use of an ATDS is that Uber made "unsolicited text calls to a list of wireless telephone numbers . . . using equipment that had the capacity to store or produce telephone

numbers to be called using a random or sequential number generator." Compl. ¶ 31. This allegation is a legal conclusion unsupported by facts and a mere restatement of the statutory language. *See* 47 U.S.C. § 227(a)(1) (providing that an ATDS is equipment that has "the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.").[2]

It is axiomatic that a plaintiff must do more than "merely parrot the statutory language of the claims that [she is] pleading"; she must also "provid[e] some specific facts to ground those legal claims." *Hanley*, 934 F. Supp. 2d at 982-83 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)) (dismissing complaint that "merely recite[d] naked facts mimicking the elements of a cause of action under the TCPA"). A plaintiff is required to "supply enough additional, independent facts 'to raise a reasonable expectation that discovery will reveal evidence' of the alleged misconduct." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (quoting *Twombly*, 550 U.S. at 556); *see also Duguid*, 2016 WL 1169365, at *4 ("This conclusory allegation that [defendant] used an ATDS is not, without more, sufficient to support a claim for relief under the TCPA."); *Flores v. Adir, Int'l, LLC,* No. CV15-00076-AB(PLAx), 2015 WL 4340020, at *3 (C.D. Cal. July 15, 2015) ("Without more, Plaintiff's conclusory allegation that Defendant used an ATDS is little more than speculation, and cannot support a claim for relief under the TCPA."). If a plaintiff does not properly and sufficiently allege that an ATDS was used, no TCPA liability may attach. *Hanley*, 934 F. Supp. 2d at 982; *Johansen*, 2012 WL 6590551, at *3; *see also Duguid*, 2016 WL 1169365, at *4; *Flores*, 2015 WL 4340020, at *6.

In this case, Plaintiff's conclusory allegation that Uber used an ATDS is "highly suspect because it merely recites naked facts mimicking the elements of a cause of action under the

---

[2] "'Random number generation' means random sequences of 10 digits, and 'sequential number generation' means (for example) (111)-111-1111, (111)-111-1112, and so on." *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014) (quoting *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 725 (N.D. Ill. 2011)).

TCPA." *Hanley,* 934 F. Supp. 2d. at 983.  Because Plaintiff alleges nothing more than a boilerplate, unsupported allegation that Uber used an ATDS, Compl. ¶ 31, her TCPA claim fails as a matter of law.  *See Hanley*, 934 F. Supp. 2d at 982; *Johansen*, 2012 WL 6590551, at *2-4 (dismissing complaint for failure to provide "supporting details" regarding the allegation that an ATDS or prerecorded voice was used and noting that the plaintiff could have "describe[d] the robotic sound of the voice on the other line, the lack of human response . . . , or anything else" leading the plaintiff to believe an ATDS or prerecorded voice was used); *see also Duguid*, 2016 WL 1169365, at *4; *Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013) (denying as futile plaintiff's motion for leave to file an amended complaint because the amended complaint's "sole reference . . . to the use of ATDS" was the "bare allegation" that "Defendant used an automated telephone dialing system as defined by" the TCPA); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (dismissing TCPA claim because plaintiff's ATDS allegations were "nothing more than a formulaic recitation of the elements of a cause of action" (internal quotation marks and citation omitted)); *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1315-16 (S.D. Fla. 2012) (dismissing TCPA claim because the allegations were made "in a conclusory manner" and the only other relevant facts alleged "negate[d] a claim that the calls were made by an [ATDS]"). This deficiency alone warrants judgment on the pleadings as to Plaintiff's Complaint.

**B.     Plaintiff's Factual Allegations Affirmatively Refute the Claim that Uber Sent Plaintiff a Text Message Using an ATDS.**

Not only does Plaintiff fail to allege facts to support the legal conclusion that Uber sent text messages using an ATDS, but the facts she does allege affirmatively *refute* that conclusion by showing individualized messaging and human intervention, both of which are incompatible with use of an ATDS.  The FCC has explained that the "basic functions" of an ATDS are dialing numbers "without human intervention" and dialing "thousands of numbers in a short period of time."  Omnibus Order, at 7974 ¶ 17.  Because the TCPA requires these "*specific form[s] of automation*," it is not sufficient to allege facts supporting the inference that the system at issue

-7-

involved "*any measure of automation.*" *Flores*, 2015 WL 4340020, at \*4.  Thus, there can be no liability under the TCPA where, as here, Plaintiff's allegations (1) indicate the text messages at issue were directly targeted to specific recipients in a manner that is inconsistent with the random or sequential number generation required for an ATDS, and (2) demonstrate that human intervention triggered those text messages.  *See, e.g.*, *Duguid*, 2016 WL 1169365, at \*5 (dismissing TCPA claim because the allegations suggested that the text messages at issue were "targeted to specific phone numbers and [were] triggered by attempts to log in to . . . accounts associated with those phone numbers"); *Derby v. AOL, Inc.* ("*Derby II*"), No. 5:15-CV-00452-RMW, 2015 WL 5316403, at \*5 (N.D. Cal. Sept. 11, 2015) (dismissing TCPA claim because "each of the factual scenarios alleged in the" operative complaint was "triggered by some form of human action"); *McKenna v. WhisperText,* No. 5:14-CV-00424-PSG, 2015 WL 5264750, at \*3 (N.D. Cal. Sept. 9, 2015) (dismissing TCPA claim because plaintiff's allegations established that the "application sends SMS invitations only at the user's affirmative direction"), *appeal docketed*, No. 15-16997 (9th Cir. Oct. 7, 2015); *Flores*, 2015 WL 4340020, at \*5 (dismissing TCPA claim because the allegations "support[ed] the inference that Defendant expressly targeted Plaintiff"); *Daniels v. Cmty. Lending, Inc.*, No. 13-cv-488-WQH-JMA, 2014 WL 51275, at \*5 (S.D. Cal. Jan. 6, 2014) (dismissing TCPA claim because the calls were "alleged to be directed specifically toward Plaintiffs").

*First*, the text messages Plaintiff allegedly received could not have been sent randomly or *en masse*.  Specifically, Plaintiff asserts that Uber sent text messages for *verification purposes* to phone numbers that were *provided to Uber* through the account creation process.  Compl. ¶¶ 10, 13-14, 18-19.  The verification messages contained a personalized code and referenced the creation and confirmation of a particular user's account.  *Id.* ¶¶ 18-19 (referencing "*[y]our* Uber account verification number" and requesting that the recipient enter the number "to confirm *your* Uber account").  These allegations establish that Uber was contacting the specific phone number that an Uber user voluntarily provided for that purpose and, thus, the messages Uber allegedly sent to Plaintiff were "anything but 'random.'"  *Flores*, 2015 WL 4340020, at \*5; *see also*

*Duguid*, 2016 WL 1169365, at *5 (dismissing complaint where plaintiff did "not suggest that Facebook sends text messages en masse to randomly or sequentially generated numbers"); *Daniels*, 2014 WL 51275, at *5 (dismissing complaint because the alleged calls "do not appear to have been 'random'"); *Freidman*, 2013 WL 3026641, at *2 (dismissing complaint where text messages were "similar in content, but differ[ed] enough to make it appear as if an ATDS was not utilized"); *Ibey v. Taco Bell Corp.*, No. 12-cv-0583-H-WVG, 2012 WL 2401972, at *1, *3 (S.D. Cal. June 18, 2012) (dismissing complaint because allegation that message was sent using ATDS was insufficient where message "did not appear to be random"); *McKenna*, 2015 WL 428728, at *4 (dismissing TCPA claim where "affirmative allegations" refuted the use of an ATDS).

*Second*, the verification messages that Plaintiff alleges she received were sent as the result of human intervention. Accepting Plaintiff's allegations as true, it is likely that during the sign-up process, an Uber user mistakenly entered Plaintiff's phone number rather than his or her own phone number. *See* Compl. ¶¶ 13-14. As a result, Plaintiff allegedly received the verification messages meant for the user who signed up to use the Uber App. These facts establish that an ATDS could not have been used because human intervention was *required* to transmit the verification messages to Plaintiff. *See*, *e.g.*, *Derby II*, 2015 WL 5316403, at *5 (holding that the plaintiff had not adequately alleged the defendant used an ATDS where the allegations established that all text messages at issue were "triggered by some form of human action"); *see also Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (concluding that text messages were not sent by an ATDS where a human user triggered those messages by providing the recipients' phone numbers). Accordingly, Plaintiff's allegations "*refute* that Defendant[] [was] using an ATDS" because the verification messages at issue resulted from user action—inputting the phone number during the sign-up process—*not* from an automated process initiated by Uber. *Snyder v. Perry*, No. 14-CV-2090, 2015 WL 1262591, at *8 (E.D.N.Y. March 18, 2015) (emphasis added); *see also Duguid*, 2016 WL

1169365, at *5 (holding that allegations did not support use of an ATDS where text messages were triggered by attempts to log into Facebook accounts associated with those numbers).

Because Plaintiff's allegations show that the verification messages were sent through "human curation and intervention," her Complaint does not plausibly allege that Uber used an ATDS. *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014), *reconsideration denied*, No. 14-CV-348 BAS BLM, 2014 WL 6632810 (S.D. Cal. Nov. 20, 2014); *see also McKenna*, 2015 WL 5264750, at *3 (granting motion to dismiss where it was "undeniable from [plaintiff]'s previous allegations that the human intervention of a . . . user is necessary to set [the] processes in motion" that result in a text message being transmitted); *Derby v. AOL, Inc.* ("*Derby I*"), No. 15-CV-00452-RMW, 2015 WL 3477658, at *4 (N.D. Cal. June 1, 2015) (granting motion to dismiss where "the allegations of the complaint show that extensive human intervention is required to send text messages through defendant's . . . service").

Several courts have considered allegations nearly identical to Plaintiff's and have dismissed those claims because allegations that text messages were targeted to a specific phone number and were triggered by human intervention contradict the inference that those text messages were sent using an ATDS. For example, in *Duguid v. Facebook, Inc.*, the court recently dismissed a complaint alleging that Facebook was liable under the TCPA for purportedly sending text messages using an ATDS to alert users that login attempts had been made on their accounts. *See Duguid*, 2016 WL 1169365, at *1, *5. The plaintiff was not a Facebook user, yet he received these "login notification" text messages, apparently as the result of a wrong or reassigned number.[3] *Id.* at *1. The court dismissed the complaint for failure to state a claim because the plaintiff's allegations were inconsistent with the use of an ATDS. *Id.* at *6. Specifically, the court held that the login notification messages failed to demonstrate that

---

[3] The underlying facts in *Duguid* are likely the same as in this case—the Facebook user mistakenly input the plaintiff's phone number. *See id.* ("Plaintiff alleges that the operation of [Facebook's] system is 'sloppy' because messages are sent to individuals who have never had a Facebook account.").

"Facebook sends text messages *en masse* to randomly or sequentially generated numbers" because the text messages were "targeted to specific phone numbers" and were "triggered by attempts to login to Facebook accounts associated with those numbers." *Id.* at *5. Thus, the plaintiff's allegations did "not support the inference that the text messages he received were sent using an ATDS." *Id.*

In *Flores v. Adir International*, the court similarly dismissed a TCPA claim because the allegations did not support the plaintiff's contention that the defendant used an ATDS to place text messages. *Flores*, 2015 WL 4340020, at *5. The plaintiff in *Flores* alleged generally that the defendant contacted him with "generic" text messages and asserted that "none of the text messages mention[ed] [him] directly." *Id.* at *3. The Court rejected the plaintiff's argument that the text messages "were 'generic' or 'impersonal'" simply because they did not include his name. *Id.* Instead, the Court reasoned that the content of the text messages showed that they were sent for the purposes of "collecting on a specific debt," and further noted that "each of the text messages included the same reference number." *Id.* at *5. The Court accordingly concluded that the plaintiff had failed to "allege facts that, if true, would take his claims 'across the line from conceivable to plausible,'" because the "level of direct targeting" established by the contextual facts indicated that "some sort of 'human curation or intervention,'" rather than an ATDS, was used to contact the plaintiff. *Id.* at *4 (quoting *Twombly*, 556 U.S. at 680; *Marks*, 55 F. Supp. 3d at 1292).

Uber's verification messages are no different than the login notification messages at issue in *Duguid* or the debt collection messages at issue in *Flores*. By Plaintiff's own admission, Uber sent text messages that were targeted to a specific phone number provided to Uber by a user and that were triggered by the user's attempt to create an account. Compl. ¶¶ 10, 13-14, 18, 19. The text messages also contained verification numbers that corresponded with specific attempts to verify an account. *Id.* ¶¶ 18-19. Thus, Plaintiff's allegations demonstrate that the messages were not sent using an ATDS, but rather through "direct targeting that is inconsistent with the sort of

random or sequential number generation required for an ATDS." *Duguid*, 2016 WL 1169365, at *5 (quoting *Flores*, 2015 WL 4340020, at *4); Compl. ¶¶ 13-15, 18-19.

Here, "the content of the message, the context in which it was received, and the existence of similar messages all weigh[] against an inference that [Uber] used an ATDS." *Duguid*, 2016 WL 1129365 at *5 (quoting *Flores*, 2015 WL 4340020, at *5) (internal quotation marks omitted); *see also Derby II*, (holding that plaintiff did not adequately allege use of an ATDS because "each of the factual scenarios alleged in the" operative complaint was "triggered by some form of human action"); *McKenna*, 2015 WL 5264750, at *3 (holding that plaintiff did not adequately allege use of an ATDS because the "application sends SMS invitations only at the user's affirmative direction"); *Flores*, 2015 WL 4340020, at *5 (holding that plaintiff's allegations "support[ed] the inference that Defendant expressly targeted Plaintiff" and therefore were insufficient to allege use of an ATDS); *Daniels*, 2014 WL 51275, at *5 (holding that plaintiffs did not adequately allege the use of an ATDS where the "alleged calls to Plaintiffs do not appear to have been 'random,'" but were "alleged to be directed specifically toward Plaintiffs" (citation omitted)). Because Plaintiff did not (and cannot) sufficiently allege that Uber used an ATDS to send the verification messages to Plaintiff, Plaintiff's TCPA claim fails as a matter of law. *Hanley*, 934 F. Supp. 2d at 983-84. Accordingly, judgment should be entered in favor of Uber.

## V.    CONCLUSION

WHEREFORE, for the foregoing reasons, Uber respectfully requests that the Court grant Uber's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

Dated: May 19, 2016

UBER TECHNOLOGIES, INC.

By: s/ Debra R. Bernard
    Debra R. Bernard, ARDC No. 6191217
    DBernard@perkinscoie.com
    **PERKINS COIE LLP**
    131 South Dearborn, Suite 1700
    Chicago, Illinois 60603
    Telephone:  (312) 324-8559
    Facsimile:  (312) 324-9559