IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA VERGARA, | |
| Plaintiff, | No. 1:15-cv-06942 |
| v. | Honorable Thomas M. Durkin |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

## UBER TECHNOLOGIES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND ACCOMPANYING MEMORANDUM OF LAW

David J. Fioccola
Adam J. Hunt
Tiffani B. Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 468-8000

John C. Ellis
ELLIS LEGAL P.C.
250 S. Wacker Dr., Suite 600
Chicago, Illinois 60606
Tel: (312) 976-7629

*Attorneys for Defendant Uber Technologies, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

    A.    Uber Technologies, Inc. ............................................................................................ 2

    B.    Plaintiff Received Verification Messages Triggered by an Uber User ................... 3

LEGAL STANDARD .................................................................................................................... 4

    A.    Federal Rule of Civil Procedure 12(c) ..................................................................... 4

    B.    The TCPA ................................................................................................................. 5

ARGUMENT .................................................................................................................................. 6

I.    PLAINTIFF FAILED TO ADEQUATELY PLEAD THAT AN ATDS WAS USED TO SEND THE TEXT MESSAGES SHE ALLEGEDLY RECEIVED. ............................. 6

II.    PLAINTIFF HAS FAILED TO STATE A VIABLE CLAIM UNDER THE TCPA BECAUSE THE ALLEGATIONS IN HER COMPLAINT MAKE CLEAR THAT THE TEXT MESSAGES WERE SENT TO A SPECIFIC NUMBER AS A RESULT OF HUMAN INTERVENTION. ................................................................................... 8

CONCLUSION ............................................................................................................................. 13

i

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Adams v. City of Indianapolis*,
　742 F.3d 720 (7th Cir. 2014) ..................................................................................................4

*Ananthapadmanabhan v. BSI Fin. Servs., Inc.*,
　No. 15 C 5412, 2015 WL 8780579 (N.D. Ill. Dec. 15, 2015) .................................................6

*Atkins v. City of Chicago*,
　631 F.3d 823 (7th Cir. 2011) ..................................................................................................8

*Bogie v. Rosenberg*,
　705 F.3d 603 (7th Cir. 2013) ................................................................................................13

*Derby v. AOL, Inc.* ("*Derby I*"),
　No. 15-CV-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015) ...............................10

*Derby v. AOL, Inc.* ("*Derby II*"),
　No. 5:15-CV-00452-RMW, 2015 WL 5316403 (N.D. Cal. Sept. 11, 2015) .........................11

*Duguid v. Facebook, Inc.*,
　No. 15-CV-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ...1, 7, 9, 10, 11, 12, 13

*Duran v. Wells Fargo Bank, N.A.*,
　878 F. Supp. 2d 1312 (S.D. Fla. 2012) ...................................................................................8

*Felsenthal v. Travelers Prop. Cas. Ins. Co.*,
　No. 12 C 7402, 2013 WL 469475 (N.D. Ill. Feb. 7, 2013) .....................................................5

*Flores v. Adir Int'l, LLC*,
　No. CV15-00076-AB(PLAx), 2015 WL 4340020 (C.D. Cal. July 15, 2015) .....................7, 9

*Freidman v. Massage Envy Franchising, LCC*,
　No. 3:12-CV-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ..........................8

*Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*,
　17 F. Supp. 3d 743 (N.D. Ill. 2014) ........................................................................................5

*Glauser v. GroupMe, Inc.*,
　No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) .........................................10

*Hanley v. Green Tree Servicing, LLC*,
　934 F. Supp. 2d 977 (N.D. Ill. 2013) ...................................................................................6, 7

*Hardy v. Hardy*,
　No. 10 C 5921, 2013 WL 5325077 (N.D. Ill. Sept. 20, 2013) ................................................4

*Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*,
    378 F.3d 596 (7th Cir. 2004) ..................................................................................................4

*Ibey v. Taco Bell Corp.*,
    No. 12-cv-0583-H-WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012)..................................9

*Johansen v. Vivant, Inc.*,
    No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012)...................................................7

*Jones v. FMA Alliance Ltd.*,
    978 F. Supp. 2d 84 (D. Mass. 2013) ........................................................................................8

*Martin v. Direct Wines, Inc.*,
    No. 15 C 757, 2015 WL 4148704 (N.D. Ill. July 9, 2015) .......................................................7

*McKenna v. WhisperText*,
    No. 5:14-CV-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015).......................2, 11, 13

*N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,
    163 F.3d 449 (7th Cir. 1998) ................................................................................................5, 8

*Oliver v. DirecTV, LLC*,
    No. 14-CV-7794, 2015 WL 1727251 (N.D. Ill. Apr. 13, 2015)................................................7

*Weisberg v. Stripe, Inc.*,
    No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) .....................1, 8, 12, 13

**STATUTES**

Telephone Consumer Protection Act, 47 U.S.C. § 227
    (a)(1) ....................................................................................................................................4, 5
    (b)(1)(A)(iii)..............................................................................................................................6

**OTHER AUTHORITIES**

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    30 FCC Rcd. 7961 (2015).................................................................................................5, 11

Federal Rule of Civil Procedure 12(c) .............................................................................................4

ny-1251046

Defendant Uber Technologies, Inc. ("Uber") submits this motion for judgment on the pleadings and accompanying memorandum of law pursuant to Federal Rule of Civil Procedure 12(c) seeking dismissal of Plaintiff Maria Vergara's Complaint (the "Complaint") in its entirety.

## PRELIMINARY STATEMENT

Plaintiff Maria Vergara ("Plaintiff") has failed to plead an essential element of her Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") claim against Uber. The TCPA and its supporting regulations apply only to text messages that are sent using an automated telephone dialing system ("ATDS") and without human intervention. But Plaintiff's Complaint concedes that the text messages at issue are individualized text messages sent to verify a mobile telephone number provided by an individual creating an Uber account. As courts have recently made clear, these allegations cannot support a viable TCPA claim because they cannot plausibly support—and in fact directly contradict—an inference that the text messages at issue were sent using an ATDS. *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016); *Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016). Dismissal is appropriate here for the same reasons.

*First*, Plaintiff does not—because she cannot—allege sufficient facts plausibly suggesting that Uber used an ATDS to send the text messages at issue. Plaintiff is required to provide specific facts in her Complaint to support her claim that Uber sent the text messages using an ATDS. But Plaintiff has failed to do so, and instead simply parrots the statutory definition of an ATDS. This is not enough to satisfy well-established pleading standards.

*Second*, the facts Plaintiff does allege demonstrate that the text messages were targeted to a specific telephone number and were triggered by human intervention, *i.e.*, an Uber user

attempting to verify his or her account. These allegations—contending that the text messages were directly targeted and sent in response to a user's attempt to verify his or her account—are inconsistent with the use of an ATDS or sending messages *en masse* to randomly or sequentially generated numbers. Thus, Plaintiff's own allegations are fatal to her TCPA claim and, as a result, any amendment to the Complaint would be futile. *See*, *e.g.*, *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015) ("[I]t is clear the complaint cannot be saved by amendment, given [Plaintiff's] prior allegations about the need for human intervention . . .").

Accordingly, this Court should dismiss the Complaint because Plaintiff failed to state a claim under the TCPA.

## BACKGROUND

### A. Uber Technologies, Inc.

Uber provides a software application (the "Uber App" or the "App") that allows users to submit trip requests to third-party independent transportation providers who can respond to such requests and provide transportation services. (Compl. ¶¶ 1, 9.) Before a user can log into the Uber App to request rides, the user must enter her phone number, among other information, to create an account or "enroll[] in Uber." (*Id.* ¶ 10.) Uber informs users that they may be contacted via text message at the phone number they submit to Uber. (*Id.*) As part of Uber's fraud measures, when Uber users create their accounts, they receive verification messages (the type of message allegedly received by Plaintiff), to verify that they use the mobile number they provided to Uber during the sign-up process. (Answer ¶ 17.) These messages are triggered and initiated by users—not Uber— creating an Uber account and are sent to the specific phone numbers manually entered by those users during the account creation process. (Compl. ¶¶ 13, 17; Answer ¶¶ 18-19.)

2

ny-1251046

### B. Plaintiff Received Verification Messages Triggered by an Uber User.

Plaintiff brings suit on behalf of herself and a nationwide class alleging that Uber violated the TCPA. (Compl. ¶ 3.) She broadly alleges that Uber sent "unauthorized text message calls to the cellular telephones of individuals throughout the nation," and that these text message calls amount to "wireless spam." (*Id*. ¶¶ 1-2.) But the facts alleged in the Complaint and the content of the messages show these messages are not "wireless spam" and instead were targeted to a specific phone number and initiated by an Uber user to verify his or her Uber account.

Plaintiff alleges that she received nearly identical text messages on June 14, 2015 and July 18, 2015 that read:

| | |
|---|---|
| Your Uber account verification number is: 9274. Enter this in our app to confirm your Uber account. | Your Uber account verification number is: 0133. Enter this in our app to confirm your Uber account. |

(*Id*. ¶¶ 18-19.) The difference between the text messages was the four-digit verification code—9274 and 0133. (*Id*.) Plaintiff further alleges that she was sent "at least six (6) more text" messages with "differing verification numbers embedded." (*Id*. ¶ 20.[1]) Plaintiff claims that she never attempted to: "acquire the Uber application"; "become a customer of Uber"; or "otherwise use Uber." (*Id*. ¶ 21.) Yet Plaintiff acknowledges that Uber's possession of her phone number was the result of an individual submitting information through Uber's "customer enrollment process," which triggered the verification messages. (*Id*. ¶¶ 10, 18-19.) In other words, an individual mistakenly input Plaintiff's phone number, rather than his or her own, when he or she signed up for an Uber rider account, which is why Plaintiff received a verification text message

---

[1] There are no allegations that Plaintiff ever attempted to inform Uber before this lawsuit that she had not attempted to create an Uber account. In fact, this lawsuit was filed a mere five days after Plaintiff alleges she received the last text message. (*Id*. ¶ 20.)

intended for the enrolling user. This was likely the result of a mistake by the individual signing up when he or she entered the phone number during the sign-up process, such as transposing two numbers in the phone number.

Although Plaintiff asserts that Uber made "unsolicited text calls to a list of wireless telephone numbers . . . using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator," she alleges no facts to support this conclusory statement. (*Id*. ¶ 31.) Instead, Plaintiff's Complaint demonstrates that Uber sent text messages only to the specific phone numbers that individual users provide when they create Uber accounts. (*Id*. ¶ 13.) (*See also id*. ¶ 10 ("As an ordinary business practice, Defendant collects telephone numbers from consumers upon enrolling in Uber and informs such consumers that they can expect to receive text messages at the number provided.").) Plaintiff does not allege that Uber independently generates these phone numbers—randomly, sequentially or otherwise. (*See id*. ¶ 10.) Nor do her allegations support the conclusion that Uber's verification message system would have the "capacity" to do so. *Cf*. 47 U.S.C. § 227(a)(1).

## LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(c)

"In a motion for judgment on the pleadings, the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004); Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014); *Hardy v. Hardy*, No. 10 C 5921, 2013 WL 5325077, at *2 (N.D. Ill. Sept. 20, 2013). "This standard demands more than an unadorned, the-defendant-unlawfully-harmed-me

4

accusation." *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 17 F. Supp. 3d 743, 746 (N.D. Ill. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

"To survive a Rule 12(c) motion . . . the factual allegations in the complaint must be sufficient to raise the possibility of relief above the speculative level, assuming that all well-pleaded allegations in the complaint are true." *Felsenthal v. Travelers Prop. Cas. Ins. Co.*, No. 12 C 7402, 2013 WL 469475, at *1 (N.D. Ill. Feb. 7, 2013) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Wozniak v. Argonne Nat'l Lab.,* No. 09–CV–7702, 2010 WL 3958426, at *3 (N.D. Ill. Oct. 1, 2010)). While the Court should view the facts of the Complaint in the light most favorable to the nonmoving party, this Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).

### B. The TCPA

The TCPA prohibits text messages that are akin to "robocalls." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7962 (2015) ("Omnibus Order"). More specifically, the TCPA reaches only unauthorized text messages that are sent *en masse* using an ATDS. An ATDS is "equipment which has the capacity — (A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). The "basic functions" of an ATDS are dialing numbers "without human intervention" and dialing "thousands of numbers in a short period of time." Omnibus Order at 7975. "To state a cause of action under the TCPA, a plaintiff must allege that: (1) a call was made; (2) the caller used an ATDS or artificial

or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express consent of the recipient." *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013), *on reconsideration* (June 7, 2013).

## ARGUMENT

### I. PLAINTIFF FAILED TO ADEQUATELY PLEAD THAT AN ATDS WAS USED TO SEND THE TEXT MESSAGES SHE ALLEGEDLY RECEIVED.

Plaintiff does not—because she cannot—allege facts that support her conclusory contention that Uber used an ATDS to send the text messages at issue here. Because text messages are actionable under the TCPA *only* where they are sent via an ATDS, this Court should dismiss Plaintiff's Complaint because she fails to sufficiently plead this essential element of her claim. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

The Seventh Circuit has made clear that a plaintiff must do more than "merely parrot the statutory language of the claims that [she is] pleading"; she must also "provid[e] some specific facts to ground those legal claims." *Hanley*, 934 F. Supp. 2d at 982-83 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). Thus, where "a fact is itself an element of the claim, [such as pleading the use of an ATDS] here, it is not sufficient to recite that fact verbatim without other supporting details. A plaintiff must supply enough additional, independent facts 'to raise a reasonable expectation that discovery will reveal evidence' of the alleged misconduct." *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015) (quoting *Twombly*, 550 U.S. at 556).

Despite this pleading requirement, Plaintiff alleges no facts beyond the mere statutory definition of an ATDS in her Complaint. Indeed, Plaintiff makes only a single, conclusory allegation that Uber made "unsolicited text calls to a list of wireless telephone numbers . . . using

6

equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator." (Compl. ¶ 31.) This is not enough.

Numerous courts, including within this Circuit, have dismissed TCPA claims for this exact pleading deficiency. *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) (dismissing complaint and finding that "[i]t is insufficient for plaintiff to simply parrot the language of the TCPA and conclusorily allege that defendants used an ATDS"); *Oliver v. DirecTV, LLC*, No. 14-CV-7794, 2015 WL 1727251, at *3 (N.D. Ill. Apr. 13, 2015) (dismissing TCPA claim where the allegations indicated that calls were "*possibly* made with an ATDS" but the "alleged facts d[id] not suggest beyond the 'speculative level' that Defendant actually used an ATDS and is liable under the TCPA"); *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) ("Without enhancing his complaint with anything more than the language already available in the statute, Plaintiff provides only a threadbare, 'formulaic recitation of the elements' of a TCPA cause of action, which is not entitled to an assumption of truth." (internal citations omitted)); *Hanley,* 934 F. Supp. 2d. at 983 (granting dismissal and finding the complaint "highly suspect because it merely recites naked facts mimicking the elements of a cause of action under the TCPA"); *see also Duguid*, 2016 WL 1169365, at *4-5 (dismissing TCPA claim, in part, because the "conclusory allegation that [defendant] used an ATDS is not, without more, sufficient to support a claim for relief under the TCPA."); *Flores v. Adir Int'l, LLC,* No. CV15-00076- AB(PLAx), 2015 WL 4340020, at *3 (C.D. Cal. July 15, 2015) ("Without more, Plaintiff's conclusory allegation that

Defendant used an ATDS is little more than speculation, and cannot support a claim for relief under the TCPA.")².  Dismissal is appropriate here for the same reasons.

## II. PLAINTIFF HAS FAILED TO STATE A VIABLE CLAIM UNDER THE TCPA BECAUSE THE ALLEGATIONS IN HER COMPLAINT MAKE CLEAR THAT THE TEXT MESSAGES WERE SENT TO A SPECIFIC NUMBER AS A RESULT OF HUMAN INTERVENTION.

It is well settled that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (citing *Hecker v. Deere & Co.,* 556 F.3d 575, 588 (7th Cir. 2009)).

This is exactly what Plaintiff has done here.  Plaintiff not only failed to allege sufficient facts plausibly suggesting that Uber used an ATDS to send text messages—even the facts she alleges affirmatively *refute* her conclusory assertion that an ATDS was used here.  This Court, however, is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim . . . ." *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 (quoting *R.J.R. Serv., Inc.*, 895 F.2d at 281).

Plaintiff's allegations make clear that the text messages she allegedly received were: (1) targeted to a specific phone number; and (2) a product of human intervention.  As numerous courts have held, these allegations are inconsistent with the use of an ATDS and therefore require dismissal of Plaintiff's Complaint.  *See*, *e.g.*, *Weisberg*, 2016 WL 3971296, at *3-4

---

² *See also Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013) (granting defendant's motion to dismiss and denying as futile plaintiff's motion for leave to file an amended complaint because the amended complaint's "sole reference . . . to the use of ATDS" was the "bare allegation" that "Defendant used an automated telephone dialing system as defined by" the TCPA); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (dismissing TCPA claim because plaintiff's ATDS allegations were "nothing more than a formulaic recitation of the elements of a cause of action" (internal quotation marks and citation omitted)); *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1315-16 (S.D. Fla. 2012) (dismissing TCPA claim because the allegations were made "in a conclusory manner" and the only other relevant facts alleged "negate[d] a claim that the calls were made by an [ATDS]").

(dismissing TCPA claim where "text messages [were] targeted to specific phone numbers); *Duguid*, 2016 WL 1169365, at *6 (dismissing TCPA claim where "Plaintiff's allegations establish that human intervention triggered the login notifications").

*First*, as Plaintiff explains in her Complaint, the text messages were sent for verification purposes to the specific phone number that an Uber user voluntarily provided "upon enrolling in Uber." (Compl. ¶¶ 10, 13-14, 18-19.) Plaintiff, by her own allegations, admits that Uber sent text messages containing personalized codes, or verification numbers, in order to create and confirm a particular user's account. (*Id*. ¶¶ 18-20.) Specifically, the text messages reference "*[y]our* Uber account verification number" and request that the recipient enter the particular number "to confirm *your* Uber account." (*Id*. ¶¶ 18- 19 (emphasis added).) The very language of the text messages demonstrates that they were not sent randomly or *en masse*. Rather, the messages that Plaintiff describes were sent to the specific phone number that an Uber user voluntarily provided when signing up. (*Id*. ¶ 10.)

Courts routinely dismiss TCPA claims where, as here, the "[p]laintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS." *See*, *e.g.*, *Flores*, 2015 WL 4340020, at *5 (dismissing TCPA claim because the allegations "support[ed] the inference that Defendant expressly targeted Plaintiff); *Duguid*, 2016 WL 1169365, at *5 (dismissing TCPA claim because the allegations suggested that the text messages at issue were "targeted to specific phone numbers and [were] triggered by attempts to log in to . . . accounts associated with those phone numbers", which is inconsistent with the sort of random or sequential number generation required for an ATDS); *Ibey v. Taco Bell Corp.*, No. 12-cv-0583-H-WVG, 2012 WL 2401972, at *1, *3 (S.D. Cal. June 18,

9

2012) (dismissing complaint because allegation that message was sent using ATDS was insufficient where message "did not appear to be random").

*Second*, as Plaintiff admits, human intervention triggered the text messages that Plaintiff received. During the sign-up process, it is the Uber user who creates an account, provides a phone number, and "consent[s] to receive text messages at the number provided," including verification messages that may be sent at the user's request. (*See* Answer ¶ 10; Compl. ¶¶ 10, 13-14 (the text messages resulted from issues with "the accuracy of the information [Uber] receives from potential customers, including their phone numbers" and the phone numbers may not "actually belong to the Uber applicants *providing* them") (emphasis added).) Accepting Plaintiff's allegations as true, it is likely that during the sign-up process, an Uber user mistakenly entered Plaintiff's phone number rather than his or her own phone number. (*See* Compl. ¶¶ 13-14.) As a result, Plaintiff received the verification messages meant for the user who signed up to use the Uber App. Plaintiff's allegations therefore demonstrate that an ATDS could not have been used because human intervention was *required* to transmit the verification messages to Plaintiff. *Duguid*, 2016 WL 1169365, at *5 (holding that allegations did not support use of an ATDS where the text messages were "triggered by attempts to log into Facebook accounts associated with those phone numbers."). These allegations are fatal to Plaintiff's claim because they "establish that human intervention triggered the login notifications." *See id*. at *6; *see also Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (concluding that text messages were not sent by an ATDS where a human user triggered those messages by providing the recipients' phone numbers); *Derby v. AOL, Inc.* ("*Derby I*"), No. 15-CV-00452-RMW, 2015 WL 3477658, at *4 (N.D. Cal. June 1, 2015) (granting motion to dismiss where "the allegations of the complaint show that extensive human intervention is required to

10

ny-1251046

send text messages through defendant's . . . service"); *Derby v. AOL, Inc.* ("*Derby II*"), No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *5 (N.D. Cal. Sept. 11, 2015) (dismissing TCPA claim because "each of the factual scenarios alleged in the" operative complaint was "triggered by some form of human action"); *McKenna*, 2015 WL 5264750, at *3 (granting motion to dismiss where it was "undeniable from [plaintiff]'s previous allegations that the human intervention of a . . . user is necessary to set [the] processes in motion" that result in a text message being transmitted); Omnibus Order at 7975 (explaining that the "basic functions" of an ATDS are dialing numbers "without human intervention" and dialing "thousands of numbers in a short period of time").

Several courts have considered allegations nearly identical to Plaintiff's and have dismissed those claims because allegations that text messages were targeted to a specific phone number and were triggered by human intervention contradict the inference that those text messages were sent using an ATDS. Two recent decisions from the Northern District of California are instructive.

In *Duguid v. Facebook, Inc.*, the court dismissed TCPA claims based on allegations that Facebook purportedly sent text messages using an ATDS to alert users that login attempts had been made on their accounts. *See Duguid*, 2016 WL 1169365, at *1, *5. The plaintiff was not a Facebook user, yet he received "login notification" text messages, apparently as the result of a wrong or reassigned number that had been entered by a Facebook user. *Id*. The court dismissed the complaint for failure to state a claim because the plaintiff's allegations were inconsistent with the use of an ATDS. *Id.* at *6. Specifically, the court held that the login notification messages failed to demonstrate that "Facebook sends text messages *en masse* to randomly or sequentially generated numbers" because the text messages were "targeted to specific phone numbers" and

11

were "triggered by attempts to log in to Facebook accounts associated with those phone numbers." *Id.* at *5. Thus, the plaintiff's allegations did "not support the inference that the text messages he received were sent using an ATDS." *Id.*

The court dismissed the complaint in *Weisberg v. Stripe, Inc.* for the same reasons. *See* 2016 WL 3971296, at *3. In *Weisberg*, the plaintiff alleged that the "[d]efendant stores a database of numbers, used in conjunction with its $20 billion in annual transactions that it processes, and automatically, without human intervention, transmits form text messages to users whose numbers are warehoused in its system." *Id*. The plaintiff also incorporated into the complaint two webpages from the defendant's website that explained the process by which a customer could enter and voluntarily choose to save his or her phone number and further explained that the defendant would send a text message to the number once the customer elected to save his or her phone number using this option. *Id*. The court found that "these allegations suggest that [defendant's] text messages are targeted to specific phone numbers in response to the voluntary release of a user's phone number . . ." *Id*. at *4. Thus, the court dismissed the complaint because plaintiff had "not plausibly alleged that the text messages were sent randomly to him by an ATDS." *Id*.

The same outcome is warranted here. As in *Duguid* and *Weisberg*, Plaintiff's allegations indicate that the texts were "targeted to specific phone numbers" provided by Uber users (even if those users provided the wrong number). *Duguid*, 2016 WL 1169365, *at* *5; *Weisberg*, 2016 WL 3971296, at *4. The texts at issue here reference "*[y]our* Uber account verification number" and request that the recipient enters the particular number "to confirm *your* Uber account." (Compl. ¶¶ 18-19 (emphasis added).) Plaintiff also claims the text messages resulted from issues with "the accuracy of the information *[Uber] receives from potential customers*,

12

including their phone numbers" during the sign-up process and that the phone numbers may not "actually belong to the Uber applicants *providing them*." (*Id*. ¶¶ 13-14 (emphasis added).) Thus, like the texts in *Duguid*, the texts here were clearly targeted to a specific number and "triggered by attempts to [verify the Uber] accounts associated with those phone numbers." *See Duguid*, 2016 WL 1169365*, at* *5. And like the text messages in *Weisberg*, the text messages here were made in "response to the voluntary release of a user's phone number." *Weisberg*, 2016 WL 3971296, at *4. For these reasons, Plaintiff "has failed to plausibly plead that [Uber] used an ATDS," *id*. at *5, and this Court should dismiss the Complaint accordingly.

Finally, given Plaintiff's inability to plead the use of an ATDS based on her concessions that the text messages were sent to a specific phone number as a result of human intervention, any amendment to the Complaint would be futile. *McKenna*, 2015 WL 5264750, at *5 (dismissing TCPA claim for failure to sufficiently allege use of an ATDS to send text messages and finding "it is clear the complaint cannot be saved by amendment, given [Plaintiff's] prior allegations about the need for human intervention . . ."); *see also Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile.").

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court grant its motion for judgment on the pleadings.

14

Dated: October 21, 2016 			Respectfully submitted,

By: ___/s/ David J. Fioccola_____

David J. Fioccola
Adam J. Hunt
Tiffani B. Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
dfioccola@mofo.com

John C. Ellis
ELLIS LEGAL P.C.
250 S. Wacker Dr., Suite 600
Chicago, Illinois 60606
(312) 976-7629
jellis@ellislegal.com

*Attorneys for Defendant
Uber Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

I, David J. Fioccola, certify that on October 21, 2016, I caused the foregoing MOTION FOR JUDGMENT ON THE PLEADINGS AND ACCOMPANYING MEMORANDUM OF LAW to be filed via CM/ECF and served on the following:

Myles McGuire
Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
T: (312) 893-7002
F: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

*/s/ David J. Fioccola*
David J. Fioccola