**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA VERGARA, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 15-cv-06942 |
| v. | ) ) | Hon. Thomas M. Durkin |
| UBER TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) | |
| *Defendant*. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**UBER TECHNOLOGIES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Dated: November 22, 2016

Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
pgeske@mcgpc.com

*Attorneys for Plaintiff and the putative class*

# TABLE OF CONTENTS

I.     Introduction ................................................................................................1

II.    Factual Background ....................................................................................4

III.   Procedural History .....................................................................................5

IV.   Legal Standard ...........................................................................................6

V.    Argument ....................................................................................................7

      A.   Defendant's Motion relies on an incorrect definition of ATDS. .............7

           i.   The FCC has interpreted the statutory definition of ATDS to encompass Defendant's text messaging system. .................................................................8

           ii.  Under the Hobbs Act, the FCC's definition of ATDS is binding on this Court, and Defendant may not ignore or disregard FCC authority...................10

      B.   The factual allegations in the Complaint establish that Defendant sent the text messages at issue using an ATDS..............................................................11

           i.   Under the Federal Rules and Northern District case precedent, the factual allegations in the Complaint establish a violation of the TCPA. .......................11

           ii.  Defendant's Motion for Judgment fails to demonstrate that Plaintiff's ATDS allegations are deficient. ........................................................................15

      C.   Defendant's theory that the text messages at issue were somehow "targeted" does not entitle defendant to judgment as a matter of law.........................................17

VI.   Conclusion ................................................................................................23

Certificate of Service ..........................................................................................24

# TABLE OF AUTHORITIES

<u>Supreme Court Cases</u>

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 6, 16

<u>Cases</u>

*Abbas v. Selling Source, LLC*,
  No. 09 CV 3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ..................................... 12, 14

*Ananthapadmanabhan v. BSI Fin. Servs., Inc.*,
  No. 15 C 5412, 2015 WL 8780579 (N.D. Ill. Dec. 15, 2015) ............................... 12

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2016 WL 1555576 (N.D. Ill. April 18, 2016) .......................... 9, 10

*Assoc. Indem. Corp. v. Culligan Int'l Co.*,
  No. 12 C 3935, 2012 WL 4174999 (N.D. Ill. Sept. 18, 2012) ................................ 6

*CE Design, Ltd. v. Prism Business Media, Inc.*,
  606 F.3d 443 (7th Cir. 2010) ............................................................... 10

*Citadel Grp. Ltd. v. Washington Regional Med. Ctr.*,
  692 F.3d 580 (7th Cir. 2012) ............................................................... 16

*Duguid v. Facebook, Inc.*,
  No. 15-CV-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) .................... 19, 20, 21

*Espejo v. Santander Consumer USA, Inc.*,
  No. 11 C 8987, No. 12 C 9431, 2016 WL 6037025 (N.D. Ill. Oct. 14, 2016) ............... passim

*Friedman v. Washburn Co.*,
  145 F.2d 715 (7th Cir. 1944) ............................................................ 6, 7

*Harrison v. Nat'l Assoc. of Realtors*,
  No. 08 CV 288, 2008 WL 4089007 (N.D. Ill. Aug. 20, 2008) ................................ 4

*Illinois Tool Works Inc. v. Home Indem. Co.*,
  998 F. Supp. 868 (N.D. Ill. 1998) .......................................................... 7

*Iszak v. DraftKings, Inc.*,
  No. 14-cv-07952, 2016 WL 3227299 (N.D. Ill. June 13, 2016) ........................... 2, 17, 18, 21

*Johansen v. Vivant, Inc.*,
    No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) .......................................... 12, 13

*Johnson v. Yahoo!, Inc.*,
    Nos. 14 CV 2028, 14 CV 2753, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014) .............. passim

*Lozano v. Twentieth Century Fox Film Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010) ......................................................................... 13

*Martin v. Direct Wines, Inc.*,
    No. 15 C 757, 2015 WL 4148704 (N.D. Ill. July 9, 2015) ............................................ 15, 16

*Norman v. Complete Payment Recovery Servs., Inc.*,
    No. 13 C 8274, 2014 WL 7261010 (N.D. Ill. Dec. 14, 2014) .................................................. 7

*Oliver v. DirecTV, LLC*,
    No. 14-cv-7794, 2015 WL 1727251 (N.D. Ill. April 13, 2015)..................................... 12, 16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...................................................................................... 20

*Pisciotta v. Old Nat'l Bank Corp.*,
    499 F.3d 629 (7th Cir. 2007) ........................................................................................ 6

*Salam v. Lifewatch, Inc.*,
    No. 13 CV 9305, 2014 WL 4960947 (N.D. Ill. Sept. 22, 2014)..................................... 15

*Serban v. CarGurus, Inc.*,
    No. 16 C 2531, 2016 WL 4709077 (N.D. Ill. Sept. 8, 2016).......................................... passim

*Sojke v. DirectBuy, Inc.*,
    35 F. Supp. 3d 996 (N.D. Ill. 2014) ........................................................... 1, 11, 12, 14

*Spiegel v. Carlson*,
    No. 1:15-cv-01809, 2016 WL 5477529 (N.D. Ill. Sept. 29, 2016)........................................ 6

*St. Paul Surplus Lines Ins. Co. v. Diversified Athletic Servs.*,
    707 F. Supp. 1506 (N.D. Ill. 1989) .............................................................................. 20

*Sterk v. Path, Inc.*,
    46 F. Supp. 3d 813 (N.D. Ill. 2014) .......................................................................... 9, 10

*Sterk v. Path, Inc.*,
    No. 13 C 2330, 2013 WL 5460813 (N.D. Ill. Sept. 26, 2013)................................................ 13

*Strickler v. Bijora, Inc.*,
   No. 11 CV 3468, 2012 WL 5386089 (N.D. Ill. Oct. 30, 2012) ............................................. 15

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ........................................................................................... 4, 18

*Torres v. Nat'l Enterprise Sys., Inc.*,
   No. 12 C 2267, 2012 WL 3245520 (N.D. Ill. Aug. 7, 2012) ................................................. 12

*U.S. Bank Nat'l Assoc. v. JKM Mundelein LLC*,
   No. 14 C 10048, 2015 WL 2259474 (N.D. Ill. May 12, 2015) ............................................... 6

*Weisberg v. Stripe, Inc.*,
   No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) ...................... 19, 20, 21

*Yeary v. Innerworkings, Inc.*,
   252 F.R.D. 420 (N.D. Ill. 2008) ........................................................................................... 23

*Zwick v. Inteliquent, Inc.*,
   83 F. Supp. 3d 804 (N.D. Ill. 2015) ..................................................................................... 23

Statutes

28 U.S.C. § 2342 .................................................................................................................... 10

47 U.S.C. § 154 ....................................................................................................................... 7

47 U.S.C. § 201 ....................................................................................................................... 7

47 U.S.C. § 227 .................................................................................................................... 7, 8

47 U.S.C. § 402 ...................................................................................................................... 10

Regulations

47 C.F.R. § 64.1200 ................................................................................................................. 8

Administrative Materials

2003 FCC Order:
*Report & Order, In re Rules & Regulations Implementing the Telephone Consumer Protection
   Act of 1991*, 18 FCC Rcd. 14014 (2003) .................................................................................. 8

2008 FCC Order:
*Declaratory Ruling, In re Rules & Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 23 FCC Rcd. 559 (2008)..................................................................... 8

2012 FCC Order:
*Declaratory Ruling, In re Rules & Regulations Implementing the Telephone Consumer*
    *Protection Act of 1991*, 27 F.C.C. Rcd. 15391 (2012)) ............................................................ 3

2015 FCC Order:
*Declaratory Ruling & Order, In re Rules & Regulations Implementing the Telephone Consumer*
    *Protection Act of 1991*, 30 FCC Rcd. 7961 (2015).......................................................... passim

<u>Other Authorities</u>

Fed. R. Civ. P. 8 ......................................................................................................... 1, 4, 6, 23

Fed. R. Civ. P. 11 ................................................................................................................ 11

Fed. R. Civ. P. 12(b)(6)............................................................................................... 6, 11, 19

Fed. R. Civ. P. 12(c) ........................................................................................ 3, 4, 6, 11, 22, 23

Fed. R. Civ. P. 15 ................................................................................................................. 23

## I.    <u>INTRODUCTION</u>

Defendant's Motion for Judgment on the Pleadings ("Motion for Judgment" or "Motion," Dkt. 52) cannot succeed under precedent in the Northern District of Illinois and controlling guidance from the Federal Communications Commission ("FCC"). Defendant makes two arguments in support of its Motion: (1) that Plaintiff has not pled enough facts to establish that Defendant's text messaging system constitutes an "automatic telephone dialing system" ("ATDS") under the TCPA, (*Id.*, at 6); and (2) that the text messages at issue were "targeted" and "triggered by human intervention," precluding any possibility that they were sent using an ATDS. (*Id.* at 1). Defendant's Motion should be denied, because both of these arguments are contrary to the well-pled allegations of fact in Plaintiff's Complaint and relevant TCPA case law in this District.

First, the Federal Rules do not demand, as Defendant does, that a "plaintiff [] plead every detail about every text message or telephone call placed." *Sojke v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) (citing Fed. R. Civ. P. 8(a)(2)). Rather, a TCPA plaintiff can meet his pleading burden by alleging facts about "the circumstances of a call or message contributing to his belief it was . . . delivered via an ATDS." *Id.* Plaintiff does that here. In her Class Action Complaint, ("Complaint") (Dkt. 1), Plaintiff explains how Defendant sent automated text messages *en masse* to her and the other putative class members. (Compl., ¶¶ 10, 15, 31-32). Further, despite having no prior connection to Uber whatsoever, Plaintiff continued to receive numerous automated messages over the course of multiple weeks—several of which she received simultaneously. (*Id.* ¶¶ 18, 21-22). The Complaint also reproduces the scripts from two of the text messages she received, showing that they contained generic, impersonal messages based on a pre-defined script. (*Id.* ¶¶ 18-19). Defendant's Motion ignores the legal significance of these well-pled allegations, which are allegations of fact—not legal conclusions.

Defendant's second argument is that the messages Plaintiff received could not have been sent by an ATDS, because they reference the Uber account verification process in a way that, according to Defendant, suggests that they were "targeted" to a specific individual and therefore were not sent "*en masse* to randomly or sequentially generated numbers." (Mot. for Judgment, at 2). Courts in the Northern District of Illinois have addressed this exact same argument at least twice in the past six months alone, and both times they rejected it. *Serban v. CarGurus, Inc.*, No. 16 C 2531, 2016 WL 4709077, at *1 (N.D. Ill. Sept. 8, 2016) (involving text messages sent in response to a "Listing Request," suggesting that an individual may have requested the message); *Iszak v. DraftKings, Inc.*, No. 14-cv-07952, 2016 WL 3227299, *1 (N.D. Ill. June 13, 2016) (involving a text message containing what appeared to be an individual's personal email address, stating that it was "from djjg11@yahoo.com").

In both *CarGurus* and *DraftKings*, the defendant argued that the messages' content suggested that they were targeted messages and the product of human intervention, and in each case the court rejected the argument and denied the defendant's motion to dismiss. This is because the FCC and courts of the Northern District of Illinois have adopted a "capacity standard" for determining whether text messages are sent with an ATDS. Under this standard, "the pivotal inquiry is whether the dialing system had the 'capacity' to dial numbers automatically, regardless of whether the calls were made manually[.]" *Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, No. 12 C 9431, 2016 WL 6037625, at *5 (N.D. Ill. Oct. 14, 2016) (describing this as the "controlling" interpretation of ATDS). The capacity standard focuses on the technical capacity of a defendant's calling system, and not whether that system may also send messages that appear to be "targeted." As such, a defendant's calling system need not actually randomly or sequentially dial numbers from lists to be an ATDS—it simply needs the capacity to autodial numbers. *Id.* at

\*4 (citing *Declaratory Ruling, In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) (attached hereto as <u>Exhibit A</u>)).

At this stage, therefore, the only issue that this Court need decide is whether the Complaint plausibly alleges that the system that Defendant used to send text messages to Plaintiff and the other putative class members is a system that has the *capacity* to autodial phone numbers without human intervention. *Id.* Plaintiff's Complaint sufficiently alleges that it does have such capacity, because the system was used to send patently generic, pre-scripted automated messages to consumers' cellphones *en masse*. (Compl., ¶¶ 17-19, 32). These factual allegations are more than mere "threadbare" recitals of the elements of a TCPA claim, and they are sufficient for this Court to infer that Defendant sent the text messages at issue using an ATDS.

Defendant's ATDS arguments rely on Defendant's own, alternate narrative of the facts underlying this litigation. Defendant's theory is that some unknown user somewhere may have incorrectly input his own phone number, which caused Uber's automated text messaging system to send pre-scripted texts to Plaintiff's cellphone. (Mot. for Judgment, at 10). Even if this were true, it would not preclude a finding that Defendant's system is an ATDS—it would merely raise questions of fact that cannot be resolved on a Rule 12(c) motion. For example, why did Plaintiff continue to receive numerous text messages over a period of several weeks? Did some person incorrectly input his or her own phone number over and over—at least *eight* times? And why did Plaintiff receive multiple identical messages *simultaneously*? (*See* Compl., ¶ 18). Resolving these questions will require fact-finding, which has yet to occur, as Defendant has avoided producing any documents thus far even though this litigation has been pending for fifteen months. And because Rule 12(c) motions deal only with legal issues, and not factual ones, granting Defendant's Motion would be improperly premature. *See Harrison v. Nat'l Assoc. of Realtors*, No. 08 CV 288,

- 3 -

2008 WL 4089007, at *2 (N.D. Ill. Aug. 20, 2008) ("Judgment on the pleadings is proper where the pleadings raise only questions of law and not questions of fact.").

In short, Defendant's theory merely offers a competing narrative to the one articulated in the Complaint. This is not a sufficient basis to grant judgment for one party under Rule 12(c). At the pleadings stage, the Court is not required "to decide whose version to believe, or which version is more likely than not. . . . [I]t is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The issues Defendant raises embroil this Court in a factual dispute, and they are therefore best left for the summary judgment stage, following an opportunity for the Parties to complete discovery. Without such discovery, it would be highly premature to rule—as a matter of law—that Defendant's calling equipment lacks the capacity to autodial phone numbers.

Nonetheless, on the basis of the pleadings and the factual allegations in Plaintiff's Complaint—taken as true and construed in the light most favorable to Plaintiff as they must be for purposes of this Motion—Plaintiff's Complaint meets the pleading requirements of Rule 8 and Rule 12 and sufficiently alleges that Defendant sent the text messages at issue using an ATDS. Defendant has failed to show that it is entitled to judgment as a matter for law and Defendant's Motion should therefore be denied.

## II.   FACTUAL BACKGROUND

Defendant is an international technology company that provides a software application ("app") for smart-phones. (Compl., ¶¶ 8-9). Defendant's app functions like a taxi-style transportation service, connecting automobile drivers with passengers who are seeking transportation. (*Id.*). Defendant markets and promotes its products and services to consumers

through, among other things, SMS text messages sent to individuals' cellphones. (*See id.* ¶¶ 9-20). As part of these marketing efforts, Defendant sends text messages *en masse* to both current and potential drivers, passengers, and even those who have no connection to Defendant at all, like Plaintiff. (*See id.*).[1]

On June 14, 2015, Plaintiff received two unsolicited text message calls from Defendant. (*Id.* ¶ 18). The script of the messages was identical, and Plaintiff received them on her phone simultaneously. (*Id.*). Plaintiff continued to receive text messages from Defendant over the course of several weeks. (*Id.* ¶¶ 18-20). For instance, on July 18 she received another message, and on August 2 she received six additional messages. (*Id.* ¶ 20). All of the messages were sent from the same telephone number. (*Id.* ¶¶ 18-20).

Despite receiving these text messages from Defendant, Plaintiff has no relationship with Defendant whatsoever—Plaintiff has never been an Uber driver or passenger and has never attempted to use Defendant's smartphone app. (*Id.* ¶¶ 21-22). The messages Plaintiff received were patently generic and impersonal, based on a predefined script that Defendant also uses to send other text messages *en masse* to promote its smartphone app. (*See id.* ¶¶ 18-19). The contents of the messages Plaintiff received did not contain Plaintiff's name. (*Id.*). Nor did they contain her phone number. (*Id.*). The messages did identify the sender's telephone number, indicating that it was "(469) 275-4970," which is a specialized telephone number that Defendant or its agents utilize in conjunction with automated dialing equipment for the transmission of text messages *en masse*. (*Id.* ¶¶ 18, 32).

## III.   <u>PROCEDURAL HISTORY</u>

Plaintiff filed her Complaint on August 7, 2015. (Dkt. 1). Defendant filed its Answer on

---

[1] *See infra* notes 9-10.

October 5, 2015 without filing a pre-answer dispositive motion. (Dkt. 7). On October 16, 2015, before any discovery was exchanged, however, Defendant moved to stay all proceedings. (Dkt. 11). After the Court denied Defendant's motion to stay (Dkt. 17), Plaintiff propounded discovery requests. Despite providing written responses to Plaintiff's discovery requests in February 2016, Defendant has yet to produce any documents thus far. No oral discovery has taken place, and discovery is currently stayed pending the outcome of Defendant's Motion for Judgment. (Dkt. 54).

## IV.    LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings "deals only with questions of law," not factual disputes. *Friedman v. Washburn Co.*, 145 F.2d 715, 717 (7th Cir. 1944); *Assoc. Indem. Corp. v. Culligan Int'l Co.*, No. 12 C 3935, 2012 WL 4174999, at *1 (N.D. Ill. Sept. 18, 2012). In reviewing a Rule 12(c) motion, courts generally employ a standard of review similar to the one applied to a Rule 12(b)(6) motion to dismiss. *Pisciotta v. Old Nat'l Bank Corp.*, 499 F.3d 629, 633 (7th Cir. 2007). As with Rule 12(b)(6) motions, courts "take the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.*; *Spiegel v. Carlson*, No. 1:15-cv-01809, 2016 WL 5477529, at *3 (N.D. Ill. Sept. 29, 2016) (stating that the plaintiff's allegations must be taken as true "even if they are 'doubtful in fact'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

To survive a Rule 12(c) motion, a complaint need only meet the pleading requirements of Rule 8 and Rule 12(b)(6), meaning that "the complaint's factual allegations need only 'be enough to raise a right to relief above the speculative level.'" *Spiegel*, 2016 WL 5477529, at *3 (quoting *Pisciotta*, 499 F.3d at 633)). Accordingly, "[a] motion for judgment on the pleadings should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *U.S. Bank Nat'l Assoc. v. JKM Mundelein LLC*, No. 14 C 10048, 2015

WL 2259474, at *3 (N.D. Ill. May 12, 2015) (citation omitted). And because a Rule 12(c) motion only addresses legal issues and not factual ones, the motion "will not be granted unless no genuine issues of fact remain to be resolved and unless the movant is entitled to judgment as a matter of law." *Illinois Tool Works Inc. v. Home Indem. Co.*, 998 F. Supp. 868, 871 (N.D. Ill. 1998); *Friedman*, 145 F.2d at 717.

## V.    ARGUMENT

### A.    Defendant's Motion Relies On An Incorrect Definition Of ATDS.

The primary defect in Uber's Motion is its reliance on an incorrect definition of ATDS and, as a result, an incorrect application of the law. Under the correct definition of ATDS, Plaintiff's Complaint sufficiently alleges that Defendant's text messaging equipment constitutes an ATDS, and Defendant's Motion should therefore be denied. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA delegates broad authority to the FCC to prescribe regulations and implement the provisions of the TCPA.[2] *Id.* § 227(b)(2); *Johnson v. Yahoo!, Inc.* Nos. 14 CV 2028, 14 CV 2753, 2014 WL 7005102, at *3 (N.D. Ill. Dec. 11, 2014). Pursuant to its regulatory authority, the FCC has issued a number of orders interpreting and applying the TCPA's definition of ATDS. *See, e.g., Norman v. Complete Payment Recovery Servs., Inc.*, No. 13 C 8274, 2014 WL 7261010, at *2 (N.D. Ill. Dec. 14, 2014) (observing that "[t]he [FCC] has adopted a broad definition for devices that qualify as an ATDS under the TCPA"). As explained below, the FCC's

---

[2] Congress gave the FCC broad authority to interpret and administer the TCPA. In addition to the FCC's general authority to "make such rules and regulations[] and issue such orders" as necessary to carry out its functions, 47 U.S.C. § 154(i), and its authority to "prescribe such rules and regulations as may be necessary in the public interest" to regulate use of the telephone network as common carriage, *id.* § 201(b), Congress specifically directed the FCC to "prescribe regulations to implement" the restrictions on autodialed and prerecorded calls, *id.* § 227(b)(2).

orders are binding on this Court and warrant denying Defendant's Motion.

### i. The FCC has interpreted the statutory definition of ATDS to encompass Defendant's text messaging system.

The FCC's orders and implementing regulations have broadly interpreted the TCPA's definition of "ATDS" to include the text messaging equipment that Defendant used to send the messages at issue in this case. Throughout its various TCPA orders, the FCC has consistently emphasized the TCPA's use of the term "capacity." *See* 47 C.F.R. § 64.1200; 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the *capacity*" to autodial phone numbers (emphasis added)). The FCC has observed that Congress used the broad term "capacity" in order to extend the TCPA's protections to new and emerging calling technologies and "to ensure that the [TCPA's] prohibition on autodialed calls not be circumvented." 2003 FCC Order, ¶ 133.[3]

For instance, in a 2003 order, the FCC explained that "in order to be considered an 'automatic telephone dialing system,' the equipment need only have the '*capacity* to store or produce telephone numbers.'" *Id.* ¶ 132 (emphasis in original). Under, the FCC's 2003 Order, ATDSs are not limited to just those systems that *actually* store or generate random or sequential phone numbers. Rather, "[t]he basic function of [an ATDS]," is simply "the *capacity* to dial numbers without human intervention." *Id.* Thus, according to the FCC, "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." 2015 FCC Order, ¶ 16[4] (discussing the 2003 FCC Order). This conclusion, the FCC has said, flows

---

[3] *Report & Order, In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003) ("2003 FCC Order") (relevant excerpts attached hereto as <u>Exhibit B</u>).
[4] *Declaratory Ruling & Order, In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 FCC Order") (relevant excerpts attached hereto as <u>Exhibit C</u>).

from the TCPA's legislative history and Congress's recognition "that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies." 2003 FCC Order, ¶ 132.

In 2008, the FCC issued an order reiterating the importance of a calling system's "capacity" in determining whether it qualifies as an ATDS. 2008 FCC Order ¶ 13[5] ("the basic function of [an ATDS] ha[s] not changed—the capacity to dial numbers without human intervention."); *Id.* ¶ 7 n.23. Most recently, in 2015, the FCC again affirmed its prior position on capacity, stating that:

> [T]he TCPA's use of "capacity" does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. We agree that Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008 . . . . Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA.

2015 FCC Order, ¶ 15 (internal citations omitted).[6] By its 2003, 2008, and 2015 Orders, the FCC has effectively adopted a "capacity standard" that governs all ATDS issues.

Courts in this District have acknowledged that the FCC's guidance as to the definitions of "ATDS" and "capacity" is controlling in TCPA cases like this one. "Under the FCC's controlling interpretation, the pivotal inquiry is whether the dialing system had the 'capacity' to dial numbers automatically, regardless of whether the calls were made manually or using the system's autodialer or predictive dialer features." *Espejo*, 2016 WL 6037625, at *5; *see also Yahoo!*, 2014 WL 7005102, at *3; *Sterk v. Path, Inc.* 46 F. Supp. 3d 813, 819 (N.D. Ill. 2014); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 1555576, at *5 (N.D. Ill. April 18, 2016).

Under the FCC's capacity standard and Northern District precedent, Defendant is wrong to suggest that the ATDS issue here revolves around whether its calling system may sometimes send messages that are "targeted to a specific phone number." (Mot. for Judgment, at 3). Rather,

---

[5] *Declaratory Ruling, In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 (2008) ("2008 FCC Order") (attached hereto as Exhibit D).
[6] The FCC's 2015 Order is currently being reviewed by the D.C. Circuit Court of Appeals in an appeal brought by various companies in the teleservices industry. *ACA Internat'l v. FCC*, No. 15-1211 (D.C. Cir.).

the real issue is whether the system that Defendant uses to send messages is a system that has the *capacity* to autodial phone numbers. *Espejo*, 2016 WL 6037625, at *5. As explained above, the ultimate answer to this question will depend on highly factual inquires and discovery regarding the hardware and software that comprise Uber's calling system. *See* 2015 FCC Order, ¶ 16 ("the [FCC] has found that a piece of equipment can possess the requisite 'capacity' to satisfy the statutory definition of 'autodialer' even if, for example, it requires the addition of software to actually perform the functions described in the definition"). For this reason, these questions are best left for the summary judgment stage, following an opportunity to conduct discovery. *See CarGurus*, 2016 WL 4709077, at *4. Nonetheless, at this stage of the case, Plaintiff has met the requirements of Rules 8 and 12 and plausibly alleged that Defendant's text messaging equipment has the capacity to autodial numbers under the FCC's and Northern District's capacity standard.

### ii.    Under the Hobbs Act, the FCC's definition of ATDS is binding on this Court, and Defendant may not ignore or disregard FCC authority.

Uber's Motion for Judgment improperly attempts to sidestep the FCC's orders implementing the TCPA. But Uber may not make arguments that ignore the FCC's statements on capacity, because federal district courts are bound by final FCC orders. Under the Hobbs Act, Congress vested the Federal Circuit Courts of Appeals with the exclusive jurisdiction "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" all final FCC orders. 28 U.S.C. § 2342(1).[7] As such, a litigant cannot ask a district court to ignore or disagree with one of the FCC's orders without running afoul of the Hobbs Act's jurisdictional bar. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) (collecting cases).

Because the Hobbs Act prohibits district courts from ignoring or disregarding final FCC

---

[7] Litigants who wish to challenge the FCC's final orders may not do so in federal district court, but instead must follow a specific procedural path that involves petitioning the FCC for reconsideration and then appealing to the D.C. Circuit Court of Appeals. *See* 47 U.S.C. § 402.

- 10 -

orders, district courts "must apply any final FCC order that governs the matter at issue." *Aranda*, 2016 WL 1555576, at *10 n.2 (citing *CE Design*, 606 F.3d at 450). Therefore, in TCPA cases, district courts are "bound by the FCC's orders" interpreting and implementing the TCPA, "which are final and controlling." *See, e.g., Sterk*, 46 F. Supp. 3d at 819. This necessarily includes the FCC's guidance regarding the definitions of "ATDS" and "capacity," discussed above. *See, e.g., Espejo*, 2016 WL 6037625, at *5; *Yahoo!*, 2014 WL 7005102, at *3 ("the TCPA and Hobbs Act bind [this court] to the FCC's interpretation" of capacity and ATDS).

The recent decision in *Espejo*, 2016 WL 6037625, at *5, underscores the Northern District's adherence to FCC guidance regarding the application of a capacity standard to ATDS issues. The *Espejo* court rejected the defendant's argument that the court should disregard the FCC's orders, observing that such an argument is contrary to the Hobbs Act and Seventh Circuit precedent and is "perilously close to violating Fed. R. Civ. P. 11." *Id.* Therefore, the ATDS issue in this case cannot be resolved without application of the capacity standard along with an inquiry into the "potential functionalities" of Defendant's messaging system. 2015 FCC Order, ¶ 16.

> **B.** **The Factual Allegations In The Complaint Establish That Defendant Sent The Text Messages At Issue Using An ATDS.**
>
> > **i.** ***Under the Federal Rules and Northern District case precedent, the factual allegations in the Complaint establish a violation of the TCPA.***

Although Defendant's Motion is styled as a Rule 12(c) motion, Defendant's arguments challenge the sufficiency of Plaintiff's allegations under Rule 12(b)(6). Specifically, Defendant argues that Plaintiff has not pled enough facts to plausibly show that the text messaging system that it uses is an ATDS under the TCPA. (Mot. for Judgment, at 4, 6-7) (citing Fed. R. Civ. P. 12(c), 12(b)(6)). Defendant is wrong, because Plaintiff's Complaint does more than merely parrot the statutory definition of an ATDS; it asserts facts relating to the sending, content, and receipt of

the text messages at issue that, when taken together, plausibly establish that Defendant sent text messages to Plaintiff and the other putative class members using an ATDS.

When bringing a TCPA claim, "Rule 8(a)(2) does not require a TCPA plaintiff to plead every detail about every text message or telephone call placed." *Sojke*, 35 F. Supp. 3d at 1003. This is especially true as to facts "that are wholly within the defendant's knowledge, such as the *type of machine* used for a communication." *Oliver v. DirecTV, LLC*, No. 14-cv-7794, 2015 WL 1727251, at *2 (N.D. Ill. April 13, 2015) (emphasis added). Courts have reasoned that, "in TCPA cases," it is "virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication . . . ." *Torres v. Nat'l Enterprise Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012); *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015) (recognizing that "it is unreasonable to require a TCPA plaintiff to elaborate on the specific technical details of a defendant's alleged ATDS.").

Instead, a TCPA plaintiff can meet his pleading burden by alleging facts about "the circumstances of a call or message contributing to his belief it was . . . delivered via an ATDS." *Sojke*, 35 F. Supp. 3d at 1002. In other words, a TCPA plaintiff can successfully establish the ATDS element of his TCPA claim by simply describing the "messages he received in laymen's terms" or "the circumstances surrounding them[.]" *See Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).[8] For example, in *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009), also a TCPA class action, the court held that the plaintiff sufficiently alleged that he received text messages sent by an ATDS where he asserted that the contents of the defendant's text message "clearly suggest[ed] that it

---

[8] If the opposite were true, it would be virtually impossible to assert a claim for violating the TCPA. *See Torres*, 2012 WL 3245520, at *3.

[wa]s from an institutional sender without any personalization." *Id.* The court also emphasized allegations that the plaintiff had no previous connection with the defendant, which supported the inference that the messages were sent as part of an automated messaging program. *Id.*

The *Abbas* court ultimately held that these allegations were sufficient to "flesh out" the plaintiff's assertion that the defendant had sent him messages using an ATDS. *Id.* Other courts in this District have reached the same conclusion on even sparser allegations. *See, e.g., Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010) (holding that the plaintiff adequately alleged a TCPA violation where the complaint stated that the defendant used "equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator"); *Sterk v. Path, Inc.*, No. 13 C 2330, 2013 WL 5460813, at *2 (N.D. Ill. Sept. 26, 2013) ("[The plaintiff] specifically alleges in his complaint that [defendant] used equipment that 'had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator' to send the Message . . . to other individuals. [The plaintiff] has thus alleged facts that would suggest that [defendant] used an [ATDS].").

Here, as in cases cited above, Plaintiff specifically asserts that Defendant sent text messages using equipment that constitutes an ATDS under the TCPA. (Compl. ¶ 31). The Complaint states that Defendant "made unsolicited text calls to the cellular telephones of Plaintiff and the other members of the Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention." (*Id.*). Moreover, the Complaint does more than merely "parrot" the statutory definition of ATDS—it also includes independent facts about the sending, receipt, and content of the text messages.

For instance, Plaintiff alleges that she received numerous messages over the course of

- 13 -

multiple weeks, and that some of these messages were received in pairs, simultaneously. (*Id.* ¶¶ 18-20). Plaintiff's Complaint also contains allegations about the content of Defendant's messages. The Complaint reproduces the full text of two of the messages that Defendant sent, showing their scripts to be generic and impersonalized. (*Id.* ¶¶ 18-19); *see Johansen*, 2012 WL 6590551, at *3 (the "generic content of the message [a plaintiff] received" can raise "a reasonable expectation that discovery will reveal evidence of the [use of an ATDS].")). Nothing about the text messages sent to Plaintiff indicates that they were actually targeted to, or intended for, her or anyone else in particular. None of the messages contain a name, phone number, or any other personalized information. That each message may have contained a verification code does not contradict these assertions. At this point in this litigation, there is no basis to assume that the verification code in the messages was anything other than a number randomly and artificially generated by Uber's messaging system—further supporting the conclusion that the text messages themselves were generated automatically.

Indeed, the text messages identified in the Complaint could not have been intended solely or specifically for Plaintiff; Plaintiff has never used Defendant's smartphone app, has no connection with Defendant, and has no interest in being an Uber driver or passenger or in downloading the Uber smartphone app, (Compl., ¶¶ 21-22). *See Sojke*, 35 F. Supp. 3d at 1002 (holding that the "generic content" and "impersonal" nature of the messages raised a reasonable inference that they were sent via an ATDS); *Abbas*, 2009 WL 4884471, at *3. These additional facts further suggest that Defendant sends messages randomly or *en masse* using an ATDS, or at the very least, that Defendant's automated system lacks processes to ensure that automated messages reach the individuals for whom they are intended. *See id.*

Plaintiff's Complaint also asserts that Defendant sent text messages using a specialized

mobile phone number, which she identifies in the Complaint. (*Id.* ¶ 18). This phone number is "utilized by Defendant and its agents" and enabled "the transmission of text messages en masse," including the text messages reproduced in the Complaint. (*Id.*). Plaintiff further alleges that Defendant used this specialized phone number in conjunction with automated dialing equipment to send thousands, if not millions of text messages to Plaintiff and the other putative class members. (*Id.* ¶¶ 18, 31-32). Discovery will reveal records showing that Defendant licensed this number and will confirm that thousands, if not millions, of messages were sent from the same number.

These facts are legally significant. Where text messages are sent "en masse," it "plausibly suggest[s] that [the d]efendant used an automatic telephone dialing system." *Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 WL 5386089, at *2 (N.D. Ill. Oct. 30, 2012). Allegations that a defendant made calls "en masse" go beyond a "mere recital of the cause of action." *Salam v. Lifewatch, Inc.*, No. 13 CV 9305, 2014 WL 4960947, at *2 (N.D. Ill. Sept. 22, 2014). As the FCC has long held, one of "the basic functions" of an ATDS is "to 'dial thousands of numbers in a short period of time.'" 2015 FCC Order, ¶ 17. Plaintiff's allegations thus indicate that Defendant used automated dialing equipment to send text messages *en masse* to Plaintiff and the other putative class members. These allegations, which should be accepted as true, are sufficient to meet the TCPA's capacity standard, and nothing further is required at the pleading stage.

### ii. *Defendant's Motion for Judgment fails to demonstrate that Plaintiff's ATDS allegations are deficient.*

Defendant elides the independent facts discussed above, and instead argues that Plaintiff's ATDS allegations are deficient because she "alleges no facts beyond the mere statutory definition of an ATDS in her Complaint." (Mot. for Judgment, at 6). However, this argument is contrary to Plaintiff's well-pled allegations. As explained above, Plaintiff's Complaint contains allegations of fact that are independent of the elements of her TCPA claim, and which support the

plausible inference that Defendant used calling equipment that meets the FCC's capacity standard and thus constitutes an ATDS.

The cases that Defendant string-cites in its Motion are readily distinguishable and therefore do not justify judgment in Defendant's favor here. For example, Defendant relies in part on *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704 (N.D. Ill. July 9, 2015), in support of its argument that Plaintiff's ATDS allegations are insufficient. However, *Martin* involved claims stemming from telephone calls, not automated text messages, so the court never addressed questions as to whether the defendant had used a specialized phone number to send automated text messages *en masse*. *Id.* at *1. Further, the *Martin* plaintiff apparently spoke to a live person and hung up his phone as soon as he answered the defendant's calls. *Id.* at *2. So the plaintiff made no allegations about the content of any scripted messages he received. *Id.*

Defendant's reliance on *Oliver*, 2015 WL 1727251, at *3, is likewise misplaced. In *Oliver*, the "[p]laintiffs d[id] not allege that [the d]efendant placed a large number of calls to [the plaintiff] or sent [the plaintiff] generic advertisements." *Id.* The exact opposite is the case here. Plaintiff received numerous unsolicited messages containing generic impersonal scripts, as did the putative class members. (Compl., ¶¶ 18-20, 31). If anything, the cases Defendant cites actually martial in favor of denying Defendant's Motion, as Plaintiff's Complaint contains the necessary allegations that the dismissed complaints lacked.

Most importantly, Defendant's Motion fails because Plaintiff's allegations as to Defendant's use of an ATDS are assertions of fact—not legal conclusions. They are therefore entitled to the presumption of truth, and must be construed in the light most favorable the Plaintiff at this stage of the case. *Citadel Grp. Ltd. v. Washington Regional Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). Taken together, these allegations are sufficient for this Court to infer that the

equipment Defendant used to send text messages to Plaintiff and other putative Class members has the capacity to autodial telephone numbers and is thus an ATDS. Discovery will corroborate these allegations. *Twombly*, 550 U.S. at 556 (a plaintiff only needs to allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" that the defendant violated the TCPA). Defendant is free to argue on summary judgment, and after at least some discovery, that its system is not an ATDS, but judgment on the pleadings at this stage of the litigation would be inappropriately premature.

### C. Defendant's Theory That The Text Messages At Issue Were Somehow "Targeted" Does Not Entitle Defendant To Judgment As A Matter Of Law.

Defendant's alternative argument is that the messages Plaintiff received were somehow "targeted" to a specific person and the "product of human intervention," and that this entitles Defendant to judgment as a matter of law. This argument is deficient for the same reasons as Defendant's other arguments and should be rejected here. First, it fails to account for the capacity standard articulated by the FCC and courts in this District. Under the capacity standard, even if there is some possibility that a text message was somehow "targeted," that does not preclude a finding that the *system* used to send that text message is an ATDS if that system had the *capacity* to autodial phone numbers without human intervention. *Espejo*, 2016 WL 6037625, at *5. Second, several courts in the Northern District have recently considered these same arguments on facts analogous to the ones here and rejected such challenges as either improper, premature, or both.

In *DraftKings*, 2016 WL 3227299, at *3, the plaintiff alleged that he received an unsolicited, automated text message from the defendant that invited him to visit the defendant's website. The script of that text message read:

> from djjg11@yahoo.com: Come
> play DraftKings with me. Use
> my link and we'll both get a

bonus http://www.draftkings.com/r/
GERONIMO11

*Id.* at *1. As here, the *DraftKings* defendant moved to dismiss, arguing that the plaintiff's complaint failed to establish that the message was sent using an ATDS because the text of the message demonstrated that it was "personally sent by an individual." *Id.* at *4. The defendant asserted that "the text message shows on its face that one of [the plaintiff's] friends or acquaintances with the email address 'djjg11@yahoo.com' sent the message using DraftKings's in-phone application, inviting [plaintiff] to play fantasy sports." *Id.* at *3.

The *DraftKings* court rejected the defendant's arguments, holding that "an alternative explanation for the facts alleged in the complaint is insufficient to demonstrate that the complaint fails to plausibly suggest a right to relief." *Id.* at *3. At the pleadings stage, the requirement that the plaintiff's complaint plausibly establish a right to relief "does not imply that the district court should decide whose version to believe, or which version is more likely than not . . . it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Id.* (quoting *Swanson*, 614 F.3d at 404).

While the *DraftKings* court acknowledged that the defendant's theory of why the plaintiff received the message was possible, the court held that defendant's theory did not undercut the other allegations in the plaintiff's complaint; nor did it make the plaintiff's assertions any less plausible. *Id.* For example, the court emphasized allegations that the defendant had sent messages "*en masse* to thousands of wireless telephone numbers, which must be taken as true [and] points toward use of an ATDS." *Id.* at *4 (emphasis in original). Applying the FCC's capacity standard, the court ultimately concluded that the plaintiff's allegations "taken together, are sufficient to allow the Court to reasonably infer that [the defendant] sent [the plaintiff] a text message using

equipment with some automated capacity." *Id.* at *5.

Another court in this District reached the same result in *CarGurus*, 2016 WL 4709077, at *1, on facts even more indicative of targeting and human intervention. In *CarGurus*, the text message sent to the plaintiff read:

> CarGurus Listing
> Request. 2006 Jaguar
> XK-Series XK8 Convertible– $16,595
> (Fair Deal): http:// cargur.us/3K5kx

*Id.* The defendant moved to dismiss under Rule 12(b)(6) and argued, as Defendant does here, that the message was prompted by an individual person. *Id.* Specifically, the defendant contended that its messaging system "allows individual users to have [website] listings texted to their cell phones" and that "a user mistakenly transposed two digits in her mobile number, accidentally sending the message to [plaintiff] instead." *Id.* at *2.

Again, the court rejected the defendant's arguments and its attempt to rely on an alternative explanation of the events described in the plaintiff's complaint. To state a claim for relief, the court said, the plaintiff need not "include[] allegations in her complaint to demonstrate that [defendant], and not another website user, sent her the text message." *Id.* ("[defendant] asks too much of [plaintiff] at the pleading stage, where all [she] must allege is a plausible right to relief"). The court then applied the capacity standard to the plaintiff's allegations and found that they met Rule 12(b)(6)'s plausibility requirement. *Id.* The court noted that the plaintiff's complaint reproduced the exact language of a text message she had received and contained allegations that the defendant sent similar messages to the other putative class members. *Id.* Thus, the plaintiff's complaint contained "sufficient factual allegations to suggest an ATDS was used to send the text message" at issue. *Id.* at *4.

Notwithstanding case precedent in this District, Defendant cites several out-of-circuit cases

- 19 -

from California district courts, which it contends should control here. (*See* Mot. for Judgment, at 8-13). In particular, Defendant relies heavily on *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016) and *Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016). As an initial matter, however, these rulings are district court decisions from outside the Seventh Circuit and they are therefore not authoritative. *St. Paul Surplus Lines Ins. Co. v. Diversified Athletic Servs.*, 707 F. Supp. 1506, 1515 (N.D. Ill. 1989) ("a decision of a district court in another circuit, is not binding on this court."). Further, the capacity inquiry is a case-specific inquiry that ultimately depends on the particular calling or messaging system at issue. *CarGurus*, 2016 WL 4709077, **3-4; 2015 FCC Order, ¶ 17. As such, a court's holding that Facebook's or Stripe's messaging system does not have the capacity to autodial phone numbers would not indicate that Defendant's messaging system lacks that capacity.

Indeed, Uber's messaging system is far more vast than the ones at issue in *Duguid* or *Weisberg*. Both of those cases involved only one type of text message traffic. In *Duguid*, messages were only sent as account alerts when someone tried to gain unauthorized access to a Facebook account. 2016 WL 1169365, at *1. In *Weisberg*, messages were only sent for payment processing. 2016 WL 3971296, at *1. Conversely, here, Uber sends text messages for numerous purposes to consumers all across the country, as demonstrated by the large number of TCPA lawsuits that have been filed against Uber in just the last two years.[9] Uber's text message traffic includes messages

---

[9] *See, e.g., Bank v. Uber Technologies, Inc.*, No. 15-cv-04858 (E.D.N.Y) (closed); *Calmese v. Uber Technologies, Inc.*, No. 16-cv-06277 (N.D. Ill.); *Cubria v. Uber Technologies, Inc.*, 16-cv-00544 (W.D. Tex.); *Charles Christopher Johnson v. Uber Technologies, Inc.*, 16-cv-05468 (N.D. Ill.); *Fronda v. Uber Technologies, Inc.*, No. 16-cv-05534 (N.D. Cal.); *Gordon v. Uber Technologies, Inc.*, No. 15-cv-03008 (N.D. Ga.) (closed); *Matthew Johnson v. Uber Technologies, Inc.*, 16-cv-50113 (N.D. Ill.) (closed); *Moore v. Uber Technologies, Inc.*, No. 16-cv-03870 (N.D. Cal.) (closed); *Kafatos v. Uber Technologies, Inc.*, 15-cv-03727 (N.D. Cal.) (closed); *Kolloukian v. Uber Technologies, Inc.*, 15-cv-02856 (C.D. Cal.) (closed);

sent for marketing purposes, messages promoting Uber's goods and services to both users and nonusers, messages for account creation and verification, and even messages for political advocacy.[10] As such, the capacity of Uber's text messaging system is far more extensive than in either *Duguid* or *Weisberg*. In this case, all of Uber's unlawful text messaging traffic is potentially at issue. (*See* Compl., ¶ 23) (proposing a class of "*[a]ll persons . . . who . . . received one or more text message calls from Defendant . . . .*"). Accordingly, the focus of the capacity inquiry should be on the functionality and capacity of Defendant's *overall* system, and not just the messages sent to Plaintiff individually.

Defendant's "human intervention" argument fares no better. In this case, Plaintiff received numerous messages over the course of several weeks, including several at the exact same time and six in the same day. (Compl., ¶¶ 18-20). At the very least, this supports a reasonable inference that these messages were not entirely directed by some unknown individual. Indeed, it is reasonable to infer that someone would not improperly enter his or her own phone number on eight straight occasions. Regardless, the Court should not simply accept Defendant's invitation to speculate as to a narrative that is not fully fleshed out in the pleadings, particularly with respect to highly technical and highly factual considerations such as how a messaging system operates. *See DraftKings*, 2016 WL 3227299, at *3.

Importantly, Defendant's human intervention argument, like Defendant's other arguments, also misapplies the capacity standard. Under the capacity standard, the mere presence

---

*Lainer v. Uber Technologies, Inc.*, 15-cv-09925 (C.D. Cal.) (closed); *Lathrop et al. v. Uber Technologies, Inc.*, 14-cv-05678 (N.D. Cal.); *Noorparvar v. Uber Technologies, Inc.*, No. 14-cv-01771 (C.D. Cal.); *Sabatino v. Uber Technologies, Inc.*, No. 15-cv-00363 (N.D. Cal.) (closed); *Shaver v. Uber Technologies, Inc.*, 16-cv-22067 (S.D. Fla.).

[10] *See id.* The Court may take judicial notice of the pleadings filed in these other lawsuits. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("It is appropriate to accord limited corroborative weigh to allegations in another's lawsuit.").

of some human activity does not preclude a finding that the equipment is an ATDS. *See Yahoo!*, 2014 WL 7005102, at *5 ("Every ATDS requires some initial act of human agency—be it turning on the machine or pressing 'Go.' It does not follow, however, that every subsequent call the machine dials—or message it sends—is a product of that human intervention."). Further, because calling equipment need only have the capacity to autodial numbers, equipment that has the capacity to function as an ATDS is subject to the TCPA even if it is not being presently used in that manner, and even if it does not have the present ability to randomly or sequentially dial numbers without the addition of some software. The fact that Defendant's calling equipment has the capacity to send text message spam to thousands, if not millions, of telephone numbers in an instant makes it an ATDS for purposes of the TCPA.

Even if Defendant were correct that there is some ambiguity as to the human intervention issue, that would not be a basis for granting its Motion. At this stage, any ambiguity and all reasonable inferences must be construed in Plaintiff's favor. For this Court to grant Defendant's Motion on the basis of human intervention, it would have to hold—as a matter of law and without any discovery whatsoever—that defendant's equipment completely lacks the capacity to autodial phone numbers without human intervention. *Id.* (holding that "some" evidence that the defendant's equipment had the capacity to autodial phone numbers was enough to defeat the defendant's motion for summary judgment).

Ultimately, however, it would be premature at this stage of the case to rule on the factual question of whether any human intervention was involved in sending the messages at issue. "How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." 2015 FCC Order, ¶ 17. For this

reason, questions concerning human intervention and whether some unknown individual directed the text messages at issue to Plaintiff's cellphone are questions "best resolved through discovery." *CarGurus*, 2016 WL 4709077, at *3. Accordingly, this argument is more appropriate for a motion for summary judgment, after there has been an opportunity for discovery into how Defendant's equipment functions. *Id.* at *4.

In short, Defendant's ATDS arguments embroil this Court in a premature factual dispute. Defendant has failed to demonstrate that there are no genuine factual issues and that it is entitled to judgment as a matter of law. When a court considers a 12(c) motion, it applies the law to the pleadings, and does not weigh one party's description of the facts against the other party's. It is not an opportunity for a defendant to tell its own story and introduce its own theory of the case in the absence of any discovery or evidence. *See Yeary v. Innerworkings, Inc.*, 252 F.R.D. 420, 421 (N.D. Ill. 2008) (holding that "a question of fact [] is not appropriate for resolution under Rule 12(c)").

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion for Judgment on the Pleadings be denied in its entirety.[11]

---

[11] In the event that the Court finds that Plaintiff's claims are in any way insufficient under Fed. R. Civ. P. 8 or 12, Plaintiff respectfully requests leave to amend to add further detail or otherwise take steps to cure any defects found by this Court. Courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Zwick v. Inteliquent, Inc.*, 83 F.Supp.3d 804, 810-11 (N.D. Ill. 2015) (granting the plaintiff leave to amend to cure the deficiencies in its complaint).

Dated: November 22, 2016                Respectfully submitted,

MARIA VERGARA, individually and on
behalf of a class of similarly situated
individuals

By: /s/ *Paul T. Geske*
One of her attorneys

Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
pgeske@mcgpc.com

*Attorneys for Plaintiff and the putative class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2016, I electronically filed the foregoing *Plaintiff's*

*Opposition to Defendant's Motion for Judgment on the Pleadings* with the Clerk of the Court using

the CM/ECF system. A copy of said document will be electronically transmitted to the following

counsel of record:

David J. Fioccola
Adam J. Hunt
Tiffani B. Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
dfioccola@mofo.com
adamhunt@mofo.com
tfigueroa@mofo.com

John C. Ellis
ELLIS LEGAL P.C.
250 South Wacker Drive
Suite 600
Chicago, IL 60606
jellis@ellislegal.com

/s/ *Paul T. Geske*