IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA VERGARA, | |
| Plaintiff, | No. 1:15-cv-06942 |
| v. | Honorable Thomas M. Durkin |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

**UBER TECHNOLOGIES, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

David J. Fioccola
Adam J. Hunt
Tiffani B. Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 468-8000

John C. Ellis
ELLIS LEGAL P.C.
250 S. Wacker Dr., Suite 600
Chicago, Illinois 60606
Tel: (312) 976-7629

*Attorneys for Defendant Uber Technologies, Inc.*

ny-1263514

-i-

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I. CONTRARY TO PLAINTIFF'S ARGUMENT, HUMAN INTERVENTION *IS* THE STANDARD FOR DETERMINING WHETHER A MESSAGE WAS AUTODIALED.................................................................................................... 3

II. PLAINTIFF'S SINGLE, CONCLUSORY ALLEGATION THAT AN ATDS WAS USED IS INSUFFICIENT TO STATE A CLAIM AS A MATTER OF LAW BASED ON WELL-ESTABLISHED PRECEDENT IN THIS CIRCUIT. ............ 6

III. BASED ON PLAINTIFF'S OWN ALLEGATIONS CONCERNING THE NATURE OF THE VERIFICATION TEXTS AT ISSUE, THE ONLY PLAUSIBLE INFERENCE IS THAT THE TEXT MESSAGES AT ISSUE WERE TRIGGERED BY HUMAN INTERVENTION AND WERE NOT SENT USING AN ATDS. ................................................................................................ 7

IV. PLAINTIFF CANNOT AVOID DISMISSAL BY REWRITING HER COMPLAINT IN RESPONSE TO THIS MOTION, AND HER ARGUMENTS FAIL TO SAVE HER CLAIM IN ANY EVENT. .......................................................... 11

CONCLUSION ............................................................................................................................ 15


# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbas v. Selling Source, LLC*,
　No. 09 CV 3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ..........................................6, 10

*Derby v. AOL, Inc.*,
　No. 15-CV-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015)...........................14, 15

*Derby v. AOL, Inc.*,
　No. 5:15-CV-00452-RMW, 2015 WL 5316403 (N.D. Cal. Sept. 11, 2015)...........................14

*Duguid v. Facebook, Inc.*,
　No. 15-CV-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016)..........1, 5, 8, 10, 13, 14

*Espejo v. Santander Consumer USA, Inc.*,
　No. 11 C 8987, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016)......................................................5

*Flores v. Adir Int'l, LLC*,
　No. CV1500076ABPLAX, 2015 WL 4340020 (C.D. Cal. July 15, 2015) ........................12, 14

*Glauser v. GroupMe, Inc.*,
　No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015)..............................................14

*Hanley v. Green Tree Servicing, LLC*,
　934 F. Supp. 2d 977 (N.D. Ill. 2013) .........................................................................................7

*Izsak v. Draftkings, Inc.*,
　No. 14-CV-07952, 2016 WL 3227299 (N.D. Ill. June 13, 2016).....................................4, 6, 9

*Johansen v. Vivant, Inc.*,
　No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ...................................................7

*Johnson v. Yahoo!, Inc.*,
　No. 14 CV 2028, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014) .................................................5

*Levitan v. McCoy*,
　No. 00 C 5096, 2001 WL 1117279 (N.D. Ill. Sept. 21, 2001)..................................................11

*Lozano v. Twentieth Century Fox Film Corp.*,
　702 F. Supp. 2d 999 (N.D. Ill. 2010) .....................................................................................6, 7

*McKenna v. WhisperText*,
　No. 5:14-CV-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ...........................14, 15

-iii-

*Salam v. Lifewatch, Inc.*
   No. 13 CV 9305, 2014 WL 4960947 (N.D. Ill. Sept. 22, 2014) ..............................................14

*Serban v. CarGurus, Inc.*,
   No. 16 C 2531, 2016 WL 4709077 (N.D. Ill. Sept. 8, 2016) ................................................6, 9

*Sojka v. DirectBuy, Inc.*
   35 F. Supp. 3d 996 (N.D. Ill. 2014) .........................................................................................5

*Sterk v. Path, Inc.*,
   46 F. Supp. 3d 813 (N.D. Ill. 2014), *motion to certify appeal granted*,
   No. 13 CV 2330, 2014 WL 8813657 (N.D. Ill. Aug. 8, 2014) .............................................5, 7

*Sterk v. Path, Inc.*,
   No. 13 C 2330, 2013 WL 5460813 (N.D. Ill. Sept. 26, 2013) ................................................10

*Sterk v. Path, Inc.*,
   No. 13 CV 2330, 2014 WL 8813657 (N.D. Ill. Aug. 8, 2014) .................................................6

*Strickler v. Bijora, Inc.*
   No. 11 CV 3468, 2012 WL 5386089 (N.D. Ill. Oct. 30, 2012) .............................................13

*In re Wade*,
   969 F.2d 241 (7th Cir.1992) ....................................................................................................2

*Weisberg v. Stripe, Inc.*,
   No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) ....................1, 8, 11, 14

**Other Authorities**

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
   18 F.C.C. Rcd. 14014 (2003) ...................................................................................................4

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
   23 F.C.C. Rcd. 559 (2008) ...................................................................................................2, 4

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
   27 F.C.C. Rcd. 15391 (2012) ...................................................................................................4

## **PRELIMINARY STATEMENT**

Plaintiff concedes in her Complaint that the text messages at issue were verification text messages triggered by individuals providing their telephone numbers as part of the Uber account verification process. (Compl. ¶¶ 10, 14.) Because Plaintiff claims that she does not have an Uber account, there is only one plausible conclusion to be drawn from her allegations: the individual who created an Uber account triggered the text messages to Plaintiff's phone by mistakenly inputting Plaintiff's phone number during the account verification process. And as a result of the very nature of these verification texts—which are reactive text messages caused by a user's human intervention, not an automatic telephone dialing system ("ATDS")—there is no valid Telephone Consumer Protection Act ("TCPA") claim here, and Plaintiff's Complaint should be dismissed with prejudice. This case is really that simple.

Uber established in its Motion for Judgment on the Pleadings that Plaintiff failed to plead an essential element of her claim under the TCPA—that the verification text messages she allegedly received were sent from an ATDS. Plaintiff has not, and cannot, plausibly claim that an ATDS was used here because she describes receiving text messages containing unique verification codes that were necessarily sent to an individual to authenticate her account. Plaintiff's own allegations demonstrate as a matter of law that the text messages Plaintiff received were sent as a result of human intervention, which is incompatible with an ATDS. Indeed, following recent decisions dismissing TCPA claims based on this exact fact pattern, Plaintiff's Complaint cannot survive the pleading stage. *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016); *Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016).

In her Opposition, Plaintiff argues that she does not need to allege that the text messages were sent without human intervention, citing an FCC order concerning predictive dialer

-1-

ny-1263514

technology that "predicts" when a telemarketer will be available to connect with a potential customer whose telephone has been automatically dialed. Plaintiff is wrong. Not only does Plaintiff rely on inapposite authority, she completely ignores the FCC's binding decisions holding that a "basic function" of an ATDS is the ability to send communications "without human intervention." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (2008) ("2008 FCC Order"); (*see also* Compl. ¶ 31 (making the conclusory allegation that the text messages were sent "without human intervention")). Further, Plaintiff makes no allegations in her Complaint that even suggests a predictive dialer was used here—nor could she as the verification messages are entirely reactive to users' interaction with Uber.

In any event, Plaintiff concedes—as she must—that she is required to plausibly allege that an ATDS was used here. Plaintiff claims that she has satisfied her burden by: (1) pointing to a single conclusory allegation in her Complaint that simply parrots the TCPA and the FCC's orders; and (2) rewriting her Complaint in opposition to Uber's motion, in hopes that the Court will overlook the specific allegations she has pleaded that contradict any inference that an ATDS was used. But neither tactic is successful here because this Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *In re Wade*, 969 F.2d 241, 250 (7th Cir. 1992) (internal quotation marks and citation omitted).

Plaintiff simply cannot escape the fact that the non-conclusory allegations in her Complaint support only one plausible inference: the text messages that Plaintiff claims to have received were lawful attempts to send unique verification codes to an Uber user to authenticate that user's account. That Plaintiff cannot state a TCPA claim based on these allegations is consistent with Congress's intention not to disrupt communications that are "expected or desired

-2-

ny-1263514

… between businesses and their customers," including messages that "advise a customer (at the telephone number provided by the customer) that an ordered product had arrived, a service was scheduled or performed, or a bill had not been paid." *See* H.R. Rep. No. 102-317 at 17, 102nd Cong. (1st Sess. 1991).

In sum, nothing prohibited Uber from sending reactive verification text messages triggered by users to authenticate their accounts, and there is no TCPA claim here as a result. And given the nature of the verification texts at issue—reactive text messages containing unique verification codes that were triggered by an individual user authenticating an Uber account—neither an amendment to the Complaint nor any amount of discovery will enable Plaintiff to sidestep these facts, which are fatal to her claim.

## ARGUMENT

### I. CONTRARY TO PLAINTIFF'S ARGUMENT, HUMAN INTERVENTION *IS* THE STANDARD FOR DETERMINING WHETHER A MESSAGE WAS AUTODIALED.

As Uber demonstrated in its Motion, Plaintiff's claim to have received unlawful verification text messages is ultimately self-defeating because her own allegations make clear that these individualized messages were targeted to a specific phone number and triggered by a user authenticating his or her Uber account. (*See generally* Mot.) These allegations are directly contradicted by Plaintiff's conclusory claim that an ATDS was used and that the messages were sent "randomly" or "without human intervention." (*Id*).

In an effort to save her claim, Plaintiff argues that allegations demonstrating that the messages were sent randomly without human intervention are not necessary because, according to Plaintiff, an ATDS is simply "a system that has the capacity to autodial phone numbers." (*See, e.g.*, Opp'n at 7, 10, 21 (emphasis omitted).)

-3-

Plaintiff is incorrect. Her "definition" of an ATDS—which appears nowhere in the TCPA or the FCC's orders—ignores the fact that the FCC "has emphasized that [the] definition [of ATDS] covers any equipment that has the specified capacity to generate numbers *and dial them without human intervention.*" *See Declaratory Ruling, In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Order") (emphasis added); 2008 FCC Order at 566("the basic function" of an ATDS is "the capacity to dial numbers *without human intervention*") (emphasis added). Similarly, Plaintiff's own cases acknowledge that the FCC "has instructed that 'the capacity to dial numbers *without human intervention* is the basic function of an [ATDS]'" and that "*the capacity to dial numbers without human intervention is an essential requirement for an ATDS*." *See Izsak v. Draftkings, Inc.*, No. 14-CV-07952, 2016 WL 3227299, at *2 (N.D. Ill. June 13, 2016) (emphasis added) (citations and quotations omitted). Plaintiff's claim fails as a matter of law because she has not pleaded this "essential requirement." (*See generally* Mot. and Section II, *infra*.)

Furthermore, Plaintiff's argument that an ATDS "need only have the 'capacity to store or produce telephone numbers'" as they relate to the text messages at issue here is nothing more than a diversion, as it refers to the wrong standard. (Opp'n at 8.) Plaintiff's argument is based entirely on the FCC's orders concerning "predictive dialers," which "[are] equipment that dials numbers and, when certain software is attached, also assist[] telemarketers in predicting when a sales agent will be available to take calls." (*Id*. at 8 (citing *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091 (2003) ("2003 FCC Order")); *see also* Opp'n Ex. D (highlighting 2008 FCC Order at 563 n.23).)

Yet Plaintiff does not allege—because she cannot—that Uber used a predictive dialer. (*See generally* Compl.). As a result, any argument based on the standard for "predictive dialers,"

-4-

as well as the cases she cites addressing such devices, are irrelevant.[1] *See Duguid*, 2016 WL 1169365, at *6 (rejecting plaintiff's attempt to rely on the 2003 FCC Order on predictive dialers because, as Plaintiff alleges here, the complaint "plainly alleges that the text messages were sent using an ATDS that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.") Furthermore, as discussed in pages 7-12, *infra*, the very nature of the verification texts upon which Plaintiff bases her claim is entirely inconsistent with the use of a predictive dialer because the verification texts were sent to a specific phone number that was both input and triggered by another user, *i.e.* through human intervention.

In any event, Plaintiff's argument about what constitutes an ATDS is beside the point because she has already conceded in her pleading that the use of "a random or sequential number generator without human intervention" is required to establish an essential element of her claim, *i.e.* that an ATDS was used to send the text messages. (*See* Compl. ¶ 31 (alleging that Uber used a device "that had the capacity to store or produce telephone numbers to be called ***using a random or sequential number generator… without human intervention***.") (emphasis added).) Thus, her own pleading belies her argument. And, as Plaintiff's own cases demonstrate, where "it is clear that the transmission [of the messages] involves human intervention," the allegations are incompatible with the TCPA's definition of ATDS. *See Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2014 WL 7005102, at *5 (N.D. Ill. Dec. 11, 2014). As discussed in Section III, *infra*, this is precisely what Plaintiff has alleged in her Complaint and, as a result, she fails to state a TCPA violation.

---

[1] *See Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 WL 6037625, at *4 (N.D. Ill. Oct. 14, 2016) (applying standards for predictive dialers); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819 (N.D. Ill. 2014) (same), *motion to certify appeal granted*, No. 13 CV 2330, 2014 WL 8813657 (N.D. Ill. Aug. 8, 2014). *Sojka v. DirectBuy, Inc.* is inapposite because it concerns provisions of the TCPA governing calls made using prerecorded messages. *See* 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014).

## II. PLAINTIFF'S SINGLE, CONCLUSORY ALLEGATION THAT AN ATDS WAS USED IS INSUFFICIENT TO STATE A CLAIM AS A MATTER OF LAW BASED ON WELL-ESTABLISHED PRECEDENT IN THIS CIRCUIT.

Plaintiff concedes in her Opposition that she makes only a single, conclusory allegation that Uber used an ATDS to send the text messages at issue here. (*See* Opp'n at 13 (citing Compl. ¶ 31 (alleging that "Defendant made unsolicited text calls to a list of wireless telephone numbers . . . using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator")).) Plaintiff also concedes—as she must—that this conclusory allegation concerning an ATDS simply parrots the statutory definition in the TCPA. (*See* Opp'n at 12-13.)

But this is not enough. Fact-deficient, formulaic recitations of the TCPA's statutory language are insufficient to state a claim as a matter of law. Under the overwhelming weight of authority—including the principal cases that Plaintiff cites in her Opposition—"[c]onclusory allegations that the text message was sent using an ATDS [...] do not suffice." *Serban v. CarGurus, Inc.*, No. 16 C 2531, 2016 WL 4709077, at *3 (N.D. Ill. Sept. 8, 2016); *Draftkings*, 2016 WL 3227299, at *3 ("where a fact—here, use of an ATDS—is itself an element of the claim, 'it is not sufficient to recite that fact verbatim without other supporting details'") (quoting *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015)); *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (mere recitation of the statutory definition of an ATDS "is a bare legal conclusion entitled to no weight");[2] (*see also* Mot. at 7-8 (collecting cases).)

---

[2] Plaintiff's reliance on *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) and *Sterk v. Path, Inc.*, No. 13 CV 2330, 2014 WL 8813657 (N.D. Ill. Aug. 8, 2014) is unavailing. Not only are these two cases outliers, they cannot be reconciled with well-established pleading standards and this Circuit's precedent. As the Seventh Circuit has made clear, a plaintiff must do more than "merely parrot the statutory language of the claims that [she is] pleading"; she must also "provid[e] some specific facts to ground those legal claims." *Hanley*

Plaintiff's conclusory allegation that an ATDS was used is insufficient to satisfy even basic notice pleading standards and her case cannot survive the pleading stage based on "only a threadbare, 'formulaic recitation of the elements' of a TCPA cause of action, which is not entitled to an assumption of truth." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (internal citations omitted).

### III.  BASED ON PLAINTIFF'S OWN ALLEGATIONS CONCERNING THE NATURE OF THE VERIFICATION TEXTS AT ISSUE, THE ONLY PLAUSIBLE INFERENCE IS THAT THE TEXT MESSAGES AT ISSUE WERE TRIGGERED BY HUMAN INTERVENTION AND WERE NOT SENT USING AN ATDS.

Although Plaintiff must do more than make a conclusory allegation that an ATDS was used to survive dismissal, her Opposition does not identify any factual allegations in her Complaint supporting such an inference. In fact, the opposite is true: the only plausible inference that can be drawn from the non-conclusory allegations in Plaintiff's Complaint is that the verification text messages at issue were sent to a specific phone number as a result of human intervention. (*See* Mot. at 8-13.)

Because Plaintiff's Opposition plays fast and loose in describing her own pleading, it is important to focus on the actual allegations contained in her Complaint. Plaintiff alleges that "Defendant collects telephone numbers from consumers upon enrolling in Uber and informs such consumers that they can expect to receive text messages at the number provided." (Compl. ¶ 10.) According to Plaintiff, however, "Defendant's customer account creation and administration process lack steps sufficient to confirm that the telephone numbers Defendant

---

*v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). Regardless both *Lonzano* and *Sterk* are factually distinguishable. Unlike the verification texts at issue here, *Lozano* involved a text message containing an advertisement for a movie and the plaintiff alleged that he received additional "'spam' text message advertisements." 702 F. Supp. 2d at 1001. And in *Sterk*, the plaintiff established that the calling system at issue was "comparable to [a] predictive dialer[]," which is not at issue here. 46 F. Supp. 3d at 819.

-7-

receives [] actually belong to the Uber applicants providing them." (*Id*. ¶ 14.) Consistent with the account creation process that Plaintiff describes and her contention that "[m]any of the telephone numbers in Defendant's possession are [] inaccurate" (*id*. ¶ 15), Plaintiff then alleges that she received text messages from Uber providing "*your* Uber account verification number." (*Id*. ¶ 18.) Although Plaintiff alleges that she received multiple messages, she claims that each text message that she received contained "differ[ent] verification numbers" and that the text messages directed the recipient to "[e]nter this [unique number] in our app to confirm *your* Uber account." (*Id*. ¶¶ 18-20 (emphasis added).)

Plaintiff's own allegations concede (Compl. ¶¶ 10, 13-14, 18-19) that the verification text messages that Plaintiff claims to have received are triggered by a user authenticating his or her account. But because these confirmatory texts are triggered by a user seeking to use Uber's services, they are entirely dependent on an Uber user's own human intervention, which defeats any claim that an ATDS was used and dooms Plaintiff's TCPA claim. *See, e.g.*, *Duguid*, 2016 WL 1169365, at *5 (dismissing TCPA claim because the allegations suggested that the text messages at issue were "targeted to specific phone numbers and [were] triggered by attempts to log in to . . . accounts associated with those phone numbers", which is inconsistent with the sort of random or sequential number generation required for an ATDS); *Weisberg*, 2016 WL 3971296, at *3 (dismissing TCPA claim where plaintiff's allegations "suggest[ed] that [defendant's] text messages [were] targeted to specific phone numbers in response to the voluntary release of a user's phone number").

The verification text messages that Plaintiff claims to have received are unlike the promotional messages at issue in *Draftkings* and *CarGurus* and both cases are readily distinguishable.

In *Draftkings*, the court explained that in order to survive a motion to dismiss, "the complaint must include at least some facts to support the conclusion that an ATDS was used." *Draftkings, Inc.*, 2016 WL 3227299, at *3. The court then suggested that to survive dismissal, "a plaintiff could describe the promotional content or the generic, impersonal nature of the text message allegedly sent using an ATDS [or] allege that identical messages were sent to many potential customers at the same time." *Id*. The court then determined that, at the pleading stage, the plaintiff plausibly alleged an ATDS based on allegations that he received a text message inviting him to "play DraftKings" with an unidentified person associated with an unknown e-mail address by clicking a hyperlink in the text message and entering a promotional code. *Id*. at *1, *4. The court reasoned that it was "plausible" that these messages were sent "for marketing purposes," which is consistent with the use of an ATDS. *Id*. at *4. Further, the court found that "also supporting the inference that an ATDS was used is "[plaintiff's] allegation that, upon calling the number from which he received the text message, he heard a prerecorded message" that referred him back to the original promotional text message. *Id*. at *4.

Similarly, in *CarGurus*, the court noted that "[c]onclusory allegations that the text message was sent using an ATDS, without supporting details, do not suffice." *CarGurus*, 2016 WL 4709077, at *4. But the court found that plaintiff had pleaded the requisite supporting details based on allegations that she received "promotional" text messages from an "SMS Shortcode" number (which is a five-digit code, or phone number, used to send and receive text messages, as opposed to a regular 10-digit telephone number) stating "Request. 2006 Jaguar XK-Series XK8 Convertible - $16,595" and providing a link to a website. *Id*. at *1, *4.

Plaintiff, however, does not plead any of the facts that the courts in *DraftKings* and *CarGurus* found sufficient to draw the inference that an ATDS was used. Unlike *DraftKings*,

-9-

Plaintiff does not allege that she received an unsolicited promotional offer to use Uber's services by clicking on a hyperlink and entering a promotional code. Nor does Plaintiff claim that she received an offer to purchase a product via a hyperlink like the plaintiff in *CarGurus*. In fact, Plaintiff does not even allege that the texts were promotional in nature—and, in fact, they were not. Plaintiff also does not allege that the messages at issue here were sent with "SMS Shortcode" (nor can she as she alleges the messages she received were sent from (469) 275-4970 (Compl. ¶ 18).) Nor does she allege that she ever called the number from which the text message was sent, or was ever directed to a prerecorded message referring her back to the original text message.[3]

Finally, Plaintiff's attempts to distinguish the cases in which courts have dismissed similarly deficient allegations fall flat. The court in *Duguid v. Facebook, Inc.* dismissed a nearly identical TCPA claim based on allegations concerning "login notification" texts that were targeted to a specific user's telephone number and triggered by the user's attempt to log in to his or her account. *See* 2016 WL 1169365, at *1, *5. Similarly, the court in *Weisberg v. Stripe, Inc.* dismissed a TCPA claim where, as here, the plaintiff's "allegations suggest that [defendant's] text messages are targeted to specific phone numbers in response to the voluntary release of a user's phone number . . ." 2016 WL 3971296, at *3. These cases are directly on point and support dismissal of Plaintiff's Complaint. (*See* Mot. at 11-13.)

In response, Plaintiff makes only two arguments, both of which are easily dismissed. First, Plaintiff contends that *Duguid* and *Weisberg* are "not authoritative" because they were

---

[3] The additional text message cases Plaintiff cites are similarly distinguishable. *See Abbas*, 2009 WL 4884471, at *3 (finding the plaintiff pleaded use of an ATDS where he alleged, *inter alia*, that the first text he received was sent using SMS shortcode"); *Sterk v. Path, Inc.*, No. 13 C 2330, 2013 WL 5460813, at *2 (N.D. Ill. Sept. 26, 2013) (finding the plaintiff alleged facts suggesting use of an ATDS to send a "promotional message").

issued from United States District Courts outside the Seventh Circuit. Not so. These decisions are just as authoritative as any other District Court decision. *Levitan v. McCoy*, No. 00 C 5096, 2001 WL 1117279, at *3 n.1 (N.D. Ill. Sept. 21, 2001) (while "district judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling," judges "may consider the[ir] 'intrinsic persuasiveness'" and finding an out-of-district case particularly persuasive "[g]iven the similarity of the allegations"). Second, Plaintiff asserts that "Uber's messaging system is far more vast than the ones at issue in *Duguid* or *Weisberg*." (*See* Opp'n at 20-21.) But Plaintiff does not—because she cannot—cite any allegations in her Complaint to support this conclusory assertion. (*See id.*) Rather, Plaintiff claims that the Court can draw an inference in her favor based on the allegations in *other* inapposite complaints that have been filed against Uber, none of which even involve verification text messages. This argument is a non-starter and should be dismissed out of hand.

## IV. PLAINTIFF CANNOT AVOID DISMISSAL BY REWRITING HER COMPLAINT IN RESPONSE TO THIS MOTION, AND HER ARGUMENTS FAIL TO SAVE HER CLAIM IN ANY EVENT.

In an attempt to distract the Court from the specific allegations in her Complaint—which demonstrate that the texts messages at issue were sent to specific numbers as a result of human intervention—Plaintiff contends that the Court can infer that an ATDS was used because: (1) the text messages she received were "generic and impersonal;" (2) Plaintiff received multiple text messages; (3) Uber used a "specialized" phone number to send the text message; and (4) the messages were sent "*en masse*." (Opp'n at 13-15.)

Although none of these assertions can be supported by the allegations in Plaintiff's Complaint, and this Court should not credit Plaintiff's efforts to rewrite her pleading in opposition to Uber's motion, these arguments nevertheless fail to save her TCPA claim:

-11-

ny-1263514

First, Plaintiff's argument that the verification text messages that she received were "generic and impersonal" is contradicted by the actual allegations in her Complaint that each text message she received contained a unique verification code that an Uber user would need to verify his or her account. (Compl. ¶¶ 18-20.) Although Plaintiff contends that the verification code was "generated by Uber's messaging system" (Opp'n at 14), that has nothing to do with whether the text messages were sent to a specific phone number to authenticate the user's account. Further, because Plaintiff claims to have received unique verification codes in each text message, it makes no difference as a matter of law that the messages did not contain other personalized information, such as Plaintiff's name. *See Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX, 2015 WL 4340020, at *3 (C.D. Cal. July 15, 2015) (dismissing complaint and holding that "the fact that none of the text messages Plaintiff received included h[er] name does not mean that they were "generic" and "impersonal.").

Second, Plaintiff does not—because she cannot—cite to any case law supporting her argument that receiving eight text messages, each with a unique verification code, is sufficient to infer that an ATDS was used. (*See generally* Opp'n.)

Third, Plaintiff's conclusory claim that Uber allegedly used a "specialized telephone number" to send the text messages is directly contradicted by the factual allegation that she received the text from a standard U.S. telephone number, "(469) 275-4970." (*See* Compl. ¶ 18.) Regardless, Plaintiff cites no authority to support this argument. (*See* Opp'n at 14-15.)

Finally, Plaintiff's allegation that the text messages were sent "*en masse*" is both conclusory and directly contradicted by her factual allegations. (*See* Compl. ¶¶ 18-20 (alleging that Uber sent text messages containing unique verification codes that were targeted to a specific Uber user seeking to verify his or her account).) Because these confirmatory verification texts

-12-

are triggered by a user authenticating his or her Uber account, and are therefore entirely dependent on an Uber user's own human intervention, these messages are by their very nature not the type of texts that are, or can be, sent *en masse* using an ATDS. To be sure, there is a distinction between generic, promotional texts distributed *en masse* on the one hand and, on the other, reactive texts containing unique user information, sent to a specific telephone number, and triggered by a user seeking to authenticate his or her account. There can be no real dispute that the texts at issue here fall into the latter category, and, as a result, do not constitute a TCPA violation. *See, e.g*. *Duguid*, 2016 WL 1169365, at *6.

Further, there is no merit whatsoever to Plaintiff's suggestion that other courts in this District have relied solely on conclusory claims that text messages were sent "*en masse*" to hold that an ATDS was used. (*See* Opp'n at 15.) Rather, in both of the cases that Plaintiff cites in support of this argument, the plaintiffs alleged additional, specific facts about the content of the messages that suggested the defendant used an ATDS—none of which are present here. For example, in *Strickler v. Bijora, Inc.*, the court held that plaintiff plausibly alleged an ATDS based on allegations that she received messages about the defendant's "property, goods, and/or services" addressed generically to "'Ladies' (not specific individuals)" and advertising "'Blowout!' sales, fashion shows, and parties." No. 11 CV 3468, 2012 WL 5386089, at *2 (N.D. Ill. Oct. 30, 2012). Similarly, in *Salam v. Lifewatch, Inc.*, the court concluded that plaintiff plausibly alleged an ATDS based on allegations that he received a call playing a "prerecorded message and/or artificial voice stat[ing] that the call was regarding the sale of medical alert devices," and ask[ing] him to "push ' 1' to speak to a representative." No. 13 CV 9305, 2014 WL 4960947, at *2 (N.D. Ill. Sept. 22, 2014). This Court should reject Plaintiff's attempt to stretch the holdings in *Strickler* and *Salam* to the point of meaninglessness.

Given Plaintiff's attempt to run away from her own specific allegations in her Complaint, it is no surprise that she does not contest Uber's argument that this case should be dismissed with prejudice. Indeed, "it is clear the complaint cannot be saved by amendment, given [Plaintiff's] prior allegations about the need for human intervention" to trigger the verification text messages that she claims to have received. *See McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015) (dismissing TCPA claim with prejudice where Plaintiff's own allegations demonstrated that text messages were sent as a result of human intervention).

\*   \*   \*

In sum, this is not a case about competing narratives. Plaintiff alleged that she received verification text messages when a user attempted to authenticate his or her Uber account. As numerous courts have recognized, these allegations are fatal to Plaintiff's TCPA claim because they demonstrate that the text messages were sent to specific telephone numbers as a result of human intervention, not an ATDS.[4] For good reason: "[c]onstruing the TCPA to prohibit

---

[4] *See Duguid*, 2016 WL 1169365, at *6; *Weisberg*, 2016 WL 3971296, at *3; *Flores*, 2015 WL 4340020, at *5 (dismissing TCPA claim where the "level of direct targeting suggest[ed] some sort of 'human curation or intervention' rather than the 'random or sequential number generator' required for an ATDS"); *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (concluding that text messages were not sent by an ATDS where a human user triggered those messages by providing the recipients' phone numbers); *Derby v. AOL, Inc.* ("*Derby I*"), No. 15-CV-00452-RMW, 2015 WL 3477658, at *4 (N.D. Cal. June 1, 2015) (granting motion to dismiss where "the allegations of the complaint show that extensive human intervention is required to send text messages through defendant's . . . service"); *Derby v. AOL, Inc.* ("*Derby II*"), No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *5 (N.D. Cal. Sept. 11, 2015) (dismissing TCPA claim because "each of the factual scenarios alleged in the" operative complaint was "triggered by some form of human action"); *McKenna*, 2015 WL 5264750, at *3 (granting motion to dismiss where it was "undeniable from [plaintiff]'s previous allegations that the human intervention of a . . . user is necessary to set [the] processes in motion" that result in a text message being transmitted).

-15-

consumer-friendly confirmation texts like that at issue here would fly in the face of both common sense and the goals of the TCPA." *Derby I*, 2015 WL 3477658, at *6.

## **CONCLUSION**

For the foregoing reasons, Uber respectfully requests that the Court grant its motion for judgment on the pleadings and dismiss Plaintiff's Complaint with prejudice.

Dated: New York, New York  
        December 6, 2016

MORRISON & FOERSTER LLP

By: /s/ David J. Fioccola
     David J. Fioccola
     Adam J. Hunt
     Tiffani B. Figueroa
     250 West 55th Street
     New York, New York 10019
     Tel: (212) 468-8000
     Fax: (212) 468-7900
     E-mail: dfioccola@mofo.com

     *Attorneys for Defendant*
     *Uber Technologies, Inc.*

## CERTIFICATE OF SERVICE

I, David J. Fioccola, certify that on December 6, 2016, I caused the foregoing UBER TECHNOLOGIES, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS to be filed via CM/ECF and served on the following:

Myles McGuire
Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
T: (312) 893-7002
F: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

>                             */s/ David J. Fioccola*
>                                David J. Fioccola