# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIA VERGARA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | CIVIL ACTION <br><br> Case no. 15-cv-6942 |

### OBJECTION TO PROPOSED SETTLEMENT & NOTICE OF INTENTION TO APPEAR

Marie Krikava, by and through her counsel, James C. Vlahakis, objects to the proposed class action settlement for the following reasons:

1. I received notice of a proposed class action in this case and I object for the reasons that follow. I have retained and authorized attorney James C. Vlahakis to submit this objection on my behalf. I have never filed an objection to any class action other than this objection.

2. MY cellular telephone number is 708-663-5123.

3. I received well over a dozen text messages to sign up as a driver.

4. I never provided my cellular number to Uber and in no way consented to receiving the telemarketing based text messages sent to me to entice me to become an Uber driver through Uber's so-called "Refer-a-Friend Program."

5. I object to the proposed class settlement for the following reasons.

**Objection Number One**

**The Proposed Class Settlement is Improperly Places the Burden of Consent on Consumers When it is Uber's Burden of Proof to Show Consent**

6. First, the proposed settlement has been set up in a manner that is contrary to well established law. Simply stated, it is not my burden (or that of other putative class members) to swear on a class notice form that I did no provide my cellular telephone number to Uber. The claim form used by the parties is improper for it contains the following sworn affirmation:

> By submitting a claim, you are attesting that you received one or more text message(s) from Uber but did not consent to receive such text message(s) or had otherwise revoked any consent previously given.

See Dkt. 85-1 (page 58 of 59).

7. As discussed below, it is Uber's burden of proof to show that I and the putative class members consented to its telemarketing messages.

8. The Federal Communications Commission ("FCC") Report and Order dated February 2012, requires that all businesses to have prior express written consent before contacting cellular phones for telemarketing purposes. According to Paragraph 20 of the FCC's Report and Order:

> Based on substantial record support, the volume of consumer complaints we continue to receive concerning unwanted, telemarketing robocalls, and the statutory goal of harmonizing our rules with those of the FTC, we require prior express written consent for all telephone calls using an automatic telephone dialing system or a prerecorded voice to deliver a telemarketing message to wireless numbers and residential lines.[1]

9. The FCC's Report and Order clearly states that telemarketing text messages are subject to the TCPA's prior express consent requirement. *See* FCC Report and Order at Fn 72. Further, it is undisputed that text messages are governed by the TCPA. See, e.g., Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009); *Lozano v. Twentieth Century Fox Film Corp.,* 702 F. Supp. 2d 999, 1010-1011 (N.D. Ill. 2010); *Abbas v. Seeling Source, LLC*, 2009 WL 4884471, 2009 U.S. Dist. LEXIS 116697 (N.D. Ill. 2009) ("[N]either the above-quoted dictionary definition nor the TCPA requires that a 'call' be 'oral.' Indeed, if such a requirement existed, the TCPA's prohibition on calls to 'a paging service,' would be of little effect.")

10. Counsel for the parties cannot be ignorant of the burden of consent as the FCC recently issued an "FCC Enforcement Advisory" on November 18, 2016.[2] According to the FCC:

> **Consumer Consent**. Those contending that they have prior express consent to make robotexts to mobile devices have the burden of proving that they obtained such consent. This includes text messages from text messaging apps and Internet-to-phone text messaging where the technology meets the statutory definition of an autodialer. The fact that a consumer's wireless number is in the contact list of another person's wireless phone does not, by itself, demonstrate consent to receive robotexts.

11. The affirmation language of the Claim Form is also troubling because "consent" is generally discussed in the Claim Form and the FCC has clearly indicated that consent to receive telemarketing messages may only exist if the sender obtains consent <u>in writing, rejecting a submission which requested that the FCC authorize oral consent</u>. According to paragraph 24 of the FCC's 2012 Order:

> We conclude that requiring prior express written consent for telemarketing calls utilizing autodialed or prerecorded technologies will further reduce the opportunities for telemarketers to place unwanted or unexpected calls to consumers. We believe that requiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer -- providing permission in writing -- to authorize autodialed or prerecorded telemarketing calls, and will reduce

---

[1] The FCC's 2012 Report and Order can be found at https://apps.fcc.gov/edocs_public/attachmatch/FCC-12-21A1.pdf

[2] The FCC's Advisory can be found at https://apps.fcc.gov/edocs_public/attachmatch/DA-16-1299A1.pdf

> the chance of consumer confusion in responding orally to a telemarketer's consent request.
>
> * * *
>
> we believe that it is essential to require prior express written consent for autodialed or prerecorded telemarketing calls to wireless numbers. One commenter, USAA, appears to suggest that oral consent is sufficient to permit any autodialed or prerecorded calls to wireless numbers. It argues that its customers may orally provide their wireless phone number as a point of contact and therefore those customers expect marketing and service calls. We disagree. Consumers who provide a wireless phone number for a limited purpose – for service calls only – do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted.

12. The Claim Form also ignores the fact that the FCC's 2012 Order indicates that written consent may only be obtained with electronic signatures. See 2012 Order at Paragraphs 32, 33 and 34. According to the FCC's Order, the form of written consent that must be used it abundantly clear:

> we conclude that a consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.

13. There is no mention in the motion to approve the settlement whether Uber contended that it had any proof of express written consent.

14. Notably, Paragraph 33 of the FCC's 2012 Order reiterated that the burden of consent is on the entity that seller of the telemarketing message – here – Uber:

> should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

15. There is no basis in law for Uber to have asked this Honorable Court to authorize a settlement which requires class members to submit proof of the *absence of consent* to receive settlement funds. Notably, in papers submitted to court seeking the approval of the proposed settlement, Uber never argued that consent is a defense to the "Refer-a-Friend Program" or so-called "Settlement Class A". See Dkt. 85, p. 18.

16. Uber bears the burden of proof on the issue of consent – which it appears to agree to in a passing reference in "Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement":

> common questions of law fan fact include . . .
>
> ●Whether Uber had valid express consent of the members of Settlement Class A prior to sending its Refer-a-Friend text messages

●Whether "Refer-a-Friend" text messages fall within the TCPA's definition o "telemarketing" or "advertising," such that Uber was required to obtain messags recipients' "prior express written consent" under 47 C.F.R. § 64.1200(a)(2) . . .

Dkt. 85, p. 25.

17. Since Uber reluctantly appears to agree that it bears the burden of consent, why does the class notice put the burden on class members?

18. It is undisputed that Uber has the burden of showing that this objector and all other class members consented to the subject telemarketing text messages. Requiring putative class members to swear on an obligation that they are not required to prove (that they did not consent to receive a "Refer-a-Friend Program"), Uber has placed an unnatural and unlawful burden on the putative class members.

19. By ignoring the law and placing this burden on consumers, Uber has effectively turned the tables on consumers and added insult to injury.

20. For this reason along, this Honorable Court should not approve the proposed settlement.

**Objection No. Two – Uber Should Compensate Class Members on a Per Text Basis**

21. The proposed settlement appears to suggest that class members will be issued checks in amounts that will be distributed on a pro rata basis, and not based upon the number of message set to class members. This is troubling for many reasons.

22. First, Uber collects a vast amount of data (see Dkt. 85 p. 23, "the proposed Settlement Class Members are readily ascertainable using Uber's databases [that] shows which numbers were sent text messages, the nature of the messages, and when the messages were sent.")

23. Nowhere has Uber stated in any filed papers that it cannot identify the total number of text messages sent to each consumer.

24. Second, in an overly secretive display of power, Uber has refused to provide the raw class member data to class counsel. This is virtually unheard of, especially where protective orders and attorney's eyes-only provisions in protective orders can protect any alleged secrecy.

25. Third, what basis does Uber even have to claim confidentiality where the telephone numbers of the class were persons who received a "Refer-a-Friend Program." Uber does not and cannot claim that these individuals are customers or users of the Uber. Fourth, Uber cannot seriously argue that the names and numbers of the individuals are trade secrets.

26. Fifth, in the papers submitted to this Court, Uber has not said that its internal records fail to identify the total number of "Refer-a-Friend Program" telemarketing text messages that were sent to each consumer. Such a statement is an important omission. More likely than not, Uber knows the precise number of "Refer-a-Friend Program" telemarketing text messages that were sent to each consumer.

27. Accordingly, Uber should be prepared to each class member a pro rata amount of money calculated by the number of text messages sent, not based upon the number of class members.

28. It is fundamentally unfair to issue a check in the same amount to a class member where she/he received one "Refer-a-Friend Program" telemarketing text message and another class member received two dozen messages. See Dkt. 85, p. 18 (indicating that each class member may get up to $500 in damages irrespective of the amount of text messages received).

29. On information and belief, and until proven otherwise by Uber, it is a ministerial task to count the number of "Refer-a-Friend Program" telemarketing text messages each class member received.

30. For this reason along, this Honorable Court should not approve the proposed settlement.

*Marie Krikava*
Marie Krikava

31. I, James C. Vlahakis, submit this Objection on behalf of Marie Krikava and state that this is the first class action objection I have ever made.

32. I have reviewed over two dozen filings made in the California based case which is related to this case where discovery and motion practice took place and I attest to the legal and factual arguments set forth above which I make in objection to the proposed settlement.

33. Although the record demonstrates that Plaintiffs' counsel fought Uber in every argument/battle/skirmish raised by Uber (and their were many), I respectfully submit that Uber bears the burden of consent and Uber should pay out damages on a pro rata basis to justly compensate the aggrieved class members.

34. I have filed this document with this Court because the timing of the objection deadline - post marked by today's date of December 22, 2017 and submitted to counsel of record 30 days prior to the Final Approval Hearing – which is scheduled for January 23, 2018.

/s/ James Vlahakis

*Counsel for Plaintiff Marie Krikava*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
(630)581-5456
jvlahakis@sulaimanlaw.com


**CERTIFICATE OF SERVICE**

I, James C. Vlahakis, certify that on December 22, 2012, I caused the foregoing Objection to be filed and served via CM/ECF upon the attorneys who have filed appearances in this action, and that I have additionally mailed copies of this Objection to the below via U.S. Mail on December 22, 2012:

Myles McGuire
Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601

Hassan A. Zavareei
Andrea R. Gold
Andrew J. Silver
TYCKO & ZAVAREEI LLP
1828 L Street NW, Ste. 1000
Washington, DC 20036

David J. Fioccola
Adam J. Hunt
Tiffani B. Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019

John C. Ellis
ELLIS LEGAL P.C.
250 S. Wacker Dr., Suite 600
Chicago, Illinois 60606

Austin V. Schwing
GIBSON DUNN&CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105

Clerk of the Court
Everett McKinley Dirksen Courthouse
219 South Dearborn Street
Chicago, IL 60604