# Exhibit A

## **SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ................................................................................................. 1

II.     DEFINITIONS .................................................................................................... 3

III.    SETTLEMENT CLASS CERTIFICATION ....................................................... 6

IV.     SETTLEMENT OF LITIGATION and ALL CLAIMS AGAINST RELEASEES ............ 7

V.      SETTLEMENT FUND ........................................................................................ 7

VI.     PROSPECTIVE RELIEF ................................................................................... 10

VII.    RELEASE .......................................................................................................... 10

VIII.   CERTIFICATION OF THE SETTLEMENT CLASSES AND RELATED
        MOTIONS ......................................................................................................... 11

IX.     NOTICE TO PROPOSED CLASS MEMBERS ............................................... 12

X.      OPT-OUTS ........................................................................................................ 13

XI.     OBJECTIONS .................................................................................................... 14

XII.    FAIRNESS HEARING ...................................................................................... 15

XIII.   FINAL APPROVAL ORDER ............................................................................ 15

XIV.    BAR ORDER ..................................................................................................... 16

XV.     TERMINATION OF THE SETTLEMENT ...................................................... 16

XVI.    ATTORNEY'S FEES AND SERVICE AWARD ............................................. 17

XVII.   REPRESENTATIONS ....................................................................................... 18

## SETTLEMENT AGREEMENT
### (Subject To Court Approval)

This settlement agreement ("Agreement" or "Settlement Agreement") is entered into by and between Uber Technologies, Inc. and Jonathan Grindell, Sandeep Pal, James Lathrop, Jennifer Reilly, Justin Bartolet, and Maria Vergara ("Plaintiffs," as defined herein at paragraph 29), both individually and on behalf of Settlement Classes (as defined herein at paragraph 41).

## I.    BACKGROUND

1.    Plaintiffs Jonathan Grindell, Jennifer Reilly, and James Lathrop filed a purported class action lawsuit against Uber Technologies, Inc. alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") on December 31, 2014.  Plaintiffs Sandeep Pal and Justin Bartolet joined the lawsuit on January 30, 2015.  That lawsuit, *Lathrop, et al. v. Uber Technologies, Inc.* (Case No. 3:14-cv-05678-JST) ("California Action"), is currently pending in the United States District Court for the Northern District of California.

2.    Plaintiff Maria Vergara filed a purported class action lawsuit against Uber Technologies, Inc. alleging violations of the TCPA on August 7, 2015.  That lawsuit, *Vergara v. Uber Technologies, Inc.* (Case No. 1:15-cv-06942) ("Illinois Action"), is currently pending in the United States District Court for the Northern District of Illinois.

3.    Plaintiffs' proposed Amended Complaint, a copy of which is attached hereto as Exhibit 1, and which Plaintiffs will file in the Northern District of Illinois as the operative complaint in the Illinois Action, alleges that Uber Technologies, Inc.'s conduct violates the TCPA.  Plaintiffs will dismiss the California Action without prejudice and will seek Court approval of this Settlement Agreement in the Northern District of Illinois as part of the Illinois Action.

4.    Uber denies and continues to deny each and every allegation and all charges of wrongdoing or liability of any kind whatsoever that Plaintiffs or members of the Settlement Classes presently have asserted in this Litigation or may in the future assert.  Despite Uber's belief that it is not liable for, and has good defenses to, the claims alleged in the Litigation, Uber desires to settle the Litigation, and thus avoid the expense, risk, exposure, inconvenience, and distraction of continued litigation of any action or proceeding relating to the matters being fully settled and finally put to rest in this Settlement Agreement.  Neither this Settlement Agreement, nor any negotiation or act performed or document created in relation to the Settlement Agreement or negotiation or discussion thereof is, or may be deemed to be, or may be used as, an admission of, or evidence of, any wrongdoing or liability.

5.    Following arms' length negotiations, including mediation before an experienced mediator, the Parties now seek to enter into this Settlement Agreement.  Plaintiffs

DocuSign Envelope ID: E42F349A-B320-4794-8CF5-B461C9ACD282

and Class Counsel have conducted an investigation into the facts and the law regarding the Litigation and have concluded that a settlement according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Settlement Classes recognizing (1) the existence of complex and contested issues of law and fact, (2) the risks inherent in litigation, (3) the likelihood that future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement, (4) the magnitude of the benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever, and (5) the Plaintiffs' determination that the settlement is fair, reasonable, adequate, and will substantially benefit the Settlement Class Members.

6.      The Parties shall use their best efforts to effectuate this Agreement, including, but not limited to, cooperating in promptly seeking the Court's approval of this Agreement, certification of the Settlement Classes, and release by the Releasees of the Released Claims.

7.      No party shall be deemed the drafter of this Agreement or any provision thereof. No presumption shall be deemed to exist in favor of or against any party as a result of the preparation or negotiation of this Agreement.

8.      This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of Illinois without regard to conflict of laws principles.

9.      Nothing express or implied in this Agreement is intended or shall be construed to confer upon or give any person or entity other than the Parties, Releasees, and Settlement Class Members any right or remedy under or by reason of this Agreement.  Each of the Releasees is an intended third party beneficiary of this Agreement with respect to the Released Claims and shall have the right and power to enforce the release of the Released Claims in his, her or its favor against all Releasors.

10.     This Agreement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Settlement Agreement.

11.     In consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Litigation be settled and compromised, and that the Releasors release the Releasees of the Released Claims, without costs as to Releasees, Plaintiffs, Class Counsel, or the Settlement Classes, except as explicitly provided for in this Agreement, subject to the approval of the Court, on the following terms and conditions.

DocuSign Envelope ID: E42F348A-B320-4794-8CF5-B461C9ACD282

12.     This Agreement may not be modified or amended unless such modification or amendment is in writing executed by the Parties, except as specifically permitted by this Agreement.  An electronic signature will be considered an original signature for purposes of execution of this Agreement.

13.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by email or letter by overnight delivery to their counsel in the Litigation.

## II.    **DEFINITIONS**

The following terms, as used in this Agreement, have the following meanings:

14.     "Administrative Expenses" shall mean expenses associated with the Settlement Administrator, including but not limited to costs in providing notice (including notice under 28 U.S.C. § 1715), communicating with Settlement Class Members, and disbursing payments to the proposed Settlement Class Members.

15.     "Approved Claims" shall mean complete and timely claims, submitted by Settlement Class Members, that have been approved for payment by the Settlement Administrator.

16.     "Class," "Settlement Classes," "Class Member," or "Settlement Class Member" shall mean each member of the settlement classes, as defined in Section III of this Agreement, who does not timely elect to be excluded from the Settlement Classes, and includes, but is not limited to, Plaintiffs.

17.     "Class Counsel" shall refer to:
   Hassan A. Zavareei
   Andrea Gold
   Andrew Silver
   TYCKO & ZAVAREEI LLP
   1828 L Street, N.W., Suite 1000
   Washington, D.C.  20036; and

   Myles McGuire
   Evan M. Meyers
   Paul T. Geske
   MCGUIRE LAW, P.C.
   55 W. Wacker Drive, 9th Floor
   Chicago, IL  60601.

18.     "Class Period" shall mean the period from and including December 31, 2010 up to and including the date of the Court's order granting preliminary approval of the Settlement Agreement.

3

19.    "Class Release" shall have the meaning set forth in Section VII of this Agreement.

20.    "Class Relief" means those benefits awarded to Settlement Class Members by the Settlement Agreement, including without limitation the right to submit a Proof of Claim Form.

21.    "Counsel" means both Class Counsel and Uber's Counsel, as defined in paragraphs 17 and 39.

22.    "Court" shall mean the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin, and his successors, if any.

23.    "Effective Date" shall mean the date when the Settlement Agreement becomes Final.

    a.    "Final" means the Final Approval Order has been entered on the docket, and (a) the time to appeal from such order has expired and no appeal has been timely filed; (b) if such an appeal has been filed, it has been finally resolved and has resulted in an affirmation of the Final Approval Order; or (c) the Court following the resolution of the appeal enters a further order or orders approving settlement on the material terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s).

    b.    "Final Approval Order" shall mean an order entered by the Court that:

        i.    Certifies the Settlement Classes pursuant to Fed. R. Civ. P. 23(b)(3);

        ii.    Finds that the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and approves and directs consummation of this Agreement;

        iii.    Dismisses the Plaintiffs' claims pending before it with prejudice and without costs, except as explicitly provided for in this Agreement;

        iv.    Approves the Class Release provided in Section VII and orders that, as of the Effective Date, the Released Claims will be released as to Releasees;

        v.    Reserves exclusive jurisdiction over the settlement and this Agreement; and

        vi.    Finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

DocuSign Envelope ID: E42F349A-B320-45F8-9CF5-B461C9ACD282

24.     "Execution Date" shall mean the date on which this Agreement is fully executed by all parties.

25.     "Litigation" shall mean the California Action and the Illinois Action.

26.     "Opt-Out" shall mean a written request for exclusion from a Settlement Class or Settlement Classes as provided in Section X of this Settlement Agreement.

27.     "Opt-Out Period" shall have the meaning set forth in Section X of this Settlement Agreement.

28.     "Parties" shall mean Uber Technologies, Inc., the Plaintiffs, and the proposed Settlement Classes.

29.     "Plaintiffs" or "Plaintiff Class Representatives" shall mean the named class representatives, Jonathan Grindell, Sandeep Pal, James Lathrop, Jennifer Reilly, Justin Bartolet, and Maria Vergara.

30.     "Preliminary Approval Order" shall mean an order of the Court preliminarily approving the Settlement Agreement.

31.     "Proof of Claim Form" shall mean the form that Settlement Class Members may submit to obtain compensation under this Settlement.

32.     "Related Actions" shall mean any proceeding, other than the Litigation, that alleges that Uber violated the TCPA brought by a plaintiff and/or on behalf of persons or entities who would be a Class Member, including *Giacomaro v. Uber Technologies, Inc.* (EDNY; Case No. 2:17-cv-03923) and *Kolloukian v. Uber Technologies, Inc.* (C.D. Cal.; Case No. 2:15-cv-02856).

33.     "Released Claims" shall mean any and all claims against Releasees whatsoever arising out of, related to, or connected with sending, causing someone to send, or assisting someone to send a text or SMS message related to Uber without consent, including but not limited to claims brought under 47 U.S.C. § 227, et seq. ("TCPA"), during the Class Period.  "Released Claims" include all claims that were or could have been asserted in the Litigation or Related Actions, regardless of whether such claims are known or unknown, filed or unfiled, asserted or as yet unasserted, existing or contingent.

34.     "Releasees" shall refer, jointly and severally, and individually and collectively, to Uber, its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts or their affiliates.

35.     "Releasors" shall refer, jointly and severally, and individually and collectively, to Plaintiffs, the Settlement Class Members, and to each of their predecessors,

successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, through, or on behalf of them.

36.     "Settlement Administrator" means the person or entity mutually selected and supervised by the Parties to administer the settlement.

37.     Twilio Inc. shall refer to Twilio Inc., its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, partners, employees, agents, assigns, and contractors.

38.     "Uber" shall mean Uber Technologies, Inc., its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, partners, employees, agents, assigns, board members, and contractors.

39.     "Uber's Counsel" shall refer to:

            Austin V. Schwing
            GIBSON DUNN & CRUTCHER LLP
            555 Mission Street
            San Francisco, CA 94105.

40.     "Uber's Refer-a-Friend Program" shall mean the program under which a person or entity can refer one or more other persons or entities to become or apply to become a driver who uses Uber's application.

## III.    SETTLEMENT CLASS CERTIFICATION

41.     Subject to Court approval, the following Settlement Classes shall be certified for settlement purposes for the time period December 31, 2010 to the date of the order granting preliminary approval of this settlement ("Class Period"):

Settlement Class A:  All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

Settlement Class B:  All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

Settlement Class C:  All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

42. Excluded from the Settlement Classes are all persons who elect to exclude themselves from the Settlement Classes, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

43. If for any reason the settlement is not granted preliminary and final approval, Uber's agreement to certification of the Settlement Classes shall not be used for any purpose, including in any request for class certification in the Litigation or any other proceeding.

## IV. SETTLEMENT OF LITIGATION AND ALL CLAIMS AGAINST RELEASEES

44. Final approval of this Settlement Agreement will settle and resolve with finality, on behalf of the Releasors, the Litigation, any Related Actions, and the Released Claims and any other claims that have been brought, could have been brought, or could be brought now or at any time in the future against Releasees by the Releasors in the Litigation, Related Actions, or any other proceeding arising out of, in any manner related to, or connected in any way with the Released Claims.

## V. SETTLEMENT FUND

45. **Establishment of Settlement Fund**

   a. Within thirty (30) days of Preliminary Approval of the Settlement Agreement, Uber shall pay the total sum of twenty million dollars ($20,000,000.00) to create a Settlement Fund. Provided that this Agreement is finally approved by the Court without change, amendment or modification, the Settlement Fund will be used to satisfy Approved Claims for Settlement Class Members in exchange for a mutual release and covenants set forth in this Agreement, including, without limitation, a full, fair and complete release of all Releasees from Released Claims, and dismissal of the Litigation with prejudice.

   b. If the Settlement Agreement is not finally approved, the Settlement Fund belongs to Uber, less any Administrative Expenses paid to date. Plaintiffs shall have no financial responsibility for any Administrative Expenses paid out of the Settlement Fund in the event that the Settlement Agreement is not finally approved.

   c. The Settlement Fund shall be used to pay (i) Settlement Class Members' benefits; (ii) service awards to the Plaintiffs; (iii) attorneys' fees, costs, and expenses of Class Counsel; and (iv) costs of administration of the Agreement, including without limitation payment of Administrative Expenses.

   d. Any award of attorneys' fees, administrative costs, or any other fees, costs, or benefits otherwise awarded in connection with the Settlement Agreement shall be payable solely out of the Settlement Fund.

e.  Uber's contribution to the Settlement Fund shall be fixed under this Section and be final.  Uber shall have no obligation to make further payments into the Settlement Fund, and shall have no financial responsibility or obligation relating to the settlement beyond the Settlement Fund.

f.  Settlement benefits shall be allocated to the Settlement Class Members via a claims process set forth in paragraphs 46 and 47.

g.  The Court may require changes to the method of allocation to Settlement Class Members without invalidating this Settlement Agreement, provided that the other material terms of the Settlement Agreement are not altered, including but not limited to the scope of the Release, the Class Period, and the amount of the Settlement Fund.

46.  A Settlement Class Member who timely submits a valid Proof of Claim Form shall share in the Settlement Fund (less Administrative Expenses, attorney's fees and expenses, and a service award to Plaintiff Class Representatives).  Each Settlement Class Member who submits a valid Proof of Claim Form shall receive the same amount of the Settlement Fund as each other Settlement Class Member who submits a valid Proof of Claim Form.  The Parties agree that the Court may adjust the allocation of the Settlement Fund to the Settlement Class Members, provided it does not enlarge the Settlement Fund.

47.  **Submission and Evaluation of Claims**

a.  All claims must be submitted on a Proof of Claim Form.  The Proof of Claim Form will require the Settlement Class Member to provide his or her full name, mailing address, contact telephone number, a cellular telephone number to which the text message(s) at issue in the Litigation were sent, and an affirmation that he/she received a text message or text message(s) but did not consent to receive such text message(s) or had otherwise revoked any consent previously given, and an agreement not to object to a request by the Settlement Administrator or the parties to obtain the Settlement Class Member's cell phone billing records from the wireless carriers as necessary.

b.  The Proof of Claim Form must be submitted on or before the Proof of Claim Form deadline, which shall be one-hundred twenty (120) days after the Preliminary Approval Order, or other date set by the Court ("Proof of Claim Form Deadline").  The Proof of Claim Form shall be substantially in the form attached hereto as Exhibit 2.

c.  Completed Proof of Claim Forms shall be submitted directly to the Settlement Administrator for processing, assessment, and payment.  The Proof of Claim Form may be mailed or electronically transmitted.

8

d.      Any Proof of Claim Form that lacks the requisite information will be deemed to be incomplete and ineligible for payment. For any partially completed Proof of Claim Forms, the Settlement Administrator shall attempt to contact the Settlement Class Member who submitted the Proof of Claim Form at least one time by e-mail or, if no e-mail address is available, by regular U.S. mail (1) to inform the Settlement Class Member of any errors and/or omissions in the Proof of Claim Form and (2) to give the Settlement Class Member one opportunity to cure any errors and/or omissions in the Proof of Claim Form. The Settlement Class Member shall have until the Proof of Claim Form Deadline or thirty (30) days after the Settlement Administrator sends the e-mail or regular mail notice to the Class Member regarding the deficiencies in the Proof of Claim Form, whichever is later, to cure the errors and/or omissions in the Proof of Claim Form.

e.      A Settlement Class Member is not entitled to Class Relief if he/she submits a Proof of Claim Form after the Proof of Claim Form Deadline, or if the Proof of Claim Form is incomplete after an opportunity to cure any errors and/or omissions or contains false information.

f.      The Settlement Administrator shall have sole and final authority for determining if Settlement Class Members' Proof of Claim Forms are complete and timely, in which case they will be accepted as Approved Claims. The Settlement Administrator may reject or accept any Proof of Claim Form submitted, and may, upon its sole discretion, request additional information prior to rejecting or accepting any Proof of Claim Form submitted.

g.      Within fourteen (14) days of completion of its review of the Proof of Claim Forms, the Settlement Administrator will submit to the Parties a report listing all Approved Claims.

h.      The funds provided to the Settlement Administrator will be maintained by an escrow agent as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and shall be deposited in an interest-bearing account.

i.      Prompt payment shall be made by the Settlement Administrator on Approved Claims after the Effective Date of the settlement. Checks will be mailed to Settlement Class Members with Approved Claims. The Settlement Administrator shall use the addresses provided by the Settlement Class Members on the Approved Claims.

j.      The Settlement Administrator shall notify the Parties that all Approved Claims have been paid within 10 days of the last such payment.

9

k. In the event that checks sent to Settlement Class Members are not cashed within one (1) year of their mailing date, whether because the checks were not received or otherwise, those checks will become null and void. The amount of the uncashed checks after the expiration date, less any funds necessary for settlement administration, will be redistributed in equal amounts to the Settlement Class Members who submitted Approved Claims and cashed their checks. In the event that those redistributed checks are not cashed within (6) months of their mailing date, whether because the checks were not received or otherwise, those checks will become null and void. The amount of the null and void checks will be paid through cy prés to the National Consumer Law Center or any other recipient that the Court deems appropriate with input from the Parties. The Court may revise this cy prés provision as necessary without terminating or otherwise impacting this settlement, provided the Court's revision does not increase the amount that Uber would otherwise pay under this Settlement Agreement.

## VI. PROSPECTIVE RELIEF

48. Without admitting any liability or that it is required by law to do so, Uber agrees to undertake the following practices:

   a. Uber agrees that for a period of two years from the Effective Date it will not send server-assisted driver-referral text messages from the Uber app on Uber-issued cellular phones.

   b. Uber agrees that for at least two years from the Effective Date it will maintain an opt-out protocol for recipients of text messages who initiate but do not complete the driver sign up process, which will at a minimum unsubscribe recipients from pipeline driver SMS messaging who reply with any of the opt-out words or phrases on Appendix A.

   c. Uber agrees to adhere to the following procedures by December 31, 2017 or the Effective Date, whichever is later, for a minimum of two years: (i) Uber's servers will delete any phone number entered during the rider account sign-up process that is not verified within 15 minutes; (ii) Uber will display the phone number used during the rider account sign-up process on the app screen where a new verification text can be requested with the note "Did you enter the correct number?"; and (iii) after one attempted verification text resend, the user will be forced to re-enter the phone number used during sign-up.

## VII. RELEASE

49. In addition to the effect of any final judgment entered in accordance with this Agreement, upon final approval of this Agreement, and for other valuable consideration as described herein, Releasees shall be completely released,

DocuSign Envelope ID: F42F349A-B329-4704-9C35-B461C9ACD233

acquitted, and forever discharged from any and all Released Claims ("Class Release").

50.     As of the Effective Date, and with the approval of the Court, all Releasors hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel any and all Released Claims against Releasees.  As of the Effective Date, all Releasors will be forever barred and enjoined from prosecuting any action against the Releasees asserting any and/or all Released Claims.

51.     Each Releasor waives California Civil Code Section 1542 and similar provisions in other states.  Each Releasor hereby certifies that he, she, or it is aware of and has read and reviewed the following provision of California Civil Code Section 1542 ("Section 1542"):

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

52.     The provisions of the Class Release shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction.

53.     Each Releasor waives any and all defenses, rights, and benefits that may be derived from the provisions of applicable law in any jurisdiction that, absent such waiver, may limit the extent or effect of the release contained in this Agreement.

54.     The Parties and each member of the proposed Settlement Classes agree that the amounts to be paid under this Settlement Agreement to each Settlement Class Member represent the satisfaction of that Settlement Class Member's claims for the Released Claims.  No portion of such settlement represents the payment of punitive or exemplary damages.  Nonetheless, in consideration for the satisfaction of each Settlement Class Member's claim for compensatory damages, claims for punitive or exemplary damages shall be released.

## VIII.   CERTIFICATION OF THE SETTLEMENT CLASSES AND RELATED MOTIONS

55.     This Settlement shall be subject to approval of the Court.  As set forth in Section XV, Uber shall have the right to withdraw from the Settlement if the Court does not issue any of the requested orders (including the Final Approval Order) or if the Settlement Classes are not certified, among other things.

56.     Plaintiffs shall submit to the Court a motion (the "Motion"): (a) for certification of Settlement Classes; and (b) for preliminary approval of the Agreement, and authorization to disseminate notice of class certification, the Settlement Agreement, and the final judgment contemplated by this Settlement Agreement to

DocuSign Envelope ID: F43F349A-B329-4797-9C35-B461C9ACD233

all potential Settlement Class Members. The Motion shall include: (i) the definition of the Settlement Classes for settlement purposes as set forth in Section III of this Agreement; (ii) a proposed form of, method for, and date of dissemination of notice; (iii) a proposed form of preliminary approval, (iv) a proposed Proof of Claim Form; and (v) a date for the final approval hearing. The text of the items referred to in clauses (i) through (v) above shall be agreed upon by the Parties before submission of the Motion. The Motion shall be accompanied by a proposed order for preliminary approval of the settlement substantially in the form attached hereto as Exhibit 3.

## IX.  NOTICE TO PROPOSED SETTLEMENT CLASS MEMBERS

57.  **List of Potential Settlement Class Members**

a.  Uber, with the assistance of the Settlement Administrator as appropriate, shall create a list of potential Settlement Class Members, based on readily available information already within its possession ("List of Potential Settlement Class Members").

b.  The List of Potential Settlement Class Members shall include the names, e-mail addresses, and mailing addresses of potential Settlement Class Members, to the extent such information is readily available.

c.  The Settlement Administrator shall keep the List of Potential Settlement Class Members strictly confidential between the Settlement Administrator and Uber and, as necessary, the Court. Class Counsel shall have access to information in the List of Potential Settlement Class Members with respect to particular Settlement Class Members as necessary to respond to inquiries or issues those Settlement Class Members may raise regarding the settlement, and Class Counsel shall treat that information as Highly Confidential under the Protective Order.

58.  **Type of Notice Required**

a.  The Class Settlement Notice, which shall be substantially in the form of Exhibits 4–6 attached hereto, shall be used for the purpose of informing proposed Settlement Class Members, prior to the fairness hearing before the Court ("Fairness Hearing"), that there is a pending settlement, and to further (a) inform Settlement Class Members as to how they may obtain a copy of the Proof of Claim Form; (b) protect their rights regarding the settlement; (c) request exclusion from the Settlement Classes and the proposed settlement, if desired; (d) object to any aspect of the proposed settlement, if desired; and (e) participate in the Fairness Hearing, if desired. Finally, the Notice shall make clear the binding effect of the settlement on all persons who do not timely request exclusion from the Settlement Classes.

b.      Dissemination of the Class Settlement Notice shall be the responsibility of the Settlement Administrator.  The text of the Class Settlement Notice shall be agreed upon by the Parties, and shall be substantially in the forms attached as Exhibits 4–6 hereto.

c.      Individual notice shall be e-mailed to the List of Potential Settlement Class Members (substantially in the form of Exhibit 4) where possible and by mailing (substantially in the form of Exhibit 5) where e-mail delivery is not possible and where Uber has a mailing address or the address information can be located by the Settlement Administrator through reverse look-up.

d.      Detailed notice of the settlement shall be posted on the Settlement Website (substantially in the form of Exhibit 6).  The "Settlement Website" means a website established by the Settlement Administrator, which shall contain information about the Settlement, including electronic copies of Exhibits 4-6 (or any forms of these notices that are approved by the Court), this Settlement Agreement, and all Court documents related to the Settlement. The URL of the Settlement Website shall be www.UberTCPASettlement.com or such other URL as Class Counsel and Uber may subsequently agree on in writing.

e.      A mutually agreed publication notice shall be published nationally in USA Today to apprise Settlement Class Members of the Settlement (substantially in the form of Exhibit 4).

59.   **Notice Deadline**

a.      The Class Settlement Notice shall be sent to persons on the List of Potential Settlement Class Members within 60 days after the date that the Court enters the order preliminarily approving the Settlement, or such other date that the Court may set ("Notice Deadline").

## X.      OPT-OUTS

60.   **Opt-Out Period**

a.      Settlement Class Members will have up to and including 120 days following the Preliminary Approval Order to opt out of the settlement in accordance with this Section (the "Opt-Out Period").  If the settlement is finally approved by the Court, all Settlement Class Members who have not opted out by the end of the Opt-Out Period will be bound by the Settlement and the Class Release, and the relief provided by the Settlement will be their sole and exclusive remedy for the claims alleged by the Settlement Classes.

61.   **Opt-Out Process**

a.    Any potential Settlement Class Member who wishes to be excluded from one or more of the Settlement Classes must provide a request for exclusion to the Settlement Administrator, known as an "Opt-Out."

b.    In order to be valid, the Opt-Out must be mailed to the Settlement Administrator and state the following in writing: (a) the Settlement Class Member's name, address, and telephone number, and (b) that the Settlement Class Member wishes to be excluded from a Settlement Class or Settlement Classes. An Opt-Out must be signed by the Settlement Class Member and must be mailed to the address provided in the Class Settlement Notice. The Opt-Out request must be postmarked or received within the Opt-Out Period.

c.    Within three (3) business days after the Opt-Out Period, the Settlement Administrator shall provide Counsel a written list reflecting all timely and valid Opt-Outs from the Settlement Classes.

d.    A list reflecting all timely and valid Opt-Outs shall also be filed with the Court at the time of the motion for final approval of the settlement.

## XI.    **OBJECTIONS**

62.    Settlement Class Members may object to this Agreement up to and including the date ordered by the Court in the Preliminary Approval Order.

63.    The Parties will request that the Court order that any Settlement Class Member who has any objection to certification of the Settlement Classes, to approval of this Settlement Agreement or any of its terms, or to the approval process must send his or her objection to the Settlement Administrator, Class Counsel, and Uber's Counsel providing:

a.    the case name and case number(s) of this Litigation;

b.    the objector's full name, current address and phone number;

c.    the phone number on which he or she allegedly received a text message from Uber;

d.    the reasons why the objector objects to the Settlement along with any supporting materials;

e.    information about other objections the objector or his or her lawyer(s) have made in other class action cases in the last four (4) years; and

f.    the objector's signature.

64.    The Parties will request the Court to set the Objection Deadline 30 days before the Fairness Hearing. The Parties will request that the Court order that failure to

DocuSign Envelope ID: F42F349A-8329-4707-8C3E-B461C9ACD233

comply timely and fully with these procedures shall result in the invalidity and rejection of an objection. The Parties will request that the Court order that no Settlement Class Member shall be entitled to be heard at the Fairness Hearing (whether individually or through the objector's counsel), or to object to certification of the Class or to the Settlement Agreement, and no written objections or briefs submitted by any Settlement Class Member shall be received or considered by the Court at the Fairness Hearing, unless written notice of the Settlement Class Member's objection and any brief in support of the objection have been served upon the Counsel not later than 30 days before the date of the Fairness Hearing.

65.     The Parties will request that the Court, within its discretion, exercise its right to deem any objection as frivolous and award appropriate costs and fees to the Parties opposing such objection(s).

66.     The Parties will request that the Court order that Settlement Class Members who fail to file and serve timely written objections in accordance with this Section shall be deemed to have waived any objections and shall be foreclosed from making any objection to the certification of the Settlement Classes or to the Settlement Agreement.

## XII.     FAIRNESS HEARING

67.     The Parties will jointly request that the Court hold a Fairness Hearing 150 days after the Order preliminarily approving the Settlement or as soon thereafter as the Court is available, but in no event less than 90 days from the date that proper and timely notice is provided under 28 U.S.C. § 1715.

68.     At the Fairness Hearing, the Parties will request the Court to consider whether the Settlement Classes should be certified pursuant to Federal Rule of Civil Procedure 23 for settlement, and, if so, (1) consider any properly filed objections to the Settlement Agreement, (2) determine whether the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith, and (3) enter the Final Approval Order, including final approval of the Settlement Classes and the Settlement Agreement and an award of Attorneys' Fees and expenses.

## XIII.     FINAL APPROVAL ORDER

69.     Plaintiffs and Uber shall jointly seek entry of a Final Approval Order, the text of which Plaintiffs and Uber shall agree upon. The dismissal orders, motions or stipulation to implement this Section shall, among other things, seek or provide for a dismissal with prejudice and waiving any rights of appeal.

70.     The Parties shall jointly submit to the Court a proposed order, substantially in the form attached hereto as Exhibit 7, that, without limitation:

a.    Approves finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

b.    Dismisses, with prejudice, all claims of the Settlement Classes against Uber in the Litigation, without costs and fees except as explicitly provided for in this Agreement; and

c.    Reserves continuing and exclusive jurisdiction over the settlement and this Agreement, including but not limited to the Litigation, the Settlement Classes, the Settlement Class Members, Uber and the settlement for the purposes of administering, consummating, supervising, construing and enforcing the Settlement Agreement and the Settlement Fund.

71.    Class Counsel shall use their best efforts to assist Uber in obtaining dismissal with prejudice of the Litigation and take all steps necessary and appropriate to otherwise effectuate all aspects of this Agreement.

## XIV.  BAR ORDER

72.    As part of the Final Approval Order, the Court shall issue a bar order and permanent injunction against any and all pending or future claims by Settlement Class Members against Releasees raising or arising out of a Released Claim.

73.    The bar order and permanent injunction shall enjoin and forever bar any and all Settlement Class Members from commencing and/or maintaining any action, legal or otherwise, against Releasees raising or arising out of a Released Claim.

74.    This provision is not intended to prevent or impede the enforcement of claims or entitlement to benefits under this Settlement Agreement.

## XV.  TERMINATION OF THE SETTLEMENT

75.    The settlement is conditioned upon preliminary and final approval of the Parties' written Settlement Agreement, and all terms and conditions thereof without material change, amendments, or modifications by the Court (except to the extent such changes, amendments or modifications are agreed to in writing between the Parties). All Exhibits attached hereto are incorporated into this Settlement Agreement. Accordingly, this Settlement Agreement shall be terminated and cancelled, at the option of any Party, upon any of the following events:

a.    This Settlement Agreement is changed in any material respect to which the Parties have not agreed in writing.

b.    The Court declines to enter the Preliminary Approval Order;

DocuSign Envelope ID: F42F349A-B329-4704-9C3E-B461C9ACD233

    c.      The Final Approval Order approving the Settlement and certifying the Settlement Classes for the Class Period as provided in this Agreement is not entered by the Court or is reversed by a higher court; or

    d.      Another party to this Settlement Agreement materially breaches the Settlement Agreement and such breach materially frustrates the purposes of this Agreement;

76.      This Settlement Agreement shall be terminated and cancelled, at the sole and exclusive discretion of Uber, upon any of the following events:

    a.      The notice required by the Court is inconsistent with Section IX;

    b.      The bar order and permanent injunction as provided in Section XIV are not entered by the Court as provided in that Section;

    c.      If at any time prior to final approval of the Settlement Agreement any governmental entity files or indicates its intention to investigate or file or bring a claim, cause of action, complaint, petition, or other action in any administrative, legal, equitable or governmental proceeding against Uber relating to potential violations of the Telephone Consumer Protection Act; or

    d.      Greater than 5% of the Settlement Class Members Opt-Out; or

    e.      The Court does not permit the amendment of the operative complaint as set forth in Exhibit 1 prior to its order on preliminary approval of this Settlement Agreement.

77.      In the event the Settlement Agreement is not approved or does not become final, or is terminated consistent with this Settlement Agreement, the Parties, pleadings, and proceedings will return to the *status quo ante* as if no settlement had been negotiated or entered into, and the Parties will negotiate in good faith to establish a new schedule for the Litigation.

## XVI.   ATTORNEY'S FEES AND SERVICE AWARDS

78.      At least 30 days prior to the Objection Deadline, Class Counsel shall petition the Court for an award of attorneys' fees not to exceed 33.3% of the Settlement Fund plus costs and expenses.

79.      Uber agrees not to oppose an application for attorney's fees by Class Counsel in an amount not more than 33.3% of the Settlement Fund plus their reasonable costs and expenses. Class counsel, in turn, has agreed not to seek attorney's fees in an amount greater thereto.

80.      In no event will Uber's liability for attorney's fees, expenses, and costs exceed their funding obligations set out this Agreement. Uber shall have no financial

DocuSign Envelope ID: F42F349A-8329-4797-8C3E-B461C9ACD233

responsibility for this Settlement Agreement outside of the Settlement Fund. Uber shall have no further obligation for attorney's fees and costs to any counsel representing or working on behalf of either one or more individual Settlement Class Members or the Settlement Classes. Uber will have no responsibility, obligation or liability for allocation of fees and costs among Class Counsel.

81.     Prior to or at the same time as Plaintiffs seek final approval of the Settlement Agreement, Class Counsel shall petition the Court for a service award for Plaintiff Class Representatives in an amount not to exceed $10,000.00 each, and Uber agrees that it will not oppose such a request. The service awards shall be paid solely from the Settlement Fund.

## XVII. <u>REPRESENTATIONS</u>

82.     The Parties agree that the Settlement Agreement provides fair, equitable and just compensation, and a fair, equitable, and just process for determining eligibility for compensation for any given Settlement Class Member related to the Released Claims.

83.     Class Counsel represents and agrees that, within 30 days after the conclusion of the Litigation, he or she will return to Uber's Counsel, or certify destruction of, all materials produced by Uber, whether in their possession or in the possession of their clients, experts, consultants or other persons within their control, and shall provide a declaration to Uber that such return or destruction has occurred.

84.     The Parties represent that they have obtained the requisite authority to enter this Settlement Agreement in a manner that binds each party to its terms.

85.     The Parties shall use their best efforts to conclude the settlement and obtain the Final Approval Order, including affirmatively supporting the settlement in the event of an appeal.

86.     Should the Parties be required to submit any information or documentation to the Court to obtain preliminary approval, such information shall be, to the fullest extent permitted, for review by the Court in camera only, to the extent that Plaintiffs and/or Uber request that information to remain confidential and the Court grants any such request.

87.     The Parties specifically acknowledge, agree and admit that this Settlement Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any other equivalent or similar rule of evidence of any state, and shall not (1) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on

18

the part of any Party, or (2) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.

88. The Parties also agree that this Settlement Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents entered in furtherance of this Settlement Agreement, and any acts in the performance of this Settlement Agreement are not intended to establish grounds for certification of any class involving any Settlement Class Member other than for certification of the Settlement Classes for settlement purposes.

89. The provisions of this Settlement Agreement, and any orders, pleadings or other documents entered in furtherance of this Settlement Agreement, may be offered or received in evidence solely (1) to enforce the terms and provisions hereof or thereof, (2) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a Party hereto, (3) in order to establish payment, or an affirmative defense of preclusion or bar in a subsequent case, (4) in connection with any motion to enjoin, stay or dismiss any other action, or (5) to obtain Court approval of the Settlement Agreement.

90. Except as provided below, or with the prior written consent of the other party, there shall be no comments made to the press or any third party (references to "third party" do not apply to employees, agents, accountants, or directors of a party or a party's corporate affiliates who have a need to receive confidential information about the terms of the settlement), or any other disclosure by or through the parties or their attorneys or agents, comprising opinions as to the litigation. Nor may either party (or their attorneys or agents) release any information relating to the litigation that is not already publicly available. The parties (including their attorneys or agents) may, however, respond to media inquiries regarding the terms of the Settlement Agreement. If preliminary Court approval for the settlement is denied, the Parties and their attorneys and agents shall not make any negative or disparaging comments to the media or other third parties regarding the proposed settlement. However, if the settlement agreement is not preliminarily or finally approved, this provision shall not prohibit the parties from commenting about the litigation to any third parties. Nothing in this provision shall be interpreted to limit representations that the Parties or their attorneys may make to the Court to assist it in its evaluation of the proposed Settlement; nor shall this provision prohibit Class Counsel from having attorney-client communications directly with Settlement Class members, including postings of the Settlement on Class Counsel's law firms' websites; nor shall this provision prohibit the Parties and their counsel from expressing favorable opinions regarding the settlement. If a party is required by a valid, enforceable subpoena or government information request to disclose information about the settlement, such party shall provide reasonable prior notice (to the extent permitted by applicable law) to the other party to allow the other party to seek to prevent such disclosure. A party may also provide necessary and accurate

DocuSign Envelope ID: F42F349A-B329-4707-8C3E-B461C9ACD233

information about the settlement to its shareholders and other persons or entities as required by securities laws or other applicable laws or regulations.

91. This agreement shall be deemed executed as of the date that the last party signatory signs the agreement. This agreement shall fully supersede any previous agreement entered into by the parties.

[Remainder of this page intentionally left blank.]

DocuSign Envelope ID: F42F349A-B320-4747-8C2E-B461C9ACD232

**IN WITNESS HEREOF**, the Parties have executed this Settlement Agreement by their duly authorized representatives on the dates stated below.

**For Plaintiffs and the Proposed Settlement Classes.**

By: _____

Print Name:  James Lathrop

Date: _____8/3/2017_____

By: _____

Print Name:  Jonathan Grindell

Date: _____8/3/2017_____

By: _____

Print Name:  Sandeep Pal

Date: _____8/3/2017_____

By: _____

Print Name:  Jennifer Reilly

Date: _____8/3/2017_____

By: _____

Print Name:  Justin Bartolet

Date: _____8/4/2017_____

By: _____

Print Name:  Maria Vergara

Date: _____

By: _____

Hassan A. Zavareei
Andrea Gold
Andrew Silver
TYCKO & ZAVAREEI LLP
1828 L. Street, N.W.
Suite 1000
Washington, D.C.  20036
Counsel for Plaintiffs

Date: _____8/7/17_____

21

**IN WITNESS HEREOF**, the Parties have executed this Settlement Agreement by their duly authorized representatives on the dates stated below.

**For Plaintiffs and the Proposed Settlement Classes.**

By:_____

Print Name:  James Lathrop

Date: _____

By:_____

Print Name:  Jonathan Grindell

Date: _____

By:_____

Print Name:  Sandeep Pal

Date: _____

By:_____

Print Name:  Jennifer Reilly

Date: _____

By:_____

Print Name: Justin Bartolet

Date: _____

By:_____

Print Name:  Maria Vergara

Date: _____ 8/4/17 _____

By:_____

Hassan A. Zavareei
Andrea Gold
Andrew Silver
TYCKO & ZAVAREEI LLP
1828 L. Street, N.W.
Suite 1000
Washington, D.C.  20036
Counsel for Plaintiffs

Date: _____

21

By: _Evan Meyers_

Myles McGuire
Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Counsel for Plaintiffs

Date: _8/3/17_

**For Uber Technologies, Inc.**

By: _____

Print Name: _____

Date: _____

DocuSign Envelope ID: F42F349A-8329-4747-8C3E-B461C9ACD233

By: _____

Myles McGuire
Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Counsel for Plaintiffs

Date: _____


**For Uber Technologies, Inc.**


By: _____

Print Name:_____

Date: _____

By: _____

Myles McGuire
Evan M. Meyers
Paul T. Geske
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Counsel for Plaintiffs

Date: _____

**For Uber Technologies, Inc.**

By: _____

Print Name: _PRABIR ADARKAR_

Date: _8/4/17_

22

# APPENDIX A

- опт аут

- nicht schreiben

- не шли

- carajo

- בני זונות

- uitschrijven

- abbestellen

- עצור

- חרא

- nicht senden

- geen bericht

- skicka inte

- smsa inte

- retirar

- desuscribir

- parar

- descadastrar

- בטל

- больше не шли

- стоп

- niet sturen

- דואר זבל

- no molestar

- оптаут

- אל תשלח

- הפסק

- cancellare

- הסרה

- remove

- сними

- marre

- désabonné

- desabonner

- no escribir

- no más

- retiré

- cancelar

- niet zenden

- פאק

- basura

- bloqué

- fermare

- ביטול

- arschloch

- don't send

DocuSign Envelope ID: F42F349A-8329-4747-8C3E-B461C9ACD233

- non mandare

- eliminar

- não quero

- enlevé

- opt-out

- esclusione

- fick dich

- иди на хуй

- excluir

- перестань

- abmelden

- avregistrera

- verwijder

- no deseado

- sms off

- זונה

- veux plus

- להסיר

- stop

- enlever

- retirer

- niet texten

- ספאם

- cancel

- בן זונה

- bloquer

- não enviar

- spam

- merda

- puta madre

- dejen de chingar

- не хочу

- plus recevoir

- remover

- não escrever

- отмени

- entfernen

- annullare

- mierda

- togliere

- opt not

- ongevraagde email

- ta bort

- wixxer

- fuck

- finire l'abonamento

DocuSign Envelope ID: F42F349A-8329-4707-8C3E-B461C9ACD233

- quitar

- stornieren

- opt out

- don't text

- no quiero

- annuler

- опт-аут

- no textear

- arrêté

- сними со списка

- отстань

- arreter

- unsub

- annulé

- résilier

- no enviar

- иди вон

- veut plus

- chier

- optout

- plus m'écrire

- pourriel

- הסר

- cazzo

- don't contact

- do not contact

DocuSign Envelope ID: F42F349A-8329-47d7-8C3E-B461C9ACD233

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARIA VERGARA, JAMES LATHROP, SANDEEP PAL, JENNIFER REILLY, JUSTIN BARTOLET, and JONATHAN GRINDELL, individually and on behalf of similarly situated individuals, | ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 15-cv-06942 |
| v. | ) ) | Hon. Thomas M. Durkin |
| UBER TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) | |
| *Defendant*. | ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Maria Vergara, James Lathrop, Sandeep Pal, Jennifer Reilly, Justin Bartolet, and Jonathan Grindell (collectively, "Plaintiffs"), by and through their undersigned attorneys, and on behalf of similarly-situated individuals, bring this First Amended Class Action Complaint against Defendant, Uber Technologies, Inc. ("Uber"), to stop Defendant's practice of sending unauthorized text messages to consumers' cellphones and to obtain redress for similarly-situated persons injured by such conduct. For their First Amended Class Action Complaint, Plaintiffs allege as follows based on personal knowledge as to themselves and their own acts and experiences, and as to all other matters, on information and belief, including an investigation by their attorneys.

## NATURE OF THE ACTION

1.      In an effort to advance its digital transportation service, Uber violated federal law by sending unauthorized text message calls to the cellphones of individuals throughout the nation.

DocuSign Envelope ID: F42F349A-8329-47D7-9C3F-B461C9ACD233

2.     By effectuating these unauthorized text message calls (hereinafter, "wireless spam"), Defendant has violated individuals' statutory and privacy rights and has caused individuals actual harm, not only because individuals were subjected to the aggravation and invasion of privacy that necessarily accompanies wireless spam, but also because individuals frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3.     In order to redress these injuries, the Plaintiffs, individually and on behalf of nationwide classes defined below, bring suit under the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, which protects individuals' privacy rights and the right to be free from receiving unsolicited voice and text calls to cellular phones.

4.     The TCPA exists to prevent communications like the ones described within this complaint.   "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

5.     Congressional committees investigating the use of telecommunications technology found that legislation was necessary to prevent abusive telemarketing practices and protect consumers from invasions of privacy, harassment, and economic harm. The Senate Committee on Commerce, Science, and Transportation found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to . . . cellular . . . telephone numbers often impose a cost on the called party (. . . [where, e.g.] cellular users must pay for each incoming call . . .)." *See* S. Report No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991). The House Committee on Energy and Commerce concurred, finding that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support of consumers, state

DocuSign Envelope ID: F42F349A-8329-4D47-8C3F-B461C9ACD233

regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed to protect residential telephone subscriber privacy rights." H.R. Report No. 102-317, 1991 WL 245201 at *18 (Nov. 15, 1991).

6.     When it passed the TCPA, Congress intended to provide consumers a choice as to how telemarketers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."  Pub. L. No. 102–243, § 11.  Congress also found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy . . . ." *Id.* at §§ 12-13.

7.     The TCPA's ban on telephone calls made using an automatic telephone dialing system ("ATDS" or "autodialer"), as defined by 47 U.S.C. § 227(a)(1), has been interpreted to extend to unsolicited autodialed text messages sent to cellular phones.  *E.g.*, FCC Declaratory Ruling, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014); *Gager v. Dell Fin. Servs., Inc.*, 727 F.3d 265, 269 n.2 (7th Cir. 2013).

8.     On behalf of themselves and the members of the classes, Plaintiffs seek injunctive relief and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**JURISDICTION AND VENUE**

9.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, because this action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.

10.     Venue is proper in this District pursuant to 28 U.S.C. 1391(b), because Defendant resides in this District and does business in this District, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, as many of the unauthorized text messages at issue in this case were received in this District.

## PARTIES

11.     Plaintiff Maria Vergara is a natural person residing in Illinois. Plaintiff Vergara asserts claims against Uber for violating Section 227(b)(1)(A)(iii) of the TCPA, because Uber sent her unsolicited, automated text messages.  Vergara was not a party to a contract with Uber, and Uber sent her these automated text messages without her prior express consent.

12.     Plaintiff James Lathrop is a natural person residing in Oregon. Plaintiff Lathrop started Uber's driver partner application process, but did not become an "active" driver in Uber's system and never provided express consent to receive automated text messages. He asserts claims against Uber for violating Section 227(b)(1)(A)(iii) of the TCPA for having sent him unsolicited, automated text messages without his prior express consent.

13.     Plaintiff Sandeep Pal is a natural person residing in New York. Plaintiff Pal asserts claims against Uber for violating Section 227(b)(1)(A)(iii) of the TCPA, because Uber sent him unsolicited, automated text messages in connection with Uber's Refer-a-Friend program without his prior express consent.  Uber also sent Plaintiff Pal unsolicited, automated text messages after he communicated requests to Uber to discontinue sending him text messages in violation of the TCPA.

DocuSign Envelope ID: F42F349A-B329-4747-9C9E-B461C9ACD233

14.    Plaintiff Jennifer Reilly is a natural person residing in Florida. Plaintiff Reilly started Uber's driver partner application process, but did not become an "active" driver in Uber's system and never provided valid express consent to receive automated text messages. She asserts claims against Uber for violating Section 227(b)(1)(A)(iii) of the TCPA for having sent her unsolicited, automated text messages without her prior express consent.  Uber also sent Plaintiff Reilly unsolicited, automated text messages after she communicated requests to Uber to discontinue sending her text messages in violation of the TCPA.

15.    Plaintiff Justin Bartolet is a natural person residing in Ohio. Plaintiff Bartolet started Uber's driver partner application process, but did not become an "active" driver in Uber's system and never provided valid express consent to receive automated text messages. He asserts claims against Uber for violating Section 227(b)(1)(A)(iii) of the TCPA for having sent him unsolicited, automated text messages without his prior express consent.  Uber also sent Plaintiff Bartolet unsolicited, automated text messages after he communicated requests to Uber to discontinue sending him text messages in violation of the TCPA.

16.    Plaintiff Jonathan Grindell is a natural person residing in Washington. Plaintiff Grindell started Uber's driver partner application process, but did not become an "active" driver in Uber's system and never provided express consent to receive automated text messages. He asserts claims against Uber for violating Section 227(b)(1)(A)(iii) of the TCPA for having sent him unsolicited, automated text messages without his prior express consent.  Uber also sent Plaintiff Grindell unsolicited, automated text messages after he communicated requests to Uber to discontinue sending him text messages in violation of the TCPA.

DocuSign Envelope ID: F42F349A-8329-4747-8935-B461C9ACD233

17.     Defendant Uber is a multinational corporation that provides a transportation service that connects passengers to automobile drivers via Uber's smartphone application. Uber is a Delaware corporation with its headquarters located in California.

### COMMON ALLEGATIONS OF FACT

18.     Uber is an international technology company and the developer of the Uber mobile app—a smartphone application that connects available drivers with passengers seeking transportation.

19.     The Uber app functions as a taxi-style transportation service, allowing consumers throughout the nation to submit trip requests through the app to drivers who then use their own automobiles to transport consumers to their requested destinations.

20.     One of the primary ways in which Uber communicates with drivers (both prospective and existing), riders, and the public at large is through SMS text messages sent to individuals' cellphones.

21.     The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

22.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone makes noise or vibrates, alerting him or her that a call is being received.

23.     Defendant uses SMS messaging to recruit potential drivers, as well as to encourage consumers to download its app to become riders and users of its service.

24. Because Defendant's income is dependent on the number of consumers registering as riders and drivers with Defendant's app, Defendant often fails to ensure that the recipients of its messages have provided prior express consent.

25. For example, Defendant created a "Refer-a-Friend" program, by which it encourages existing drivers to enter telephone numbers of purported "friends" into its mobile app and website. Then, Defendant, acting together with its text messaging vendor, Twilio, Inc.,[1] blasts pre-scripted, automated messages to those cellular telephone numbers in order to recruit new drivers. If a Refer-a-Friend text message recipient ultimately becomes a driver and satisfies certain conditions, the referring driver often receives a payment from Defendant ranging from $250-$500.

26. Defendant failed to adopt sufficient measures to obtain the prior express consent of individuals to which it has sent its Refer-a-Friend messages.

27. Similarly, Defendant's account enrollment process does not include procedures necessary to confirm the accuracy of the information Defendant receives from prospective riders.

28. As a result, Defendant's customer account creation and administration processes lack steps sufficient to confirm that the telephone numbers Defendant receives from potential riders, and then to which it sends text messages, belong to someone who has consented to receive automated text messages, resulting in numerous errant and unauthorized messages.

29. Further, many of the telephone numbers in Defendant's possession are inaccurate, resulting in Defendant routinely sending unsolicited text messages to individuals who never expressed any interest in the Uber app and never provided consent to receive messages from Defendant.

---

[1] Twilio, Inc. provides services as an SMS aggregator. An SMS aggregator uses computerized messaging technology to serve as an intermediary or bridge between a company's messaging platform and the cellular telephone networks, allowing companies to send automated messages to consumers' cellphones *en masse*.

DocuSign Envelope ID: F42F349A-B329-4747-8C3F-B161C9ACD233

30.     Defendant also routinely fails to honor individuals' requests that Uber cease sending them text messages, even where Defendant receives multiple such requests. For instance, one person filed a complaint with the Federal Trade Commission stating, "Uber has been texting me for the past month. They texted me on Christmas eve at 1:44am and 4:10am. I returned texts saying STOP. I wrote them an email asking them to remove my number from their lists. And I'm still getting text messages." Another person reported receiving 42 text messages from Uber in two weeks.

31.     In addition to being an aggravating invasion of privacy, unsolicited SMS calls, and particularly wireless spam, invade privacy and can actually cost their recipients money because cellphone users like the Plaintiffs must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

**Facts Specific to Plaintiff Vergara**

32.     On June 14, 2015, Plaintiff Vergara's cellphone rang, indicating that two identical text calls were being received.  The "from" field of the transmission was identified as "(469) 275-4970," which is a specialized telephone number utilized by Defendant and its agents for the transmission of text messages en masse.  The body of each text message read: "Your Uber account verification number is 9274. Enter this in our app to confirm your Uber account."

33.     Thereafter, including repeatedly on August 2, 2015, Defendant sent Plaintiff Vergara at least a half dozen more text messages containing generic, scripted messages.

34.     At no time did Plaintiff Vergara attempt to acquire the Uber application, become a customer of Uber, or otherwise use the Uber app.  Moreover, at no time did Defendant confirm the

- 8 -

DocuSign Envelope ID: F42F349A-8320-4747-8C3E-B461C9ACD233

ownership of the phone number to which Defendant was transmitting text messages or otherwise confirm that Defendant had obtained Plaintiff Vergara's consent to send any such text messages.

35.     Indeed, at no time did Plaintiff Vergara provide consent, including any written consent, to receive the above-referenced messages or any other such wireless spam from Defendant, its agents, or partner entities.

**Facts Specific to Plaintiff Lathrop**

36.     In July of 2014, Lathrop was interested in becoming a driver for Uber.  He began the sign-up process to learn about the requirements to become an Uber driver.

37.     Lathrop provided his personal information at the beginning of the sign-up process, but he decided not to complete the process to become a driver after learning that his car did not meet Uber's requirements.

38.     Lathrop never finished the process to become an Uber driver.

39.     Lathrop did not, at any point during the sign-up process, provide express consent to receive automated text messages to his cell phone.

40.     In July of 2014, Lathrop began to receive automated text messages from Uber.

41.     Between July of 2014 and December 30, 2014, Lathrop received approximately 28 automated text messages from Uber from approximately 16 different numbers.

42.     The text messages are not personalized to Lathrop and are large automated text distributions from Uber to multiple recipients.

43.     For example, on October 7, 2014, Lathrop received a message at 11:13 a.m. from (484) 228-7030 stating, "Uber: We are expanding our footprint in Oregon and want to get you on the road! Please check your email for next steps."

DocuSign Envelope ID: F42F349A-B329-4DA7-8C3E-B461C9ACD233

44.     On December 3, 2014, Lathrop received a message at 11:37 a.m. from (484) 575-4191 stating, "UBER: Come to our Onboarding Event TOMORROW to claim your $100 Bonus!" *See id.* at 3.

45.     The automated text messages that Uber sent to Lathrop were to a phone number for which Lathrop is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).  The last four digits of Lathrop's phone number are "6425."

46.     The text messages that Uber sent were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

47.     Uber sent the text messages via an automatic telephone dialing system ("ATDS") or autodialer as defined by 47 U.S.C. § 227(a)(1).  The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention.

48.     The text messages from Uber also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. § 227(b)(1).

49.     The automated text messages that Uber sent to Lathrop were sent without Lathrop's prior express consent.

50.     Lathrop alleges that each text message he received from Uber violated 47 U.S.C. § 227(b)(1).

**Facts Specific to Plaintiff Grindell**

51.     In or around October of 2014, Grindell began an application to become an Uber driver through Uber's website.  As part of that application process, Grindell provided Uber with his cellular phone number.  Grindell did not complete the process to become an Uber driver.

DocuSign Envelope ID: F43F349A-B329-4717-9C9E-B461C9ACD233

52.     Grindell did not, at any point during the sign-up process, provide express consent to receive automated text messages to his cell phone.

53.     Soon after providing Uber with his cellular phone number, Grindell started to receive multiple automated text messages from Uber from several different phone numbers.

54.     Grindell tried to stop the text messages several times. He has replied to Uber's text messages saying, "Remove" and continued to receive automated text messages from Uber.

55.     Grindell received automated text messages daily during the last two weeks of December of 2014. He received at least 22 text messages total from telephone numbers associated with Uber.

56.     Most of the text messages are not personalized for Grindell and are large automated text distributions from Uber to multiple recipients. For example, on December 31, 2014, Grindell received a message at 10:25 a.m. from (402) 807-2771, stating "LAST CHANCE to get on Uber before the New Year's Eve rush. Earn up to $31/hr on the biggest night of the year! . . ."

57.     The automated text messages that Uber sent to Grindell were to a cellular telephone number for which Grindell is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).  The last four digits of Grindell's cellular telephone number are "2116."

58.     Grindell's cell phone plan at the time he received the text messages only provided for 1,000 text messages per month.  Due to Uber's incessant text messages, Grindell had to alter his cell phone usage patterns, resorting to Facebook messages and other means of communication in order to reach his family and friends.

59.     The automated text messages that Uber sent Grindell were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

60. Uber sent the text messages to Grindell via an ATDS or autodialer as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention.

61. The automated text messages from Uber also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. § 227(b)(1).

62. The automated text messages that Uber sent to Grindell were sent without Grindell's prior express consent. Moreover, Uber continued to send Grindell text messages even after Grindell explicitly asked to be removed.

63. Grindell alleges that each text message he received from Uber violated 47 U.S.C. § 227(b)(1).

**Facts Specific to Plaintiff Pal**

64. Plaintiff Pal has never been an Uber member, driver, or user. He has never applied to be an Uber driver and has never given Uber his cellular telephone number.

65. In January of 2015, Pal received six text messages on his cellular telephone from Uber about working for Uber as a driver.

66. The text messages were not personalized to Pal and are large automated text distributions from Uber to multiple recipients.

67. For example, on January 4, 2015, at 1:21 p.m., Pal received a message from Uber stating, "Sagar Roy sent you an invite to drive with Uber! Use the following link to sign up: https://partners.uber.com/drive/?invite_code=g01th."

68. Plaintiff Pal does not know any person named Sagar Roy.

DocuSign Envelope ID: F42F349A-8329-47AF-9C3E-B461C9ACD233

69.     On January 5, 2015, Pal received a message from Uber from the same number stating, "Ayman Zeerban sent you an invite to drive with Uber! . . ."

70.     Plaintiff Pal does not know any person named Ayman Zeerban.

71.     On January 20, 2015, Pal received another message from Uber inviting him to drive with Uber.  Pal responded, "Stop Regards, True Pal," to which Uber replied, "Uber does not accept messages at this time."



72.     The text messages that Uber sent to Pal were to a cellular telephone number for which Pal is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).  The last four digits of Pal's cellular telephone number are "5396."

DocuSign Envelope ID: F43F349A-8329-4707-8C3E-B461C9ACD233

73.     The text messages that Uber sent were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

74.     Uber sent the text messages via an ATDS or autodialer as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention.

75.     The text messages from Uber also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. § 227(b)(1).

76.     The automated text messages that Uber sent to Pal were sent without Pal's prior express consent.

77.     Pal alleges that each text message he received from Uber violated 47 U.S.C. § 227(b)(1).

**Facts Specific to Plaintiff Reilly**

78.     In or around August 11, 2014, Reilly started the application to become an Uber driver through Uber's website but ultimately decided not to complete the application because she was no longer interested.

79.     Reilly did not, at any point during the sign-up process, provide express consent to receive automated text messages to her cell phone.

80.     Soon thereafter, Reilly started receiving automated text messages from Uber from several different phone numbers pestering her about finishing her application.

81.     For example, on August 30, 2014, Reilly received a message at 1:00 p.m. from (813) 642-7019 stating, "Hi, it's Mark from Uber! Make sure you upload your documents on your partners.uber.com account so you can get on the road ASAP!"

DocuSign Envelope ID: F42F349A-8329-4747-8C3E-B461C9ACD233

82.     On October 3, 2014, Reilly received an automated text message at 12:58 p.m. from a different number, (484) 228-7048, stating, "Hi, it's Tony from Uber! Make sure you upload your documents on your partners.uber.com account so you can get on the road ASAP!"

83.     On October 14, 2014, Reilly received another text message from "Tony," from a third telephone number, (484) 575-4162, to which she replied, "Can you please take me off of this list."

84.     Despite Reilly's request, Uber sent Reilly another message on October 24, 2014, from a fourth telephone number, asking her to finalize her application.

85.     The automated text messages that Uber sent to Reilly were to a cellular telephone number for which Reilly is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).  The last four digits of Reilly's cellular telephone number are "2119."

86.     The text messages that Uber sent were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

87.     Uber sent the text messages via an ATDS or autodialer as defined by 47 U.S.C. § 227(a)(1).  The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention.

88.     The text messages from Uber also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. § 227(b)(1).

89.     The automated text messages that Uber sent to Reilly were sent without Reilly's prior express consent.

90.     Reilly alleges that each text message she received from Uber violated 47 U.S.C. § 227(b)(1).

DocuSign Envelope ID: F42F349A-8329-4747-8C3E-B461C9ACD233

**Facts Specific to Plaintiff Bartolet**

91.     In or around September of 2014, Bartolet began an application to become an Uber driver through Uber's website.  As part of that application process, Bartolet provided Uber with his cellular phone number.  Bartolet did not complete the process to become an Uber driver.

92.     Bartolet did not, at any point during the sign-up process, provide express consent to receive automated text messages to his cell phone.

93.     Soon after providing Uber with his cellular phone number, Bartolet started to receive multiple automated text messages from Uber from several different phone numbers. Between September of 2014 and January of 2015, Bartolet received at least 94 text messages from 44 different numbers.

94.     Bartolet tried to stop the text messages several times. For example, on October 31, 2014 at 10:01 a.m. (pictured below, left), he responded to one of Uber's text messages by stating "Stop texting this number." Bartolet received at least 58 text messages (exemplars pictured below, right) from Uber after sending this message.




95.     The automated text messages that Uber sent to Bartolet were to a cellular telephone

number for which Bartolet is charged for incoming calls and text messages pursuant to 47 U.S.C.

§ 227(b)(1)(A)(iii).  The last four digits of Bartolet's cellular telephone number are "1351."

96.     The automated text messages that Uber sent Bartolet were not for an emergency

purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

97.     Uber sent the text messages to Bartolet via an ATDS or autodialer as defined by

47 U.S.C. § 227(a)(1).  The ATDS has the capability to both (1) store or produce telephone

numbers to be texted using a random or sequential number generator, and (2) automatically send

text messages from a list or database of telephone numbers, without human intervention.

DocuSign Envelope ID: F42F349A-B329-4747-9C3E-B461C9ACD233

98.     The automated text messages from Uber also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. § 227(b)(1).

99.     The automated text messages that Uber sent to Bartolet were sent without Bartolet's prior express consent.  Moreover, Uber continued to send Bartolet text messages even after Bartolet explicitly asked Uber to stop sending him text messages.

100.    Bartolet alleges that each text message he received from Uber violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

101.    Plaintiffs bring this action individually and on behalf of three nationwide classes defined as follows:

Class A:   All persons or entities within the U.S. who, during the relevant time period, used or subscribed to a wireless or cellular service who were sent one or more non-emergency text messages, utilizing Twilio, Inc.'s system, in connection with Uber's Refer-a-Friend program.

Class B:   All persons or entities within the U.S. who, during the relevant time period, started Uber's driver partner application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

Class C:   All persons or entities in the U.S. who, during the relevant time period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a cellular telephone number to which Uber sent one or more non-emergency text messages.

102.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the

financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Classes.

103.    Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

104.    Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making injunctive or corresponding declaratory relief appropriate for each Class as a whole.

105.    The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Classes are the same, resulting in injury to the Plaintiffs and to all of the other members of the Classes. Plaintiffs and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

106.    Upon information and belief, there are thousands of members of the Classes such that joinder of all members is impracticable.

107.    There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to, the following:

        (a)    Did Defendant and/or its agents send one or more text messages to members of the Classes?

DocuSign Envelope ID: F42F349A-B329-4747-8C3F-B461C9ACD233

(b)     Did Defendant and/or its agents use an automatic telephone dialing system to transmit the unsolicited text messages at issue?

(c)     Did Defendant and/or its agents transmit text messages to persons who did not previously provide Defendant with prior express consent to receive such messages?

(d)     Did the wireless spam distributed by Defendant violate the TCPA?

(e)     Are the Class members entitled to treble damages based on the willfulness of Defendant's conduct?

(f)     Should Defendant be enjoined from engaging in such conduct in the future?

## COUNT I
**Violation of Telephone Consumer Protection Act (47 U.S.C. § 227)**
**on behalf of Plaintiffs and the members of the Classes**

108.     Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

109.     Defendant made unsolicited text calls to lists of wireless telephone numbers of Plaintiffs and the other members of the Classes using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention.

110.     These text message calls were made *en masse* without the prior express consent of the Plaintiffs and the Classes.

111.     Defendant also made text message calls to Plaintiffs Bartolet, Reilly, Pal and Grindell after each of them communicated a request to Defendant to discontinue sending text messages to them.

112.     Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

DocuSign Envelope ID: F42F349A-B329-4747-8C3E-B461C9ACD233

113.    As a result of Defendant's illegal conduct, Plaintiffs and the members of the Classes have had their privacy rights violated, have suffered actual and statutory damages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each such violation of the TCPA.

114.    To the extent Defendant knew or should have known that the members of the Classes did not provide prior express consent to be sent the wireless spam at issue, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and members of the Classes.

115.    As a result of Uber's violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and members of the Classes have suffered invasions of their privacy, unwanted use of data storage space on their cellular telephones, have been subjected to nuisance text messages, and have been forced to waste time reviewing, deleting, and/or responding to Uber's unsolicited automated text messages.

116.    Plaintiffs and members of the Classes also suffered damages in the form of text message, data, and other charges to their cellular telephone plans.

117.    Plaintiffs and members of the Classes are also entitled to and seek injunctive relief prohibiting Uber's illegal conduct in the future.

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

1.      An order certifying the Classes as defined above;

2.      An award of statutory damages in an amount to be determined at trial;

3.      An injunction requiring Defendant to cease all wireless spam activities;

4.      An award of reasonable attorneys' fees and costs; and

5.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated:  August ___, 2017

Respectfully submitted,

MARIA VERGARA, JAMES LATHROP, SANDEEP PAL, JENNIFER REILLY, JUSTIN BARTOLET, and JONATHAN GRINDELL, individually and on behalf of classes of similarly situated individuals

By: */s/ Paul T. Geske*
One of Plaintiffs' Attorneys

Myles McGuire
Evan M. Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

Hassan A. Zavareei (pro hac vice filed)
Andrea R. Gold (pro hac vice filed)
Andrew J. Silver (pro hac vice filed)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com
asilver@tzlegal.com

# EXHIBIT 2

DocuSign Envelope ID: F42F349A-8329-47D7-8C9E-B461C9ACD233

***Vergara, et al. v. Uber Technologies, Inc.,*** **Case No.: 1:15-cv-06942 (N.D. Ill.)**

## CLAIM FORM

**To receive benefits from this Settlement, your claim form *must* be electronically submitted or postmarked on or before _____.**
**You may submit your completed and signed claim form online at [==settlement website==] or by mail to:**

**Uber TCPA Settlement Administrator**
**[==Address==]**

<u>You must complete all sections and sign below in order to receive any benefits from this Settlement.</u>

**You should only submit a claim form if you are a member of one or more of the following Settlement Classes:**

<u>Settlement Class A</u>:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [==date==], used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

<u>Settlement Class B</u>:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [==date==], started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

<u>Settlement Class C</u>:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [==date==], were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

By submitting a claim, you are attesting that you received one or more text message(s) from Uber but did not consent to receive such text message(s) or had otherwise revoked any consent previously given.

_____ \_\_   _____
FIRST NAME                                                    MI    LAST NAME

_____
STREET ADDRESS

_____  _____  _____ - _____
CITY                                                                            STATE         ZIP              ZIP4 (optional)

_____  _____
EMAIL ADDRESS                                         CONTACT PHONE NUMBER

_____
CELL PHONE NUMBER AT WHICH YOU RECEIVED TEXT MESSAGES FROM UBER

Class Member ID from email or postcard notice (if you did not receive such a notice, leave this blank): _____

You further agree that you will not object to a request by the Settlement Administrator or the parties to this action to obtain your cell phone billing records from the wireless carriers only if necessary to verify your claim.  You should not submit more than one claim form.  Submitting more than one claim form will not increase your compensation under the Settlement Agreement.

I declare that I am a member of the Settlement Classes, and I have accurately filled out this form.

Signature: _____        Date:_____

DocuSign Envelope ID: F42F349A-B329-47A7-9C3E-B461C9ACD233

# EXHIBIT 3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARIA VERGARA, et al., | Case No. 1:15-CV-06942 |
| Plaintiffs, | Hon. Thomas M. Durkin |
| v. | |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

**[PROPOSED] ORDER PRELIMINARILY APPROVING
CLASS ACTION SETTLEMENT AGREEMENT, CONDITIONALLY CERTIFYING
SETTLEMENT CLASSES, DIRECTING NOTICE OF PROPOSED CLASS
SETTLEMENT, AND SCHEDULING A FINAL APPROVAL HEARING DATE**

WHEREAS, Maria Vergara, James Lathrop, Jonathan Grindell, Sandeep Pal, Jennifer Reilly, and Justin Bartolet ("Plaintiffs"), and Defendant, Uber Technologies, Inc., ("Defendant") (collectively, the "Parties") have reached a proposed settlement and compromise of the claims in the above-captioned matter, which is embodied in the Settlement Agreement filed with the Court; and

WHEREAS, the Parties have applied to the Court for preliminary approval of the proposed Settlement, the terms and conditions of which are set forth in the Settlement Agreement; and

WHEREAS, the Capitalized Terms herein shall have the same meaning as in the Settlement Agreement;

NOW, THEREFORE, the Court, having read and considered the Settlement Agreement and accompanying documents, as well as the Motion for Preliminary Settlement Approval and

DocuSign Envelope ID: F43F349A-8329-4747-8C3E-B461C9ACD233

supporting papers, and the Parties to the Settlement Agreement having consented to the entry of this order, AND GOOD CAUSE APPEARING,

IT IS HEREBY ORDERED AS FOLLOWS:

1.      Subject to further consideration by the Court at the time of the Final Approval Hearing, the Court preliminarily approves the Settlement as fair, reasonable, and adequate to the Settlement Classes, as falling within the range of possible final approval, and as meriting submission to the Settlement Classes for their consideration.

2.      For purposes of the Settlement only, the Court conditionally certifies the Settlement Classes, defined as:

> Settlement Class A:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [date], used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

> Settlement Class B:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [date], started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

> Settlement Class C:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [date], were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

Excluded from the Settlement Classes are all persons who elect to exclude themselves from the Settlement Classes, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

3.      The Court preliminarily finds, solely for purposes of considering this Settlement, that the requirements of Federal Rule of Civil Procedure 23 appear to be satisfied, including

requirements for the existence of numerosity, typicality, commonality, adequacy of representation, and manageability of Settlement Classes, that common issues of law and fact predominate over individualized issues, and that Settlement Classes are superior to alternative means of resolving the claims and disputes at issue in this Action.

4.      Plaintiffs Jonathan Grindell, Sandeep Pal, James Lathrop, Jennifer Reilly, Justin Bartolet, and Maria Vergara shall serve as Class Representatives of the Settlement Classes.

5.      The Court appoints the following counsel as Class Counsel for purposes of this settlement:

> Hassan A. Zavareei
> Andrea R. Gold
> TYCKO & ZAVAREEI LLP
> 1828 L Street, N.W., Suite 1000
> Washington, D.C.  20036; and
>
> Myles McGuire
> Evan M. Meyers
> Paul T. Geske
> MCGUIRE LAW, P.C.
> 55 W. Wacker Drive, 9th Floor
> Chicago, IL  60601.

The Court preliminarily finds that the Plaintiffs and Class Counsel have and will fairly and adequately represent and protect the interests of the absent members of the Settlement Classes in accordance with Federal Rule of Civil Procedure 23.

6.      The Court approves the nomination of Epiq Systems, Inc. to administer the Settlement.

7.      A Final Approval Hearing shall be held before this Court at _____ on

_____, in Courtroom 1441, 219 South Dearborn Street, Chicago, Ill. 60604, to

address:  (a) whether the proposed Settlement should be finally approved as fair, reasonable and

adequate; (b) whether the Final Approval Order and Judgment should be entered; (c) whether Class Counsel's application for attorney's fees, expenses, and Class Representatives' service awards should be approved; and (d) any other matters that the Court deems appropriate.

8. With the exception of such proceedings as are necessary to implement, effectuate and grant final approval to the terms of the Settlement Agreement, all proceedings with respect to the claims in this Action are stayed and all members of the Settlement Classes are enjoined from commencing or continuing any action or proceeding in any court or tribunal asserting any claims encompassed by the Settlement Agreement.

9. The Court has reviewed and approves, as to form and content, the Publication Notice, the Postcard Notice, and the Long Form Notice, all of which are attached to the Settlement Agreement. The Publication Notice shall be posted on the Settlement website and published in the publication listed in the Settlement Agreement.

10. The Court finds that the Parties' plan for providing notice to the Settlement Classes described in Section IX of the Settlement Agreement constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing, and complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. The Settlement Administrator shall complete dissemination of notice in the manner prescribed in Section IX of the Settlement Agreement no later than sixty (60) days after the date of this Order.

11. The Court further finds that the notice plan described in Section IX of the Settlement Agreement will adequately inform members of the Settlement Classes of their right to

exclude themselves from the Settlement Classes so as not to be bound by the terms of the Settlement Agreement. Any member of the Settlement Classes who desires to be excluded from the Settlement Classes, and therefore not be bound by the terms of the Settlement Agreement, must submit to the Settlement Administrator, pursuant to the instructions set forth in the Notice, a timely and valid written request for exclusion within 120 days of the date of this Order.

12. Any member of the Settlement Classes who elects to be excluded shall not be entitled to receive any of the benefits of the Settlement, shall not be bound by the release of any claims pursuant to the Settlement Agreement, and shall not be entitled to object to the Settlement or appear at the Final Approval Hearing. The names of all persons and entities timely submitting valid Requests for Exclusion shall be provided to the Court by the Settlement Administrator before the Final Approval Hearing.

13. Any member of the Settlement Classes who does not submit a valid and timely Request for Exclusion may object to the Settlement Agreement, to Class Counsel's application for attorney's fees, expenses, and costs, to the Class Representatives' service awards, or to the proposed Order and Judgment. All objections must be postmarked by the Objection Deadline. All objections must be submitted to the Parties' counsel and the Settlement Administrator 30 days before the Final Approval Hearing. The Parties shall file such objections with the Court 14 days before the Final Approval Hearing. No member of the Settlement Classes shall have the right to appear and be heard at the Final Approval Hearing, either personally or through an attorney, unless written notice of the Class Member's objection and any brief in support of the objection have been submitted in conformance with the procedure set out in the detailed notice, which is Exhibit 6 to the Settlement Agreement.

DocuSign Envelope ID: F42F349A-8329-47D7-9C3E-B461C9AC0233

14.     Service of all papers on counsel for the Parties shall be made as follows:  for Class Counsel, to the counsel listed in paragraph 5 above, and for Defendant's Counsel, to Austin V. Schwing, Gibson Dunn & Crutcher LLP, 555 Mission Street, San Francisco, CA. 94105.

15.     Any member of the Settlement Classes who does not make an objection in the time and manner provided in the detailed notice, which is Exhibit 6 to the Settlement Agreement, shall be deemed to have waived such objection and be forever foreclosed from making any objection to the fairness or adequacy of the proposed settlement as incorporated in the Settlement Agreement, the payment of attorney's fees, costs, and expenses, the Class Representatives' service award, the allocation of the Settlement Fund, or the Final Approval Order and Judgment.

16.     In the event that the proposed Settlement is not approved by the Court, or in the event that the Settlement Agreement becomes null and void pursuant to its terms, this Order and all orders entered in connection therewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this Action or in any other case or controversy; in such event the Settlement Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the Parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

17.     Class Counsel may file any motion seeking an award of attorneys' fees, costs and expenses, as well as Service Awards for the Class Representatives, no later than _____ ___, 2017.

18.     All papers in support of the final approval of the proposed Settlement shall be filed no later than ten (10) days before the Final Approval Hearing.

DocuSign Envelope ID: F42F349A-8329-4707-2C3E-B461C9ACD233

19.     The Court may, for good cause, extend any of the scheduled dates or deadlines set forth in this Order without further notice to the members of the Settlement Classes.  The Final Approval Hearing may, from time to time and without further notice to the Settlement Classes, be continued by order of the Court.

20.     For clarity, the deadlines set forth above and in the Settlement Agreement are as follows:

**Notice to be completed by:**                    _____ ___, 2017

**Fee and Expense Application:**                  _____ ___, 2017

**Objection:**                                    _____ ___, 2017

**Exclusion Request:**                            _____ ___, 2017

**Final Approval Submissions:**                   _____ ___, 2017

**Final Approval Hearing:**                       _____ ___, 2017 at _____ a.m.

**Claims Deadline:**                              _____ ___, 2017


**IT IS SO ORDERED.**


Dated:

_____
Hon. Thomas M. Durkin
U.S. District Court Judge

7

DocuSign Envelope ID: F42F349A-8329-47A7-8C3E-B461C9ACD233

# EXHIBIT 4

DocuSign Envelope ID: F42F349A-B329-4747-8C3E-B461C8ACD233

**If You Were Sent a Text Message By Uber Technologies, Inc. Between December 31, 2010 and Month Day, 2017 <u>You May Be Eligible for a Payment from a Class Action Settlement</u>.**

The United States District Court for the Northern District of Illinois has authorized this notice. This is <u>not</u> an advertisement and <u>not</u> a solicitation from a lawyer.

*Para una notificacion en Espanol, visitar www.website.com.*

A proposed settlement has been reached in a class action lawsuit against Uber Technologies, Inc. ("Uber") regarding text messages allegedly sent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), from December 31, 2010 to Month Day, 2017 ("Class Period"). The case is *Vergara, et al. v. Uber Technologies, Inc.* Case No. 1:15-CV-06942 (N.D. Ill.). This case was brought as a class action alleging that Uber violated the TCPA by sending automated text messages without consent to individuals' cellphones. Uber denies the allegations. The Court has not decided who is right, and the Parties have chosen to settle their dispute. This notice provides only a summary of the allegations.

### Am I Included?
You may be entitled to compensation from this Settlement if you fall within at least one of the following Settlement Classes: **A)** All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program; **B)** All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages; and **C)** All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

### What Does the Settlement Provide?
Uber has agreed to create a fund totaling $20,000,000 to pay valid claims, settlement administration expenses, attorneys' fees, costs and expenses, and class representative service awards. To receive a payment, you must submit a claim form by **Month Day, 2017**. Class Members can file a claim online at the website or submit a claim by mail. Visit the website below or call for more information on filing your claim. Uber has also agreed to alter its texting practices as explained in the detailed notice and Settlement Agreement at the website listed below.

### Your Rights May Be Affected.
Class Members who do not want to be legally bound by the Settlement must exclude themselves by **Month Day, 2017**. Class Members who do not exclude themselves will release their claims against Uber, as more fully described in the Settlement Agreement. Class Members who stay in the Settlement may object to it by **Month Day, 2017**. The Detailed Notice available on the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **Month Day, 2017** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to $6,660,000 plus costs and expenses, and service awards for the Class Representatives of $10,000 each. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

### How Can You Get More Information?
Please do not contact the Court, Uber, or Uber's counsel with questions regarding this lawsuit. If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit www.insert.com. You may also contact the Settlement Administrator by calling insert.

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

DocuSign Envelope ID: F42F349A-B329-47-47-9C3E-B461C9ACD233

# EXHIBIT 5

DocuSign Envelope ID: F42F349A-8329-4747-8C3E-B461C9ACD233

Class Member ID Number: _____

### If You Were Sent a Text Message By Uber Technologies, Inc. Between December 31, 2010 <u>and Month Day, Year You May Be Eligible for a Payment from a Class Action Settlement</u>.

A proposed settlement has been reached in a class action lawsuit against Uber Technologies, Inc. ("Uber") regarding automated text messages sent from December 31, 2010 to Month Day, 2017 ("Class Period"), allegedly in violation of the law. (*Vergara, et al. v. Uber Technologies, Inc.* Case No. 1:15-CV-06942 (N.D. Ill.)). Uber denies the allegations. The Court has not decided who is right, and the parties have settled their dispute.

**Why am I being contacted?** Our records indicate that you may have received one or more automated text messages and that you may be eligible to receive a payment from the settlement.

**Who's Included in the Classes? A)** All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program; **B)** All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages; and **C)** All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

**What Does the Settlement Provide?** Uber has agreed to create a fund totaling $20,000,000 to pay valid claims, settlement administration expenses, attorneys' fees, costs and expenses, and class representative service awards. **To receive a settlement check, you must complete and submit a claim form by Month Day, 2017.** File your claim online or visit the website and download a Claim Form and submit by online or by mail. Visit the website below or call for more information about filing your claim. Uber has also agreed to alter its texting practices as explained in the detailed notice and Settlement Agreement at the website listed below.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month Day, 2017.** If you do not exclude yourself, you will release your claims against Uber, as more fully described in the Settlement Agreement. If you stay in the Settlement, you may object to it by **Month Day, 2017.** The Detailed Notice available at the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **Month Day, 2017** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to $6,660,000 plus costs and expenses, and service awards for the Class Representatives of $10,000 each. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

DocuSign Envelope ID: F42F349A-8329-4747-9C3E-B461C9ACD233

# EXHIBIT 6

# LEGAL NOTICE BY ORDER OF COURT

**IF, AT ANY TIME BETWEEN DECEMBER 31, 2010 AND [DATE OF PRELIMINARY APPROVAL], YOU RECEIVED ONE OR MORE TEXT MESSAGES FROM UBER TECHNOLOGIES, INC., YOU MAY BE ELIGIBLE FOR A PAYMENT FROM A CLASS ACTION SETTLEMENT.**

**This notice describes rights you may have in connection with the settlement of a lawsuit.**

*The United States District Court for the Northern District of Illinois authorized this Notice. This is not a solicitation from a lawyer.* ***This is not a legal action against you.***

*Para una notificacion en Espanol, visitar www.website.com.*

This notice describes a proposed settlement in a class action lawsuit brought against Uber Technologies, Inc. ("Uber") regarding text messages sent to certain persons and entities. **Please read this notice carefully. It summarizes your rights and options under the Settlement, which are affected whether or not you act. The full Settlement Agreement can be accessed at www.[insert].com.**

If you were sent a text message and you fit the description of the Settlement Classes (as defined below), then you have the following options:

- You can submit a claim for monetary compensation. The amount of the check you would receive depends on the number of people and entities who file claims, the costs of administration of the settlement, attorneys' fees and costs, and class representative service awards. **To receive a check, you must submit a claim form by [date].** The process for submitting a claim is described below.

- You can exclude yourself from the Settlement (and receive no money from the Settlement but retain your right to bring your own lawsuit). Your request to exclude yourself must be submitted no later than [date]. You must follow the process described in part 8 below. If the Settlement is approved and you do not exclude yourself, you will be bound by the Settlement and will release certain claims described below.

- You can object to the Settlement. The deadline for objecting to the Settlement is [date]. All objections must be mailed to Uber TCPA Settlement Administrator at [address]. See part 7 below for details.

NOTE**: PLEASE DO NOT** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, UBER, OR UBER'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU. If you have questions, please call [number] or visit www.[insert].com.

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

DocuSign Envelope ID: F42F349A-8329-4797-8C3E-B461C9ACD233

## BASIC INFORMATION

In a purported class action case known as *Vergara, et al. v. Uber Technologies, Inc.*, No. 1:15-CV-06942 (N.D. Ill.), the Plaintiffs alleged that Uber engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by sending automated text messages to individuals without their consent. Uber denies Plaintiffs' allegations and denies that it did anything wrong. The Court has not decided who is right.

A settlement of this lawsuit ("Settlement") has been negotiated which, if approved by the Court, may entitle you to a payment. By entering into the Settlement, Uber has not admitted the truth or validity of any of the claims against it. Your rights and options under the Settlement—and the deadlines to exercise them—are explained below.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM** | This is the only way to receive a payment from the Settlement. Class members who submit a valid claim form by the deadline of [date] will receive a payment and will give up certain rights to sue Releasees as described in parts 4 and 6 below. |
| **DO NOTHING** | If you do nothing, you will receive no money from the Settlement, but *you will still give up your rights to sue Releasees* as described in parts 6 and 10 below. |
| **EXCLUDE YOURSELF FROM THE CASE** | If you exclude yourself, you can sue Releasees on your own and at your own expense regarding the text messages released under this Settlement, but you will not receive a payment from the Settlement. The deadline for excluding yourself is: [date]. See part 8 below. |
| **OBJECT** | You may file an objection if you wish to object to the Settlement. The deadline to object to the settlement is [date]. See part 7 below. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. The Court has set a hearing for [date] at [time], subject to change. See part 11 below. |

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

DocuSign Envelope ID: F42F349A-8329-4747-8C3E-B461C9ACD233

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement.  If it does and any appeals are resolved, benefits will be distributed to those who submit claims and qualify.  Please be patient.

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

DocuSign Envelope ID: F42F349A-8329-4747-9C3E-B461C9ACD233

| **WHAT THIS NOTICE CONTAINS** |
|---|

1. WHO IS IN THE SETTLEMENT? ........................................................................... 4

2. WHAT IS THIS LITIGATION ABOUT? .................................................................. 4

3. WHO REPRESENTS ME? ..................................................................................... 4

4. WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT? ............................ 5

5. DO I HAVE TO PAY THE LAWYERS REPRESENTING ME? ................................. 5

6. WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT CLASSES IN THIS CASE? ............. 5-6

7. WHAT IF I DO NOT AGREE WITH THE SETTLEMENT? ....................................... 6

8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASSES? ................... 7

9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED? ........................ 7

10. WHAT IF I DO NOTHING AT ALL? .................................................................... 7

11. WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING? ..................... 7-8

12. IS THIS THE ENTIRE SETTLEMENT AGREEMENT? ............................................ 8

13. WHERE CAN I GET MORE INFORMATION? ....................................................... 8

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

## 1.    WHO IS IN THE SETTLEMENT CLASSES?

The United States District Court for the Northern District of Illinois (Honorable Thomas M. Durkin) has conditionally certified, for settlement purposes only, Settlement Classes in *Vergara, et al. v. Uber Technologies, Inc.,* Case No. 1:15-cv-06942.

If you received notice of the Settlement directed to you, then you may be a member of the Settlement Classes. But even if you did not receive a notice, you may still be a member of the Settlement Classes.

The "Settlement Classes" are defined as:

> Settlement Class A:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [date], used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

> Settlement Class B:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [date], started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

> Settlement Class C:  All persons or entities within the U.S. who, from December 31, 2010 up to and including [date], were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

Excluded from the Settlement Classes are all persons who elect to exclude themselves from the Settlement Classes, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.  If you are not sure whether you are in the Settlement Classes, or have any other questions about the Settlement, visit the Settlement website at www.[insert].com or call the toll free number [insert].

## 2.    WHAT IS THIS LAWSUIT ABOUT?

This case was brought as a class action alleging that Uber engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by sending automated text messages without consent to the people and entities in the Settlement Classes.  This is just a summary of the allegations.  The complaint in the lawsuit is posted at www.insert.com, and contains all of the allegations.  Uber denies these allegations; however, in order to avoid the expense, inconvenience, and distraction of continued litigation, Uber has agreed to the settlement described herein.

## 3.    WHO REPRESENTS ME?

In a class action, one or more people or entities called class representatives sue on behalf of people and entities who have similar claims.  In this case, Maria Vergara, James Lathrop, Jonathan Grindell, Sandeep Pal, Jennifer Reilly, and Justin Bartolet sued Uber in a representative capacity, and the Court has appointed them to be Settlement Class Representatives for all class members in this case.

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

The Court also approved the law firms of Tycko & Zavareei LLP and McGuire Law, P.C., to represent the Settlement Classes.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 4.    WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT?

Under the Settlement, Uber has agreed to provide monetary compensation to class members who timely submit valid claims. The amount of the checks are not yet known.  The total Settlement Fund is $20,000,000. The amount of the check you will be sent depends on the number of class members who timely submit valid claims, the costs of settlement administration, attorneys' fees and costs, and service awards for the class representatives, all of which will be paid from the Settlement Fund.  Every settlement class member who submits a timely, valid claim will be sent a check in the same amount.  *Submitting a timely and valid claim form is the only way to receive a payment from the Settlement, and is the only thing you need to do to receive a payment.*  Claim forms are available at www.[insert].com.  Claim forms may be submitted online at www.[insert].com or mailed to Uber TCPA Settlement Administrator [address].

If you timely submit a valid claim form, your claim will be paid by a check mailed to you.  Claims will only be paid after the Court grants Final Approval of the Settlement and after any appeals are resolved (see part 11 below).  If there are appeals, resolving them can take time.  Please be patient.

Note that if you receive a check, you will have one year to cash the check sent to you.  If you do not cash the check within one year, the check will be void and the funds will be utilized as the Court deems appropriate. The Court will decide whether any such remaining funds will go to a charitable organization or will be dispersed differently.

As part of this Settlement, Uber has also agreed to make changes to its text messaging practices. Without admitting any liability or that it is required by law to do so, Uber agrees to undertake the following practices:

a.    Uber agrees that for a period of two years from the Effective Date of the Settlement it will not send server-assisted driver-referral text messages from the Uber app on Uber-issued cellular phones.

b.    Uber agrees that for at least 2 years from the Effective Date it will maintain an opt-out protocol for recipients of text messages who initiate but do not complete the driver sign up process, which will at a minimum unsubscribe recipients from pipeline driver SMS messaging who reply with any of the opt-out words or phrases on Appendix A of the Settlement Agreement.

c.    Uber agrees to adhere to the following procedures by December 31, 2017 or the Effective Date of the Settlement, whichever is later, for a minimum of two years:  (i) Uber's servers will delete any phone number entered during the rider account sign-up process that is not verified within 15 minutes; (ii) Uber will display the phone number used during the rider account sign-up process on the app screen where a new verification text can be requested with the note "Did you enter the correct number?"; and (iii) after one attempted verification text resend, the user will be forced to re-enter the phone number used during sign-up.

## 5.    DO I HAVE TO PAY THE LAWYERS REPRESENTING ME?

No.  Class Counsel will apply to the Court for an award of attorneys' fees of up to $6,660,000.00 plus costs and expenses for investigating the facts, litigating the cases and negotiating the settlement.  To date, Class Counsel have not received any payment for their services in conducting this Litigation on behalf of the

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

Settlement Class Representatives and the Settlement Classes; nor have Class Counsel been reimbursed for their costs and expenses directly relating to their representation of the Settlement Classes. Class Counsel will also request the Court to award a service award of $10,000.00 to each of the Settlement Class Representatives in recognition of their service to the Settlement Classes. The amount of any fee or service award will be determined by the Court. Class Counsel's contact information is as follows:

> Hassan A. Zavareei
> Andrea R. Gold
> TYCKO & ZAVAREEI LLP
> 1828 L Street, N.W., Suite 1000
> Washington, DC 20036
> hzavareei@tzlegal.com
> agold@tzlegal.com
> Tel: 202-973-0900

> Myles P. McGuire
> Evan M. Meyers
> Paul T. Geske
> MCGUIRE LAW, P.C.
> 55 W. Wacker Drive, 9th Floor
> Chicago, IL 60601
> mmcguire@mcgpc.com
> emeyers@mcgpc.com
> pgeske@mcgpc.com
> Tel: 312-893-7002

## 6. WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT CLASSES IN THIS CASE?

Unless you exclude yourself, you will be part of the Settlement Classes, and you will be bound by the release of claims in the Settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be party of any lawsuit against Uber or the other Releasees asserting a "Released Claim," as defined below. It also means that the Court's Order approving the Settlement and the judgment in this case will apply to you and legally bind you.

The "Released Claims" that you will not be able to assert against Uber or Releasees if you remain a part of the Settlement Classes are as follows: any and all claims whatsoever arising out of, related to, or connected with Uber or any of the Releasees sending, causing someone to send, or assisting someone to send a text or SMS message related to Uber without consent, including but not limited to claims brought under 47 U.S.C. § 227, et seq. ("TCPA"), during the Class Period. "Released Claims" include all claims that were or could have been asserted in the Litigation or Related Actions, regardless of whether such claims are known or unknown, filed or unfiled, asserted or as yet unasserted, existing or contingent.

"Releasees" shall refer, jointly and severally, and individually and collectively, to Uber, its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts or their affiliates.

"Related Actions" shall mean any proceeding, other than this Litigation, that alleges that Uber violated the TCPA brought by a plaintiff and/or on behalf of persons or entities who would be a Class Member,

including *Giacomaro v. Uber Technologies, Inc.* (EDNY; Case No. 2:17-cv-03923) and *Kolloukian v. Uber Technologies, Inc.* (C.D. Cal.; Case No. 2:15-cv-02856).

## 7.  WHAT IF I DO NOT AGREE WITH THE SETTLEMENT?

If you are a member of the Settlement Classes, you may object to the Settlement or any part of the Settlement that you think the Court should reject, and the Court will consider your views.  To object, you must send your objection to the Settlement Administrator, Class Counsel, and Uber's Counsel providing:

      a.    the case name and case number(s) of this Litigation (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

      b.    your full name, current address and phone number;

      c.    the phone number on which you allegedly received a text message from Uber;

      d.    the reasons why you object to the Settlement along with any supporting materials;

      e.    information about other objections you or your lawyer(s) have made in other class action cases in the last four (4) years; and

      f.    your signature.

**Your objection must be postmarked no later than [date].**  Objections must be mailed to:

      Uber TCPA Settlement Administrator
      [ADDRESS]

**Plaintiffs' Counsel**

Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036; and

Myles P. McGuire
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL  60601.

**Uber's Counsel**

Austin V. Schwing
GIBSON DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA  94105.

## 8.  HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASSES?

If you want to exclude yourself from the Settlement Classes, sometimes referred to as "opting-out," you will not be eligible to recover any benefits as a result of this Settlement. However, you will keep the right to sue or continue to sue Uber or Releasees on your own and at your own expense about any of the Released Claims.

To exclude yourself from the Settlement Classes, you must send a letter to the settlement administrator identifying:

      (1)    the name and case number of this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

      (2)    your full name, current address, and telephone number;

      (3)    the phone number on which you allegedly received a text message from Uber;

      (4)    a statement that you wish to exclude yourself from the Settlement Classes; and

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

(5)     your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is postmarked no later than [date]:

Uber TCPA Settlement Administrator: [address]

**REQUESTS FOR EXCLUSION FROM THE CLASSES THAT ARE NOT POSTMARKED ON OR BEFORE [date] WILL NOT BE HONORED.**

You cannot exclude yourself from the Settlement Classes by telephone, by email, or at the website.  You cannot exclude yourself by mailing a request to any other location or after the deadline.  Your Exclusion Form must be signed by you.

| 9. | WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED? |
|---|---|

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object to the Settlement only if you do not exclude yourself.  Excluding yourself is telling the Court that you do not want to be part of the Settlement.  If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

| 10. | WHAT IF I DO NOTHING AT ALL? |
|---|---|

You will remain a member of the Settlement Classes.  **However, you must file a claim form in order to receive a benefit in this Settlement.**  See part 4, above.

| 11. | WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING? |
|---|---|

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees, service awards, and expenses ("Final Approval Hearing").  The Final Approval Hearing is currently set for [date] at [time], at the United States District Court for the Northern District of Illinois, Eastern Division, located in Courtroom 1441, 219 South Dearborn Street, Chicago, Ill.  60604.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.[insert].com and the Court's docket for updates.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  The Court will also consider the request by Class Counsel for attorneys' fees and expenses and for the Class Representatives' service awards.  If there are objections, the Court will consider them at the Final Approval Hearing.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

You may attend the hearing, at your own expense, but you do not have to do so.

You may ask the Court for permission to speak at the hearing.  To do so, you must send a letter saying that you intend to appear and wish to be heard.  Your notice of intention to appear must include the following:

(1)     the name and case number of this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

(2)     your full name, current address and telephone number;

(3)     the phone number on which you allegedly received a text message from Uber;

(4)     a statement that this is your "Notice of Intention to Appear" at the Final Approval Hearing for this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942),

along with copies of any papers, exhibits, or other evidence or information that you will present to the Court;

(5)    the reasons you want to be heard; and

(6)    your signature.

You must send copies of your notice of intention to appear, postmarked by [ date ], to:

Clerk of the Court
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

**Plaintiffs' Counsel**

Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036; and

Myles P. McGuire
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601.

**Uber's Counsel**

Austin V. Schwing
GIBSON DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105.

You cannot speak at the hearing if you exclude yourself from the Settlement.

## 12.   DOES THIS NOTICE CONTAIN THE ENTIRE SETTLEMENT AGREEMENT?

No. This is only a summary of the Settlement. If the Settlement is approved and you do not exclude yourself from the Settlement Classes, you will be bound by the release contained in the Settlement Agreement, and not just by the terms of this Notice. Capitalized terms in this Notice are defined in the Settlement Agreement. You can view the full Settlement Agreement online at www. insert .com, or you can write to the address below for more information.

## 13.   WHERE CAN I GET MORE INFORMATION?

*For more information and for a claim form, visit www.website.com or call 1-999-999-9999.*

For more information, you may visit www.insert.com or you may call the Uber TCPA Settlement Administrator at telephone number.

**NOTE:  PLEASE <u>DO NOT</u>** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, UBER, OR UBER'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU. If you have questions, please call [number] or visit www.[insert].com.

# EXHIBIT 7

DocuSign Envelope ID: F42F349A-8329-4F47-9C35-B461C9ACD233

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARIA VERGARA, et al., | Case No. 1:15-CV-06942 |
| Plaintiffs, | Hon. Thomas M. Durkin |
| v. | |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

### [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL JUDGMENT

WHEREAS, on _____, this Court entered an Order Granting Preliminary Approval of Proposed Settlement Agreement (the "Preliminary Approval Order"), preliminarily approving the proposed Settlement of the Action pursuant to the terms of the Settlement Agreement and directing that notice be given to the members of the Settlement Classes;

WHEREAS, pursuant to the Parties' plan for providing notice to the Settlement Classes (the "Notice Plan"), the Settlement Classes were notified of the terms of the proposed Settlement and of a Final Approval Hearing to determine, *inter alia*, whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate for the release and dismissal of the Released Claims against the Releasees; and

WHEREAS, a Final Approval Hearing was held on _____. Prior to the Final Approval Hearing, proof of completion of the Notice Plan was filed with the Court, along with declarations of compliance. Settlement Class members were therefore notified of the terms of the proposed settlement and their right to appear at the hearing in support of or in opposition to the proposed Settlement;

NOW, THEREFORE, the Court, having heard the oral presentations made at the Final Approval Hearing, having reviewed all of the submissions presented with respect to the proposed

DocuSign Envelope ID: F42F349A-B320-4707-8C3E-B461C9AED233

Settlement, having determined that the Settlement is fair, adequate, and reasonable, and having reviewed the materials in connection therewith, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The capitalized terms used in this Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2.      The Court has jurisdiction over the subject matter of this case, all claims raised therein, and all Parties thereto, including the members of the Settlement Classes.

3.      The Court finds, solely for purposes of considering this Settlement, that the requirements of Federal Rule of Civil Procedure 23 are satisfied, including requirements for the existence of numerosity, commonality, typicality, adequacy of representation, manageability of the Settlement Classes for settlement purposes, that common issues of law and fact predominate over individual issues, and that Settlement and certification of the Settlement Classes are superior to alternative means of resolving the claims and disputes at issue in this case.

4.      The Settlement Classes, which will be bound by this Final Approval Order and Judgment, shall include all members of the Settlement Classes who did not submit a timely and valid Request for Exclusion.  The members of the Settlement Classes who have requested exclusion are identified in Exhibit A hereto.

5.      Plaintiffs Jonathan Grindell, Sandeep Pal, James Lathrop, Jennifer Reilly, Justin Bartolet, and Maria Vergara shall serve as Class Representative of the Settlement Classes.

6.      The Court appoints the following counsel as Class Counsel for purposes of this settlement:

> Hassan A. Zavareei
> Andrea R. Gold
> TYCKO & ZAVAREEI LLP
> 1828 L Street, N.W., Suite 1000
> Washington, D.C.  20036; and
>
> Myles McGuire
> Evan M. Meyers
> Paul T. Geske
> MCGUIRE LAW, P.C.

DocuSign Envelope ID: F42F349A-B329-4707-9C3E-B461C9ACD233

55 W. Wacker Drive, 9th Floor
Chicago, IL 60601.

7.    For purposes of the Settlement and this Final Approval Order and Judgment, the

Settlement Classes are:

Settlement Class A:  All persons or entities within the U.S. who, from December 31,
2010 up to and including [date], used or subscribed to a wireless or cellular service and
were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in
connection with Uber's Refer-a-Friend Program.

Settlement Class B:  All persons or entities within the U.S. who, from December 31,
2010 up to and including [date], started Uber's driver application process but did not
become an "active" driver in Uber's system, who used or subscribed to a wireless or
cellular service, and to whom Uber sent one or more non-emergency text messages after
the user or subscriber requested Uber to discontinue sending text messages.

Settlement Class C:  All persons or entities within the U.S. who, from December 31,
2010 up to and including [date], were not party to a contract with Uber and/or who did
not provide his or her cellular phone number to Uber, and who used or subscribed to a
wireless or cellular service to which Uber sent one or more non-emergency text
messages.

Excluded from the Settlement Classes are all persons who elect to exclude themselves

from the Settlement Classes, the Court and staff to whom this case is assigned, and any member

of the Court's or staff's immediate family.

8.    The Court finds that the Notice Plan set forth in Section IX of the Settlement

Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best

notice practicable under the circumstances and shall constitute due and sufficient notice to the

Settlement Classes of the pendency of this case, certification of the Settlement Classes for

settlement purposes only, the terms of the Settlement Agreement, and the Final Approval

Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States

Constitution, and any other applicable law.  The Court further finds that Defendant has fully and

timely met the requirements for notice to appropriate federal and state officials under 28 U.S.C.

§ 1715, and that this Order is issued 90 or more days after the service of such notice.

DocuSign Envelope ID: F43F349A-8329-4704-8C85-B461C9ACD233

9.     The Settlement, as set forth in the Settlement Agreement and this Order is in all respects fair, reasonable, adequate and in the best interests of the Settlement Classes, taking into account the risks that both sides faced with respect to the merits of the claims alleged and remedies requested, the risks of maintaining a class action, and the expense and duration of further litigation, and therefore the Settlement is approved.  The Parties shall effectuate the Settlement Agreement according to its terms.  The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an Order of this Court.

10.     Upon the Effective Date, the Releasors shall have, by operation of this Final Approval Order and Judgment, fully, finally and forever released, relinquished, and discharged the Releasees from all Released Claims pursuant to Section VII of the Settlement Agreement.

11.     Releasors are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any Released Claim against any of the Releasees.

12.     This Final Approval Order and Judgment, the Settlement Agreement, the Settlement which it reflects, and any and all acts, statements, documents or proceedings relating to the Settlement are not, and shall not be construed as or used as an admission by or against Uber or any other Releasee of any fault, wrongdoing, or liability on their part, or of the validity of any Released Claim or of the existence or amount of damages.

13.     The claims of the Plaintiff Class Representatives and all members of the Settlement Classes in this case are hereby dismissed in their entirety with prejudice.  Except as otherwise provided in this Order and/or in this Court's Order Awarding Attorneys' Fees and Expenses in this case, entered in response to Class Counsel's motion therefor brought in connection with the Settlement, the parties shall bear their own costs and attorneys' fees.  The Court reserves jurisdiction over the implementation of the Settlement, including enforcement and administration of the Settlement Agreement, including any releases in connection therewith and any other matters related or ancillary to the foregoing.

14.     Having reviewed the unopposed Motion for Fee Awards, the Court approves payment of attorneys' fees, costs and expenses to Class Counsel in the amount of $_____. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.  The Court, having considered the materials submitted by Class Counsel in support of their Motion for Final Approval and Motion for Fee Awards, and the fact that no objections have been filed to the attorneys' fees, costs and expenses sought by Class Counsel, finds the award of attorneys' fees, costs and expenses appropriate and reasonable for the following reasons: First, the Court finds that the Settlement provides substantial benefits to the Settlement Classes.  Second, the Court finds the payment fair and reasonable in light of the substantial work performed by Class Counsel.  Third, the Court concludes that the Settlement was negotiated at arms-length without collusion, and that the negotiation of the attorneys' fees only followed agreement on the settlement benefit for the Settlement Class Members.  Finally, the Court notes that the Class Notice specifically and clearly advised the Settlement Classes that Class Counsel would seek an award up to the amount sought.

15.     The Court approves service award of $10,000.00 for each of the Class Representatives and specifically finds such amounts to be reasonable in light of the services performed by the Class Representatives for the Settlement Classes, including taking on the risks of litigation and helping achieve the compensation being made available to the Settlement Classes.  This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

16.     The Court finds that no reason exists for delay in entering this Final Order and Judgment.  Accordingly, the Clerk is hereby directed forthwith to enter this Final Order and Judgment.

17.     The Parties, without further approval from the Court, are hereby permitted to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as

DocuSign Envelope ID: F42F349A-B329-47D7-8C3E-B461C9ACD233

they are consistent in all material respects with the Final Order and Judgment and do not limit the rights of the Settlement Class Members.

18.     The escrow account established for the Settlement Fund pursuant to the Settlement Agreement is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 4688 and the Treasury Regulations promulgated thereunder.

19.     Without affecting the finality of this Final Judgment for purposes of appeal, the Court retains jurisdiction as to all matters related to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Order and Judgment, and for any other necessary purpose.

**IT IS SO ORDERED.**

Dated:

_____
Hon. Thomas M. Durkin
U.S. District Court Judge