# Exhibit B

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


MARIA VERGARA, et al.,                           Case No. 1:15-CV-06942

                          Plaintiffs,            Hon. Thomas M. Durkin

    v.

UBER TECHNOLOGIES, INC.,

                          Defendant.

---

**DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICES AND NOTICE PLAN**


I, CAMERON R. AZARI, ESQ., hereby declare and state as follows:

1.      My name is Cameron R. Azari, Esq.  I am over the age of twenty-one and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice and I have served a legal an expert in dozens of federal and state cases involving class action notice plans.

3.      I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions ("ECA").

4.      Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  With experience in more than 300 cases, notices prepared by Hilsoft have appeared in 53 languages with distribution in almost every country, territory and

dependency in the world. Judges, including in published decisions, have recognized and approved numerous notice plans developed by Hilsoft, which decisions have always withstood collateral reviews by other courts and appellate challenges.

## EXPERIENCE RELEVANT TO THIS CASE

5. I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many of the largest and most significant cases, including: *In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru and Toyota)*, MDL No. 2599 (S.D. Fla.) ($553 million settlement regarding Takata airbags). The monumental Notice Plan included individual mailed notice to more than 19.7 million potential Class Members and notices via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and specialized behaviorally targeted digital media. Combined, the Notice Plan reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle an average of 4.0 times each); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.) (Comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.) (One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill. Hilsoft designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and internet notice effort that reached in excess of 90% of adults aged 18+ in the 26

identified DMAs covering the Gulf Coast Areas an average of 5.5 times each); *Rose v. Bank of Am. Corp.*, Case No. 11-cv-02390-EJD (N.D. Cal.) (TCPA settlement with email and postcard notice to over 6.9 million Class Members and publication notice in *Parade Magazine* and other consumer publications); *In re: Energy Future Holdings Corp., et. al. (Asbestos Claims Bar Date Notice),* 14-10979 (CSS) (Bankr. D. Del.) (Large asbestos bar date notice effort, which included individual notice, national consumer publications and newspapers, hundreds of local newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience); *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y.) ($7.2 billion settlement reached with Visa and MasterCard. The intensive notice program involved over 19.8 million direct mail notices together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications, as well as online banner notices, which generated more than 770 million adult impressions and a case website in eight languages); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.) (Dual landmark settlement notice programs to separate "Economic and Property Damages" and "Medical Benefits" settlement classes. Notice effort included over 7,900 television spots, over 5,200 radio spots, and over 5,400 print insertions and reached over 95% of Gulf Coast residents); *In Re American Express Anti-Steering Rules Antitrust Litigation (II)* ("Italian Colors"), MDL No. 2221 (E.D.N.Y.) (Momentous injunctive settlement regarding merchant payment card processing. Notice program provided individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspaper in each of the U.S. territories and

possessions); *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.) (Multiple bank settlements between 2010-2017 involving direct mail and email to millions of class members and publication in relevant local newspapers. Representative banks include, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, Community Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, Bancorp, Whitney Bank, Associated Bank, and Susquehanna Bank); *In re Residential Schools Class Action Litigation*, (Canada) (Five phase notice program for the landmark settlement between the Canadian government and Aboriginal former students. Phase V of the notice program was implemented during 2014); and *In re Department of Veterans Affairs (VA) Data Theft Litigation*, MDL 1796 (D.D.C.) (Notices appeared across the country in newspapers, consumer magazines, and specialty publications with a total circulation exceeding 76 million).

6. Courts have recognized our testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. For example:

a) *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.), Judge Charles R. Breyer on May 17, 2017:

> *The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

b) *In re: Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation*, MDL No. 2540 (D.N.J.), Judge Jerome B. Simadle on September 20, 2016:

> The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.

c) *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.,* No. 14-23120 (S.D. Fla.), Judge Marcia G. Cooke on April 11, 2016:

> Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

d) *Adkins v. Nestle Purina PetCare Company, et al.,* No. 12-cv-2871 (N.D. Ill.), Judge Robert W. Gettleman on June 23, 2015:

> Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.

e)      *Gulbankian et al. v. MW Manufacturers, Inc.,* No. 1:10-cv-10392-RWZ

(D. Mass.), Judge Rya W. Zobel on December 29, 2014:

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

f)      *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* No.

5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.), Judge Edward J. Davila on

August 29, 2014:

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

g)      *Wong et al. v. Alacer Corp.,* No. CGC-12-519221 (Cal. Super. Ct.), Judge

James A. Robertson, II on June 27, 2014:

> *Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code*

*Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

h) *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-cv-03800 (E.D.N.Y.): Judge John Gleeson stated on December 13, 2013:

*The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards... The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

i) *Marolda v. Symantec Corporation*, No. 08-cv-05701 (N.D. Cal.) Judge Edward M. Chen stated on April 5, 2013:

*Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . . The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process. Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications. These were the best practicable means of informing class members of their rights and of the settlement's terms.*

j) *In Re: Zurn Pex Plumbing Products Liability Litigation*, No. 08-cv-01958 (D. Minn.): Judge Ann D. Montgomery stated on February 27, 2013:

*The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center. The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes" the best notice that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

k)  *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL 2179 (E.D. La.), Judge Carl J. Barbier stated on January 11, 2013:

> The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.
>
> The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.
>
> The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.

l)  In *Schulte v. Fifth Third Bank*, No. 1:09-cv-6655 (N.D. Ill.), Judge Robert M. Dow, Jr. stated on July 29, 2011:

> The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.

m)  *In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,* MDL 09-2046 (S.D. Tex.): Judge Lee Rosenthal stated on March 2, 2012:

> The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement... Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice

> *reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).*

7.      Numerous other court opinions and comments as to our testimony, and opinions on the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as **Attachment 1**.

8.      In forming my expert opinions, I and my staff draw from our in-depth class action case experience, as well as our educational and related work experiences.  I am an active member of the Oregon State Bar, receiving my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College.  I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time.  Prior to assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising).  Overall, I have over 17 years of experience in the design and implementation of legal notification and claims administration programs having been personally involved in well over one hundred successful notice programs.  I have been directly and personally responsible for designing all of the notice planning here, including analysis of the individual notice options and the media audience data and determining the most effective mixture of media required to reach the greatest practicable number of Settlement Class Members.

In my experience, the reach and frequency of the Notice Plan media effort as designed and implemented, met due process requirements.

9.    The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Hilsoft and ECA, who worked with us to implement the notification effort.

### OVERVIEW

10.    In *Vergara v. Uber Technologies, Inc.*, Case No. 1:15-CV-06942 (United States District Court for the Northern District of Illinois, Eastern Division), my colleagues and I were asked to design the Notice Program (or "Notice Plan") to inform Settlement Class Members about their rights under the Settlement.

11.    On August 17, 2017, the Court approved the Notice Plan as designed by Hilsoft and appointed Epiq to administer the Settlement in the Order Preliminarily Approving Class Action Settlement Agreement, Conditionally Certifying Settlement Classes, Directing Notice of Proposed Class Settlement, and Scheduling a Final Approval Hearing Date ("Order").  The Court conditionally certified the "Settlement Classes" defined as:

> Settlement Class A:  All persons or entities within the U.S. who, from December 31, 2010 up to and including August 17, 2017, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

> Settlement Class B:  All persons or entities within the U.S. who, from December 31, 2010 up to and including August 17, 2017, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

> Settlement Class C:  All persons or entities within the U.S. who, from December 31, 2010 up to and including August 17, 2017, were not party to a contract with Uber and/or

who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

12.    After the Court's preliminary approval of the Settlement, we began to implement the Notice Program.  This declaration will detail the successful implementation of the Notice Program and document the completion of the notice activities to date.  The declaration will also discuss the administration activity to date.

13.    To date, the Notice Plan has been implemented as ordered by the Court, including dissemination of individual notice to known or potential Settlement Class Members via postal mail and email, and publication of the Notice in a well-read national newspaper and on highly trafficked websites.  Sponsored internet search listings, an informational release and the Settlement Website provided additional notice exposures.

14.    The combined measurable effort alone reached[1] approximately 90.6% of the overall Settlement Class with direct mail and email, measured newspaper and internet banner ads.  Not reflected in the calculable reach and average frequency of exposures are additional efforts that were utilized such as sponsored internet search listings, an informational release and a Settlement Website.  In my experience, the reach and frequency of the Notice Plan meets that of other court-approved notice programs, and was designed to meet due process requirements.  In my opinion, the Notice Plan was the best notice practicable under the circumstances of this case and satisfied the requirements of due process, including its "desire to actually inform" requirement.[2]

---

[1] Reach is defined as the percentage of a class exposed to notice, net of any duplication among people who may have been exposed more than once.  Notice exposure is defined as the opportunity to see a notice.

[2] "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

## CAFA NOTICE

15.    As described in the attached *Declaration of Stephanie J. Fiereck, Esq. on Implementation of CAFA Notice,"* dated September 12, 2017 ("*Fiereck Declaration*"*),* on August 21, 2017, as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715, ECA sent a CAFA notice packet (or "CAFA Notice") to 57 federal and state officials.  The CAFA Notice was mailed by certified mail to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the U.S. Territory officials.  The CAFA Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.

16.    As described in the attached *Declaration of Stephanie J. Fiereck, Esq. on Implementation of Supplemental CAFA Notice,"* dated October 23, 2017 ("*Fiereck Supplemental Declaration*"*),* on October 11, 2017, at the direction of counsel for the Defendant Uber Technologies, Inc., ECA sent a Supplemental CAFA notice packet (or "Supplemental CAFA Notice") to 57 federal and state officials.  The CAFA Notice was mailed by certified mail to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the U.S. Territory officials.  The CAFA Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.  The *Fiereck Declaration* and the *Fiereck Supplemental Declaration* are included as **Attachment 2**.

## NOTICE PLAN DETAIL

### *Individual Notice – Mail*

17.    On September 19, 2017, ECA received two data files, which contained 8,049,284 records for potentially affected phone numbers (including email addresses for many of the

potential Settlement Class Members). Approximately 215,156 potentially affected phone numbers were replicated in both files. Subsequently, on September 21, 2017, an updated file was provided to ECA, which contained email addresses for 1,366,642 of the potentially affected phone numbers from the first of two data files received on September 19. Potentially affected phone numbers with invalid or non-U.S. domestic area codes were identified and removed from the files. Records without a valid email address were sent to a third-party (PacificEast) to perform "reverse look-ups." The reverse look-ups process is used to identify whether an available associated physical address exists for each cell phone number. PacificEast then performed a second search to determine the best current email address for each record. For those records that the reverse look-up process successfully identified an email address, a Summary Notice was emailed and for those records that the reverse look-up process successfully identified only a physical address, a Summary Postcard Notice was mailed. Potential Settlement Class Members with more than one potentially affected phone number were identified so they only received one mailed or emailed Summary Notice.

18.　After complete data analysis, ECA identified 6,992,203 records of potential members of the Settlement Class with email or mailing address data, which resulted in 514,973 records for the Summary Postcard Notice mailing and 6,477,230 records for the Summary Email Notice effort. The individual notice effort detailed below reached approximately 97% of the identifiable Settlement Classes and 87% of the overall Settlement Classes.

19.    Prior to mailing, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[3]  Any addresses that were returned by the NCOA database as invalid were updated through a third-party address search service.  In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

20.    On October 16, 2017, ECA mailed 514,973 Summary Postcard Notices via USPS first class mail to known or potential Settlement Class Members.  Each notice was a two image 4.25" x 5.5" Summary Postcard Notice.  A copy of the Summary Postcard Notice as printed and mailed is included as **Attachment 3**.

21.    Additionally, a Notice Packet (Detailed Notice and Claim Form) was mailed via USPS first class mail to all persons who requested one via the toll-free phone number until the Claim Deadline passed on December 15, 2017.  As of January 10, 2018, 2,177 Notice Packets have been mailed as a result of such requests.  A copy of the Notice Packet as printed and mailed is included as **Attachment 4**.

22.    The return address on the Notices is a post office box maintained by ECA.  As of January 10, 2018, ECA has re-mailed 15,791 Summary Postcard Notices for addresses that were corrected through the USPS.  For Summary Postcard Notices that were returned as undeliverable, ECA undertook additional public record research, using a third-party lookup service ("ALLFIND",

---

[3] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

maintained by LexisNexis), which as of January 10, 2018, has resulted in the re-mailing of 102,983 Summary Postcard Notices. Address updating and re-mailing for undeliverable Summary Postcard Notices is ongoing and will continue through the Final Approval Hearing.

### *Individual Notice – Email*

23.    From October 8 through October 16, 2017, ECA disseminated 6,477,230 Summary Email Notices to all potential Settlement Class Members for whom a facially valid email address was available. The Summary Email Notice was created using an embedded html text format. This format provided easy to read text without graphics, tables, images and other elements to decrease the likelihood that the message would be blocked by Internet Service Providers (ISPs) and/or SPAM filters. Each Summary Email Notice was transmitted with a unique message identifier. If the receiving e-mail server could not deliver the message, a "bounce code" was returned along with the unique message identifier. For any Summary Email Notice for which a bounce code was received indicating that the message was undeliverable, at least two additional attempts were made to deliver the Notice by email.

24.    The Summary E-mail Notice included an embedded link to the Settlement Website. By clicking the link, recipients are able to easily access the Long Form Notice in English or Spanish, Settlement Agreement, Claim Form and other information about the settlement. The Summary Email Notice is included as **Attachment 5**.

25.    After completion of the initial Email Notice effort, ECA received back 637,260 undeliverable emails. If a physical mailing address existed from prior reverse look-up, a Summary Postcard Notice was mailed. On November 8, 2017, ECA sent the Summary Postcard Notice to 497,940 physical addresses.

26.    As of January 10, 2018, ECA has emailed and mailed Notices to 6,992,203 unique Settlement Class Members, with notice to 210,971 unique, likely Settlement Class Members currently known to be undeliverable.  In my experience, this approximate 97% deliverable rate to identified likely Class Members exceeds the expected range and is indicative of the extensive address research, updating and re-mailing protocols used.

### Consumer Publications

27.    The Publication Notice appeared in the national edition of *USA Today,* as a 3 col. x 6.5" ad unit.  *USA Today's* circulation is 741,182, and its readership[4] is over 3.25 million.  The Publication Notice is included as **Attachment 6**.  A copy of the tear sheet is included as **Attachment 7**.

### Internet Banner Notices

28.    Although the Settlement Agreement and preliminary approval Order did not explicitly call for it, Internet Banner Notices measuring 728 x 90 pixels and 300 x 250 pixels were placed on the online networks: *Google Ad Network* and *Yahoo! Ad Network*.  Banner Notices measuring 254 x 133 pixels were placed on *Facebook*.

29.    Combined, approximately 130 million adult impressions were generated by the internet Banner Notice, which ran from October 9, 2017 to November 8, 2017.  Clicking on the banner linked the reader to the Settlement Website where they could obtain information about the Settlement.  Examples of the Banner Notices are included as **Attachment 8**.

---

[4] "Readership" refers to the total number of readers of a specific issue of a publication, including the subscriber and any additional readers.

### *Internet Sponsored Search Listings*

30.     Again, although the Settlement Agreement and preliminary approval Order did not explicitly call for it, to facilitate locating the Settlement Website, sponsored search listings were acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!* and *Bing*.  When search engine visitors searched on common keyword combinations such as "Uber TCPA Settlement," "Uber Text Settlement," or "Uber TCPA Class Action," among others, the sponsored search listing was generally displayed at the top of the page prior to the search results or in the upper right hand column.

31.     The sponsored listings ran through the December 15, 2017, Claim filing deadline. As of December 15, 2017, the sponsored search listings were displayed 12,389 times, resulting in 3,840 clicks that displayed the Settlement Website.  A complete list of the sponsored search keyword combinations is included as **Attachment 9**.  Examples of the sponsored search listing as displayed on each search engine are included as **Attachment 10**.

### *Informational Release*

32.     Further beyond the notice required by the Settlement Agreement and preliminary approval Order, to build additional reach and extend exposures, on October 9, 2017, a party-neutral Informational Release was issued to approximately 5,000 general media (print and broadcast) outlets across the United States and 5,400 online databases and websites.

33.     The Informational Release served a valuable role by providing additional notice exposures beyond that which was provided by the paid media.  A copy of the Informational Release as it was distributed is included as **Attachment 11**.

### *Settlement Website*

34.     On October 6, 2017, a neutral, informational, Settlement Website (www.UberTCPASettlement.com) was established to enable potential Settlement Class Members to obtain additional information and documents including the Long Form Notice in English and Spanish, Settlement Agreement, Claim Form, Complaint and answers to frequently asked questions.  Until the December 15, 2017, claim filing deadline passed, Settlement Class Member where able to submit a Claim via the Settlement Website.  A copy of the Long Form Notice in both English and Spanish, as included on the Settlement Website are included as **Attachment 12**.

35.     The Settlement Website address was prominently displayed in all printed notice documents.  The Banner Notices linked directly to the Settlement Website.

36.     As of January 10, 2018, there have been 218,227 unique visitors to the Settlement Website and over 661,729 website pages presented.

### *Toll-free Telephone Number and Postal Mailing Address*

37.     On October 6, 2017, a toll-free phone number (1-800-330-1683) was established to allow potential Settlement Class Members to call and request that a Long Form Notice and Claim Form be mailed to them.  The toll-free number also provides potential Settlement Class Members with access to recorded information that includes answers to frequently-asked questions and directs them to the Settlement Website.  This automated phone system is available 24 hours per day, 7 days per week.  As of January 10, 2018, the toll-free number has handled 13,206 calls representing 36,946 minutes of use.

38.     A post office box was established to allow potential Settlement Class Members to contact the claims administrator by mail with any specific requests or questions.

*Exclusions and Objections*

39.     The exclusion deadline was December 15, 2017.  ECA has received a total of 49 requests for exclusion from the Settlement Classes.  Of these, all 49 were deemed timely.  The list of timely requests for exclusion received is included as **Attachment 13**.  I am aware of two objections to the Settlement at the time of this declaration, although one of them has since sought to be withdrawn.  The objections do not relate to notice.

## PERFORMANCE OF THE NOTICE PROGRAM

*Reach & Frequency*

40.     Using standard advertising media industry methodologies to calculate the overlap inherent in exposures to the direct mail and email, measured publication and internet banner ads we arrive at a combined measurable reach of approximately 90.6% of the overall Settlement Classes.  Reach was enhanced further by the mobile website ads, sponsored internet search listings and the Settlement Website.  The claim filing deadline was December 15, 2017.  The Notice Program resulted in the submission of 103,485 claims of January 10, 2018.

41.     Many courts have accepted and understood that a 75 or 80 percent reach is more than adequate.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."[5]   Here we were able to develop a Notice Plan that reached well within this range

---

[5] Fed. Judicial Ctr, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010), available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

(approximately 90.6%) that was broad in scope and was designed to reach the greatest practicable number of Settlement Class Members.

## CONCLUSION

42.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice program be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way.  All of these requirements were met in this case.

43.     Our notice effort followed the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

A. "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

B. "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) citing *Mullane* at 314.

44.     The Notice Program provided the best notice practicable under the circumstances of this case, conformed to all aspects of Federal Rule of Civil Procedure 23, and comported with the guidance for effective notice articulated in the Manual for Complex Litigation 4th.

45.     As reported above, the Notice Plan effectively reached approximately 90.6% of the overall Settlement Classes. The Notice Plan schedule afforded enough time to provide full and proper notice to Settlement Class Members before any opt-out and objection deadlines.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 11th, 2018.

Cameron R. Azari, Esq.

*© 2018 Hilsoft Notifications*

# Attachment 1



Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. For more than 23 years, Hilsoft Notifications' notice plans have been approved and upheld by courts. Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including more than 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. Case examples include:

➢ Hilsoft designed and implemented a monumental notice campaign to notify current or former owners or lessees of certain BMW, Mazda, Subaru and Toyota vehicles as part of a $553 million settlement regarding Takata airbags. The Notice Plan included individual mailed notice to more than 19.7 million potential Class Members and notices via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and specialized behaviorally targeted digital media. Combined, the Notice Plan reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times. *In re: Takata Airbag Products Liability Litigation (OEMS – BMW, Mazda, Subaru and Toyota)*, MDL No. 2599 (S.D. Fla.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.).

➢ Hilsoft designed and implemented an extensive settlement Notice Plan for a class period spanning more than 40 years for smokers of light cigarettes. The Notice Plan delivered a measured reach of approximately 87.8% of Arkansas Adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas Adults 55+ with a frequency of 10.8 times. Hispanic newspaper notice, an informational release, radio PSAs, sponsored search listings and a case website further enhanced reach. *Miner v. Philip Morris USA, Inc.*, No. 60CV03-4661 (Ark. Cir.).

➢ One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill. Hilsoft Notifications designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and Internet effort that reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

➢ Large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Date Notice)*, 14-10979(CSS) (Bankr. D. Del.).

➢ Landmark $6.05 billion settlement reached by Visa and MasterCard. The intensive notice program involved over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a case website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.).

➢ BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action in U.S. history. Hilsoft Notifications drafted and opined on all forms of notice. The 2012 notice program designed by Hilsoft reached at least 95% Gulf Coast region adults via television, radio, newspapers, consumer publications, trade journals, digital media and individual notice. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.).

➢ Momentous injunctive settlement reached by American Express regarding merchant payment card processing. The notice program provided extensive individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspapers in each of the U.S. territories and possessions. *In re American Express Anti-Steering Rules Antitrust Litigation (II)*, MDL No. 2221 (E.D.N.Y.) ("Italian Colors").

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements, Hilsoft Notifications has developed programs that integrate individual notice and paid media efforts. PNC, Citizens, TD Bank, Fifth Third, Harris Bank M&I, Comerica Bank, Susquehanna Bank, Capital One, M&T Bank and Synovus are among the more than 20 banks that have retained Hilsoft. *In re Checking Account Overdraft Litigation,* MDL No. 2036 (S.D. Fla.).

➢ Possibly the largest data breach in U.S. history with approximately 130 million credit and debit card numbers stolen. *In re Heartland Data Security Breach Litigation,* MDL No. 2046 (S.D. Tex.)

➢ Largest and most complex class action in Canadian history. Designed and implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar settlement. *In re Residential Schools Class Action Litigation,* 00-CV-192059 CPA (Ont. Super. Ct.).

➢ Extensive point of sale notice program of a settlement providing payments up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period. *Vereen v. Lowe's Home Centers,* SU10-CV-2267B (Ga. Super. Ct.).

➢ Largest discretionary class action notice campaign involving virtually every adult in the U.S. for the settlement. *In re Trans Union Corp. Privacy Litigation,* MDL No. 1350 (N.D. Ill.).

➢ Most complex national data theft class action settlement involving millions of class members. *Lockwood v. Certegy Check Services, Inc.,* 8:07-cv-1434-T-23TGW (M.D. Fla.).

➢ Largest combined U.S. and Canadian retail consumer security breach notice program. *In re TJX Companies, Inc., Customer Data Security Breach Litigation*, MDL No. 1838 (D. Mass.).

➢ Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of *In re Royal Ahold Securities and ERISA Litigation,* MDL No. 1539 (D. Md.).

➢ Most complex worldwide notice program in history. Designed and implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages for $1.25 billion settlement. *In re Holocaust Victims Assets,* "Swiss Banks", No. CV-96-4849 (E.D.N.Y.).

➢ Largest U.S. claim program to date. Designed and implemented a notice campaign for the $10 billion program. *Tobacco Farmer Transition Program,* (U.S. Dept. of Ag.).

➢ Multi-national claims bar date notice to asbestos personal injury claimants. Opposing notice expert's reach methodology challenge rejected by court. *In re Babcock & Wilcox Co,* No. 00-10992 (E.D. La.).



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

2

**LEGAL NOTICING EXPERTS**

**_Cameron Azari, Esq., Director of Legal Notice_**
Cameron Azari, Esq. has more than 17 years of experience in the design and implementation of legal notification and claims administration programs. He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes. Cameron has been responsible for hundreds of legal notice and advertising programs. During his career, he has been involved in an array of high profile class action matters, including _In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, Heartland Payment Systems, In re: Checking Account Overdraft Litigation, Lowe's Home Centers, Department of Veterans Affairs (VA),_ and _In re Residential Schools Class Action Litigation._ He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness. Cameron is an active member of the Oregon State Bar. He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College. Cameron can be reached at caza@legalnotice.com.

**_Lauran Schultz, Executive Director_**
Lauran Schultz consults extensively with clients on notice adequacy and innovative legal notice programs. Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration for the past seven years. High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation. Prior to joining Epiq Systems in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio. Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies. Lauran can be reached at lschultz@hilsoft.com.

**ARTICLES AND PRESENTATIONS**

➢ **Cameron Azari** Co-Author, "A Practical Guide to Chapter 11 Bankruptcy Publication Notice." E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." _Class Action Litigation Report_, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

3

➢ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➢ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➢ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➢ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➢ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

➢ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➢ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➢ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➢ **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➢ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➢ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan litigation group, Los Angeles, CA, 2005.

➢ **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.


PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

4

## JUDICIAL COMMENTS

**Judge Charles R. Breyer,** *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (May 17, 2017) MDL No. 2672 (N.D. Cal.):

> The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶24.)

**Judge Joseph F. Bataillon,** *Klug v. Watts Regulator Company* (April 13, 2017) No. 8:15-cv-00061-JFB-FG3 (D. Neb.):

> The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.

**Judge Yvonne Gonzales Rogers,** *Bias v. Wells Fargo & Company, et al.* (April 13, 2017) No. 4:12-cv-00664-YGR (N.D. Cal.):

> The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.

> Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.

> Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).

**Judge Carlos Murguia,** *Whitton v. Deffenbaugh Industries, Inc., et al* (December 14, 2016) No. 2:12-cv-02247 (D. Kan.) and *Gary, LLC v. Deffenbaugh Industries, Inc., et al* (December 14, 2016) No. 2:13-cv-2634 (D. Kan.):

> The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.

**Judge Yvette Kane,** *In re: Shop-Vac Marketing and Sales Practices Litigation* (December 9, 2016) MDL No. 2380 (M.D. Pa.):

> The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.

**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (November 21, 2016) No. 60CV03-4661 (Ark. Cir.):

> The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

5

**Judge Eileen Bransten, *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation*** (October 13, 2016) No. 650562/2011 (Sup. Ct. N.Y.):

> This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.

**Judge Jerome B. Simandle, *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*** (September 20, 2016) MDL No. 2540 (D. N.J.):

> The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.

**Judge Marcia G. Cooke, *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.*** (April 11, 2016) No. 14-23120 (S.D. Fla.):

> Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Christopher S. Sontchi, *In re: Energy Future Holdings Corp, et al.,*** (July 30, 2015) 14-10979(CSS) (Bankr. D. Del.):

> Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton, *In re: MI Windows and Doors Inc. Products Liability Litigation*** (July 22, 2015) MDL No. 2333, No. 2:12-mn-00001 (D. S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.

> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

6

**Judge Robert W. Gettleman,** *Adkins v. Nestle Purina PetCare Company, et al.,* (June 23, 2015) No. 12-cv-2871 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) No. 2:10-cv-01505-JCZ-KWR (E.D. La.) and No. 1:10-cv-22058-JLK (S.D. Fla.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.)

> The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts,* 472 U.S. at 812 (quoting *Mullane,* 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (December 29, 2014) No. 1:10-cv-10392-RWZ (D. Mass.):

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (August 29, 2014) No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.):

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) No. CGC-12-519221 (Cal. Super. Ct.):

> *Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, (December 13, 2013) No. 1:05-cv-03800 (E.D. NY.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*


| | | | |
|---|---|---|---|
| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

7

**Judge Lance M. Africk,** ***Evans, et al. v. TIN, Inc., et al,*** (July 7, 2013) No. 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** ***Marolda v. Symantec Corporation,*** (April 5, 2013) No. 08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . . The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process. Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications. These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** ***In re Zurn Pex Plumbing Products Liability Litigation,*** (February 27, 2013) No. 0:08cv01958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*
>
> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [\*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** ***Gessele et al. v. Jack in the Box, Inc.,*** (January 28, 2013) No. 3:10-cv-960 (D. Or.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing. Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** ***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*** *(Medical Benefits Settlement),* (January 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed. Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.) Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements). Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.) All notice documents were designed to be clear, substantive, and informative. (Id. ¶ 5.)*
>
> *The Court received no objections to the scope or content of the [Medical Benefits] Notice Program. (Azari Supp. Decl. ¶ 12.) The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort. Likewise, the Notice and Notice Plan satisfied the requirements of Due Process. The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*



| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
|---|---|---|---|---|
| | PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

8

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Economic and Property Damages Settlement),* (December 21, 2012) MDL No. 2179 (E.D. La.):

> *The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

> *The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval. The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers. Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights. See Azari Decl. ¶¶ 8, 15, 68. The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

> *The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris, Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.,** (August 17, 2012) No. 12-C-1599 (27th Jud. D. Ct. La.):

> *Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King, In re Checking Account Overdraft Litigation (IBERIABANK),** (April 26, 2012) MDL No. 2036 (S.D. Fla):

> *The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*



| | | | |
|---|---|---|---|
| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

9

**Judge Bobby Peters,** *Vereen v. Lowe's Home Centers,* (April 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

*The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

*The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal,** *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,* (March 2, 2012) MDL No. 2046 (S.D. Tex.):

*The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates,** *Trombley v. National City Bank,* (December 1, 2011) 1:10-CV-00232 (D.D.C.)

*The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr.,** *Schulte v. Fifth Third Bank,* (July 29, 2011) No. 1:09-cv-6655 (N.D. Ill.):

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.,* (June 30, 2011) No. 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

10

**Judge Stefan R. Underhill, *Mathena v. Webster Bank, N.A.,*** (March 24, 2011) No. 3:10-cv-1448 (D. Conn.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart, *Miller v. Basic Research, LLC,*** (September 2, 2010) No. 2:07-cv-871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi, *Pavlov v. Continental Casualty Co.,*** (October 7, 2009) No. 5:07cv2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson, *In re Department of Veterans Affairs (VA) Data Theft Litigation,*** (September 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

**Judge Lisa F. Chrystal, *Little v. Kia Motors America, Inc.,*** (August 27, 2009) No. UNN-L-0800-01 (N.J. Super. Ct.):

*The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.*

**Judge Barbara Crowder, *Dolen v. ABN AMRO Bank N.V.,*** (March 23, 2009) No. 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

*The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights. The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803. That Notice Plan is approved and accepted. This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted. This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.*

**Judge Robert W. Gettleman, *In re Trans Union Corp.,*** (September 17, 2008) MDL No. 1350 (N.D. Ill.):

*The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law… Accordingly, all objections are hereby OVERRULED.*



PORTLAND AREA OFFICE 10300 SW ALLEN BLVD BEAVERTON, OR 97005 T 503-597-7697
PHILADELPHIA AREA OFFICE 1420 LOCUST ST 30 F PHILADELPHIA, PA 1910 T 215-721-2120

11

**Judge Steven D. Merryday,** *Lockwood v. Certegy Check Services, Inc.***,** (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.

**Judge William G. Young,** *In re TJX Companies***,** (September 2, 2008) MDL No. 1838 (D. Mass.):

> The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.,* (June 11, 2008) SACV-06-2235-PSG (PJWx) (C.D. Cal.):

> …was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.

**Judge Robert L. Wyatt,** *Gunderson v. AIG Claim Services, Inc.,* (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.

**Judge Mary Anne Mason,** *Palace v. DaimlerChrysler Corp.,* (May 29, 2008) No. 01-CH-13168 (Ill. Cir. Ct.):

> The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.

**Judge David De Alba,** *Ford Explorer Cases,* (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> [T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.

**Judge Kirk D. Johnson**, *Webb v. Liberty Mutual Ins. Co.,* (March 3, 2008) No. CV-2007-418-3 (Ark. Cir. Ct.):

> The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.

**Judge Carol Crafton Anthony,** *Johnson v. Progressive Casualty Ins. Co.***,** (December 6, 2007) No. CV-2003-513 (Ark. Cir. Ct.):

> Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable…The Forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.



PORTLAND AREA OFFICE · PHILADELPHIA AREA OFFICE   10300 SW ALLEN BLVD · 1420 LOCUST ST 30 F   BEAVERTON, OR 97005 · PHILADELPHIA, PA 1910   T 503-597-7697 · T 215-721-2120

12

**Judge Kirk D. Johnson,** ***Sweeten v. American Empire Insurance Co.,*** (August 20, 2007) No. CV-2007-154-3 (Ark. Cir. Ct.):

> The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.

**Judge Robert Wyatt**, ***Gunderson v. F.A. Richard & Associates, Inc.,*** (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

> This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time.

**Judge Lewis A. Kaplan,** ***In re Parmalat Securities Litigation,*** (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.

**Judge Joe Griffin,** ***Beasley v. The Reliable Life Insurance Co.,*** (March 29, 2007) No. CV-2005-58-1 (Ark. Cir. Ct.):

> [T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.

**Judge Lewis A. Kaplan,** ***In re Parmalat Securities Litigation,*** (March 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as amended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.

**Judge Anna J. Brown,** ***Reynolds v. The Hartford Financial Services Group, Inc.,*** (February 27, 2007) No. CV-01-1529-BR (D. Or):

> [T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.

**Judge Kirk D. Johnson,** ***Zarebski v. Hartford Insurance Company of the Midwest,*** (February 13, 2007) No. CV-2006-409-3 (Ark. Cir. Ct.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class. Accordingly, the Class Notice and Claim Form as disseminated are



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

13

*finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Richard J. Holwell,** ***In re Vivendi Universal, S.A. Securities Litigation,*** 2007 WL 1490466, at *34 (S.D.N.Y.):

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Samuel Conti,** ***Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,*** (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

*After reviewing the evidence and arguments presented by the parties…the Court finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.*

**Judge Ivan L.R. Lemelle**, ***In re High Sulfur Content Gasoline Prods. Liability Litigation,*** (November 8, 2006) MDL No. 1632 (E.D. La.):

*This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities and "ERISA" Litigation,*** (November 2, 2006) MDL No. 1539 (D. Md.):

*The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Elaine E. Bucklo,** ***Carnegie v. Household International,*** (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

*[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]…who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge Joe E. Griffin,** ***Beasley v. Hartford Insurance Company of the Midwest,*** (June 13, 2006) No. CV-2005-58-1 (Ark. Cir. Ct.):

*Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

14

**Judge Norma L. Shapiro,** *First State Orthopedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

> *The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.*

**Judge Thomas M. Hart,** *Froeber v. Liberty Mutual Fire Ins. Co.,* (April 19, 2006) No. 00C15234 (Or. Cir. Ct.):

> *The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (January 6, 2006) MDL No. 1539 (D. Md.):

> *I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litigation,* 437 F.Supp.2d 467, 472 (D. Md. 2006):

> *The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances. The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Robert H. Wyatt, Jr.,** *Gray v. New Hampshire Indemnity Co., Inc.,* (December 19, 2005) No. CV-2002-952-2-3 (Ark. Cir. Ct.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** *Defrates v. Hollywood Entm't Corp.,* (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct.):

> *[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*



| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| | PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

15

**Judge Michael Canaday,** ***Morrow v. Conoco Inc.,*** (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

> *The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** ***Nichols v. SmithKline Beecham Corp.,*** (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge Douglas Combs,** ***Morris v. Liberty Mutual Fire Ins. Co.,*** (February 22, 2005) No. CJ-03-714 (D. Okla.):

> *I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** ***In re Serzone Products Liability Litigation,*** 231 F.R.D. 221, 231 (S.D. W. Va. 2005):

> *The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge Richard G. Stearns,** ***In re Lupron® Marketing and Sales Practice Litigation,*** (November 24, 2004) MDL No. 1430 (D. Mass.):

> *After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** ***In re Lupron® Marketing and Sales Practice Litigation,*** (November 23, 2004) MDL No. 1430 (D. Mass.):

> *I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr.,** ***Mantzouris v. Scarritt Motor Group Inc.,*** (August 10, 2004) No. 8:03 CV- 0015-T-30 MSS (M.D. Fla.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

16

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.)**:**

*The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct.):

*The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

*Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,* 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C. 2004):

*Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litigation,* 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

*The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (November 26, 2003) No. 02-08115 (Fla. Cir. Ct.):

*Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…*

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (November 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

*The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Carter Holly,** *Richison v. American Cemwood Corp.,* (November 18, 2003) No. 005532 (Cal. Super. Ct.):

*As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

17

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

*Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

*In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* (November 27, 2002) No. 99-6209; *Walker v. Rite Aid Corp.,* No. 99-6210; and *Myers v. Rite Aid Corp.,* No. 01-2771 (Pa. Ct. C.P.):

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (November 22, 2002) No. 13007 (Tenn. Ch.):

*The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge James R. Williamson,** *Kline v. The Progressive Corp.,* (November 14, 2002) No. 01-L-6 (Ill. Cir. Ct.):

*Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The notice contained the essential elements necessary to satisfy due process…*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (September 3, 2002) No. 00 Civ. 5071-HB (S.D.N.Y.):

*The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.,* (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct.) ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

*In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all*



PORTLAND AREA OFFICE      10300 SW ALLEN BLVD      BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30F       PHILADELPHIA, PA 1910   T 215-721-2120

18

*the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

*The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

*I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct.):

*[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

*Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

## LEGAL NOTICE CASES

Hilsoft Notifications has served as a notice expert for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| *Andrews v. MCI (900 Number Litigation)* | S.D. Ga., CV 191-175 |
| *Harper v. MCI (900 Number Litigation)* | S.D. Ga., CV 192-134 |
| *In re Bausch & Lomb Contact Lens Litigation* | N.D. Ala., 94-C-1144-WW |
| *In re Ford Motor Co. Vehicle Paint Litigation* | E.D. La., MDL No. 1063 |
| *Castano v. Am. Tobacco* | E.D. La., CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litigation)* | Tenn. Ch., 18,844 |
| *In re Amino Acid Lysine Antitrust Litigation* | N.D. Ill., MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., 95-20512-11-AJS |



| | | | |
|---|---|---|---|
| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

19

| | |
|---|---|
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cal. Cir. Ct., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Or. Cir. Ct., 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | La. D. Ct., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Ala. Cir. Ct., CV-94-4033 |
| *In re Synthroid Mktg. Litigation* | N.D. Ill., MDL No. 1182 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts)* | Ill. Cir. Ct., 97-L-114 |
| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., 97-CV-218-H |
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litigation)* | E.D. Pa., 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Wash. Super. Ct., 97-2-07371-0 |
| *Gutterman v. Am. Airlines (Frequent Flyer Litigation)* | Ill. Cir. Ct., 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Cal. Super. Ct., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)* | Wash. Super. Ct., 97-2-06368 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

20

| | |
|---|---|
| *Crane v. Hackett Assocs. (Securities Litigation)* | E.D. Pa., 98-5504 |
| *In re Holocaust Victims Assets Litigation (Swiss Banks)* | E.D.N.Y., CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | N.M. Cir. Ct., CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., 00201756-6 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042, 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. 87 B 20142, 87 B 20143, 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 302774 |



PORTLAND AREA OFFICE     10300 SW ALLEN BLVD          BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE 1420 LOCUST ST 30 F          PHILADELPHIA, PA 1910   T 215-721-2120

21

| | |
|---|---|
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Cal. Super. Ct., C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Miss. Cir. Ct., 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litigation)* | Ont. Super. Ct., 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litigation)* | W.D. Wash., C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Pa. C.P., 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litigation)* | Cal. Super. Ct., 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Cal. Super. Ct., J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees Litigation)* | 136th Tex. Jud. Dist., D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litigation)* | N.D. Cal., C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litigation)* | N.J. Super. Ct.,, MID-L-8839-00 MT |
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litigation)* | N.D. Cal., C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litigation)* | 3rd Jud. Dist. Ct. Utah, C79-8404 |
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litigation)* | Cal. Super. Ct., GIC 765441, GIC 777547 |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litigation)* | S.D.N.Y., 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch., CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litigation)* | M.D. Fla., 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

22

| | |
|---|---|
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Or. Circ. Ct., 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., 01-2-36007-8 SEA |
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., 02L707 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litigation)* | 27th Jud. D. Ct. La., 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | 13th Jud. Cir. Fla., 02-08115 |
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., 00-22876-JKF |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

23

| | |
|---|---|
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | D. La., 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | Civ. D. La., Sec. 9, 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | W. Va. Cir. Ct., 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | W. Va. Cir. Ct., 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., 01-2-24553-8 SEA |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

24

| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D Ohio, C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Or. Cir. Ct., 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., 041465 |
| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., 00-C-300 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., 98-C-2178 |

| | |
|---|---|
| *Daniel v. AON Corp.* | Ill. Cir. Ct., 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., 00-CV-192059 CPA |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., CT-002506-03 |
| *Lee v. Allstate* | Ill. Cir. Ct., 03 LK 127 |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., 1:06-CV-00332-SEB-VSS |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, 1:06-CV-075-MHW |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., 03-2-33553-3-SEA |

| | |
|---|---|
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., C-05-04289-BZ |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Or., CV-01-1529 BR |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Ark. Cir. Ct., CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., 06-CA-10613-PBS |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-00574-E |
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., 04-CV-1898 (ADL) |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 (TWT) |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., 05-05437-RBL |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., 03-CV-6595 VM |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., 05-CIV-21962 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697
PHILADELPHIA AREA OFFICE      1420 LOCUST ST 30 F          PHILADELPHIA, PA 1910          T 215-721-2120

27

| | |
|---|---|
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc (Neurontin)* | C.P. Pa., 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., SACV06-2235-PSG |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., 8:07-cv-1434-T-23TGW |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL No. 1350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., 2:06-CV-06234 (GEB) |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., 2004-002417 |
| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., 01-L-454 and 01-L-493 |

H HILSOFT NOTIFICATIONS      PORTLAND AREA OFFICE      10300 SW ALLEN BLVD      BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE      1420 LOCUST ST 30 F      PHILADELPHIA, PA 1910      T 215-721-2120

28

| | |
|---|---|
| *Pavlov v. CNA (Long Term Care Insurance)* | N.D. Ohio, 5:07cv2580 |
| *Steele v. Pergo( Flooring Products)* | D. Or., 07-CV-01493-BR |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., 07-C-3737-B |
| *Little v. Kia Motors America, Inc. (Braking Systems)* | N.J. Super. Ct., UNN-L-0800-01 |
| *Boone v. City of Philadelphia (Prisoner Strip Search)* | E.D. Pa., 05-CV-1851 |
| *In re Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No.1998 |
| *Miller v. Basic Research (Weight-loss Supplement)* | D. Utah, 2:07-cv-00871-TS |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., 07-CV-08742 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., 3:07-CV-03018-MJC-JJH |
| *Coyle v. Hornell Brewing Co. (Arizona Iced Tea)* | D.N.J., 08-CV-2797-JBS-JS |
| *In re Heartland Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Satterfield v. Simon & Schuster, Inc. (Text Messaging)* | N.D. Cal., 06-CV-2893 CW |
| *Schulte v. Fifth Third Bank (Overdraft Fees)* | N.D. Ill., 1:09-CV-06655 |
| *Trombley v. National City Bank (Overdraft Fees)* | D.D.C., 1:10-CV-00232 |
| *Vereen v. Lowe's Home Centers (Defective Drywall)* | Ga. Super. Ct., SU10-CV-2267B |
| *Mathena v. Webster Bank, N.A. (Overdraft Fees)* | D. Conn, 3:10-cv-01448 |
| *Delandro v. County of Allegheny (Prisoner Strip Search)* | W.D. Pa., 2:06-cv-00927 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (First Health)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Williams v. Hammerman & Gainer, Inc. (Hammerman)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (Risk Management)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (SIF Consultants)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Gwiazdowski v. County of Chester (Prisoner Strip Search)* | E.D. Pa., 2:08cv4463 |
| *Williams v. S.I.F. Consultants (CorVel Corporation)* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Sachar v. Iberiabank Corporation (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *LaCour v. Whitney Bank (Overdraft Fees)* | M.D. Fla., 8:11cv1896 |
| *Lawson v. BancorpSouth (Overdraft Fees)* | W.D. Ark., 1:12cv1016 |
| *McKinley v. Great Western Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

29

| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
|---|---|
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Or., No. 3:10-cv-960 |
| *RBS v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Mosser v. TD Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa)* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La., 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., CV-11-4322294-00CP |

⊢ HILSOFT
  NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

30

| | |
|---|---|
| *Yarger v. ING Bank* | D. Del., 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., 4:13-cv-00250-JMM |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., 3:12-cv-01405-RDM |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., 11-cv-02390-EJD |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., 09-C-5242-B |
| *Simpson v. Citizens Bank (Overdraft Fees)* | E.D. Mich, 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong  et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., 11-MD-2221, MDL No. 2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., 11-cv-06700-JST |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., 2005-05453 |
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., 1:12-cv-02871 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement  (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30F   PHILADELPHIA, PA 1910   T 215-721-2120

31

| | |
|---|---|
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., 42-cv-2012-900001.00 |
| *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice)* | Bankr. D. Del., 14-10979(CSS) |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., 14-civ-5731 (WHP) |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., 13-C-3212 |
| *Ono v. Head Racquet Sports USA* | C.D.C.A., 2:13-cv-04222-FMO(AGRx) |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., 13-C-5380 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D. N.J., MDL No. 2540 |
| *In Re: Citrus Canker Litigation* | 11th Jud. Cir., Flo., No. 03-8255 CA 13 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.*<br>*Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., 2:12-cv-02247<br>D. Kan., 2:13-cv-2634 |
| *Swift v. BancorpSouth Bank (Overdraft Fees)* | N.D. Fla., No. 1:10-cv-00090 |
| *Forgione v. Webster Bank N.A. (Overdraft Fees)* | Sup. Ct.Conn., X10-UWY-CV-12-6015956-S |
| *Small v. BOKF, N.A.* | D. Col., 13-cv-01125 |
| *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.* | S.D. Fla., 14-cv-23120-MGC |
| *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* | Sup. Ct. N.Y., No. 650562/11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch)* | N.D. Cal., MDL No. 2672 |
| *Hawkins v. First Tennessee Bank, N.A., et al. (Overdraft Fees)* | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al. (Data Breach)* | N.D. Ill., No. 1:15-cv-02228 |
| *Bias v. Wells Fargo & Company, et al. (Broker's Price Opinions)* | N.D. Cal., No 4:12-cv-00664-YGR |
| *Klug v. Watts Regulator Company (Product Liability)* | D. Neb., No. 8:15-cv-00061-JFB-FG3 |
| *Ratzlaff v. BOKF, NA d/b/a Bank of Oklahoma, et al. (Overdraft Fees)* | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Morton v. Greenbank (Overdraft Fees)* | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al. (FirstMerit Overdraft Fees)* | Ohio C.P., No. 11CV000090 |



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30F    PHILADELPHIA, PA 1910    T 215-721-2120

32

| *Farnham v. Caribou Coffee Company, Inc. (TCPA)* | W.D. Wis., No. 16-cv-00295-WMC |
| *Gottlieb v. Citgo Petroleum Corporation (TCPA)* | S.D. Fla., No. 9:16-cv-81911 |
| *McKnight v. Uber Technologies, Inc.* | N.D. Cal., No 3:14-cv-05615-JST |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. GA., No. 2:16-cv-132-LGW-RSB. |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780(LTS) |
| *Callaway v. Mercedes-Benz USA, LLC (Seat Heaters)* | C.D. Cal., No 14-cv-02011 JVS |
| *In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru and Toyota)* | S.D. Fla, MDL No. 2599 |

Hilsoft-cv-140

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

33

# Attachment 2

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARIA VERGARA, et al., | Case No. 1:15-CV-06942 |
| Plaintiffs, | Hon. Thomas M. Durkin |
| v. | |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

**DECLARATION OF STEPHANIE J. FIERECK, ESQ.
ON IMPLEMENTATION OF CAFA NOTICE**

I, STEPHANIE J. FIERECK, ESQ., hereby declare and state as follows:

1.      My name is Stephanie J. Fiereck, Esq.  I am over the age of 21 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am the Legal Notice Manager for Epiq Legal Noticing, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.

3.      Epiq Legal Noticing is a division of Epiq Systems ("Epiq"), a firm with more than 20 years of experience in claims processing and settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service, claims database management, claim adjudication, funds management and distribution services.

4.      The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

**DECLARATION OF STEPHANIE J. FIERECK, ESQ.
ON IMPLEMENTATION OF CAFA NOTICE**

## CAFA NOTICE IMPLEMENTATION

5.     At the direction of counsel for the Defendant Uber Technologies, Inc., 57 officials, which included the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia and the United States' Territories were identified to receive the CAFA notice.

6.     Epiq maintains a list of these state and federal officials with contact information for the purpose of providing CAFA notice.  Prior to mailing, the names and addresses selected from Epiq's list were verified, then run through the Coding Accuracy Support System ("CASS") maintained by the United States Postal Service ("USPS").[1]

7.     On August 21, 2017, Epiq sent 57 CAFA Notice Packages ("Notice").   The Notice was mailed by certified mail to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the United States' Territory officials.  The Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.  The CAFA Notice Service List (USPS Certified Mail and UPS) is attached hereto as **Attachment 1**.

8.     The materials sent to the Attorneys General included a cover letter which provided notice of the proposed settlement of the above-captioned case.  The cover letter is attached hereto as **Attachment 2**.

9.     The cover letter was accompanied by a CD, which included the following:

a.     The original Complaint (filed on August 7, 2015); and the First Amended Complaint (filed on August 11, 2017);

b.     Class action notice for the settlement;

---

[1] CASS improves the accuracy of carrier route, 5-digit ZIP®, ZIP + 4® and delivery point codes that appear on mail pieces.  The USPS makes this system available to mailing firms who want to improve the accuracy of postal codes, i.e., 5-digit ZIP®, ZIP + 4®, delivery point (DPCs), and carrier route codes that appear on mail pieces.

        c.      Uber's settlement agreement with the plaintiffs (with exhibits, which included a proposed final judgment (Exhibit 7 to the Settlement Agreement));

        d.      State totals of phone numbers sent referral text messages; and

        e.      Court's order preliminarily approving the settlement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 12, 2017.

Stephanie J. Fiereck, Esq.

Attachment 1

**CAFA Notice Service List**
**USPS Certified Mail**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Office of the Attorney General | Jahna Lindemuth | PO Box 110300 | | Juneau | AK | 99811 |
| Office of the Attorney General | Steve Marshall | 501 Washington Ave | | Montgomery | AL | 36104 |
| Office of the Attorney General | Leslie Carol Rutledge | 323 Center St Ste 200 | | Little Rock | AR | 72201 |
| Office of the Attorney General | Mark Brnovich | 1275 West Washington St | | Phoenix | AZ | 85007 |
| Office of the Attorney General | CAFA Coordinator | Consumer Law Section | 455 Golden Gate Ave Ste 11000 | San Francisco | CA | 94102 |
| Office of the Attorney General | Cynthia Coffman | Ralph L Carr Colorado Judicial Center | 1300 Broadway 10th Fl | Denver | CO | 80203 |
| Office of the Attorney General | George Jepsen | 55 Elm St | | Hartford | CT | 06106 |
| Office of the Attorney General | Karl A. Racine | 441 4th St NW | | Washington | DC | 20001 |
| Office of the Attorney General | Matt Denn | Carvel State Office Bldg | 820 N French St | Wilmington | DE | 19801 |
| Office of the Attorney General | Pam Bondi | State of Florida | The Capitol PL-01 | Tallahassee | FL | 32399 |
| Office of the Attorney General | Chris Carr | 40 Capitol Square SW | | Atlanta | GA | 30334 |
| Department of the Attorney General | Douglas S. Chin | 425 Queen St | | Honolulu | HI | 96813 |
| Iowa Attorney General | Thomas J Miller | 1305 E Walnut St | | Des Moines | IA | 50319 |
| Office of the Attorney General | Lawrence G Wasden | 700 W Jefferson St Ste 210 | PO Box 83720 | Boise | ID | 83720 |
| Office of the Attorney General | Lisa Madigan | 100 W Randolph St | | Chicago | IL | 60601 |
| Indiana Attorney General's Office | Curtis T Hill Jr | Indiana Government Center South | 302 W Washington St 5th Fl | Indianapolis | IN | 46204 |
| Office of the Attorney General | Derek Schmidt | 120 SW 10th Ave 2nd Fl | | Topeka | KS | 66612 |
| Office of the Attorney General | Andy Beshear | Capitol Ste 118 | 700 Capitol Ave | Frankfort | KY | 40601 |
| Office of the Attorney General | Jeff Landry | 1885 N Third St | | Baton Rouge | LA | 70802 |
| Office of the Attorney General | Maura Healey | 1 Ashburton Pl | | Boston | MA | 02108 |
| Office of the Attorney General | Brian E. Frosh | 200 St Paul Pl | | Baltimore | MD | 21202 |
| Office of the Attorney General | Janet T Mills | 6 State House Sta | | Augusta | ME | 04333 |
| Department of Attorney General | Bill Schuette | PO Box 30212 | | Lansing | MI | 48909 |
| Office of the Attorney General | Lori Swanson | 445 Minnesota St | Suite 1400 | St Paul | MN | 55101 |
| Missouri Attorney General's Office | Josh Hawley | PO Box 899 | | Jefferson City | MO | 65102 |
| MS Attorney General's Office | Jim Hood | Walter Sillers Bldg | 550 High St Ste 1200 | Jackson | MS | 39201 |
| Office of the Attorney General | Tim Fox | Department of Justice | PO Box 201401 | Helena | MT | 59620 |
| Attorney General's Office | Josh Stein | 9001 Mail Service Ctr | | Raleigh | NC | 27699 |
| Office of the Attorney General | Wayne Stenehjem | State Capitol | 600 E Boulevard Ave Dept 125 | Bismarck | ND | 58505 |
| Office of the Attorney General | Doug Peterson | 2115 State Capitol | | Lincoln | NE | 68509 |
| Office of the Attorney General | Gordon MacDonald | NH Department of Justice | 33 Capitol St | Concord | NH | 03301 |
| Office of the Attorney General | Christopher S. Porrino | 8th Fl West Wing | 25 Market St | Trenton | NJ | 08625 |
| Office of the Attorney General | Hector Balderas | 408 Galisteo St | Villagra Bldg | Santa Fe | NM | 87501 |
| Office of the Attorney General | Adam Paul Laxalt | 100 N Carson St | | Carson City | NV | 89701 |
| Office of the Attorney General | Eric T Schneiderman | The Capitol | | Albany | NY | 12224 |
| Office of the Attorney General | Mike DeWine | 30 E Broad St 14th Fl | | Columbus | OH | 43215 |
| Office of the Attorney General | Mike Hunter | 313 NE 21st St | | Oklahoma City | OK | 73105 |
| Office of the Attorney General | Ellen F Rosenblum | Oregon Department of Justice | 1162 Court St NE | Salem | OR | 97301 |
| Office of the Attorney General | Josh Shapiro | 16th Fl Strawberry Square | | Harrisburg | PA | 17120 |
| Office of the Attorney General | Peter Kilmartin | 150 S Main St | | Providence | RI | 02903 |
| Office of the Attorney General | Alan Wilson | Rembert Dennis Office Bldg | 1000 Assembly St Rm 519 | Columbia | SC | 29201 |
| Office of the Attorney General | Marty J Jackley | 1302 E Hwy 14 Ste 1 | | Pierre | SD | 57501 |
| Office of the Attorney General | Herbert H. Slatery III | PO Box 20207 | | Nashville | TN | 37202 |
| Office of the Attorney General | Ken Paxton | 300 W 15th St | | Austin | TX | 78701 |
| Office of the Attorney General | Sean D. Reyes | Utah State Capitol Complex | 350 North State St Ste 230 | Salt Lake City | UT | 84114 |
| Office of the Attorney General | Mark R. Herring | 202 North Ninth Street | | Richmond | VA | 23219 |
| Office of the Attorney General | TJ Donovan | 109 State St | | Montpelier | VT | 05609 |
| Office of the Attorney General | Bob Ferguson | PO Box 40100 | | Olympia | WA | 98504 |
| Office of the Attorney General | Brad D. Schimel | PO Box 7857 | | Madison | WI | 53707 |
| Office of the Attorney General | Patrick Morrisey | State Capitol Complex | Bldg 1 Room E 26 | Charleston | WV | 25305 |
| Office of the Attorney General | Peter K Michael | 2320 Capitol Avenue | | Cheyenne | WY | 82002 |
| Department of Legal Affairs | Talauega Eleasalo V. Ale | Executive Office Building | 3rd Floor | Pago Pago | AS | 96799 |
| Attorney General Office of Guam | Elizabeth Barrett-Anderson | ITC Building | 590 S Marine Corps Dr Ste 901 | Tamuning | GU | 96913 |
| Office of the Attorney General | Edward Manibusan | Administration Bldg | PO Box 10007 | Saipan | MP | 96950 |
| PR Department of Justice | Wanda Vazquez Garced | Apartado 9020192 | | San Juan | PR | 00902 |
| Department of Justice | Claude Walker | 34-38 Kronprindsens Gade | GERS Bldg 2nd Fl | St Thomas | VI | 00802 |

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Jeff Sessions | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |

# Attachment 2

August 21, 2017

**VIA UPS OR USPS CERTIFIED MAIL**

| |
|---|
| **Class Action Fairness Act – Notice to Federal and State Officials** |

Dear Sir or Madam:

Uber Technologies, Inc. ("Uber") is a defendant in *Vergara, et al. v. Uber Technologies, Inc.* (Case No. 15-cv-06942, pending in the United States District Court for the Northern District of Illinois before the Honorable Thomas M. Durkin (the "Action"). In compliance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, you are being served with notice that a proposed settlement of the Action between Uber and the plaintiffs, as well as classes of similarly situated persons and entities, has been filed with the Court.

The plaintiffs' nationwide class action lawsuit asserts a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. Uber denies that it engaged in any wrongdoing but has agreed to settle this lawsuit to avoid the expense, uncertainty, delay, and other risks inherent in further litigation.

**PROPOSED SETTLEMENT CLASSES**

Subject to Court approval, the following Settlement Classes shall be certified for settlement purposes for the time period December 31, 2010 to August 17, 2017 ("Class Period"):

> Settlement Class A: All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

> Settlement Class B: All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

> Settlement Class C: All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

Excluded from the Settlement Classes are all persons who elect to exclude themselves from the Settlement Classes, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

**MATERIALS REQUIRED BY 28 U.S.C. § 1715**

I have enclosed a CD containing the materials required by 28 U.S.C. § 1715(b). We have prepared this CD in Adobe Acrobat (.pdf) format.

(1)     A copy of the complaint and any materials filed with the complaint and any amended complaints.

The enclosed CD contains the following complaints filed by the plaintiffs: the original Complaint (filed on August 7, 2015); and the First Amended Complaint (filed on August 11, 2017).

(2)     Notice of any scheduled judicial hearing in the class action.

The Court held a hearing on the motion for preliminary approval of the settlement on August 16, 2017. The Court set a hearing date of January 23, 2018 at 9:00 a.m. for the motion for final approval of the settlement. In order to monitor the Court's schedule for hearing dates and changes to hearing dates, you may find scheduling information by visiting the "CM/ECF" online docket for the above-captioned case at https://ecf.ilnd.uscourts.gov/cgi-bin/HistDocQry.pl?730115981035725-L_1_0-1.

(3)     Any proposed or final notification to class members of — (A) (i) the members' rights to request exclusion from the class action; or (ii) if no right to request exclusion exists, a statement that no such right exists; and (B) a proposed settlement of a class action.

The enclosed CD contains the class action notice for the settlement. The notice informs the class members of their right to request exclusion from the settlement class and provides extensive information about the terms of the settlement.

(4)     Any proposed or final class action settlement.

The enclosed CD contains a copy of Uber's settlement agreement with the plaintiffs.

(5)     Any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants.

There are no other settlement agreements or other agreements contemporaneously made between class counsel and Uber.

(6)     Any final judgment or notice of dismissal.

No final judgment or notice of dismissal has been filed in the Action. A proposed final judgment is attached as Exhibit 7 to the Settlement Agreement, which is in the enclosed CD.

(7)  (A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or (B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement.

It is not feasible to provide a complete list of the names of class members, as well as each State of residence because Uber does not have that information. For Class A, the enclosed CD includes information that Uber currently has reasonably available regarding the number of phone numbers that were sent referral text messages for each state. Uber is unable to provide a reasonable estimate of the number of class members for Classes B and C at this time because it does not have a record of the number of prospective drivers who unsuccessfully opted out of text messages or persons who may have received text messages in error. Class members will need to identify themselves through a claims process, which has not yet occurred. Class members who properly submit claim forms shall receive a pro rata share of the settlement fund. Uber will provide notice to potential class members consistent with the notice plan approved by the Court. Uber will supplement this information to the extent that additional information becomes available.

(8)     <u>Any written judicial opinion relating to the materials described under subparagraphs (3) through (6).</u>

The Court's order preliminarily approving the settlement is in the enclosed CD.

------------

Any materials relating to the proposed settlement that are filed after the service of this notice can be found by visiting the "CM/ECF" online docket for the above-captioned case at https://ecf.ilnd.uscourts.gov/cgi-bin/HistDocQry.pl?730115981035725-L_1_0-1.

------------

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIA VERGARA, et al., | Case No. 1:15-CV-06942 |
| Plaintiffs, | Hon. Thomas M. Durkin |
| v. | |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

**DECLARATION OF STEPHANIE J. FIERECK, ESQ.**
**ON IMPLEMENTATION OF SUPPLEMENTAL CAFA NOTICE**

I, STEPHANIE J. FIERECK, ESQ., hereby declare and state as follows:

1.      My name is Stephanie J. Fiereck, Esq.  I am over the age of 21 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am the Legal Notice Manager for Epiq Legal Noticing, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.

3.      Epiq Legal Noticing is a division of Epiq Systems ("Epiq"), a firm with more than 20 years of experience in claims processing and settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service, claims database management, claim adjudication, funds management and distribution services.

4.      The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

**DECLARATION OF STEPHANIE J. FIERECK, ESQ.**
**ON IMPLEMENTATION OF SUPPLEMENTAL CAFA NOTICE**

## CAFA NOTICE IMPLEMENTATION

5.      At the direction of counsel for the Defendant Uber Technologies, Inc., Epiq provided notice pursuant to 28 U.S.C. § 1715 ("Initial Notice") on August 21, 2017. *See Declaration of Stephanie J. Fiereck, ESQ. on Implementation of CAFA Notice*, executed on September 12, 2017.

6.      Following the August 21, 2017, Initial Notice, counsel for Defendant directed Epiq to provide supplemental notice to 57 officials, which included the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia and the United States' Territories.

7.      Epiq maintains a list of these state and federal officials with contact information for the purpose of providing CAFA notice. Prior to mailing, the names and addresses selected from Epiq's list were verified, then run through the Coding Accuracy Support System ("CASS") maintained by the United States Postal Service ("USPS").[1]

8.      On October 11, 2017, Epiq sent 57 CAFA Notice Packages ("Notice"). The Notice was mailed by certified mail to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the United States' Territory officials. The Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States. The CAFA Notice Service List (USPS Certified Mail and UPS) is attached hereto as **Attachment 1**.

9.      The materials sent to the Attorneys General included a cover letter which provided notice of the proposed settlement of the above-captioned case. The cover letter is attached hereto as **Attachment 2**.

---

[1] CASS improves the accuracy of carrier route, 5-digit ZIP®, ZIP + 4® and delivery point codes that appear on mail pieces. The USPS makes this system available to mailing firms who want to improve the accuracy of postal codes, i.e., 5-digit ZIP®, ZIP + 4®, delivery point (DPCs), and carrier route codes that appear on mail pieces.

10.    The cover letter was accompanied by a CD, which included the following:

      a.    Forms of Notice – internet banner notices and press release; and

      b.    Geographic data of Class Members

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 23, 2017.

Stephanie J. Fiereck, Esq

# Attachment 1

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Jeff Sessions | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |

**CAFA Notice Service List**
**USPS Certified Mail**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Office of the Attorney General | Jahna Lindemuth | PO Box 110300 | | Juneau | AK | 99811 |
| Office of the Attorney General | Steve Marshall | 501 Washington Ave | | Montgomery | AL | 36104 |
| Office of the Attorney General | Leslie Carol Rutledge | 323 Center St Ste 200 | | Little Rock | AR | 72201 |
| Office of the Attorney General | Mark Brnovich | 1275 West Washington St | | Phoenix | AZ | 85007 |
| Office of the Attorney General | CAFA Coordinator | Consumer Law Section | 455 Golden Gate Ave Ste 11000 | San Francisco | CA | 94102 |
| Office of the Attorney General | Cynthia Coffman | Ralph L Carr Colorado Judicial Center | 1300 Broadway 10th Fl | Denver | CO | 80203 |
| Office of the Attorney General | George Jepsen | 55 Elm St | | Hartford | CT | 06106 |
| Office of the Attorney General | Karl A. Racine | 441 4th St NW | | Washington | DC | 20001 |
| Office of the Attorney General | Matt Denn | Carvel State Office Bldg | 820 N French St | Wilmington | DE | 19801 |
| Office of the Attorney General | Pam Bondi | State of Florida | The Capitol PL-01 | Tallahassee | FL | 32399 |
| Office of the Attorney General | Chris Carr | 40 Capitol Square SW | | Atlanta | GA | 30334 |
| Department of the Attorney General | Douglas S. Chin | 425 Queen St | | Honolulu | HI | 96813 |
| Iowa Attorney General | Thomas J Miller | 1305 E Walnut St | | Des Moines | IA | 50319 |
| Office of the Attorney General | Lawrence G Wasden | 700 W Jefferson St Ste 210 | PO Box 83720 | Boise | ID | 83720 |
| Office of the Attorney General | Lisa Madigan | 100 W Randolph St | | Chicago | IL | 60601 |
| Indiana Attorney General's Office | Curtis T Hill Jr | Indiana Government Center South | 302 W Washington St 5th Fl | Indianapolis | IN | 46204 |
| Office of the Attorney General | Derek Schmidt | 120 SW 10th Ave 2nd Fl | | Topeka | KS | 66612 |
| Office of the Attorney General | Andy Beshear | Capitol Ste 118 | 700 Capitol Ave | Frankfort | KY | 40601 |
| Office of the Attorney General | Jeff Landry | 1885 N Third St | | Baton Rouge | LA | 70802 |
| Office of the Attorney General | Maura Healey | 1 Ashburton Pl | | Boston | MA | 02108 |
| Office of the Attorney General | Brian E. Frosh | 200 St Paul Pl | | Baltimore | MD | 21202 |
| Office of the Attorney General | Janet T Mills | 6 State House Sta | | Augusta | ME | 04333 |
| Department of Attorney General | Bill Schuette | PO Box 30212 | | Lansing | MI | 48909 |
| Office of the Attorney General | Lori Swanson | 445 Minnesota St | Suite 1400 | St Paul | MN | 55101 |
| Missouri Attorney General's Office | Josh Hawley | PO Box 899 | | Jefferson City | MO | 65102 |
| MS Attorney General's Office | Jim Hood | Walter Sillers Bldg | 550 High St Ste 1200 | Jackson | MS | 39201 |
| Office of the Attorney General | Tim Fox | Department of Justice | PO Box 201401 | Helena | MT | 59620 |
| Attorney General's Office | Josh Stein | 9001 Mail Service Ctr | | Raleigh | NC | 27699 |
| Office of the Attorney General | Wayne Stenehjem | State Capitol | 600 E Boulevard Ave Dept 125 | Bismarck | ND | 58505 |
| Office of the Attorney General | Doug Peterson | 2115 State Capitol | | Lincoln | NE | 68509 |
| Office of the Attorney General | Gordon MacDonald | NH Department of Justice | 33 Capitol St | Concord | NH | 03301 |
| Office of the Attorney General | Christopher S. Porrino | 8th Fl West Wing | 25 Market St | Trenton | NJ | 08625 |
| Office of the Attorney General | Hector Balderas | 408 Galisteo St | Villagra Bldg | Santa Fe | NM | 87501 |
| Office of the Attorney General | Adam Paul Laxalt | 100 N Carson St | | Carson City | NV | 89701 |
| Office of the Attorney General | Eric T Schneiderman | The Capitol | | Albany | NY | 12224 |
| Office of the Attorney General | Mike DeWine | 30 E Broad St 14th Fl | | Columbus | OH | 43215 |
| Office of the Attorney General | Mike Hunter | 313 NE 21st St | | Oklahoma City | OK | 73105 |
| Office of the Attorney General | Ellen F Rosenblum | Oregon Department of Justice | 1162 Court St NE | Salem | OR | 97301 |
| Office of the Attorney General | Josh Shapiro | 16th Fl Strawberry Square | | Harrisburg | PA | 17120 |
| Office of the Attorney General | Peter Kilmartin | 150 S Main St | | Providence | RI | 02903 |
| Office of the Attorney General | Alan Wilson | Rembert Dennis Office Bldg | 1000 Assembly St Rm 519 | Columbia | SC | 29201 |
| Office of the Attorney General | Marty J Jackley | 1302 E Hwy 14 Ste 1 | | Pierre | SD | 57501 |
| Office of the Attorney General | Herbert H. Slatery III | PO Box 20207 | | Nashville | TN | 37202 |
| Office of the Attorney General | Ken Paxton | 300 W 15th St | | Austin | TX | 78701 |
| Office of the Attorney General | Sean D. Reyes | Utah State Capitol Complex | 350 North State St Ste 230 | Salt Lake City | UT | 84114 |
| Office of the Attorney General | Mark R. Herring | 202 North Ninth Street | | Richmond | VA | 23219 |
| Office of the Attorney General | TJ Donovan | 109 State St | | Montpelier | VT | 05609 |
| Office of the Attorney General | Bob Ferguson | PO Box 40100 | | Olympia | WA | 98504 |
| Office of the Attorney General | Brad D. Schimel | PO Box 7857 | | Madison | WI | 53707 |
| Office of the Attorney General | Patrick Morrisey | State Capitol Complex | Bldg 1 Room E 26 | Charleston | WV | 25305 |
| Office of the Attorney General | Peter K Michael | 2320 Capitol Avenue | | Cheyenne | WY | 82002 |
| Department of Legal Affairs | Talauega Eleasalo V. Ale | Executive Office Building | 3rd Floor | Pago Pago | AS | 96799 |
| Attorney General Office of Guam | Elizabeth Barrett-Anderson | ITC Building | 590 S Marine Corps Dr Ste 901 | Tamuning | GU | 96913 |
| Office of the Attorney General | Edward Manibusan | Administration Bldg | PO Box 10007 | Saipan | MP | 96950 |
| PR Department of Justice | Wanda Vazquez Garced | Apartado 9020192 | | San Juan | PR | 00902 |
| Department of Justice | Claude Walker | 34-38 Kronprindsens Gade | GERS Bldg 2nd Fl | St Thomas | VI | 00802 |

# Attachment 2

October 11, 2017

**VIA UPS OR USPS CERTIFIED MAIL**

| Class Action Fairness Act – Supplemental Notice to Federal and State Officials |
| --- |

Dear Sir or Madam:

Uber Technologies, Inc. ("Uber") is a defendant in *Vergara, et al. v. Uber Technologies, Inc.* (Case No. 15-cv-06942), pending in the United States District Court for the Northern District of Illinois before the Honorable Thomas M. Durkin (the "Action"). In compliance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, you were previously served with notice that a proposed settlement of the Action between Uber and the plaintiffs, as well as classes of similarly situated persons and entities, has been filed with the Court. Below and in the enclosed CD we have provided further information relating to the settlement and class notice.

We have already provided you with the long-form notice, e-mail notice, postcard notice, and publication notice that appeared in USA Today, all of which were approved by the Court for distribution in its order preliminarily approving the settlement. In the enclosed CD you will find Internet banner notices that are being used as part of the settlement notice. These Internet banner notices will appear on Facebook, Google Ad Network, and Yahoo Ad Network targeting adults aged 18 and older. Facebook is the most widely used social networking service in the world. Google Ad Network and Yahoo Ad Network represent thousands of digital properties across all major content categories. The Internet banner notices will appear across these networks ensuring a broad mix of websites and user interests. A person who clicks on the Internet banner notice will be taken to the settlement website where he or she can review the long-form class notice and access key case documents.

The enclosed CD also contains a press release that was issued to describe the proposed settlement's key terms, explain how class members can make claims, opt-out, or file objections, and provide the settlement website address so class members can learn more about their rights.

Lastly, the enclosed CD has updated estimated class size information for Classes A and B. Uber is unable to provide a reasonable estimate of the number of class members for Class C at this time because it does not have a record of persons who

may have been sent text messages in error. Class members will need to identify themselves through a claims process, which has not yet occurred. Uber will provide notice to potential class members consistent with the notice plan approved by the Court, which will include not only direct notice where reasonably possible, but also publication notice, a press release, and Internet banner notices as described above.

If you have any questions about this notice, please contact Austin Schwing, counsel for Uber Technologies, Inc. at 415-393-8210 or aschwing@gibsondunn.com.

Very truly yours,

Notice Administrator for United States District Court

Enclosures

# Attachment 3

Uber TCPA Settlement Administrator
P.O. Box 5053
Portland, OR 97208-5053

PRESORTED
FIRST-CLASS MAIL
AUTO
U.S. POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2882

## <u>Legal Notice about a Class Action Settlement</u>



1
1

### If You Were Sent a Text Message By Uber Technologies, Inc. Between December 31, 2010 and August 17, 2017 You May Be Eligible for a Payment from a Class Action Settlement.

A proposed settlement has been reached in a class action lawsuit against Uber Technologies, Inc. ("Uber") regarding automated text messages sent from December 31, 2010 to August 17, 2017 ("Class Period"), allegedly in violation of the law. (*Vergara, et al. v. Uber Technologies, Inc.* Case No. 1:15-CV-06942 (N.D. Ill.)). Uber denies the allegations. The Court has not decided who is right, and the parties have settled their dispute.

**Why Am I Being Contacted?** Our records indicate that you may have received one or more automated text messages and that you may be eligible to receive a payment from the Settlement.

**Who's Included in the Classes? (A)** All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program; **(B)** All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages; and **(C)** All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

**What Does the Settlement Provide?** Uber has agreed to create a fund totaling $20,000,000 to pay valid claims; settlement administration expenses; attorneys' fees, costs and expenses; and Class Representative service awards. **To receive a settlement check, you must complete and submit a claim form by December 15, 2017 using the following Class Member ID Number:** 2945419686. File your claim online, or visit the website and download a Claim Form to submit by mail. Visit the website below or call for more information about filing your claim. Uber has also agreed to alter its texting practices, as explained in the Detailed Notice and Settlement Agreement at the website listed below.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **December 15, 2017**. If you do not exclude yourself, you will release your claims against Uber, as more fully described in the Settlement Agreement. If you stay in the Settlement, you may object to it by **December 22, 2017**. The Detailed Notice available at the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **January 23, 2018** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to $6,660,000 plus costs and expenses, and service awards for the Class Representatives of $10,000 each. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. S4671 v.01

*For more information and for a claim form, visit www.UberTCPASettlement.com or call 1-800-330-1683.*

# Attachment 4

Uber TCPA Settlement Administrator
PO Box 5053
Portland, OR 97208-5053



000 000001 0000000 001 007 00001 □□□: 0 0

This Page Intentionally Left Blank



<u>LEGAL NOTICE BY ORDER OF COURT</u>

# If, at Any Time Between December 31, 2010 and August 17, 2017, You Received One or More Text Messages from Uber Technologies, Inc., You May Be Eligible for a Payment from a Class Action Settlement.

**This Notice describes rights you may have in connection with the settlement of a lawsuit.**

*The United States District Court for the Northern District of Illinois authorized this Notice. This is not a solicitation from a lawyer. **This is not a legal action against you.***

*Para una notificacion en Espanol, visitar www.UberTCPASettlement.com.*

This Notice describes a proposed settlement in a class action lawsuit brought against Uber Technologies, Inc. ("Uber"), regarding text messages sent to certain persons and entities. **Please read this Notice carefully. It summarizes your rights and options under the Settlement, which are affected whether or not you act. The full Settlement Agreement can be accessed at www.UberTCPASettlement.com.**

If you were sent a text message and you fit the description of the Settlement Classes (as defined below), then you have the following options:

- <u>You can submit a claim for monetary compensation.</u> The amount of the check you would receive depends on the number of people and entities who file claims, the costs of administration of the Settlement, attorneys' fees and costs, and Class Representative service awards. **To receive a check, you must submit a Claim Form by December 15, 2017.** The process for submitting a claim is described below.

- <u>You can exclude yourself from the Settlement</u> (and receive no money from the Settlement but retain your right to bring your own lawsuit). Your request to exclude yourself must be submitted no later than **December 15, 2017.** You must follow the process described in Question 8 in this Notice. If the Settlement is approved and you do not exclude yourself, you will be bound by the Settlement and will release certain claims described below.

- <u>You can object to the Settlement.</u> The deadline for objecting to the Settlement is **December 22, 2017**. All objections must be mailed to Uber TCPA Settlement Administrator, P.O. Box 5053, Portland, OR 97208-5053. See Question 7 in this Notice for details.

NOTE: **PLEASE <u>DO NOT</u>** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, UBER, OR UBER'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU. If you have questions, please call 1-800-330-1683 or visit www.UberTCPASettlement.com.

**For more information and for a Claim Form, visit www.UberTCPASettlement.com or call 1-800-330-1683.**



# BASIC INFORMATION

In a purported class action case known as *Vergara, et al. v. Uber Technologies, Inc.*, No. 1:15-CV-06942 (N.D. Ill.), the Plaintiffs alleged that Uber engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by sending automated text messages to individuals without their consent. Uber denies Plaintiffs' allegations and denies that it did anything wrong. The Court has not decided who is right.

A settlement of this lawsuit ("Settlement") has been negotiated which, if approved by the Court, may entitle you to a payment. By entering into the Settlement, Uber has not admitted the truth or validity of any of the claims against it. Your rights and options under the Settlement—and the deadlines to exercise them—are explained below.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **Submit a Claim** | This is the only way to receive a payment from the Settlement. Class Members who submit a valid Claim Form by the deadline of **December 15, 2017**, will receive a payment and will give up certain rights to sue Releasees, as described in Questions 4 and 6 in this Notice. |
| **Do Nothing** | If you do nothing, you will receive no money from the Settlement, but *you will still give up your rights to sue Releasees*, as described in Questions 6 and 10 in this Notice. |
| **Exclude Yourself from the Case** | If you exclude yourself, you can sue Releasees on your own and at your own expense regarding the text messages released under this Settlement, but you will not receive a payment from the Settlement. The deadline for excluding yourself is **December 15, 2017**. See Question 8 in this Notice. |
| **Object** | You may file an objection if you wish to object to the Settlement. The deadline to object to the Settlement is **December 22, 2017**. See Question 7 in this Notice. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the Settlement. The Court has set a hearing for **January 23, 2018 at 9:00 a.m.**, subject to change. See Question 11 in this Notice. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

The Court in charge of this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, benefits will be distributed to those who submit claims and qualify. Please be patient.

**For more information and for a Claim Form, visit
www.UberTCPASettlement.com or call 1-800-330-1683.**

## WHAT THIS NOTICE CONTAINS

1. Who Is In The Settlement Classes? ........................................................PAGE 4

2. What Is This Lawsuit About? ...............................................................PAGE 4

3. Who Represents Me? .........................................................................PAGE 4

4. What Benefits Can I Receive From The Settlement? ...........................................PAGE 5

5. Do I Have To Pay The Lawyers Representing Me? .........................................PAGES 5-6

6. What Am I Agreeing To By Remaining In The Settlement Classes In This Case? ..............PAGE 6

7. What If I Do Not Agree With The Settlement? ...........................................PAGE 6-7

8. How Do I Exclude Myself From The Settlement Classes? ...................................PAGE 7

9. What Is The Difference Between Objecting And Asking To Be Excluded? .........................PAGE 8

10. What If I Do Nothing At All? .............................................................PAGE 8

11. What Will Be Decided At The Final Approval Hearing? .................................PAGES 8-9

12. Does This Notice Contain The Entire Settlement Agreement? ...........................PAGE 9

13. Where Can I Get More Information? ..........................................................PAGE 9

**For more information and for a Claim Form, visit
www.UberTCPASettlement.com or call 1-800-330-1683.**



## 1. WHO IS IN THE SETTLEMENT CLASSES?

The United States District Court for the Northern District of Illinois (Honorable Thomas M. Durkin) has conditionally certified, for settlement purposes only, Settlement Classes in *Vergara, et al. v. Uber Technologies, Inc.*, Case No. 1:15-cv-06942.

If you received notice of the Settlement directed to you, then you may be a member of the Settlement Classes. But even if you did not receive a notice, you may still be a member of the Settlement Classes.

The "Settlement Classes" are defined as:

> Settlement Class A: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

> Settlement Class B: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

> Settlement Class C: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

Excluded from the Settlement Classes are all persons who elect to exclude themselves from the Settlement Classes, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family. If you are not sure whether you are in the Settlement Classes, or have any other questions about the Settlement, visit the Settlement website at www.UberTCPASettlement.com or call the toll-free number 1-800-330-1683.

## 2. WHAT IS THIS LAWSUIT ABOUT?

This case was brought as a class action alleging that Uber engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by sending automated text messages without consent to the people and entities in the Settlement Classes. This is just a summary of the allegations. The complaint in the lawsuit is posted at www.UberTCPASettlement.com and contains all of the allegations. Uber denies these allegations; however, in order to avoid the expense, inconvenience, and distraction of continued litigation, Uber has agreed to the Settlement described herein.

## 3. WHO REPRESENTS ME?

In a class action, one or more people or entities called "class representatives" sue on behalf of people and entities who have similar claims. In this case, Maria Vergara, James Lathrop, Jonathan Grindell, Sandeep Pal, Jennifer Reilly, and Justin Bartolet sued Uber in a representative capacity, and the Court has appointed them to be Settlement Class Representatives for all Class Members in this case.

The Court also approved the law firms of Tycko & Zavareei LLP and McGuire Law, P.C., to represent the Settlement Classes. If you want to be represented by your own lawyer, you may hire one at your own expense.

**For more information and for a Claim Form, visit**
**www.UberTCPASettlement.com or call 1-800-330-1683.**

### 4. WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT?

Under the Settlement, Uber has agreed to provide monetary compensation to Class Members who timely submit valid claims. The amount of the checks are not yet known. The total Settlement Fund is $20,000,000. The amount of the check you will be sent depends on the number of Class Members who timely submit valid claims, the costs of settlement administration, attorneys' fees and costs, and service awards for the Class Representatives, all of which will be paid from the Settlement Fund. Class Counsel will apply to the Court for an award of attorneys' fees of up to $6,660,000 plus costs and expenses, as well as Class Representative service awards of $10,000 to each of the six Class Representatives. Every Settlement Class Member who submits a timely, valid claim will be sent a check in the same amount. ***Submitting a timely and valid Claim Form is the only way to receive a payment from the Settlement, and is the only thing you need to do to receive a payment.*** Claim Forms are available at www.UberTCPASettlement.com. Claim Forms may be submitted online at www.UberTCPASettlement.com or mailed to Uber TCPA Settlement Administrator, P.O. Box 5053, Portland, OR 97208-5053.

If you timely submit a valid Claim Form, your claim will be paid by a check mailed to you. Claims will only be paid after the Court grants Final Approval of the Settlement and after any appeals are resolved (see Question 11 in this Notice). If there are appeals, resolving them can take time. Please be patient.

Note that if you receive a check, you will have one year to cash the check sent to you. If you do not cash the check within one year, the check will be void and the funds will be utilized as the Court deems appropriate. The Court will decide whether any such remaining funds will go to a charitable organization or will be dispersed differently.

As part of this Settlement, Uber has also agreed to make changes to its text messaging practices. Without admitting any liability or that it is required by law to do so, Uber agrees to undertake the following practices:

    a.    Uber agrees that for a period of two years from the Effective Date of the Settlement it will not send server-assisted driver-referral text messages from the Uber app on Uber-issued cellular phones.

    b.    Uber agrees that for at least two years from the Effective Date it will maintain an opt-out protocol for recipients of text messages who initiate but do not complete the driver sign up process, which will at a minimum unsubscribe recipients from pipeline driver SMS messaging who reply with any of the opt-out words or phrases on Appendix A of the Settlement Agreement.

    c.    Uber agrees to adhere to the following procedures by December 31, 2017, or the Effective Date of the Settlement, whichever is later, for a minimum of two years: (i) Uber's servers will delete any phone number entered during the rider account sign-up process that is not verified within 15 minutes; (ii) Uber will display the phone number used during the rider account sign-up process on the app screen where a new verification text can be requested with the note "Did you enter the correct number?"; and (iii) after one attempted verification text resend, the user will be forced to re-enter the phone number used during sign-up.

### 5. DO I HAVE TO PAY THE LAWYERS REPRESENTING ME?

No. Class Counsel will apply to the Court for an award of attorneys' fees of up to $6,660,000 plus costs and expenses for investigating the facts, litigating the cases, and negotiating the Settlement. To date, Class Counsel have not received any payment for their services in conducting this Litigation on behalf of the Settlement Class Representatives and the Settlement Classes, nor have Class Counsel been reimbursed for their costs and expenses directly relating to their representation of the Settlement Classes.

**For more information and for a Claim Form, visit**
**www.UberTCPASettlement.com or call 1-800-330-1683.**



Class Counsel will also request the Court to award a service award of $10,000 to each of the Settlement Class Representatives in recognition of their service to the Settlement Classes. The amount of any fee or service award will be determined by the Court. Class Counsel's contact information is as follows:

| | |
|---|---|
| Hassan A. Zavareei<br>Andrea R. Gold<br>TYCKO & ZAVAREEI LLP<br>1828 L Street, N.W., Suite 1000<br>Washington, D.C. 20036<br>hzavareei@tzlegal.com<br>agold@tzlegal.com<br>Telephone: 202-973-0900 | Myles P. McGuire<br>Evan M. Meyers<br>Paul T. Geske<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601<br>mmcguire@mcgpc.com<br>emeyers@mcgpc.com<br>pgeske@mcgpc.com<br>Telephone: 312-893-7002 |

## 6. WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT CLASSES IN THIS CASE?

Unless you exclude yourself, you will be part of the Settlement Classes, and you will be bound by the release of claims in the Settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be party of any lawsuit against Uber or the other Releasees asserting a "Released Claim," as defined below. It also means that the Court's Order approving the Settlement and the judgment in this case will apply to you and legally bind you.

The "Released Claims" that you will not be able to assert against Uber or Releasees if you remain a part of the Settlement Classes are as follows: any and all claims whatsoever arising out of, related to, or connected with Uber or any of the Releasees sending, causing someone to send, or assisting someone to send a text or SMS message related to Uber without consent, including but not limited to claims brought under 47 U.S.C. § 227, *et seq.* ("TCPA"), during the Class Period. "Released Claims" include all claims that were or could have been asserted in the Litigation or Related Actions, regardless of whether such claims are known or unknown, filed or unfiled, asserted or as yet unasserted, existing or contingent.

"Releasees" shall refer, jointly and severally, and individually and collectively, to Uber, its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts or their affiliates.

"Related Actions" shall mean any proceeding, other than this Litigation, that alleges that Uber violated the TCPA brought by a plaintiff and/or on behalf of persons or entities who would be a Class Member, including *Giacomaro v. Uber Technologies, Inc.* (EDNY; Case No. 2:17-cv-03923) and *Kolloukian v. Uber Technologies, Inc.* (C.D. Cal.; Case No. 2:15-cv-02856).

## 7. WHAT IF I DO NOT AGREE WITH THE SETTLEMENT?

If you are a member of the Settlement Classes, you may object to the Settlement or any part of the Settlement that you think the Court should reject, and the Court will consider your views. To object, you must send your objection to the Settlement Administrator, Class Counsel, and Uber's Counsel providing:

    a.    the case name and case number of this Litigation (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

    b.    your full name, current address, and phone number;

    c.    the phone number on which you allegedly received a text message from Uber;

    d.    the reasons why you object to the Settlement along with any supporting materials;

**For more information and for a Claim Form, visit**
**www.UberTCPASettlement.com or call 1-800-330-1683.**

e.      information about other objections you or your lawyer(s) have made in other class action cases in the last four (4) years; and

f.      your signature.

**Your objection must be postmarked no later than December 22, 2017.** Objections must be mailed to all of the following addresses:

<table>
<tr><td colspan="2" align="center">**Uber TCPA Settlement Administrator**<br>P.O. Box 5053<br>Portland, OR 97208-5053</td></tr>
<tr><td align="center">**Plaintiffs' Counsel**<br>Hassan A. Zavareei<br>TYCKO & ZAVAREEI LLP<br>1828 L Street, N.W., Suite 1000<br>Washington, D.C. 20036;<br><br>and<br><br>Myles P. McGuire<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601</td><td align="center">**Uber's Counsel**<br>Austin V. Schwing<br>GIBSON DUNN & CRUTCHER LLP<br>555 Mission Street<br>San Francisco, CA 94105</td></tr>
</table>

## 8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASSES?

If you want to exclude yourself from the Settlement Classes, sometimes referred to as "opting out," you will not be eligible to recover any benefits as a result of this Settlement. However, you will keep the right to sue or continue to sue Uber or Releasees on your own and at your own expense about any of the Released Claims.

To exclude yourself from the Settlement Classes, you must send a letter to the Settlement Administrator identifying:

(1)      the name and case number of this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

(2)      your full name, current address, and telephone number;

(3)      the phone number on which you allegedly received a text message from Uber;

(4)      a statement that you wish to exclude yourself from the Settlement Classes; and

(5)      your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is **postmarked no later than December 15, 2017**:

Uber TCPA Settlement Administrator:
P.O. Box 5053
Portland, OR 97208-5053

**REQUESTS FOR EXCLUSION FROM THE CLASSES THAT ARE NOT POSTMARKED ON OR BEFORE DECEMBER 15, 2017, WILL NOT BE HONORED.**

You cannot exclude yourself from the Settlement Classes by telephone, by email, or at the website. You cannot exclude yourself by mailing a request to any other location or after the deadline. Your Exclusion Form must be signed by you.

**For more information and for a Claim Form, visit
www.UberTCPASettlement.com or call 1-800-330-1683.**



### 9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED?

"Objecting" is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. "Excluding" yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

### 10. WHAT IF I DO NOTHING AT ALL?

You will remain a member of the Settlement Classes. **However, you must file a Claim Form in order to receive a benefit in this Settlement.** See Question 4 in this Notice.

### 11. WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING?

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees, service awards, and expenses ("Final Approval Hearing"). The Final Approval Hearing is currently set for **January 23, 2018 at 9:00 a.m.**, at the United States District Court for the Northern District of Illinois, Eastern Division, located in Courtroom 1441, 219 S. Dearborn Street, Chicago, IL 60604. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.UberTCPASettlement.com and the Court's docket for updates.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider the request by Class Counsel for attorneys' fees and expenses and for the Class Representatives' service awards. If there are objections, the Court will consider them at the Final Approval Hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

You may attend the hearing, at your own expense, but you do not have to do so.

You may ask the Court for permission to speak at the hearing. To do so, you must send a letter saying that you intend to appear and wish to be heard. Your notice of intention to appear must include the following:

(1) the name and case number of this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

(2) your full name, current address, and telephone number;

(3) the phone number on which you allegedly received a text message from Uber;

(4) a statement that this is your "Notice of Intention to Appear" at the Final Approval Hearing for this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942), along with copies of any papers, exhibits, or other evidence or information that you will present to the Court;

(5) the reasons you want to be heard; and

(6) your signature.

You must send copies of your notice of intention to appear, **postmarked by December 15, 2017**, to all of the following addresses:

**For more information and for a Claim Form, visit
www.UberTCPASettlement.com or call 1-800-330-1683.**

| **Clerk of the Court**<br>Everett McKinley Dirksen United States Courthouse<br>219 S. Dearborn Street<br>Chicago, IL 60604 | |
|---|---|
| **Plaintiffs' Counsel**<br>Hassan A. Zavareei<br>TYCKO & ZAVAREEI LLP<br>1828 L Street, N.W., Suite 1000<br>Washington, D.C. 20036;<br><br>and<br><br>Myles P. McGuire<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601 | **Uber's Counsel**<br>Austin V. Schwing<br>GIBSON DUNN & CRUTCHER LLP<br>555 Mission Street<br>San Francisco, CA 94105 |

You cannot speak at the hearing if you exclude yourself from the Settlement.

### 12. DOES THIS NOTICE CONTAIN THE ENTIRE SETTLEMENT AGREEMENT?

No. This is only a summary of the Settlement. If the Settlement is approved and you do not exclude yourself from the Settlement Classes, you will be bound by the release contained in the Settlement Agreement, and not just by the terms of this Notice. Capitalized terms in this Notice are defined in the Settlement Agreement. You can view the full Settlement Agreement online at www.UberTCPASettlement.com, or you can write to the Uber TCPA Settlement Administrator at P.O. Box 5053, Portland, OR 97208-5053 for more information.

### 13. WHERE CAN I GET MORE INFORMATION?

For more information, you may visit www.UberTCPASettlement.com or you may call the Uber TCPA Settlement Administrator at 1-800-330-1683.

NOTE: **PLEASE <u>DO NOT</u>** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, UBER, OR UBER'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU. If you have questions, please call 1-800-330-1683 or visit www.UberTCPASettlement.com.

**For more information and for a Claim Form, visit**
**www.UberTCPASettlement.com or call 1-800-330-1683.**



*Vergara, et al. v. Uber Technologies, Inc.*, Case No. 1:15-cv-06942 (N.D. Ill.)

# CLAIM FORM

**To receive benefits from this Settlement, your Claim Form *must* be electronically submitted or postmarked on or before DECEMBER 15, 2017.**
**You may submit your completed and signed Claim Form online at www.UberTCPASettlement.com or by mail to the following address:**

**Uber TCPA Settlement Administrator**
**P.O. Box 5053**
**Portland, OR 97208-5053**

You must complete all sections and sign below in order to receive any benefits from this Settlement.

**You should only submit a Claim Form if you are a member of one or more of the following Settlement Classes:**

Settlement Class A: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

Settlement Class B: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

Settlement Class C: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

By submitting a claim, you are attesting that you received one or more text messages from Uber but did not consent to receive such text messages or had otherwise revoked any consent previously given.

First Name | MI | Last Name

Street Address

City | State | ZIP | ZIP4 (optional)

Email Address

Cell Phone Number at which you received text messages from Uber | Contact Phone Number

Class Member ID from email or postcard notice (if you did not receive such a notice, leave this blank)

You further agree that you will not object to a request by the Settlement Administrator or the parties to this action to contact you if necessary to verify your claim. You should not submit more than one Claim Form. Submitting more than one Claim Form will not increase your compensation under the Settlement Agreement.

I declare that I am a member of the Settlement Classes, and I have accurately filled out this form.

Date: MM – DD – YYYY

Signature




# Attachment 5

**TO:** xxxxxx@xxxxxxxxxx

**FROM: NoReply@UberTCPASettlement.com**

**SUBJECT: LEGAL NOTICE ABOUT A CLASS ACTION SETTLEMENT**

---

**If You Were Sent a Text Message By Uber Technologies, Inc. Between December 31, 2010 and August 17, 2017, You May Be Eligible for a Payment from a Class Action Settlement.**

The United States District Court for the Northern District of Illinois has authorized this notice. This is not an advertisement and not a solicitation from a lawyer.

*Para una notificacion en Espanol, visitar www.UberTCPASettlement.com.*

A proposed settlement has been reached in a class action lawsuit against Uber Technologies, Inc. ("Uber"), regarding text messages allegedly sent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), from December 31, 2010 to August 17, 2017 ("Class Period"). The case is *Vergara, et al. v. Uber Technologies, Inc.*, Case No. 1:15-CV-06942 (N.D. Ill.). This case was brought as a class action alleging that Uber violated the TCPA by sending automated text messages without consent to individuals' cellphones. Uber denies the allegations. The Court has not decided who is right, and the Parties have chosen to settle their dispute. This notice provides only a summary of the allegations.

### Am I Included?
You may be entitled to compensation from this Settlement if you fall within at least one of the following Settlement Classes: **A)** All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program; **B)** All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages; and **C)** All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

### What Does the Settlement Provide?
Uber has agreed to create a fund totaling $20,000,000 to pay valid claims, settlement administration expenses, attorneys' fees of up to $6,660,000, costs and expenses, and class representative service awards to the six Class Representatives of $10,000 each. **To receive a payment, you must submit a Claim Form by December 15, 2017, using the following Class Member ID Number: $$ClassMemberID$$.** The amount you may be eligible to receive will be dependent on the total number of Class Members who submit valid claims, which is currently unknown. Class Members can file a claim online at the website **here**, which will pre-populate your claim online with the above Class Member ID Number, or submit a claim by mail. Visit the website below or call for more information on filing your claim. Uber has also agreed to alter its texting practices, as explained in the detailed notice and Settlement Agreement available at the website listed below.

### Your Rights May Be Affected.
Class Members who do not want to be legally bound by the Settlement must exclude themselves by **December 15, 2017**. Class Members who do not exclude themselves will release their claims against Uber, as more fully described in the Settlement Agreement. Class Members who stay in the Settlement may object to it by **December 22, 2017**. The Detailed Notice available on the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **January 23, 2018** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to $6,660,000 plus costs and expenses, and service awards for the Class Representatives of $10,000 each. You can appear at the hearing, but you do not have to. You can hire

your own attorney, at your own expense, to appear or speak for you at the hearing.

### How Can You Get More Information?

Please do not contact the Court, Uber, or Uber's counsel with questions regarding this lawsuit. If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit www.UberTCPASettlement.com. You may also contact the Settlement Administrator by calling 1-800-330-1683.

***For more information and for a Claim Form, visit*** www.UberTCPASettlement.com ***or call 1-800-330-1683.***

# Attachment 6

06942 Document #: 121-1 Filed: 01/12/18 Page 99 of 136

# If You Were Sent a Text Message By Uber Technologies, Inc. Between December 31, 2010 and August 17, 2017 You May Be Eligible for a Payment from a Class Action Settlement.

The United States District Court for the Northern District of Illinois has authorized this notice. This is not an advertisement and not a solicitation from a lawyer.

*Para una notificacion en Espanol, visitar www.UberTCPASettlement.com.*

A proposed settlement has been reached in a class action lawsuit against Uber Technologies, Inc. ("Uber") regarding text messages allegedly sent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), from December 31, 2010 to August 17, 2017 ("Class Period"). The case is *Vergara, et al. v. Uber Technologies, Inc.* Case No. 1:15-CV-06942 (N.D. Ill.). This case was brought as a class action alleging that Uber violated the TCPA by sending automated text messages without consent to individuals' cellphones. Uber denies the allegations. The Court has not decided who is right, and the Parties have chosen to settle their dispute. This notice provides only a summary of the allegations.

## Am I Included?

You may be entitled to compensation from this Settlement if you fall within at least one of the following Settlement Classes: **A)** All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program; **B)** All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages; and **C)** All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

## What Does the Settlement Provide?

Uber has agreed to create a fund totaling $20,000,000 to pay valid claims, settlement administration expenses, attorneys' fees of up to $6,660,000, costs and expenses, and class representative service awards to the six Class Representatives of $10,000 each. To receive a payment, you must submit a claim form by **December 15, 2017**. The amount you may be eligible to receive will be dependent on the total number of Class Members who submit valid claims, which is currently unknown. Class Members can file a claim online at the website or submit a claim by mail. Visit the website below or call for more information on filing your claim. Uber has also agreed to alter its texting practices as explained in the detailed notice and Settlement Agreement at the website listed below.

## Your Rights May Be Affected.

Class Members who do not want to be legally bound by the Settlement must exclude themselves by **December 15, 2017**. Class Members who do not exclude themselves will release their claims against Uber, as more fully described in the Settlement Agreement. Class Members who stay in the Settlement may object to it by **December 22, 2017**. The Detailed Notice available on the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **January 23, 2018** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to $6,660,000 plus costs and expenses, and service awards for the Class Representatives of $10,000 each. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

## How Can You Get More Information?

Please do not contact the Court, Uber, or Uber's counsel with questions regarding this lawsuit. If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit www.UberTCPASettlement.com. You may also contact the Settlement Administrator by calling 1-800-330-1683.

# Attachment 7

**4D** LIFE

MOVIES

# 10 crazy mom movies to see in honor of 'mother!'

Prepare for matriarchal madness. Darren Aronofsky's psychological thriller *mother!* (in theaters now) adds to the long list of nutso films revolving around moms, motherhood and questionable parenting. In honor of the newcomer starring Jennifer Lawrence — we'll wait while you try to unpack all of its meanings — USA TODAY's **Brian Truitt** offers 10 other trips to Crazytown to check out for a very kooky Mother's Day.



NEW WORLD PICTURES

### FLOWERS IN THE ATTIC (1987)

Even grandmothers have their odd moments of cruelty, especially in this V.C. Andrews adaptation. Louise Fletcher's old lady sticks her four grandkids in — you guessed it — the attic, punishing them for being products of incest. (FYI: Mom's no angel either.)

### FRIDAY THE 13TH (1980)

Jason Voorhees is synonymous with the long-running franchise, but true horror fiends know it's actually Mama Voorhees (Betsy Palmer) the unsuspecting teen-age campers of Crystal Lake have to be afraid of in the original flick in the series.

### THE MANCHURIAN CANDIDATE (1962)

Meryl Streep is usually the one giving the definitive performance, but her manipulative mom in the 2004 remake can't match Angela Lansbury's Oscar-nominated portrayal of Mrs. Iselin. She controls her son, a brainwashed POW/sleeper assassin, to help carry out her own political machinations.

### PSYCHO (1960)

Anthony Perkins' Norman Bates is the ultimate mama's boy: The dude literally dresses up as his dead mom and kills residents at the family motel. So that's kind of messed up. (For the creepy back story, dig into five seasons of the cool prequel *Bates Motel* after you can manage to take a shower again.)



### SERIAL MOM (1994)

John Waters was never going to make a conventional film about a squeaky-clean housewife. Kathleen Turner's seemingly sweet Beverly is anything but, becoming a national phenomenon for murdering fellow Baltimore suburbanites who've gotten on her bad side. (And it is *bad.*)

SHOUT FACTORY

### CARRIE (1976)

Piper Laurie's ultra-righteous mom gives evangelicals a bad name, abusing and torturing her blossoming daughter (Sissy Spacek). That is, until the girl discovers her nascent telekinetic powers and all hell breaks loose.



MATT NETTHEIM

### THE BABADOOK (2014)

A single mother and widow is at her wit's end with her troubled young son, and their relationship spirals out of control until they figure out the real menace: a top-hatted monster from a pop-up storybook.

### PRECIOUS (2009)

Mo'Nique won a best-supporting-actress Oscar — and deservedly so — for her haunting portrayal of a Harlem mother whose malevolence toward her teen daughter (Gabourey Sidibe) knows no bounds, even trying to nail the kid with a frying pan and threatening her life.

### ROSEMARY'S BABY (1968)

Cinema's new *mother!* explores impending motherhood in intriguing fashion, but no one did it creepier than Roman Polanski's classic about a young New York City woman (Mia Farrow) who gets pregnant and finds out later her bundle of joy is the spawn of Satan.



PARAMOUNT PICTURES HOME ENTERTAINMENT

### MOMMIE DEAREST (1981)

Ladies and gentlemen, the mother of all psycho mom tales. The real-life mega-drama between actress Joan Crawford (played with bonkers verve by Faye Dunaway) and her daughter Christina unfolds over a series of episodes, including Hollywood's most infamous scene featuring wire hangers.

---

MOVIES

## 'Blade Runner' carves out a middling $31.5 million

Jake Coyle
The Associated Press

**NEW YORK** *Blade Runner 2049* had the pedigree, the stars and the stellar reviews. But even though the highly touted sequel had seemingly everything going for it, something didn't click with audiences.

The big-budget, handsomely crafted sequel to the 1982 sci-fi classic opened surprisingly weak at the box office. According to studio estimates Sunday, *2049* grossed $31.5 million, a poor start for a movie that cost at least $150 million to make.

The problem *2049* ran into is clear from the data: The audience was overwhelmingly male (71%) and older than 25 (86%). The movie, starring Ryan Gosling and Harrison Ford, simply failed to pull in moviegoers beyond fans of the 1982 original.

The opening was a blow to everyone involved. The glowingly reviewed film is directed by the sought-after Denis Villeneuve (*Arrival*) and produced by Ridley Scott (who directed the original). Audiences liked the movie, too, giving it an A-minus on CinemaScore.

"I'm disappointed we didn't have a larger result this weekend," says Jeff Goldstein, president of domestic distribution for Warner Bros., which distributed the film domestically. "We had bigger expectations for the weekend. The tracking and the advance sales indicated that there would be a stronger number."

The Kate Winslet-Idris Elba adventure romance *The Mountain Between Us* opened in second with $10.1 million. The film, which cost $35 million to make, chronicles the budding attraction between two strangers whose charter plane crash-lands in the mountains.

The horror hit *It* followed in third with $9.7 million in its fifth week. The Stephen King adapta-tion has made $603.7 million worldwide.

The animated *My Little Pony: The Movie* finished fourth with $8.8 million. But even it managed broader gender appeal than *Blade Runner 2049*: It drew a 59% female audience.

The spy spoof sequel *Kingsman: The Golden Circle* was fifth with $8.1 million.

But most were wondering what went wrong with *Blade Runner 2049.* Working against it was a lengthy 163-minute runtime. Great pains were taken to keep much of the film mysterious.

"It's an intellectually charged, apocalyptic sci-fi story. It's not a *Close Encounters,* it's not *Star Wars.* It's a challenging film. To me, those are the best type of films," says Paul Dergarabedian, senior media analyst at comScore. "But does it make it the most commercial? No."

In a way, that makes *2049* the perfect heir to the original film. It, too, was a box office disappointment. Though a cult would gradually emerge over the years, propelled partly by a DVD release of a more acclaimed director's cut, 1982's *Blade Runner* collected $6.2 million in its debut — or about $16 million in 2017 dollars.

So *2049* can claim one thing many recent sequels can't: better box office than the original.

Figures numbers are expected Tuesday.

Contributing: Kim Willis

**Ryan Gosling and *Blade Runner 2049* underperformed at the box office, but the sci-fi sequel's debut was still enough for No. 1.**

STEPHEN VAUGHAN

---

## LEGAL MONDAY

For advertising information: 1.800.872.3433   www.marketplace.usatoday.com

LEGAL NOTICE

**If You Were Sent a Text Message By Uber Technologies, Inc. Between December 31, 2010 and August 17, 2017 You May Be Eligible for a Payment from a Class Action Settlement.**

The United States District Court for the Northern District of Illinois has authorized this notice. This is not an advertisement and not a solicitation from a lawyer.

*Please visit www.UberTCPASettlement.com*

A proposed settlement has been reached in a class action lawsuit against Uber Technologies, Inc. ("Uber") regarding text messages allegedly sent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), from December 31, 2010 to August 17, 2017 (Class Period"). The case is *Vergara, et al. v. Uber Technologies, Inc.* Case No. 1:15-CV-06942 (N.D. Ill.). This case was brought as a class action alleging that Uber violated the TCPA by sending automated text messages without consent to individuals' cellphones. Uber denies the allegations. The Court has not decided who is right, and the Parties have chosen to settle their dispute. This notice provides only a summary of the allegations.

**Am I Included?**

You may be entitled to compensation from this Settlement if you fall within at least one of the following Settlement Classes: **A)** All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program; **B)** All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages; and **C)** All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

**What Does the Settlement Provide?**

Uber has agreed to create a fund totaling $20,000,000 to pay valid claims, settlement administration expenses, attorneys' fees of up to $6,660,000, costs and expenses, and class representative service awards to the six Class Representatives of $10,000 each. To receive a payment, you must submit a claim form by **December 15, 2017**. The amount you may be eligible to receive will be dependent on the total number of Class Members who submit valid claims, which is currently unknown. Class Members can file a claim online at the website or submit a claim by mail. Visit the website below or call for more information on filing your claim. Uber has also agreed to alter its texting practices as explained in the detailed notice and Settlement Agreement at the website listed below.

**Your Rights May Be Affected.**

Class Members who do not want to be legally bound by the Settlement must exclude themselves by **December 15, 2017**. Class Members who do not exclude themselves will release their claims against Uber, as more fully described in the Settlement Agreement. Class Members who stay in the Settlement may object to it by **December 22, 2017**. The Detailed Notice available on the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **January 23, 2018** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to $6,660,000 plus costs and expenses, and service awards for the Class Representatives of $10,000 each. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**How Can You Get More Information?**

Please do not contact the Court, Uber, or Uber's counsel with questions regarding this lawsuit. If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit www.UberTCPASettlement.com. You may also contact the Settlement Administrator by calling 1-800-330-1683.

**For more information on how to place your ad in Legal Monday, call**

**1-800-872-3433**

Toll-free in the U.S. only

# Attachment 8

YAHOO!
FINANCE

Search for news, symbols or companies

Search

Sign in

Finance Home · Explore · My Portfolio · My Screeners · Watchlist · Industries · Originals · Events · Premium Archive · Technology

Podcast · Market Movers · Midday Movers · The Final Round · Trump Report Card · Sportsbook · Trending Tickers · Andy Serwer · Brittany Jones-Cooper · Daniel Howley · Daniel Roberts · ···

you may be eligible for a payment from a class action settlement.
Click here for more information.
Legal Notice        www.UberTCPASettlement.com        Legal Notice

| S&P 500 | Dow 30 | Nasdaq | Crude Oil | Gold | Silver |
|---|---|---|---|---|---|
| 2,547.61 | 22,769.88 | 6,586.56 | 49.68 | 1,284.80 | 16.95 |
| -1.72 (-0.07%) | -3.79 (-0.02%) | -3.62 (-0.05%) | +0.39 (+0.79%) | +9.90 (+0.78%) | +0.16 (+0.98%) |

Today's Charts | Tesla shares drop; Apple gains on analyst call; Honeywell reportedly plans split

## Market Movers



**Finance** Yahoo Finance · 5 hours ago

**Trump wants border wall funding; markets continue surge**

Yahoo Finance's LIVE market coverage and analysis of what you need to watch in the stock market begins each day at 9:25 a.m. ET.

12

Sponsored by Wells Fargo

**Prepare Your Portfolio for the Second Half of 2017**

Here are the portfolio recommendations we think will be critical to investor success in the second half of the year.



**Finance** Yahoo Finance · yesterday

**How Airbnb plans to use AI to make travel more personalized for you**

Airbnb VP of Engineering Mike Curtis envisions a day when Airbnb offers heavily personalized experiences that include not just where you're staying, but other details also, including...

5



**Finance** Yahoo Finance · 3 days ago

**Call of the week: Biggest Tesla bull predicts shares will hit $500**

Tesla's (TSLA) got a new fan and he's making some bold predictions. Nomura analyst Romit Shah initiated coverage on the electric carmaker this week and he's now the biggest Tesla b...

9



**Finance** Yahoo Finance · 3 days ago

**The one stat in the jobs report everyone is obsessing over**

September wage growth, up 2.9%, was higher than expectations and drove market reaction

155


slack
Where work happens.
Get started


MID
Dove under fire for 'racist' ad
Yahoo Finance Video


Trump administration to terminate Obama's climate plan
Associated Press.

  

Search

Home   Find Friends



**News Feed**   

Messenger

Watch

Marketplace

**EXPLORE**

Events

Pages

Groups

Friend Lists

Games

On This Day

Fundraisers

Live Video

Pokes

Find Friends

See More...

**CREATE**

Ad · Page · Group · Event ·
Fundraiser



**No posts to show**

**Find Friends**

Stories                                    ?

Trending                  

 **Affordable Care Act**
Donald Trump blames Democrats for health bill
defeat - nbcnews.com

**Indiana's 6th Congressional District**
Filing shows Pence's brother readying House
campaign - politico.com

**The Washington Post**
Gold Star Father Says Trump Offered Him
$25,000 And Never... - huffingtonpost.com

See More                                    ?

Sponsored                    Create Ad



**Class Action Settlement**
ubertcpasettlement.com
If you received a text message from Uber
Technologies, you may be eligible for a payment.

Attachment 9

## **Vergara v Uber - Sponsored Search Keywords**

Uber TCPA Settlement
Uber Text Message Settlement
Uber Text Settlement
Uber TCPA Class Action
Uber Text Message Class Action
Uber Text Class Action
Uber TCPA Class Action Settlement
Uber Text Message Class Action Settlement
Uber Text Class Action Settlement
Uber TCPA Lawsuit
Uber Text Message Lawsuit
Uber Text Lawsuit
Uber TCPA Litigation
Uber Text Message Litigation
Uber Text Litigation
Uber TCPA Claims
Uber Text Message Claims
Uber Text Claims

# Attachment 10

 Google

uber tcpa settlement

All    News    Images    Videos    Maps    More          Settings    Tools

About 1,570,000 results (0.39 seconds)

Class Action Settlement - Legal Notice
Ad www.ubertcpasettlement.com/ ▼
Persons who were sent **text** messages by **Uber** may be eligible for a payment.

Uber Text Message Spam Class Action Settlement - Top Class Actions
https://topclassactions.com/lawsuit-settlements/lawsuit.../823092-uber-text-message-sp... ▼
Oct 11, 2017 - If you received an unwanted **text** from **Uber** in the past seven years, you may be eligible to
claim benefits under a $20 million **text** spam class action **settlement**. California plaintiffs Jonathan
Grindell, Jennifer Reilly, and James Lathrop filed the **Uber text** message spam class ...

Uber TCPA Settlement
https://www.ubertcpasettlement.com/ ▼
If, at any time between December 31, 2010 and August 17, 2017, you received one or more **text**
messages from **Uber** Technologies, Inc., you may be eligible for a payment from a class action
**settlement**. In a purported class action case known as Vergara, et al. v. **Uber** Technologies, Inc., No.
1:15-CV-06942 (N.D. Ill.), the ...
Submit a Claim · FAQs · Documents · Contact Us

Vergara v. Uber TCPA - Submit a Claim - Login - Uber TCPA Settlement
https://www.ubertcpasettlement.com/Login/ClaimFormLogin ▼
Nov 30, 2017 - If, at any time between December 31, 2010 and August 17, 2017, you received one or
more **text** messages from **Uber** Technologies, Inc., you may be eligible for a payment from this class
action **settlement**. To receive payment from this **Settlement**, you must submit a Claim Form via this
website or by mail.

Uber Text Settlement

  YAHOO!

Web | Images | Video | News | More ˅ | Anytime ˅

Ads related to: **Uber Text Settlement**

Class Action **Settlement** - Legal Notice
www.**uber**tcpasettlement.com/ ▼
Persons who were sent **text** messages by **Uber** may be eligible for a payment.

**Uber** - Official Site
www.**uber**.com/ ▼
Work That Puts You First. Drive When You Want, Earn What You Need.
Get paid instantly · Earn on your schedule · Safety is a priority · Signing up is easy
Insurance coverage: Commercial, Uninsured Motorist, Collision

Just Need A Ride?    Get Your Side Hustle On
Driver Safety        Insurance Coverage
Get Paid Instantly

Drive with Lyft™ in Portland - Lyft™ $500 Driver Bonus
www.whydrivelyft.com/ ▼
Get a $500 Bonus, Earn Tips and Work When You Want. Sign Up Now!
Set Your Own Hours · Be Your Own Boss · Drivers Earn Tips · Applications Now Open

**Uber** Preferred Stockholders - Wrongful Conduct Investigation
www.ktmc.com/**Uber**Investors ▼
Learn How KTMC Can Help If You Purchased Preferred Stock From **Uber** Technologies



Uber Text Litigation 🔍

**All**    Images    Videos    Maps    News    Shop   |   My saves

Also try:  uber text number  ·  uber text messages  ·  uber lawsuits

16,500,000 Results    Any time ▾

## Class Action Settlement - Legal Notice - UberTCPASettlement.com
Ad · **www.UberTCPASettlement.com** ▾
Persons who were sent **text** messages may be eligible for a payment.

## Uber Sued Over "Robo-Texts" in Austin Election Battle ...
https://**www.texastribune.org**/2016/05/04/**uber-sued-over-robo-texts**... ▾
Ride-hailing company **Uber** was hit with a class-action **lawsuit** on Wednesday over "robo-**text** messages"
the company has been sending Austin customers seeking their ...

## Uber reaches $20 million settlement in class-action ...
**www.chicagotribune.com**/business/ct-biz-**uber**-settlement-1010-story.html ▾
A class action **lawsuit** claims **Uber** violated federal law by sending unauthorized **text** messages "in an
effort to advance its transportation networking business."

## Uber Agrees to $20 Million Settlement in Text Message ...
https://**www.jdjournal.com**/2017/10/10/**uber**-agrees-to-20-million... ▾
**Uber** has reached another class-action settlement, this time for sending out annoying **text** messages.
The ride-share company is expected to pay $20 million to settle the case, which accused them of violating
federal law. As part of the terms, **Uber** has agreed to ...

### Related searches

uber text **number**

uber text **messages**

uber **lawsuits**

uber **via** text

uber litigation **independent contractors**

# Attachment 11



# Announcing a Class Action Settlement Involving All Persons who Were Sent a Text Message by Uber Technologies, Inc. Between December 31, 2010 and August 17, 2017

NEWS PROVIDED BY
**United States District Court for the Northern District of Illinois →**
07:59 ET

CHICAGO, Oct. 9, 2017 /PRNewswire/ --

The United States District Court for the Northern District of Illinois has authorized this notice.  This is <u>not</u> an advertisement and <u>not</u> a solicitation from a lawyer.

A proposed settlement has been reached in a class action lawsuit against Uber Technologies, Inc. ("Uber") regarding text messages allegedly sent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), from December 31, 2010 to August 17, 2017 ("Class Period"). The case is *Vergara, et al. v. Uber Technologies, Inc.* Case No. 1:15-CV-06942 (N.D. Ill.). This case was brought as a class action alleging that Uber violated the TCPA by sending automated text messages without consent to individuals' cellphones.  Uber denies the allegations.  The Court has not decided who is right, and the Parties have chosen to settle their dispute.  This notice provides only a summary of the allegations.

Class Members may be entitled to compensation from this Settlement if they fall within at least one of the following Settlement Classes: **A)** All persons or entities within the U.S. who, during the Class Period, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program; **B)** All persons or entities within the U.S. who, during the Class Period, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages; and **C)**  All persons or entities within the U.S. who, during the Class Period, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

Uber has agreed to create a fund totaling $20,000,000 to pay valid claims, settlement administration expenses, attorneys' fees of up to $6,660,000, costs and expenses, and class representative service awards to the six Class Representatives of $10,000 each. To receive a payment, Class Members must submit a claim form by **December 15, 2017**. The amount individual Class Members may be eligible to receive will be dependent on the total number of Class Members who submit valid claims, which is currently unknown. Class Members can file a claim online at the website or submit a claim by mail. Visit www.UberTCPASettlement.com or call 1-800-330-1683 for more information on filing a claim.  Uber has also agreed to alter its texting practices as explained in the detailed notice and Settlement Agreement located at www.UberTCPASettlement.com.

Class Members who do not want to be legally bound by the Settlement must exclude themselves by **December 15, 2017**. Class Members who do not exclude themselves will release their claims against Uber, as more fully described in the Settlement Agreement. Class Members who stay in the Settlement may object to it by **December 22, 2017**. The Detailed Notice available at www.UberTCPASettlement.com explains how to exclude or object.  The Court is scheduled to hold a hearing on **January 23, 2018** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to $6,660,000 plus costs and expenses, and service awards for the Class Representatives of $10,000 each. Class Members can appear at the hearing, but do not have to.  Class Members can hire their own attorney, at their own expense, to appear or speak at the hearing.

Please do not contact the Court, Uber, or Uber's counsel with questions regarding this lawsuit. Class Members who do not want a detailed notice or other documents about this lawsuit and their rights can visit www.UberTCPASettlement.com.  Class Members may also contact the Settlement Administrator by calling 1-800-330-1683.

URL:  www.UberTCPASettlement.com

SOURCE United States District Court for the Northern District of Illinois

Related Links

https://www.ubertcpasettlement.com

Attachment 12

<u>LEGAL NOTICE BY ORDER OF COURT</u>

# If, at Any Time Between December 31, 2010 and August 17, 2017, You Received One or More Text Messages from Uber Technologies, Inc., You May Be Eligible for a Payment from a Class Action Settlement.

**This Notice describes rights you may have in connection with the settlement of a lawsuit.**

*The United States District Court for the Northern District of Illinois authorized this Notice. This is not a solicitation from a lawyer. **This is not a legal action against you.***

*Para una notificacion en Espanol, visitar www.UberTCPASettlement.com.*

This Notice describes a proposed settlement in a class action lawsuit brought against Uber Technologies, Inc. ("Uber"), regarding text messages sent to certain persons and entities. **Please read this Notice carefully. It summarizes your rights and options under the Settlement, which are affected whether or not you act. The full Settlement Agreement can be accessed at www.UberTCPASettlement.com.**

If you were sent a text message and you fit the description of the Settlement Classes (as defined below), then you have the following options:

- <u>You can submit a claim for monetary compensation.</u> The amount of the check you would receive depends on the number of people and entities who file claims, the costs of administration of the Settlement, attorneys' fees and costs, and Class Representative service awards. **To receive a check, you must submit a Claim Form by December 15, 2017.** The process for submitting a claim is described below.

- <u>You can exclude yourself from the Settlement</u> (and receive no money from the Settlement but retain your right to bring your own lawsuit). Your request to exclude yourself must be submitted no later than **December 15, 2017**. You must follow the process described in Question 8 in this Notice. If the Settlement is approved and you do not exclude yourself, you will be bound by the Settlement and will release certain claims described below.

- <u>You can object to the Settlement.</u> The deadline for objecting to the Settlement is **December 22, 2017**. All objections must be mailed to Uber TCPA Settlement Administrator, P.O. Box 5053, Portland, OR 97208-5053. See Question 7 in this Notice for details.

NOTE: **PLEASE <u>DO NOT</u>** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, UBER, OR UBER'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU. If you have questions, please call 1-800-330-1683 or visit www.UberTCPASettlement.com.

**For more information and for a Claim Form, visit www.UberTCPASettlement.com or call 1-800-330-1683.**

# BASIC INFORMATION

In a purported class action case known as *Vergara, et al. v. Uber Technologies, Inc.*, No. 1:15-CV-06942 (N.D. Ill.), the Plaintiffs alleged that Uber engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by sending automated text messages to individuals without their consent. Uber denies Plaintiffs' allegations and denies that it did anything wrong. The Court has not decided who is right.

A settlement of this lawsuit ("Settlement") has been negotiated which, if approved by the Court, may entitle you to a payment. By entering into the Settlement, Uber has not admitted the truth or validity of any of the claims against it. Your rights and options under the Settlement—and the deadlines to exercise them—are explained below.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **Submit a Claim** | This is the only way to receive a payment from the Settlement. Class Members who submit a valid Claim Form by the deadline of **December 15, 2017**, will receive a payment and will give up certain rights to sue Releasees, as described in Questions 4 and 6 in this Notice. |
| **Do Nothing** | If you do nothing, you will receive no money from the Settlement, but *you will still give up your rights to sue Releasees*, as described in Questions 6 and 10 in this Notice. |
| **Exclude Yourself from the Case** | If you exclude yourself, you can sue Releasees on your own and at your own expense regarding the text messages released under this Settlement, but you will not receive a payment from the Settlement. The deadline for excluding yourself is **December 15, 2017**. See Question 8 in this Notice. |
| **Object** | You may file an objection if you wish to object to the Settlement. The deadline to object to the Settlement is **December 22, 2017**. See Question 7 in this Notice. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the Settlement. The Court has set a hearing for **January 23, 2018 at 9:00 a.m.**, subject to change. See Question 11 in this Notice. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

The Court in charge of this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, benefits will be distributed to those who submit claims and qualify. Please be patient.

## WHAT THIS NOTICE CONTAINS

**1. Who Is In The Settlement Classes?** ....................................................................PAGE 4

**2. What Is This Lawsuit About?** ........................................................................PAGE 4

**3. Who Represents Me?** ...................................................................................PAGE 4

**4. What Benefits Can I Receive From The Settlement?** ...........................................PAGE 5

**5. Do I Have To Pay The Lawyers Representing Me?** ...........................................PAGES 5-6

**6. What Am I Agreeing To By Remaining In The Settlement Classes In This Case?** ..............PAGE 6

**7. What If I Do Not Agree With The Settlement?** ...................................................PAGE 6-7

**8. How Do I Exclude Myself From The Settlement Classes?** ....................................PAGE 7

**9. What Is The Difference Between Objecting And Asking To Be Excluded?** .........................PAGE 8

**10. What If I Do Nothing At All?** ........................................................................PAGE 8

**11. What Will Be Decided At The Final Approval Hearing?** .................................PAGES 8-9

**12. Does This Notice Contain The Entire Settlement Agreement?** ...........................PAGE 9

**13. Where Can I Get More Information?** ..............................................................PAGE 9

**For more information and for a Claim Form, visit
www.UberTCPASettlement.com or call 1-800-330-1683.**

## 1. WHO IS IN THE SETTLEMENT CLASSES?

The United States District Court for the Northern District of Illinois (Honorable Thomas M. Durkin) has conditionally certified, for settlement purposes only, Settlement Classes in *Vergara, et al. v. Uber Technologies, Inc.*, Case No. 1:15-cv-06942.

If you received notice of the Settlement directed to you, then you may be a member of the Settlement Classes. But even if you did not receive a notice, you may still be a member of the Settlement Classes.

The "Settlement Classes" are defined as:

> Settlement Class A: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, used or subscribed to a wireless or cellular service and were sent one or more non-emergency text messages, utilizing Twilio Inc.'s system, in connection with Uber's Refer-a-Friend Program.

> Settlement Class B: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, started Uber's driver application process but did not become an "active" driver in Uber's system, who used or subscribed to a wireless or cellular service, and to whom Uber sent one or more non-emergency text messages after the user or subscriber requested Uber to discontinue sending text messages.

> Settlement Class C: All persons or entities within the U.S. who, from December 31, 2010, up to and including August 17, 2017, were not party to a contract with Uber and/or who did not provide his or her cellular phone number to Uber, and who used or subscribed to a wireless or cellular service to which Uber sent one or more non-emergency text messages.

Excluded from the Settlement Classes are all persons who elect to exclude themselves from the Settlement Classes, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family. If you are not sure whether you are in the Settlement Classes, or have any other questions about the Settlement, visit the Settlement website at www.UberTCPASettlement.com or call the toll-free number 1-800-330-1683.

## 2. WHAT IS THIS LAWSUIT ABOUT?

This case was brought as a class action alleging that Uber engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by sending automated text messages without consent to the people and entities in the Settlement Classes. This is just a summary of the allegations. The complaint in the lawsuit is posted at www.UberTCPASettlement.com and contains all of the allegations. Uber denies these allegations; however, in order to avoid the expense, inconvenience, and distraction of continued litigation, Uber has agreed to the Settlement described herein.

## 3. WHO REPRESENTS ME?

In a class action, one or more people or entities called "class representatives" sue on behalf of people and entities who have similar claims. In this case, Maria Vergara, James Lathrop, Jonathan Grindell, Sandeep Pal, Jennifer Reilly, and Justin Bartolet sued Uber in a representative capacity, and the Court has appointed them to be Settlement Class Representatives for all Class Members in this case.

The Court also approved the law firms of Tycko & Zavareei LLP and McGuire Law, P.C., to represent the Settlement Classes. If you want to be represented by your own lawyer, you may hire one at your own expense.

**For more information and for a Claim Form, visit**
**www.UberTCPASettlement.com or call 1-800-330-1683.**

## 4. WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT?

Under the Settlement, Uber has agreed to provide monetary compensation to Class Members who timely submit valid claims. The amount of the checks are not yet known. The total Settlement Fund is $20,000,000. The amount of the check you will be sent depends on the number of Class Members who timely submit valid claims, the costs of settlement administration, attorneys' fees and costs, and service awards for the Class Representatives, all of which will be paid from the Settlement Fund. Class Counsel will apply to the Court for an award of attorneys' fees of up to $6,660,000 plus costs and expenses, as well as Class Representative service awards of $10,000 to each of the six Class Representatives. Every Settlement Class Member who submits a timely, valid claim will be sent a check in the same amount. ***Submitting a timely and valid Claim Form is the only way to receive a payment from the Settlement, and is the only thing you need to do to receive a payment.*** Claim Forms are available at www.UberTCPASettlement.com. Claim Forms may be submitted online at www.UberTCPASettlement.com or mailed to Uber TCPA Settlement Administrator, P.O. Box 5053, Portland, OR 97208-5053.

If you timely submit a valid Claim Form, your claim will be paid by a check mailed to you. Claims will only be paid after the Court grants Final Approval of the Settlement and after any appeals are resolved (see Question 11 in this Notice). If there are appeals, resolving them can take time. Please be patient.

Note that if you receive a check, you will have one year to cash the check sent to you. If you do not cash the check within one year, the check will be void and the funds will be utilized as the Court deems appropriate. The Court will decide whether any such remaining funds will go to a charitable organization or will be dispersed differently.

As part of this Settlement, Uber has also agreed to make changes to its text messaging practices. Without admitting any liability or that it is required by law to do so, Uber agrees to undertake the following practices:

    a.    Uber agrees that for a period of two years from the Effective Date of the Settlement it will not send server-assisted driver-referral text messages from the Uber app on Uber-issued cellular phones.

    b.    Uber agrees that for at least two years from the Effective Date it will maintain an opt-out protocol for recipients of text messages who initiate but do not complete the driver sign up process, which will at a minimum unsubscribe recipients from pipeline driver SMS messaging who reply with any of the opt-out words or phrases on Appendix A of the Settlement Agreement.

    c.    Uber agrees to adhere to the following procedures by December 31, 2017, or the Effective Date of the Settlement, whichever is later, for a minimum of two years: (i) Uber's servers will delete any phone number entered during the rider account sign-up process that is not verified within 15 minutes; (ii) Uber will display the phone number used during the rider account sign-up process on the app screen where a new verification text can be requested with the note "Did you enter the correct number?"; and (iii) after one attempted verification text resend, the user will be forced to re-enter the phone number used during sign-up.

## 5. DO I HAVE TO PAY THE LAWYERS REPRESENTING ME?

No. Class Counsel will apply to the Court for an award of attorneys' fees of up to $6,660,000 plus costs and expenses for investigating the facts, litigating the cases, and negotiating the Settlement. To date, Class Counsel have not received any payment for their services in conducting this Litigation on behalf of the Settlement Class Representatives and the Settlement Classes, nor have Class Counsel been reimbursed for their costs and expenses directly relating to their representation of the Settlement Classes.

Class Counsel will also request the Court to award a service award of $10,000 to each of the Settlement Class Representatives in recognition of their service to the Settlement Classes. The amount of any fee or service award will be determined by the Court. Class Counsel's contact information is as follows:

| | |
|---|---|
| Hassan A. Zavareei<br>Andrea R. Gold<br>TYCKO & ZAVAREEI LLP<br>1828 L Street, N.W., Suite 1000<br>Washington, D.C. 20036<br>hzavareei@tzlegal.com<br>agold@tzlegal.com<br>Telephone: 202-973-0900 | Myles P. McGuire<br>Evan M. Meyers<br>Paul T. Geske<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601<br>mmcguire@mcgpc.com<br>emeyers@mcgpc.com<br>pgeske@mcgpc.com<br>Telephone: 312-893-7002 |

## 6. What Am I Agreeing to by Remaining in the Settlement Classes in This Case?

Unless you exclude yourself, you will be part of the Settlement Classes, and you will be bound by the release of claims in the Settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be party of any lawsuit against Uber or the other Releasees asserting a "Released Claim," as defined below. It also means that the Court's Order approving the Settlement and the judgment in this case will apply to you and legally bind you.

The "Released Claims" that you will not be able to assert against Uber or Releasees if you remain a part of the Settlement Classes are as follows: any and all claims whatsoever arising out of, related to, or connected with Uber or any of the Releasees sending, causing someone to send, or assisting someone to send a text or SMS message related to Uber without consent, including but not limited to claims brought under 47 U.S.C. § 227, *et seq.* ("TCPA"), during the Class Period. "Released Claims" include all claims that were or could have been asserted in the Litigation or Related Actions, regardless of whether such claims are known or unknown, filed or unfiled, asserted or as yet unasserted, existing or contingent.

"Releasees" shall refer, jointly and severally, and individually and collectively, to Uber, its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts or their affiliates.

"Related Actions" shall mean any proceeding, other than this Litigation, that alleges that Uber violated the TCPA brought by a plaintiff and/or on behalf of persons or entities who would be a Class Member, including *Giacomaro v. Uber Technologies, Inc.* (EDNY; Case No. 2:17-cv-03923) and *Kolloukian v. Uber Technologies, Inc.* (C.D. Cal.; Case No. 2:15-cv-02856).

## 7. What If I Do Not Agree with the Settlement?

If you are a member of the Settlement Classes, you may object to the Settlement or any part of the Settlement that you think the Court should reject, and the Court will consider your views. To object, you must send your objection to the Settlement Administrator, Class Counsel, and Uber's Counsel providing:

a. the case name and case number of this Litigation (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);
b. your full name, current address, and phone number;
c. the phone number on which you allegedly received a text message from Uber;
d. the reasons why you object to the Settlement along with any supporting materials;

**For more information and for a Claim Form, visit**
**www.UberTCPASettlement.com or call 1-800-330-1683.**

    e.    information about other objections you or your lawyer(s) have made in other class action cases in the last four (4) years; and

    f.    your signature.

**Your objection must be postmarked no later than December 22, 2017.** Objections must be mailed to all of the following addresses:

| **Uber TCPA Settlement Administrator**<br>P.O. Box 5053<br>Portland, OR 97208-5053 | |
| --- | --- |
| **Plaintiffs' Counsel**<br>Hassan A. Zavareei<br>TYCKO & ZAVAREEI LLP<br>1828 L Street, N.W., Suite 1000<br>Washington, D.C. 20036;<br><br>and<br><br>Myles P. McGuire<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601 | **Uber's Counsel**<br>Austin V. Schwing<br>GIBSON DUNN & CRUTCHER LLP<br>555 Mission Street<br>San Francisco, CA 94105 |

## 8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASSES?

If you want to exclude yourself from the Settlement Classes, sometimes referred to as "opting out," you will not be eligible to recover any benefits as a result of this Settlement. However, you will keep the right to sue or continue to sue Uber or Releasees on your own and at your own expense about any of the Released Claims.

To exclude yourself from the Settlement Classes, you must send a letter to the Settlement Administrator identifying:

    (1)    the name and case number of this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

    (2)    your full name, current address, and telephone number;

    (3)    the phone number on which you allegedly received a text message from Uber;

    (4)    a statement that you wish to exclude yourself from the Settlement Classes; and

    (5)    your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is **postmarked no later than December 15, 2017**:

Uber TCPA Settlement Administrator:<br>
P.O. Box 5053<br>
Portland, OR 97208-5053

**REQUESTS FOR EXCLUSION FROM THE CLASSES THAT ARE NOT POSTMARKED ON OR BEFORE DECEMBER 15, 2017, WILL NOT BE HONORED.**

You cannot exclude yourself from the Settlement Classes by telephone, by email, or at the website. You cannot exclude yourself by mailing a request to any other location or after the deadline. Your Exclusion Form must be signed by you.

**For more information and for a Claim Form, visit**
**www.UberTCPASettlement.com or call 1-800-330-1683.**

## 9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED?

"Objecting" is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. "Excluding" yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

## 10. WHAT IF I DO NOTHING AT ALL?

You will remain a member of the Settlement Classes. **However, you must file a Claim Form in order to receive a benefit in this Settlement.** See Question 4 in this Notice.

## 11. WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING?

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees, service awards, and expenses ("Final Approval Hearing"). The Final Approval Hearing is currently set for **January 23, 2018 at 9:00 a.m.**, at the United States District Court for the Northern District of Illinois, Eastern Division, located in Courtroom 1441, 219 S. Dearborn Street, Chicago, IL 60604. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.UberTCPASettlement.com and the Court's docket for updates.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider the request by Class Counsel for attorneys' fees and expenses and for the Class Representatives' service awards. If there are objections, the Court will consider them at the Final Approval Hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

You may attend the hearing, at your own expense, but you do not have to do so.

You may ask the Court for permission to speak at the hearing. To do so, you must send a letter saying that you intend to appear and wish to be heard. Your notice of intention to appear must include the following:

(1)    the name and case number of this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942);

(2)    your full name, current address, and telephone number;

(3)    the phone number on which you allegedly received a text message from Uber;

(4)    a statement that this is your "Notice of Intention to Appear" at the Final Approval Hearing for this lawsuit (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Case No. 1:15-cv-06942), along with copies of any papers, exhibits, or other evidence or information that you will present to the Court;

(5)    the reasons you want to be heard; and

(6)    your signature.

You must send copies of your notice of intention to appear, **postmarked by December 15, 2017**, to all of the following addresses:

| | |
|---|---|
| **Clerk of the Court**<br>Everett McKinley Dirksen United States Courthouse<br>219 S. Dearborn Street<br>Chicago, IL 60604 | |
| **Plaintiffs' Counsel**<br>Hassan A. Zavareei<br>TYCKO & ZAVAREEI LLP<br>1828 L Street, N.W., Suite 1000<br>Washington, D.C. 20036;<br><br>and<br><br>Myles P. McGuire<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601 | **Uber's Counsel**<br>Austin V. Schwing<br>GIBSON DUNN & CRUTCHER LLP<br>555 Mission Street<br>San Francisco, CA 94105 |

You cannot speak at the hearing if you exclude yourself from the Settlement.

## 12. DOES THIS NOTICE CONTAIN THE ENTIRE SETTLEMENT AGREEMENT?

No. This is only a summary of the Settlement. If the Settlement is approved and you do not exclude yourself from the Settlement Classes, you will be bound by the release contained in the Settlement Agreement, and not just by the terms of this Notice. Capitalized terms in this Notice are defined in the Settlement Agreement. You can view the full Settlement Agreement online at www.UberTCPASettlement.com, or you can write to the Uber TCPA Settlement Administrator at P.O. Box 5053, Portland, OR 97208-5053 for more information.

## 13. WHERE CAN I GET MORE INFORMATION?

For more information, you may visit www.UberTCPASettlement.com or you may call the Uber TCPA Settlement Administrator at 1-800-330-1683.

NOTE: **PLEASE DO NOT** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, UBER, OR UBER'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU. If you have questions, please call 1-800-330-1683 or visit www.UberTCPASettlement.com.

# SI, EN ALGÚN MOMENTO ENTRE EL 31 DE DICIEMBRE DE 2010 Y EL 17 DE AGOSTO DE 2017, USTED RECIBE UNO O MÁS MENSAJES DE TEXTO DE UBER TECHNOLOGIES, INC., PODRÍA SER ELEGIBLE PARA RECIBIR UN PAGO EN VIRTUD DE UN ACUERDO DE DEMANDA COLECTIVA.

**Esta Notificación describe los derechos que puede ejercer en relación con la resolución de una demanda.**

*El Tribunal de Distrito de los Estados Unidos para el Distrito Norte de Illinois autorizó esta Notificación. No se trata del ofrecimiento de un abogado. **No se trata de una acción legal en su contra.***

Esta Notificación describe el acuerdo propuesto en una demanda colectiva contra Uber Technologies, Inc. ("Uber"), en relación con los mensajes de texto enviados a determinadas personas y entidades. **Lea esta Notificación detenidamente. En ella se resumen sus derechos y sus opciones en cumplimiento de este Acuerdo, los cuales se verán afectados, independientemente de que inicie o no alguna acción legal. Se puede acceder al Acuerdo de conciliación completo en www.UberTCPASettlement.com.**

Si se le envió un mensaje de texto y usted cumple con la descripción de los Grupos de la conciliación definidos en el acuerdo (según se define a continuación), entonces tiene las siguientes opciones:

- Puede presentar una reclamación para recibir una indemnización monetaria. El monto del cheque que recibirá depende del número de personas y entidades que presenten reclamaciones, de los costos administrativos del Acuerdo de conciliación, los honorarios profesionales y costas de abogados y el pago de servicios del Representante del grupo del acuerdo. **Para recibir un cheque, debe presentar un Formulario de reclamaciones antes del 15 de diciembre de 2017.** A continuación se describe el proceso de presentación de una reclamación.

- Puede excluirse del Acuerdo de conciliación (y no recibir dinero en virtud del Acuerdo de conciliación pero conservar su derecho a presentar su propia demanda). Su solicitud de exclusión debe presentarse antes del **15 de diciembre de 2017**. Debe seguir el proceso que se describe en la pregunta 8 de esta Notificación. Si se aprueba el Acuerdo de conciliación y usted no se excluye de esta, se verá obligado a aceptar los términos del Acuerdo de conciliación y deberá renunciar al derecho de presentar determinadas reclamaciones que se describen a continuación.

- Puede objetar el Acuerdo de conciliación. La fecha límite para objetar el Acuerdo de conciliación es el **22 de diciembre de 2017**. Todas las objeciones deben ser enviadas por correo a Uber TCPA Settlement Administrator, P.O. Box 5053, Portland, OR 97208-5053. Vea la pregunta 7 de esta Notificación para obtener más información.

NOTA: **NO** LLAME NI ESCRIBA AL TRIBUNAL, A LA SECRETARÍA DEL TRIBUNAL, A UBER NI AL ABOGADO DE UBER PARA SOLICITAR MÁS INFORMACIÓN. NINGUNO DE ELLOS PODRÁ BRINDARLE ASISTENCIA. Si tiene alguna pregunta, llame al 1-800-330-1683 o visite www.UberTCPASettlement.com.

**Para obtener más información y un Formulario de demanda, visite www.UberTCPASettlement.com o llame al 1-800-330-1683.**

# INFORMACIÓN BÁSICA

En el caso de la demanda colectiva presentada conocida como *Vergara et al. v. Uber Technologies, Inc.*, Nro. 1:15-CV-06942 (N.D. Ill.), los Demandantes alegan que Uber incurrió en infracciones a la Ley de Protección del Consumidor de Servicios Telefónicos, 47 U.S.C. § 227 *y siguientes* ("TCPA", Telephone Consumer Protection Act), al enviar mensajes de texto automatizados a personas que no habían expresado su consentimiento para recibirlos. Uber niega las acusaciones de los Demandantes y niega además haber incurrido en cualquier tipo de acción incorrecta. El Tribunal no ha decidido quién tiene la razón.

Se ha negociado una acuerdo conciliatorio de esta demanda (el "Acuerdo") que, de ser aprobado por el Tribunal, le dará derecho a recibir un pago. Al aceptar el Acuerdo, Uber no ha admitido la verdad ni la validez de ninguna de las reclamaciones presentadas en su contra. Sus derechos y opciones, según lo estipulado en este Acuerdo, así como las fechas límite para ejercerlos, se explican a continuación.

| SUS OPCIONES Y DERECHOS LEGALES | |
|---|---|
| **Presentar una reclamación** | Esta es la única forma de recibir un pago en virtud del Acuerdo de conciliación. Los Miembros del grupo que presenten un Formulario de reclamación válido antes de la fecha límite del **15 de diciembre de 2017** recibirán un pago y renunciarán a determinados derechos de demandar a los Eximidos, como se describe en las preguntas 4 y 6 de esta Notificación. |
| **No hacer nada** | Si no hace nada, no recibirá dinero en virtud del Acuerdo de conciliatorio, pero de todas maneras *renunciará a sus derechos a demandar a los Eximidos*, como se describe en las preguntas 6 y 10 en esta Notificación. |
| **Excluirse del caso** | Si se excluye, podrá demandar a los Eximidos por su cuenta y a su cargo en relación con los mensajes de texto enviados en cumplimiento de este Acuerdo de conciliación, pero no recibirá ningún pago como consecuencia del Acuerdo. La fecha límite para excluirse es el **15 de diciembre de 2017**. Vea la pregunta 8 en esta Notificación. |
| **Objetar** | Puede presentar una objeción si desea oponerse al Acuerdo de conciliación. La fecha límite para objetar el Acuerdo de conciliación es el **22 de diciembre de 2017**. Vea la pregunta 7 de esta Notificación. |
| **Asistir a una audiencia** | Solicite la palabra ante el Tribunal con respecto a la imparcialidad del Acuerdo. El Tribunal ha fijado una audiencia para el **23 de enero de 2018 a las 9:00 a m.**, sujeta a modificaciones. Vea la pregunta 11 de esta Notificación. |

Estos derechos y opciones, **y las fechas límite para ejercerlos**, se explican en esta Notificación.

El Tribunal a cargo de este caso todavía no ha aprobado el Acuerdo. Si lo hace, y después de resolver todas las apelaciones, se distribuirán los beneficios entre quienes presenten reclamaciones y cumplan con los requisitos. Tenga paciencia.

**Para obtener más información y un Formulario de demanda, visite www.UberTCPASettlement.com o llame al 1-800-330-1683.**

## QUÉ CONTIENE ESTA NOTIFICACIÓN

**1. ¿QUIÉNES FORMAN PARTE DE LOS GRUPOS DEL ACUERDO?** .......................................PÁGINA 4

**2. ¿DE QUÉ SE TRATA ESTA DEMANDA?** .............................................................................PÁGINA 4

**3. ¿QUIÉN ME REPRESENTA?** ...............................................................................................PÁGINA 4-5

**4. ¿QUÉ BENEFICIOS PUEDO OBTENER EN VIRTUD DE ESTE ACUERDO DE CONCILIACIÓN?** ......PÁGINA 5-6

**5. ¿DEBO PAGAR A LOS ABOGADOS QUE ME REPRESENTEN?** ...........................................PÁGINA 6

**6. ¿QUÉ CONDICIONES ACEPTO AL PERMANECER DENTRO DE LOS GRUPOS DEL ACUERDO DE CONCILIACIÓN EN ESTE CASO?** ....................................................................................PÁGINA 6-7

**7. ¿QUÉ SUCEDE SI NO ACEPTO EL ACUERDO DE CONCILIACIÓN?** ...................................PÁGINA 7

**8. ¿CÓMO ME EXCLUYO DE LOS GRUPOS DEL ACUERDO DE CONCILIACIÓN?** .................PÁGINA 8

**9. ¿CUÁL ES LA DIFERENCIA ENTRE OBJETAR Y SOLICITAR SER EXCLUIDO?** ..................PÁGINA 8

**10. ¿QUÉ SUCEDE SI NO HAGO NADA?** ...............................................................................PÁGINA 8

**11. ¿QUÉ OCURRIRÁ EN LA AUDIENCIA DE APROBACIÓN DEFINITIVA?** ........................PÁGINA 8-9

**12. ¿ESTA NOTIFICACIÓN CONTIENE LA TOTALIDAD DEL ACUERDO DE CONCILIACIÓN....PÁGINA 10

**13. ¿DÓNDE PUEDO OBTENER MÁS INFORMACIÓN?** ........................................................PÁGINA 10

**Para obtener más información y un Formulario de demanda, visite
www.UberTCPASettlement.com o llame al 1-800-330-1683.**

## 1. ¿QUIÉNES FORMAN PARTE DE LOS GRUPOS DEL ACUERDO?

El Tribunal Federal de Primera Instancia del Distrito Norte de Illinois (Honorable juez Thomas M. Durkin) ha certificado de forma condicional, únicamente a los fines de la conciliación, los Grupos del acuerdo en *Vergara, et al. v. Uber Technologies, Inc.,* Caso N.º 1:15-cv-06942.

Si ha recibido la notificación del Acuerdo de conciliación dirigida a usted, entonces puede ser un miembro de los Grupos del acuerdo. Pero incluso si no recibió ninguna notificación, aún así usted puede formar parte de los Grupos del acuerdo.

Los "Grupos del acuerdo" se definen de la siguiente manera:

> Grupo del acuerdo A: Todas las personas o entidades dentro de los Estados Unidos que, desde el 31 de diciembre de 2010 hasta el 17 de agosto de 2017, usaban un servicio celular o inalámbrico o estaban suscriptas a este y se les envió un mensaje de texto o más que no eran de emergencia, utilizando el sistema de Twilio Inc., en relación con el Programa Refer-a-Friend de Uber.

> Grupo del acuerdo B: Todas las personas o entidades dentro de los Estados Unidos que, desde el 31 de diciembre de 2010 hasta el 17 de agosto de 2017 inclusive, iniciaron el proceso de postulación como conductores de Uber pero no se convirtieron en conductores "activos" en el sistema de Uber, que usaban un servicio celular o inalámbrico o estaban suscriptas a este y a quienes Uber envió un mensaje de texto o más que no eran de emergencia luego de que el usuario o el suscriptor solicitara a Uber que discontinuara el envío de mensajes de texto.

> Grupo del acuerdo C: Todas las personas o entidades dentro de los Estados Unidos que, desde el 31 de diciembre de 2010 hasta el 17 de agosto de 2017 inclusive, no tenían ningún contrato con Uber ni habían proporcionado su número de teléfono celular a Uber, que usaban un servicio celular o inalámbrico o estaban suscriptas a este y a quienes Uber envió un mensaje de texto o más que no eran de emergencia.

Quedan excluidas de los Grupos del acuerdo todas las personas que elijan excluirse de los Grupos del acuerdo, además del Tribunal y el personal al que se asigne este caso y todos los miembros del grupo familiar inmediato del Tribunal y de su personal. Si no está seguro de si forma parte o no de los Grupos del acuerdo, o si tiene alguna pregunta acerca del Acuerdo de conciliación, visite el sitio web del Acuerdo de conciliación en www.UberTCPASettlement.com o llame al número gratuito 1-800-330-1683.

## 2. ¿DE QUÉ SE TRATA ESTA DEMANDA?

Esta demanda se presentó como una acción colectiva alegando que Uber incurrió en violaciones de la Ley de Protección del Consumidor de Servicios Telefónicos, 47 U.S.C. § 227 *y siguientes* ("TCPA", Telephone Consumer Protection Act), al enviar mensajes de texto automatizados sin el consentimiento de las personas y entidades que forman parte de los Grupos del acuerdo. Este es solo un resumen de las acusaciones. El reclamo que se plantea en la demanda está publicado en www.UberTCPASettlement.com y contiene todas las acusaciones. Uber niega estas acusaciones; sin embargo, para evitar el gasto, los inconvenientes y la perturbación que genera la continuación del litigio, Uber ha aceptado los términos del Acuerdo de conciliación que aquí se describen.

## 3. ¿QUIÉN ME REPRESENTA?

En una demanda colectiva, una o más personas llamadas "representantes del grupo" demandan en nombre de las personas que tienen reclamaciones similares. En este caso, Maria Vergara, James Lathrop,

**Para obtener más información y un Formulario de demanda, visite www.UberTCPASettlement.com o llame al 1-800-330-1683.**

4

Jonathan Grindell, Sandeep Pal, Jennifer Reilly y Justin Bartolet demandaron a Uber en calidad de representantes, y el Tribunal los nombró Representantes del grupo del acuerdo para todos los Miembros del grupo en este caso.

El Tribunal aprobó también a las firmas de abogados de Tycko & Zavareei LLP y McGuire Law, P.C. para que representen a los Grupos del acuerdo. Si desea ser representado por su propio abogado, puede contratar uno por su propia cuenta.

## 4. ¿Qué beneficios puedo obtener en virtud del Acuerdo de conciliación?

Tal como se establece en el Acuerdo de conciliación, Uber ha aceptado ofrecer una indemnización monetaria a los Miembros del grupo que presenten reclamaciones válidas durante el plazo establecido a tal efecto. El monto de los cheques no se conoce todavía. El Fondo total de la conciliación es de $20,000,000. El monto del cheque que usted recibirá depende del número de Miembros del grupo que presenten reclamaciones válidas dentro del plazo establecido, los costos administrativos de la conciliación, las costas y honorarios de abogados y el pago de servicios de los Representantes del grupo, ya que todo esto será cubierto con el Fondo de la conciliación. El Abogado del grupo solicitará al Tribunal la regulación de los honorarios de los abogados con un límite de $6,660,000 más costas y gastos, al igual que el pago de servicios de los Representantes del grupo de hasta $10,000 para cada uno de los seis Representantes del grupo. Cada Miembro del grupo del acuerdo que presente una reclamación válida dentro del plazo establecido recibirá un cheque por el mismo monto. ***La única forma de recibir un pago de este Acuerdo de conciliación es enviar un Formulario de reclamación válido dentro del plazo establecido, y esto es lo único que usted debe hacer para recibir un pago.*** Los Formularios de reclamación están disponibles en www.UberTCPASettlement.com. Los Formularios de reclamación pueden enviarse en línea a www.UberTCPASettlement.com o por correo a Uber TCPA Settlement Administrator, P.O. Box 5053, Portland, OR 97208-5053.

Si presentó un Formulario de reclamación válido dentro del plazo establecido, su reclamación se pagará mediante un cheque que se le enviará por correo. Los pagos de las reclamaciones solo se realizarán una vez que el Tribunal apruebe definitivamente el Acuerdo de conciliación y luego de que se resuelvan todas las apelaciones (vea la pregunta 11 de esta Notificación). Si hay apelaciones, resolverlas puede llevar tiempo. Tenga paciencia.

Recuerde que si recibe un cheque, tendrá un plazo de un año para cobrarlo. Si no cobra su cheque dentro de un año, el cheque se anulará y los fondos serán utilizados del modo que el Tribunal considere más adecuado. El Tribunal decidirá si los fondos restantes se destinarán a una institución benéfica o si se distribuirán de alguna otra manera.

Como parte de este Acuerdo de conciliación, Uber ha aceptado también realizar modificaciones en sus prácticas de envío de mensajes de texto. Sin admitir ningún tipo de responsabilidad y sin admitir que es un requisito legal hacerlo, Uber se compromete a realizar las siguientes prácticas:

a.   Uber acepta que durante un periodo de dos años a partir de la Fecha efectiva del Acuerdo de conciliación, no enviará mensajes de texto de referencia del conductor mediante su servidor desde la aplicación de Uber a los teléfonos celulares emitidos por Uber.

b.   Uber acepta que durante un periodo mínimo de dos años a partir de la Fecha efectiva del Acuerdo de conciliación, mantendrá un protocolo de opción de exclusión para los destinatarios de los mensajes de texto que iniciaron pero no completó el proceso de registración como conductores, que permitirá al menos que los destinatarios cancelen su suscripción de la lista de envío de mensajes de texto a los conductores que respondan con las palabras o frases establecidas para la opción de exclusión en el Anexo A del Acuerdo de conciliación.

**Para obtener más información y un Formulario de demanda, visite www.UberTCPASettlement.com o llame al 1-800-330-1683.**

5

c.     Uber acepta seguir los siguientes procedimientos antes del 31 de diciembre de 2017, o de la Fecha efectiva del Acuerdo de conciliación, lo que ocurra más tarde, durante un periodo mínimo de dos años: (i) Los servidores de Uber eliminarán todo número de teléfono ingresado durante el proceso de registración de la cuenta del conductor que no se haya verificado dentro de los siguientes 15 minutos; (ii) Uber mostrará el número de teléfono utilizado durante el proceso de registración de la cuenta del conductor en la pantalla de la aplicación, en la que se mostrará un nuevo texto de verificación con la leyenda: "¿Ingresó el número correcto?"; y (iii) luego de intentar el reenvío de un texto de verificación, el usuario se verá obligado a ingresar nuevamente el número de teléfono utilizado durante el proceso de registración.

## 5. ¿DEBO PAGAR A LOS ABOGADOS QUE ME REPRESENTEN?

No. El Abogado del grupo del acuerdo pedirá al Tribunal que apruebe el pago de honorarios de abogados con un monto máximo de $6,660,000 más costos y gastos por investigar los hechos, litigar en el caso y negociar los términos y condiciones del Acuerdo de conciliación. Hasta la fecha, el Abogado del grupo no ha recibido ningún pago por sus servicios en la conducción de este Litigio en nombre de los Representantes del grupo del acuerdo ni de los Grupos de demandantes Acuerdo de conciliación, ni tampoco se le han reembolsado al Abogado del grupo los gastos y costos en los que ha incurrido directamente en relación con su representación de los Grupos del acuerdo de conciliación. El Abogado del grupo solicitará además al Tribunal que imponga un pago de servicios de $10,000 a cada uno de los Representantes del Grupo del acuerdo de conciliación en reconocimiento de los servicios que han prestado a los Grupos del acuerdo de conciliación. Todo monto que se imponga como pago de honorarios o servicios será determinado por el Tribunal. Los datos de contacto del Abogado del grupo son los siguientes:

| | |
|---|---|
| Hassan A. Zavareei<br>Andrea R. Gold<br>TYCKO & ZAVAREEI LLP<br>1828 L Street, N.W., Suite 1000<br>Washington, D.C. 20036<br>hzavareei@tzlegal.com<br>agold@tzlegal.com<br>Teléfono: 202-973-0900 | Myles P. McGuire<br>Evan M. Meyers<br>Paul T. Geske<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601<br>mmcguire@mcgpc.com<br>emeyers@mcgpc.com<br>pgeske@mcgpc.com<br>Teléfono: 312-893-7002 |

## 6. ¿QUÉ CONDICIONES ACEPTO AL PERMANECER DENTRO DE LOS GRUPOS DEL ACUERDO DE CONCILIACIÓN EN ESTE CASO?

A menos que decida excluirse, será parte de los Grupos del acuerdo de conciliación, y estará obligado por la renuncia al derecho de presentar reclamaciones que se establece en el Acuerdo de conciliación. Esto significa que si el Acuerdo de conciliación se aprueba, no podrá demandar, ni continuar demandas, ni ser parte de ninguna demanda contra Uber ni contra los demás Eximidos que planteen una "Reclamación finiquitada", según se define a continuación. Esto significa también que la Orden del Tribunal que dé por aprobado el Acuerdo de conciliación y su sentencia en este caso será aplicable sobre usted y usted se verá, por lo tanto, legalmente vinculado por ella.

Las "Reclamaciones finiquitadas" que no pueda plantear contra Uber ni contra los Eximidos si permanece dentro de los Grupos del acuerdo de conciliación son las siguientes: todas y cada una de las reclamaciones cualquiera sea el motivo, relacionadas con Uber o con cualquiera de los Eximidos que enviaron, hicieron que alguien enviara o brindaron asistencia a alguien para enviar un mensaje de texto

**Para obtener más información y un Formulario de demanda, visite
www.UberTCPASettlement.com o llame al 1-800-330-1683.**

6

o SMS relacionado con Uber sin el consentimiento del destinatario, incluidas, entre otras, las reclamaciones interpuestas de acuerdo con 47 U.S.C. § 227, *y siguientes* ("TCPA"), durante el período de la demanda colectiva. Las "Reclamaciones finiquitadas" incluyen todas las reclamaciones que se plantearon o se podrían haber planteado durante el Litigio o las acciones relacionadas, independientemente de si tales reclamaciones son conocidas o desconocidas, fueron presentadas o no, formuladas o no formuladas aún, efectivas o contingentes.

El término "Eximidos" se referirá, de manera conjunta y solidaria y en sentido individual y colectivo, a Uber, sus casas matrices, compañías predecesores, sucesoras, filiales, empresas tenedoras, subsidiarias, empleados, agentes, miembros del directorio, cesionarios, socios, contratistas, asociados en empresas conjuntas o terceros con los que tenga o haya tenido contratos o sus afiliados pasados o actuales.

El término "Acciones relacionadas" hará referencia a todo procedimiento jurídico ajeno a este Litigio, que plantee que Uber infringió la TCPA presentado por un demandante o en representación de personas o entidades que podrían ser Miembros del grupo, entre otros, *Giacomaro v. Uber Technologies, Inc.* (EDNY; Caso Nro. 2:17-cv-03923) y *Kolloukian v. Uber Technologies, Inc.* (C.D. Cal.; Caso Nro. 2:15-cv-02856).

## 7. ¿QUÉ SUCEDE SI NO ACEPTO EL ACUERDO DE CONCILIACIÓN?

Si usted forma parte de los Grupos del acuerdo de conciliación, puede oponerse a este en su totalidad o a alguna de sus partes que considere que el Tribunal debería rechazar, y el Tribunal considerará su postura. Para oponerse, debe enviar su objeción al Administrador del acuerdo de conciliación, al Abogado del grupo y al Abogado de Uber, indicando:

a   el nombre y el número del caso de este Litigio (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Caso Nro. 1:15-cv-06942);

b.   su nombre completo, dirección actual y número telefónico;

c.   el número de teléfono en el que presuntamente recibió un mensaje de texto de Uber;

d.   las razones por las que objeta el Acuerdo de conciliación, junto con el material probatorio correspondiente;

e.   información acerca de otras objeciones que usted o su(s) abogado(s) hayan presentado en otros casos de demanda colectiva durante los últimos cuatro (4) años; y

f.   su firma.

**Su objeción debe tener una fecha postal anterior al 22 de diciembre de 2017.** Las objeciones deben enviarse por correo a todas las direcciones siguientes:

| **Uber TCPA Settlement Administrator** | |
|---|---|
| P.O. Box 5053 | |
| Portland, OR 97208-5053 | |
| **Abogados de los demandantes** | |
| Hassan A. Zavareei | |
| TYCKO & ZAVAREEI LLP | |
| 1828 L Street, N.W., Suite 1000 | **Abogado de Uber** |
| Washington, D.C. 20036; | Austin V. Schwing |
| | GIBSON DUNN & CRUTCHER LLP |
| y | 555 Mission Street |
| | San Francisco, CA 94105 |
| Myles P. McGuire | |
| MCGUIRE LAW, P.C. | |
| 55 W. Wacker Drive, 9th Floor | |
| Chicago, IL 60601 | |

**Para obtener más información y un Formulario de demanda, visite
www.UberTCPASettlement.com o llame al 1-800-330-1683.**

7

## 8. ¿Cómo me excluyo de los Grupos del acuerdo de conciliación?

Si desea excluirse de los Grupos del acuerdo de conciliación, o si "opta por la exclusión", como suele decirse para hacer referencia a esta decisión, no podrá acceder a ningún beneficio en virtud de este Acuerdo de conciliación. No obstante, conservará su derecho a demandar o a continuar demandando por su cuenta y cargo a Uber o a los Eximidos acerca de cualquiera de las Reclamaciones finiquitadas.

Para excluirse de los Grupos del acuerdo de conciliación, debe enviar una carta al Administrador del acuerdo en la que se indiquen los siguientes datos:

(1) el nombre y el número del caso de esta causa (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Caso Nro. 1:15-cv-06942);

(2) su nombre completo, dirección actual y número telefónico;

(3) el número de teléfono en el que presuntamente recibió un mensaje de texto de Uber;

(4) una declaración de que desea excluirse de los Grupos del acuerdo; y

(5) su firma.

Si desea excluirse, debe enviar la información detallada anteriormente a las siguientes direcciones para que **lleve un sello postal anterior al 15 de diciembre de 2017**:

Uber TCPA Settlement Administrator:
P.O. Box 5053
Portland, OR 97208-5053

**NO SE ACEPTARÁN SOLICITUDES DE EXCLUSIÓN DE LOS GRUPOS DEL ACUERDO QUE NO TENGAN SELLO POSTAL CON FECHA DE ANTES DEL 15 DE DICIEMBRE DE 2017.**

No puede excluirse de los Grupos del acuerdo por teléfono, correo electrónico ni a través del sitio web. Tampoco podrá excluirse enviando por correo una solicitud a cualquier otra dirección o después de la fecha límite. Su Formulario de exclusión debe llevar su firma.

## 9. ¿Cuál es la diferencia entre objetar y solicitar ser excluido?

"Objetar" es simplemente decirle al Tribunal que no le gusta algo sobre el Acuerdo de conciliación. Puede objetar el Acuerdo solamente si no se excluye de este. "Excluirse" es decirle al Tribunal que no quiere ser parte del Acuerdo. Si usted se excluye, no tiene fundamentos para objetar este Acuerdo porque este ya no lo afecta.

## 10. ¿Qué sucede si no hago nada?

Usted seguirá siendo miembro de los Grupo del acuerdo. **No obstante, deberá presentar un Formulario de reclamación para recibir un beneficio en virtud de este Acuerdo de conciliación.** Vea la pregunta 4 de esta Notificación.

## 11. ¿Qué ocurrirá en la Audiencia de aprobación definitiva?

El Tribunal celebrará una audiencia para decidir si aprueba el Acuerdo de conciliación y las solicitudes de honorarios, pago de servicios y gastos (la "Audiencia de aprobación definitiva"). La Audiencia de aprobación definitiva está actualmente fijada para el **23 de enero de 2018 a las 9:00**, en el Tribunal de Distrito de los Estados Unidos para el Distrito Norte de Illinois, División Este, ubicado en la Sala 1441, en 219 S. Dearborn Street, Chicago, IL 60604. La audiencia se podrá cambiar para otra fecha u hora

**Para obtener más información y un Formulario de demanda, visite www.UberTCPASettlement.com o llame al 1-800-330-1683.**

8

diferentes sin notificación previa; por lo tanto, se recomienda verificar estos datos en www.UberTCPASettlement.com para comprobar si hubo actualizaciones.

En esta audiencia, el Tribunal considerará si Acuerdo de conciliación es justo, razonable y adecuado. Además, el Tribunal considerará la solicitud del Abogado del grupo del acuerdo acerca de los honorarios y gastos de los abogados y el pago de servicios de los Representantes del grupo. Si hay objeciones, el Tribunal las escuchará y las examinará en la Audiencia de aprobación definitiva. Después de la audiencia, el Tribunal decidirá si aprueba o no el Acuerdo de conciliación. No sabemos cuánto tiempo tomarán estas decisiones.

Usted puede asistir a la audiencia, por su propia cuenta, pero no está obligado a hacerlo.

Puede solicitarle al Tribunal permiso para hablar durante la audiencia. Para hacerlo, debe enviar una carta en la que diga que tiene la intención de comparecer y que desea que lo escuchen. Su aviso de intención de comparecer debe incluir lo siguiente:

(1)   el nombre y el número del caso de esta causa (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Caso Nro. 1:15-cv-06942);

(2)    su nombre completo, dirección actual y número telefónico;

(3)   el número de teléfono en el que presuntamente recibió un mensaje de texto de Uber;

(4)   una declaración de que se trata de su "Notificación de intención de comparecencia" en la Audiencia de aprobación definitiva de este caso (*Vergara, et al. v. Uber Technologies, Inc.*, N.D. Ill. Caso Nro. 1:15-cv-06942), junto con copias de todos los documentos y pruebas o información que presentará al Tribunal;

(5)   las razones por las que desea ser escuchado; y

(6)   su firma.

Debe enviar copias de su notificación de intención de comparecencia, **con fecha de sello postal anterior al 15 de diciembre de 2017**, a todas las direcciones siguientes:

| **Secretario del Tribunal** |
| :---: |
| Everett McKinley Dirksen United States Courthouse |
| 219 S. Dearborn Street |
| Chicago, IL 60604 |

| **Abogados de los demandantes** | **Abogado de Uber** |
| :---: | :---: |
| Hassan A. Zavareei | Austin V. Schwing |
| TYCKO & ZAVAREEI LLP | GIBSON DUNN & CRUTCHER LLP |
| 1828 L Street, N.W., Suite 1000 | 555 Mission Street |
| Washington, D.C. 20036; | San Francisco, CA 94105 |
| y | |
| Myles P. McGuire | |
| MCGUIRE LAW, P.C. | |
| 55 W. Wacker Drive, 9th Floor | |
| Chicago, IL 60601 | |

No puede hablar en la audiencia si se ha excluido del Acuerdo de conciliación.

**Para obtener más información y un Formulario de demanda, visite www.UberTCPASettlement.com o llame al 1-800-330-1683.**

9

## 12. ¿ESTA NOTIFICACIÓN CONTIENE LA TOTALIDAD DEL ACUERDO DE CONCILIACIÓN?

No. Esta notificación es solo un resumen del Acuerdo de conciliación. Si se aprueba el Acuerdo de conciliación y usted no se excluye de los Grupos del acuerdo, se verá obligado por la renuncia contenida en este Acuerdo de conciliación, y no solo por los términos y condiciones que se describen en esta Notificación. Los términos que aparecen en mayúsculas en esta Notificación se definen en el Acuerdo de conciliación. Puede ver el Acuerdo de conciliación completo en línea en www.UberTCPASettlement.com, o puede comunicarse con el Administrador del acuerdo escribiendo a Uber TCPA Settlement Administrator, P.O. Box 5053, Portland, OR 97208-5053.

## 13. ¿DÓNDE PUEDO OBTENER MÁS INFORMACIÓN?

Para obtener más información, puede visitar www.UberTCPASettlement.com o puede comunicarse telefónicamente con el Administrador del acuerdo de TCPA llamando al 1-800-330-1683.

NOTA: **NO** LLAME NI ESCRIBA AL TRIBUNAL, A LA SECRETARÍA DEL TRIBUNAL, A UBER NI AL ABOGADO DE UBER PARA SOLICITAR MÁS INFORMACIÓN. NINGUNO DE ELLOS PODRÁ BRINDARLE ASISTENCIA. Si tiene alguna pregunta, llame al 1-800-330-1683 o visite www.UberTCPASettlement.com.

**Para obtener más información y un Formulario de demanda, visite www.UberTCPASettlement.com o llame al 1-800-330-1683.**

10

Attachment 13

# Vergara v. Uber Technologies.inc.

Case No. 1:15-cv-06942

**Requests for Opt Outs**

|   | DocID | Key Name |
|---|-------|----------|
| 1 | 900000001 | ROBERT GILCHRIEST |
| 2 | 900000002 | TAMMY L ERICKSON |
| 3 | 900000003 | VICENTE PERALTA PULLA |
| 4 | 900000004 | ROBERT RIEGEL |
| 5 | 900000005 | JACQUIE Y BLEVINS |
| 6 | 900000006 | TERESITA RAMOS |
| 7 | 900000007 | PABLO HERNANDEZ |
| 8 | 900000008 | M RENA |
| 9 | 900000009 | SARA RODRIGUES |
| 10 | 900000010 | GEORGE J MURRAY |
| 11 | 900000011 | ANTHONY RANSOM |
| 12 | 900000012 | MARK FRIEND |
| 13 | 900000013 | JENNIFER NG |
| 14 | 900000014 | ERION META |
| 15 | 900000015 | CLEBER AGUIAR |
| 16 | 900000016 | JOHN A FISCIAN |
| 17 | 900000018 | ALICIA JACOB |
| 18 | 900000019 | TED R DORFMAN |
| 19 | 900000020 | ERIKA KNOWLTON |
| 20 | 900000021 | CHRISTINE A HAMILTON |
| 21 | 900000022 | UZOAMAKA OHAI |
| 22 | 900000023 | ASHLYN MALLISON |
| 23 | 900000024 | STATE FARM INSURANCE |
| 24 | 900000025 | LAINE K SANBURG |
| 25 | 900000026 | CRYSTAL  ROFEIM |
| 26 | 900000027 | STEVEN COLLOTON |
| 27 | 900000028 | CAMILO TOLENTINO |
| 28 | 900000029 | KRYSTAL LAWS |
| 29 | 900000030 | MUHAMMAD SHAHID |
| 30 | 900000031 | LIZHONGFEI LI |
| 31 | 900000032 | IGNACIO GALINDO |
| 32 | 900000033 | MARIA PLAKSINA |
| 33 | 900000034 | ROLANDO A CUEVAS |
| 34 | 900000035 | TERRIANNE PEARSON |
| 35 | 900000036 | ADRIANA LARA |
| 36 | 900000037 | AARON HALLIBURTON |
| 37 | 900000038 | PATRICK HENDERSON |
| 38 | 900000039 | ZHENGQIANG FU |
| 39 | 900000040 | FIRASS TASLAQ |

| 40 | 900000041 | SHAMEKA V RAMSAY |
|----|-----------|------------------|
| 41 | 900000042 | ALEKSANDER LITVAK |
| 42 | 900000043 | CLINGAN |
| 43 | 900000044 | PAMELA HACK |
| 44 | 900000045 | MOHAMMED ISSAADI |
| 45 | 900000046 | ALBERTO SANCHEZ |
| 46 | 900000047 | MONICA PRIETO |
| 47 | 900000048 | PATRICK D MIKKELSON |
| 48 | 900000049 | HOWARD MCBRIDE |
| 49 | 900000050 | KERRY S BLOSS |